UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. _____

SHANE VILLARINO,
LAURA J. JOHNSON,
JEFFERY MONDY, and
JEROME GUNN,
on behalf of themselves and all others similarly situated,

       Plaintiffs,

v.

PACESETTER PERSONNEL SERVICE, INC.,
a Texas profit corporation;
PACESETTER PERSONNEL SERVICE OF
FLORIDA, INC., a Florida profit corporation; and
FLORIDA STAFFING SERVICE, INC.,
a Florida profit corporation;
each d/b/a PACESETTER;
PACESTTTER PERSONNEL;
PACESETTER PERSONNEL SERVICE;
PACESETTER PERSONNEL SERVICES;
PACESETTER PERSONNEL SERVICES, LLC;
PPS; and/or FW SERVICES,

       Defendants.

_____/

## NATIONWIDE COLLECTIVE
## AND CLASS ACTION COMPLAINT

       Plaintiffs, SHANE VILLARINO, LAURA J. JOHNSON, JEFFERY MONDY, and

JEROME GUNN (hereinafter "Plaintiffs") by and through their undersigned counsel, and on their

own behalf and on behalf of other similarly situated current and former employees of Defendants,

hereby file the instant action pursuant to the Fair Labor Standards Act of 1938, as amended 29

U.S.C §201 *et seq.*, (hereinafter the "FLSA"); the Florida Minimum Wage Act ("FMWA"), *Fla. Stat.*

§448.110 *et seq.* in conjunction with Article X, Section 24 of the Florida Constitution; and Florida's

Labor Pool Act of 1995 (the "Labor Pool Act" or "FLPA"), §448.20 *et seq.*

1

The instant action is filed as <u>both</u> a proposed "opt-in" nationwide collective action (as to the FLSA claims, which include both overtime and federal minimum wage claims)[1] <u>and</u> as a Federal Rule of Civil Procedure 23 class action specific to Florida-based workers (as to the Florida Minimum Wage Act and Florida Labor Pool Act claims) against Defendants, PACESETTER PERSONNEL SERVICE, INC., a Texas profit corporation; PACESETTER PERSONNEL SERVICE OF FLORIDA, INC., a Florida profit corporation; and FLORIDA STAFFING SERVICE, INC., a Florida profit corporation; (collectively hereinafter "Defendants" or "Pacesetter"). In support thereof, Plaintiffs state as follows:

<u>**OVERVIEW**</u>

1.      Plaintiffs and all those similarly situated are current or former "unskilled" general laborers who were employed on "daily tickets" (this term will be explained in detail below) by Defendants in Florida and other states. Defendants each and collectively are personnel staffing or "temporary labor" companies which supply general laborers on a temporary/long-term basis to third-party corporate or governmental entity clients.

2.      This four-count Complaint is brought on behalf of the Plaintiffs and all others similarly situated who worked for the Defendants and brings causes of action for:

Count I:        a proposed "opt-in" national collective action for the recovery of unpaid overtime wages pursuant to 29 U.S.C. § 216(b) of the FLSA, 29 U.S.C. § 201 *et seq.*;

---

[1] At the time of this filing, undersigned counsel represent, in addition to Named Plaintiffs, well over 100 similarly situated current and former employees of Defendants who wish to join the collective and class actions proposed via this action and will be filing their Notices of Consent to Join in the FLSA collective being proposed via this action and in support of Named Plaintiffs' soon-to-be-filed Motion for Conditional Certification pursuant to Section 16(b) of the FLSA.

Count II:      a proposed "opt-in" national collective action for the recovery of unpaid minimum wages pursuant to 29 U.S.C. § 216(b) of the FLSA, 29 U.S.C. § 201 *et seq.*;

Count III:     a proposed Florida-wide Rule 23 class action to address Defendants' violations of the Florida Minimum Wage Act ("FMWA"), *Fla. Stat.* §448.110 *et seq.*, in conjunction with Article X, Section 24 of the Florida Constitution, and;

Count IV:      a proposed Florida-wide Rule 23 class to address Defendants' violations of Florida's Labor Pool Act, §448.20 *et seq.*

3.       Plaintiffs bring their FLSA overtime and minimum wage claims (Counts I and II) as a proposed 29 U.S.C. § 216(b) "opt-in" collective action and seek to recover unpaid wages, unpaid overtime wages, liquidated damages, declaratory relief and reasonable attorneys' fees and costs on behalf of themselves and all similarly situated employees who eventually opt in to the class and who worked for the Defendants within the United States within the three (3) years preceding the filing of this action (the "Collective Action Class").

4.       Plaintiffs bring their Florida Minimum Wage Act claims (Count III) and Florida Labor Pool Act claims (Count IV) as proposed Rule 23 classes on behalf of themselves and all others similarly situated who worked for the Defendants within the State of Florida within the five (5) years preceding the filing of this action.

5.       Plaintiffs know of (and undersigned counsel currently represent) numerous other similarly situated individuals who are interested in opting into the collective class being proposed via this action and who are interested in the creation of an FLSA collective action with Court-supervised notice of opt-in rights to all others similarly situated.

3

6.     Additionally, Plaintiffs know of (and undersigned counsel currently represent) over 100 other similarly situated individuals who currently work or have worked for Defendants within the state of Florida and who would wish to seek recovery of damages in any Rule 23 classes created as to the Florida Minimum Wage Act and the Florida Labor Pool Act claims at issue, and who, even if no Rule 23 classes were to be approved by the Court, intend to pursue their legal claims under those statutes either individually or as part of a multi-plaintiff litigation.

## JURISDICTION AND VENUE

7.     The jurisdiction of the Court over this action is based on 28 U.S.C. § 1332(d); 29 U.S.C. § 216(b); and 28 U.S.C. § 1331. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because the amount in controversy exceeds $5,000,000 and the requisite "minimal diversity" is satisfied as numerous members of the proposed class are currently citizens of a state different from that of Defendants.

8.     Additionally, the supplemental jurisdiction of this Court is invoked with respect to claims made under the laws of Florida pursuant to:

(a)     Title 28 U.S.C. § 1367(a), because the Florida claims are so related to the federal claims or within the Court's original or statutory federal jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution; and

(b)     Title 28 U.S.C. § 1343, because the state law claims arise out of the same common nucleus of operative facts as the federal claims and are such that the parties would ordinarily expect to try them in one proceeding.

9.     Venue is proper for the United States District Court for the Southern District of Florida because:

4

(a)     Plaintiffs were employed in the Southern District of Florida by Defendants, which at all times material, conducted, and continue to conduct, substantial business in the Southern District of Florida; and

(b)     Additionally, venue lies pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred within the Southern District of Florida, and because Defendants are subject to personal jurisdiction there.

## CONDITIONS PRECEDENT

10.     Plaintiffs have complied with all conditions precedent to bringing this action, or such conditions have been waived. With respect to their FMWA claims Plaintiffs, while believing that the pre-suit notice requirements of Fla. Stat. § 448.110(6) are unconstitutional, nevertheless served, through their undersigned counsel, Defendants with notice of their FMWA class claims on September 24, 2019.

## PARTIES

11.     The Plaintiffs and those similarly situated to them are *sui juris* adult individuals who are current or former employees of defendants who worked for defendants as general "unskilled" laborers employed on "daily tickets" within the United States and within the five (5) years preceding the filing of this complaint.

12.     Plaintiffs are currently residents of the State of Florida. They have all worked for the Defendants as general laborers in Broward County, Florida at points in time during the five (5) years before the date on which this Complaint was filed.

13.     Plaintiff JEFFERY MONDY has, during the three (3) years preceding the filing of this action, worked for Defendants in other cities including Pensacola, Florida; Fort Worth, Texas; and Dallas, Texas. He performed the same job duties and was subjected to the same pay policies, practices

5

and methods at all four (4) locations.

14.     Undersigned counsel currently represent well over 100 individuals similarly situated to Plaintiffs. Many of these individuals worked for Defendants within the last five (5) years at one or more of Defendants' numerous worker reporting locations throughout the state of Florida, including at Defendants' Miami, Fort Lauderdale, West Palm Beach, Tampa, and Pensacola locations.

15.     Defendant PACESETTER PERSONNEL SERVICE, INC. is a Texas profit corporation with its corporate base of operations ostensibly located at 3203 West Alabama Street, Houston, Texas 77098 and which at all times relevant and currently conducts substantial business within this District and the State of Florida.

16.     Defendant PACESETTER PERSONNEL SERVICE OF FLORIDA, INC. is a Florida profit corporation with its corporate base of operations ostensibly located at 3203 West Alabama Street, Houston, Texas 77098 and which at all times relevant and currently conducts substantial business within this District and the State of Florida.

17.     Defendant, FLORIDA STAFFING SERVICE, INC., is a Florida profit corporation with its corporate base of operations ostensibly located at 3203 West Alabama Street, Houston, Texas 77098 and which at all times relevant and currently conducts substantial business within this District and the State of Florida.

18.     Currently and over at least the last five (5) years, all three (3) named corporate Defendants have had common ownership, common management, common branding, common pay and employment practices and policies, a common business purpose and model, interrelation between operations, and centralized control of labor relations. All three appear to do business under multiple names including but not limited to the following:

PACESETTER;

PACESETTER PERSONNEL;

6

PACESETTER PERSONNEL SERVICE;

PACESETTER PERSONNEL SERVICES;

PACESETTER PERSONNEL SERVICES, LLC;

PPS;

and/or FW SERVICES.

19.     Plaintiffs reserve the right to amend their pleadings to include these or any other companies under which the Defendants may conduct business or which may be joint/integrated employers or companies engaged with the Corporate Defendants in a joint enterprise.

## GENERAL FACTUAL ALLEGATIONS

20.     Plaintiffs are *sui juris* adult individuals who currently reside within Broward County, Florida. They worked for Defendants in the Fort Lauderdale/ Broward County area at various times within the five (5) years preceding the filing of this action.

21.     Pacesetter, though its various corporate entities and d/b/a entities, is a large personnel staffing or "temporary labor" company operating in several states and in the business of employing general "unskilled" laborers and deploying them to work for third-party corporate and governmental entity clients across the southeast United States, including in the states of Florida, Alabama, Georgia, and Texas. These clients include large general contractors, construction companies, airports, casinos, sporting and concert venues, municipalities and other governmental entities.

22.     Pacesetter has dozens of "worker reporting" or "labor hall" locations in the southeastern U.S. and at the time of this filing appears to currently have 17 locations just within the state of Florida, including in Miami, Fort Lauderdale, Fort Myers, Orlando, West Palm Beach, Tampa, Daytona Beach and Jacksonville.

23.     Upon information and belief, all of Pacesetter's worker reporting/ labor hall locations operate in a substantially similar manner, as described below.

**Plaintiffs' Typical Workday/ Week**

24.     The following paragraphs describe the typical workday/workweek experienced by Plaintiffs during their employment with Defendants. Their experiences are representative of and nearly identical to the experiences of thousands of similarly situated current and former Pacesetter workers in Florida and other states.

25.     While employed with Defendants in Fort Lauderdale, Plaintiffs reported to Defendants' labor hall located at 381 E. Commercial Boulevard, Fort Lauderdale, Florida 33334 early in the morning, often between 4:30 and 5 a.m.

26.     Upon arriving, Plaintiffs would then "log in" using a wall-mounted tablet. (The log-in time is not used for tracking an employee's daily time worked or for calculating pay. The purpose of the log-in appears to be simply tracking which employees report for work each morning).

27.     After logging in, Plaintiffs would be informed by management of that day's work assignment, job site and instructions regarding the tasks to be done that day, and given a "ticket" to take to the job site.

28.     Plaintiffs would then be issued employer-provided tools, protective/ safety gear and/or equipment. The exact combination of gear and clothing varied depending upon the work being done that day, but often the gear would include googles/ safety glasses, gloves, a reflective vest, a safety harness, work boots, and/or a hard hat. Similarly, the tools or implements issued on a given day depended on the work being done that day, but often could include a shovel, pick axe, sledgehammer, rake, broom, flags, other basic hand tools and/or various cleaning supplies.

29.     On at least some days, Defendants charged Plaintiffs and others similarly situated a daily "rental fee" for safety equipment/ gear/ clothing such as for work boots or goggles. This rental fee was usually $5 for work boots and/or $2 or $3 for safety goggles/ glasses.

30.     Plaintiffs were then advsised of that day's employer-coordinated/provided and required

8

transportation to and from the job site. Usually, Plaintiffs would either carpool with other workers or ride on one of Defendants' passenger vans. On some days, Defendants required Plaintiffs and others similarly situated to use other forms of transportation to and from jobsites, such as public busses or ride-sharing services such as Uber or Lyft.

31.     Plaintiffs and other similarly situated workers were required to take employer-coordinated/controlled/approved/provided transportation to and from the job site and were **not** permitted to drive their own vehicles to job sites unless the trip was part of a carpool arrangement involving co-workers and approved and overseen by Defendants. (The reasons for this are explained, *infra*).

32.     Immediately following receipt of their daily assignment, Plaintiffs were often required to wait at the labor hall for an hour or more, prior to their departure to the job site. There were various reasons for the wait but usually waiting was required because city/county noise restrictions often prohibited work from starting before 7 a.m. at certain job sites, workers were waiting for other co-workers to arrive so that they could fill a carpool or fill to capacity a Pacesetter passenger van headed to the job site as required, or supervisors were not yet on-site at the job sites.

33.     Once permitted to do so, Plaintiffs were then required to take the employer-provided and coordinated transportation out to the job site and perform their work.

34.     While the work tasks varied, they were all unskilled labor tasks which did not require any specialized training, experience or certifications. At construction sites, tasks included debris clean up, trash removal, demolition, and landscaping. At other job sites tasks included trash removal, moving, landscaping, janitorial, cleaning, assembly, warehousing, unloading and loading, freight handling, packaging, or "set up" of various items for events, such as tables, chairs, canopies, garbage cans and other items.

35.     At the conclusion of their work at a given job site, Plaintiffs were then again required to

take the employer-coordinated/ provided transportation back to the labor hall in order to clean off and return all their employer-issued safety gear, tools and equipment, along with their job "ticket."

36.     If Plaintiffs or others similarly situated failed to take the employer-required transportation back to the labor hall at the end of their work day, they were at risk of non-payment for that day and were subjected to fines for failing to return the tools/equipment/safety gear Defendants issued to them at the start of their shifts.

37.     Once they returned to the labor hall via the employer-coordinated and required transportation, Plaintiffs and others similarly situated cleaned/returned their employer-issued tools/safety gear and/or equipment, and they were then given their paycheck and pay stub for that workday.

38.     Defendants and workers commonly refer to the above-described typical workday as a worker being on a "daily ticket," a reference to Plaintiffs and others similarly situated being paid at the end of each workday and being required to report to the labor hall at the beginning and end of each day for a daily work assignment.[2]

39.     At the end of each workday, the check and stub issued to Plaintiffs usually indicated a perfectly round number such as 7.0 or 8.0 hours. This indication of hours was arbitrary, inorganic, a fiction and greatly underreported how long the worker's workday actually was. Further, this entry of hours supposedly worked each day was not anchored to or based on any actual "time clock" or time-tracking system actually measuring the true starting and stopping times of work performed.

40.     The amount of hours shown on a typical daily pay stub was virtually always an under-

---

[2] Defendants constitute a very large labor staffing company and, in addition to employing thousands of "unskilled" general laborers like Plaintiffs and others similarly situated, do in fact employ many skilled workers and/or tradespeople who are not required to report to any labor hall on a daily basis. This action is not intended to include such skilled tradespeople employed by Defendants and Plaintiffs do not contend that such workers are similarly situated to them. Rather, Named Plaintiffs seek to pursue the instant action on behalf of general laborers employed by Defendants on "daily tickets," which constitute the group of workers Named Plaintiffs believe "similarly situated" to them.

reporting of the actual amount of time Plaintiffs and others similarly situated worked. Each day's paystub under-reported hours due to the fact that Plaintiffs and others similarly situated were on the job sites for longer than what the pay stub indicated, **_and_** Defendants were not paying Plaintiffs for the time they spent travelling to and from the job site or the time spent at the labor hall waiting and being issued and returning tools, safety gear and other items.

41.     The time Plaintiffs and others similarly situated spent travelling from the labor halls to the job sites does not "commuting" time within the meaning of the FLSA or the Portal to Portal Act of 1947 (29 U.S.C. §§251-262), but rather was an integral and required part of their job duties and constitutes FLSA-compensable time.

42.     At the conclusion of each workweek, Defendants paid Plaintiffs and others similarly situated employees time-and-a-half overtime pay, to the extent such employee's cumulative paystubs for the workweek showed more than 40 hours worked for the week.

43.     With respect to Plaintiffs and those similarly situated, Defendants did not and still do not have in place a system for accurately measuring and tracking the actual time worked each day/week.

44.     Because each day's paystub recorded an artificially low number of hours worked, typically a flat 7.0 or 8.0 hours for the day irrespective of the actual number of hours worked, Plaintiffs received overtime pay for only a fraction of their overtime hours worked each week.

45.     Plaintiffs and others similarly situated are required by Defendants to report to the labor hall(s) each morning to start their workday and to return to them at the end of each workday for several reasons.

46.     Plaintiffs and others similarly situated are required by Defendants to report to the labor hall(s) each morning to start their workday so that Defendants may issue them the tools, equipment, safety gear, and/or instructions required for each day's job.

47.     Likewise, Plaintiffs are required to return to the labor hall at the end of each workday in

order to return Defendants' tools, equipment, and safety gear.

48.     Plaintiffs and others similarly situated were and are also required by Defendants to report to the labor hall(s) each morning and to return to them at the end of each workday, because Defendants require their workers to utilize employer-coordinated and approved transportation to and from job sites.

49.     At all times relevant hereto, workers, including Plaintiffs were generally **not** permitted to drive their own vehicles to job sites unless the trip was part of a carpool arrangement involving co-workers and approved and overseen by Defendants.

50.     Plaintiffs and others similarly situated were required to take employer-provided and coordinated transportation because usually there is/ was very limited space at the job sites for vehicles. Often times the job sites were and are construction projects in urban areas with very limited parking available.

51.     In fact, one of the unique "perks" by which Defendants secures its contracts with its customers is by promising to its customers that Defendants will transport the workers to and from the jobsites, and workers will **not** be arriving or leaving job sites in their own individual vehicles.

52.     As Defendants' website explains:

> **General Labor**
> WORKLOADS FLUCTUATE. DEADLINES LOOM. STAFFING FALLS SHORT.
>
> Whatever your situation, the answer is the same: reliable, affordable temporary labor. Every day, Pacesetter recruits, dispatches and transports workers for temporary general labor assignments to businesses throughout the southern United States. Through our comprehensive employee transport system, Pacesetter supplies dependable, timely general labor workers directly to your location.
>
> Whether you need one worker for one day or one hundred workers indefinitely, Pacesetter can help. Most of our offices are open 24 hours a day, 7 days a week with a fleet of transport vehicles to ensure the timely arrival of workers to onsite projects—a benefit unmatched by competitors.

*https://pps.com/general-labor/*

53.     Thus, with respect to the employer-coordinated transportation, on any given workday, Plaintiffs and others similarly situated were either passengers on Defendants' vans, or were carpooling with co-workers. On less frequent occasions, Plaintiffs and others similarly situated were required by Defendants to take public busing or ride-sharing services to and from job sites.

54.     Defendants failed to pay Plaintiffs and those similarly situated for time spent working prior to reaching their assigned work site each day and after leaving their assigned work site each day, despite the fact that such time was compensable work time under the FLSA and Florida law.

55.     On a typical workday, Defendants would charge Plaintiffs and others similarly situated a $3 fee per day for the provided transportation to and from the job site, whether that transportation was a ride on one of Defendants' passenger vans or in a carpool with a co-worker/ driver.

56.     If a worker had their own personal vehicle and opted to be a carpool "driver," Defendants would designate that worker as a driver and assign co-workers to his/her vehicle for carpooling.

57.     If a worker was a carpool driver of other co-workers, he/she would not be charged the $3 transportation fee, but instead would receive $3 per passenger for the day.

58.     The implementation, allocation, oversight and payment of these transportation fees was completely controlled, overseen and implemented by Defendants, and Defendants either subtracted from (passengers) or added to (drivers) workers' daily paychecks.

59.      On at least some days, Defendants charged Plaintiffs and others similarly situated **more** than $3 per day in fees for transportation to and from job sites, a practice in clear violation of the FLPA on its face.

60.     As a result of the "transportation fees" and "equipment charges" and other impermissible charges implemented by Defendants, the pay of Plaintiffs and others similarly situated

13

fell below the applicable minimum wage in many workweeks,.

61.     Plaintiffs and others similarly situated ordinarily and regularly worked well over 40 hours per week for Defendants, and were not properly compensated for all overtime hours worked, as a result of: (a) Defendants' systematic failure to credit/pay Plaintiffs for all hours worked each workweek; (b) Defendants' systematic failure to pay Plaintiffs their regular rate of pay "free and clear" of impermissible deductions; and (c) Defendants' systematic failure to pay Plaintiffs at a rate equal to or great than the applicable minimum wage.

62.     Additionally, Defendants regularly and routinely shorted the overtime pay of Plaintiffs and others similarly situated by improperly calculating the employees' weekly overtime pay rates in violation of the FLSA and 29 C.F.R. §778.115.

63.     The FLSA requires employers to pay non-exempt employees for wait and transportation time if such time is "integral and indispensable" to employee's principal activities.

64.     Plaintiffs and others similarly situated were not paid for the compensable wait time and transportation time spent during their workday despite the fact that this time was "integral and indispensable" to their principal activities.

65.     Plaintiffs and others similarly situated often were paid different hourly rates on different days within the same workweek.

66.     Despite the requirements of 29 C.F.R. §778.115, Defendants deliberately violated this regulation by often calculating the overtime rate using the lowest hourly rate paid during a given workweek in weeks in which Plaintiffs worked at two or more different pay rates in the same workweek.

67.     Upon information and belief, Defendants engaged in this practice (using a lower hourly rate than the required weighted average in workweeks where employees' hourly pay rates fluctuated) as a deliberate and illegal cost savings measure that, when implemented over years and

across hundreds if not thousands of workers, resulted and continues to result in a significant underpayment of wages to Defendants' workers.

68.     Furthermore, the U.S. Department of Labor-approved poster employers are required to post to inform employees of their rights under the FLSA was not posted and/or kept current and, therefore the applicable statute of limitation should be equitably tolled as to Plaintiffs and those similarly situated.  *See, e.g., Cruz v. Maypa,* 773 F.3d 138, 147 (4th Cir. 2014) (extending failure-to-post tolling in the ADEA context to the FLSA); *Yu G. Ke v. Saigon Grill, Inc.,* 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) ("Failure to provide required notice of the governing legal requirements may be a sufficient basis for tolling."); *Kamens v. Summit Stainless, Inc.,* 586 F. Supp. 324, 328 (E.D. Pa. 1984) ("An employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations.").

69.     Defendants failed to properly pay Plaintiffs and all other similarly situated employees proper overtime compensation. The records reflecting this, to the extent any exist and are accurate, concerning the number of hours worked and amounts paid to Plaintiffs and other similarly situated employees, should be in the possession and custody of Defendants. Thus, Plaintiffs are unable to determine and state the exact amount of damages due at this time.

**Defendants' Violations of the Florida Labor Pool Act**

70.     In response to a long history of worker abuses committed by personnel staffing companies engaged in the temporary employment of general "day" laborers, Florida enacted the Florida Labor Pool Act in 1995.

71.     One of the particular aims of the act was to end the abusive practice by labor pool companies such as Defendants whereby the labor pool companies charged employees for the use of basic safety attire, gear and/or equipment, various tools and other equipment, and/or overcharging employees for transportation, food, water and other items common and integral to the workplace. *See*

15

Fla. Stats. §448.21 ("The Legislature finds that this part is necessary to provide for the health, safety, and well-being of day laborers throughout the state and to establish uniform standards of conduct and practice for labor pools in the state . . .").

72.    Because of the harms it was intended to address and the vulnerable class of workers it was intended to protect, the FLPA purposely provides for severe civil penalties for violations of the Act.

73.    For example, under the FLPA if a labor pool charges a worker for the use of safety equipment, or more than $1.50 per one-way trip for transportation, or for more than the actual cost of other items, it must pay the aggrieved laborer the greater of actual damages or $1,000 per violation. Fla. Stats. §448.25(1).

74.    During their employment with Defendants in the state of Florida, Plaintiffs and others similarly situated constituted "day labor" within the meaning of the FLPA.

75.    At all times relevant hereto Defendants did and continue to operate a "labor pool" and/or a "labor hall"as defined by the FLPA.

76.    Plaintiffs and others similarly situated are both "employees" covered by the FLSA and the FMWA, and "day" laborers within the protections of the FLPA.

77.    In addition to their back pay, liquidated damages, interest and any other damages due, Plaintiffs are entitled to recover reasonable attorneys' fees and costs under the FLSA, FMWA and/or FLPA.

## COLLECTIVE ACTION REPRESENTATION ALLEGATIONS
### (as to Counts I and II)

> **Commented [A1]:** Can't combine collectives. Needs to be 2 separate collectives with stand-alone definitions.

78.    Plaintiffs and those similarly situated to them are all "unskilled" general laborers who were employed by Defendants at various times during the three (3) years preceding the filing of this action and performed substantially the same or similar job duties as one another regardless of the location or job site at which they worked.

79.     Plaintiffs and those similarly situated were subjected to the same pay practices and policies detailed herein, specifically that they were routinely and regularly not compensated for all hours worked, a practice which resulted in them not receiving proper FLSA-mandated overtime and minimum wages. The potential class members are owed overtime wages for the same reasons as Plaintiffs.

80.     Plaintiffs and those similarly situated are/were employees of Defendants' who were employed on "daily tickets" during workweeks worked during the three (3) years preceding the filing of this action.

81.     Defendants' failure to properly keep time records for and compensate employees for hours worked in excess of forty (40) hours in a workweek as required by the FLSA resulted from deliberate and willful policies and/or practices that Defendants' knew violated the FLSA.

82.     These policies and/or practices were applied to Plaintiffs as well as the proposed class members. Application of these policies and/or practices did not depend on the personal circumstances of Plaintiffs or others similarly situated nor on the location at which they worked for Defendants.  Rather, the same policies and/or practices which resulted in the non-payment or under-payment of overtime wages to Plaintiffs applied to all class members.  Accordingly, the class members are properly defined as:

> **All unskilled general laborers who worked 40 or more hours in one or more "daily ticket" workweeks for Defendants at any location nationwide at any point during the three (3) years preceding the filing of the instant action.**

83.     Defendants knowingly, willfully, or with reckless disregard carried out an illegal pattern or practice of failing to pay straight and overtime compensation with respect to Plaintiffs and the proposed class members.

84.     Defendants did not act in good faith or reliance upon any of the following in formulating their pay practices with respect to Plaintiffs and those similarly situated: (a) case law, (b)

the FLSA, 29 U.S.C. § 201, *et seq.*, (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

85.     During the relevant period, Defendants violated §7(a)(1) and §15(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for one or more workweeks without compensating such employees for their work at a rate of at least the time-and-one-half for all hours worked in excess of 40 hours in a work week.

86.     Defendants have acted willfully in failing to pay Plaintiffs and the potential class members in accordance with the law.

87.     At all times relevant, Defendants failed to maintain accurate records of the actual start time, stop time, total hours worked each day, and total number of hours worked each week by Plaintiffs and the other similarly situated employees for each and every workweek within the three (3) year statute of limitations period.

88.     Undersigned counsel currently represent well over 100 other individuals similarly situated to Plaintiffs who would wish to opt in to a collective action were such an collective action certified by this Court.

89.     Plaintiffs have retained the undersigned legal counsel to prosecute this action on their behalf and on behalf of all other similarly situated employees, and have agreed to pay undersigned counsel a reasonable fee for counsel's work and representation.

90.     Undersigned counsel will be entitled to recover reasonable attorneys' fees and costs if either Plaintiffs and/or any other similarly situated employees prevail in this action.

**CLASS REPRESENTATION ALLEGATIONS**
**(As to Counts III and IV)**

18

91.     Plaintiffs bring this action on their own behalf and on behalf of two (2) proposed

classes defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and (b).

92.     The two (2) proposed Rule 23 classes are defined as follows:

**Florida Minimum Wage Act Class: (Count II):**

> **All current and former unskilled general labor employees who worked on "daily tickets" for the Defendants within the State of Florida within the five (5) years preceding the filing of the instant Complaint (relevant class time period).**

**Florida Labor Pool Act Class: (Count III):**

> **All current and former unskilled general labor employees who worked on "daily tickets" for the Defendants within the State of Florida within the five (5) years preceding the filing of the instant Complaint (relevant class time period) and whom were charged FLPA-unlawful fees by Defendants and/or denied restroom facilities in violation of the FLPA.**

93.     Excluded from both proposed classes are all judges who have presided over this

case, their spouses, and anyone within three degrees of consanguinity from such judge and/or his or

her spouse.

## Numerosity

94.     The proposed two classes are so numerous in potential members that joinder of all

class members would be impracticable.  While the exact number of class members can be

determined only by appropriate discovery, Plaintiffs believe that the potential classes for both

proposed classes are at least several thousand members or more.  The members of the classes are so

numerous that it would be impracticable to join all such persons in this action within the meaning of

the Federal Rules of Civil Procedure.

### Commonality

95.     The Plaintiffs' claims raise questions of law and fact that are common to all members of the proposed classes. The common legal issues are whether the corporate Defendants violated the FMWA and the FLPA during the Relevant Period.

### Typicality

96.     The Plaintiffs' claims are typical of the claims of other members of the classes and they have no interests that are adverse or antagonistic to the interests of other members of the proposed classes.  Plaintiffs' claims are typical of the claims of the members of the classes because all such claims arise from an act or a series of identical repeated acts taken by the corporate Defendants.

### Adequacy

97.     Plaintiffs and their undersigned counsel will fairly and adequately protect and represent the interest of each member of the class. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in employment law matters.

### Predominance

98.      This action is properly maintained as a class action in that questions of law and fact common to Plaintiffs' claims and the members of the classes predominate over questions of law or fact affecting only individual members of the classes, such that a class action is superior to other available methods for the fair and efficient adjudication of the issues raised in Counts II and III of this action. The issues relating to Plaintiffs' claims do not vary from the issues relating to the claims of the other members of the classes, such that a class action provides a superior and far more efficient method to resolve those claims than through a myriad of separate lawsuits.

20

99.     Additionally, certification of the two proposed classes under Rule 23 is supported by the fact that undersigned counsel are not aware of any other earlier litigation against Defendants to which any other member of the class is a party and which any question of law or fact controverted in the subject action is to be adjudicated.

**COUNT I**
**VIOLATIONS OF 29 U.S.C. §§ 207, 216(b)**
**(OVERTIME COMPENSATION)**

100.     Plaintiffs reincorporate, re-aver and re-adopt all Paragraphs 1-99 of this Complaint as if fully set forth herein.

101.     Plaintiffs and those similarly situated employees are/were entitled to be paid, pursuant to the FLSA, at the rate of time and one-half of their effective hourly rate for the hours that they worked in excess of forty (40) hours in any workweek.

102.     Additionally, they are/were entitled to be paid their regular hourly rate for all straight time hours they worked for Defendants, in all weeks in which they worked over forty (40) hours in a workweek.

103.     Due to intentional, willful, and unlawful acts of Defendants, Plaintiffs and others similarly situated have suffered damages in lost compensation for the time they worked over forty (40) hours per week without receiving overtime compensation.

104.     During their employment with Defendants, Plaintiffs and those similarly situated employees were not paid all overtime compensation due under the FLSA.

105.     Defendants did not have a good faith basis for their failure to pay Plaintiffs and those similarly situated employees proper overtime pay for all hours worked, and in fact knew their failure to do so was in violation of the FLSA.

106.     As a result of Defendants' intentional, willful and unlawful acts in refusing to pay Plaintiffs and those similarly situated employees all overtime compensation due, Plaintiffs and those

similarly situated employees have suffered damages, including unpaid straight time, unpaid overtime wages, liquidated damages, interest, reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiffs, on behalf of themselves and those similarly situated, move this Honorable Court for an order conditionally certifying this case as a collective action and permitting notice to issue pursuant to 29 U.S.C. § 216(b); and seek an eventual entry of a judgment against Defendants:

a. Declaring that Defendants have violated the overtime wage provisions of the FLSA;

b. As to Plaintiffs and others similarly situated:

    i. Awarding overtime compensation in amounts to be calculated;

    ii. Awarding liquidated damages in an equal amount to the overtime wages awarded;

    iii. Declaring that the statute of limitations should be extended to three (3) or more years and/or that the statute of limitation be tolled as appropriate;

    iv. Awarding reasonable attorneys' and paralegal fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

    v. Awarding post-judgment interest; and

    vi. Ordering any other and further relief this Court deems to be just and proper.

**COUNT II**
**VIOLATIONS OF 29 U.S.C. §§ 206, 216(b):**
**(MINIMUM WAGES)**

107.    Plaintiffs reincorporate, re-aver and re-adopt all Paragraphs 1-99 of this Complaint as if fully set forth herein.

108.    Plaintiffs and those similarly situated employees are/were entitled to be paid the applicable minimum wage for each workweek that they worked for Defendants.

109.    Due to intentional, willful, and unlawful acts of Defendants, Plaintiffs and others similarly situated have suffered damages in lost compensation for the time they worked for Defendants but were not paid the applicable minimum wage.

110.    Defendants' failure to pay Plaintiff and others similarly situated at least the applicable minimum wage for all workweeks is a violation of 29 U.S.C. §206.

111.    Defendants did not have a good faith basis for their failure to pay Plaintiffs and those similarly situated employees the applicable minimum wage, and in fact knew their failure to do so was in violation of the FLSA.

112.    As a result of Defendants' intentional, willful and unlawful acts in refusing to pay Plaintiffs and those similarly situated employees complete minimum wages due, Plaintiffs and those similarly situated employees have suffered damages, including unpaid minimum wages, liquidated damages, interest, reasonable attorneys' fees and costs.

113.    As a result of Defendants' willful violations of the minimum wage requirements of the FLSA, Plaintiffs and those similarly situated employees are entitled to recover liquidated damages.

**WHEREFORE,** Plaintiffs, on behalf of themselves and those similarly situated, move this Honorable Court for an order conditionally certifying this case as a collective action and permitting notice to issue pursuant to 29 U.S.C. § 216(b); and seek an eventual entry of a judgment against Defendants:

a.    Declaring that Defendants have violated the minimum wage provisions of the FLSA;

b.    As to Plaintiffs and others similarly situated:

i.    Awarding minimum wage compensation in amounts to be calculated;

ii.    Awarding liquidated damages in an equal amount to the wages awarded;

iii.    Declaring that the statute of limitations should be extended to three (3) or more

years and/or that the statute of limitation be tolled as appropriate;

iv.     Awarding reasonable attorneys' and paralegal fees and costs and expenses of

        this litigation pursuant to 29 U.S.C. § 216(b);

v.      Awarding post-judgment interest; and

vi.     Ordering any other and further relief this Court deems to be just and proper.


**COUNT III**
**VIOLATIONS OF THE FLORIDA CONSTITUTION, ART. X, § 24;**
**FLORIDA MINIMUM WAGE ACT-MANDATED MINIMUM WAGES**
**(Rule 23 class action as to Plaintiffs and others similarly situated**
**who worked within the state of Florida within the past five (5) years)**

114.    Plaintiffs reincorporate, re-aver and re-adopt all Paragraphs 1-99 of this Complaint as if

fully set forth herein.

115.    Plaintiffs and those similarly situated employees are/were entitled to be paid, pursuant

to the FMWA, statutorily-required minimum wages for each workweek that they worked for

Defendants.

116.    Due to intentional, willful, and unlawful acts of Defendants, Plaintiffs and others

similarly situated have suffered damages in lost compensation for the time they worked for

Defendants but were not paid the FMWA-required minimum wage in one or more workweeks.

117.    Defendants' failure to pay Plaintiff and others similarly situated is a violation of *Fla.*

*Stat.* §448.110 *et seq.* in conjunction with Article X, Section 24 of the Florida Constitution.

118.    Defendants knew or should have known that their failure to pay Plaintiffs at least

minimum wage was in violation of the FMWA.

119.    As a result of Defendants' intentional, willful and unlawful acts in refusing to pay

Plaintiffs and those similarly situated employees complete FMWA-mandated minimum wages, Plaintiffs

and those similarly situated employees have suffered damages, including unpaid minimum wages,

24

liquidated damages, interest, reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that judgment be entered in their favor awarding the following relief:

1. Certification of this Count as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiffs and their undersigned counsel to represent the Class;

2. Entry of a judgment against Defendants:

   a. Declaring that Defendants have violated the minimum wage provisions of the FMWA;

   b. As to Plaintiffs and others similarly situated:

      i. Awarding minimum wage compensation in amounts to be calculated;

      ii. Awarding liquidated damages in an equal amount to the wages awarded;

      iii. Declaring that the statute of limitations should be five (5) or more years and/or that the statute of limitation be tolled as appropriate;

      iv. Awarding reasonable attorneys' and paralegal fees and costs and expenses of this litigation pursuant to the FMWA;

      v. Awarding post-judgment interest, and;

      vi. Ordering any other and further relief this Court deems to be just and proper.

**COUNT IV**
**VIOLATIONS OF THE FLORIDA LABOR POOL ACT,**
*FLORIDA STATUTES* §448.20 *et seq.*
**(Rule 23 class action as to Plaintiffs and others similarly situated who worked within the state of Florida within the past five (5) years)**

120. Plaintiffs reincorporate, re-aver and re-adopt all allegations contained within Paragraphs 1-99 above.

121. The Florida Labor Pool Act was enacted in 1995 as an important and remedial statute intended to end historical shameful and appalling abuses by labor pool companies of charging their own

employees for the use of basic safety equipment, and overcharging employees for tools, transportation, food and other items and equipment common and integral to the workplace. *See* §448.21 ("The Legislature finds that this part is necessary to provide for the health, safety, and well-being of day laborers throughout the state and to establish uniform standards of conduct and practice for labor pools in the state . . .").

122.    Plaintiffs and those similarly situated are "day" laborers as defined by the FLPA and entitled to its protections.

123.    Among these protections provided for by the FLPA are that:

> (1)    *No labor pool shall charge a day laborer:*
>
>> (a)    *For safety equipment, clothing, accessories, or any other items required by the nature of the work either by law, custom, or as a requirement of the third-party user . . .*

§448.24(1)(a).

124.    Additionally, for any other items besides the ones referenced in subsection (a) above, a "laborer shall be charged no more than the actual cost of the item to the labor pool, or market value, whichever is less." §448.24(1)(a)(2).

125.    Moreover, the FLPA mandates that:

> (1)    *No labor pool shall charge a day laborer:*
>
>> *       *       *
>
>> (b)    *More than a reasonable amount to transport a worker to or from the designated worksite, but in no event shall the amount exceed $1.50 each way. . .*

§448.24(1)(b).

126.    Additionally, the FLPA mandates that:

> (5)    *A labor pool that operates a labor hall must provide facilities for a worker waiting at the labor hall for a job assignment that include:*
>
>> (a)    *Restroom facilities.*
>> (b)    *Drinking water.*
>> (c)    *Sufficient seating.*

§448.24(5).

127.    Defendants violated the FLPA by routinely:

- Charging workers daily rental fees for safety equipment such as work boots, goggles, and gloves;

- Charging workers more than Defendants' actual costs for various items, including, but not limited to, reflective vests, shirts, hardhats, and the replacement cost of tools;

- Charging workers more than $3.00 per day for transportation to/from a worksite(s);

- Failing to provide workers with restroom facilities at a labor hall;

- Failing to provide workers with drinking water at a labor hall.

128.    Due to the above intentional, willful, and unlawful acts of Defendants, Plaintiffs and others similarly situated have suffered statutory damages under the FLPA. Pursuant to Section 448.25(1) Plaintiffs and the FLPA class are "entitled to recover actual and consequential damages, or $1,000, whichever is greater, for each violation of this part, and costs."

129.    As a result of Defendants' intentional, willful and unlawful violations of the FLPA, Plaintiffs and those similarly situated employees have suffered statutory damages of $1,000 per violation, plus incurring reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiffs, on behalf of themselves and those similarly situated, move this Honorable Court for an order certifying this case as a class action in accordance with Rule 23(b) (2) and (3) of the Federal Rules of Civil Procedure with the respect to the claims contained in this Count and seek an eventual entry of a judgment against Defendants for statutory damages as provided for under the Florida Labor Pool Act, *Florida Statutes* §448.20 *et seq.*, including, but not limited to: statutory damages of $1,000 per violation, per day, per class member; pre- and post-judgment interest at the

highest legal rate; and reimbursement of reasonable attorneys' fees and costs associated with the bringing of this action, along with any other affirmative and/or equitable relief this Honorable Court deems just under the circumstances.

## JURY DEMAND

The Plaintiffs, on behalf of themselves and others similarly situated and on behalf of prospective class and collective action members, demand a trial by jury on all issues so triable.

**DATED:**      January 29, 2020
             Boca Raton, Florida

                          Respectfully filed,

                          BY:    *s/Dion J. Cassata*
                                 Dion J. Cassata, Esq.
                                 Fla. Bar No. 672564
                                 *dion@cassatalaw.com*


                          CASSATA LAW, PLLC
                          Boca Crown Centre
                          7999 North Federal Highway, Suite 202
                          Boca Raton, Florida 33487

                          Telephone:      (954) 364-7803


                          BY: *s/Andrew R. Frisch*
                                 Andrew R. Frisch, Esq.
                                 Fla. Bar No. 27777
                                 *afrisch@forthepeople.com*

                          MORGAN & MORGAN, P.A.
                          8151 Peters Road, 4th Floor
                          Plantation, FL 33324

                          Telephone:      (954) WORKERS
                          Facsimile:      (954) 327-3013

                          *Counsel for Plaintiffs and the Classes/Collectives*

28