UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

SHANE VILLARINO, *et al*.,

CASE NO.: 0:20-cv-60192-AHS

　　　　Plaintiffs,

v.

PACESETTER PERSONNEL SERVICE,
INC., *et al*.,

　　　　Defendants.

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' EXPEDITED MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND TO PERMIT NOTICE AND INCORPORATED <u>MEMORANDUM OF LAW</u>

Defendants Pacesetter Personnel Service, Inc., Pacesetter Personnel Service of Florida, Inc., Florida Staffing Service, Inc., and Tampa Service Company, Inc. (collectively, "Defendants"), hereby file this Response in Opposition to Plaintiffs' Expedited Motion for Conditional Certification of FLSA Collective Action and to Permit Notice ("Motion for Conditional Certification") and state as follows:[1]

---

[1] As a threshold matter, this Court should decide the pending Motion to Dismiss before ruling on Plaintiffs' Motion for Conditional Certification. *See, e.g., McFerrin v. Old Republic Title, Ltd.*, No. C08-5309, 2009 WL 1247093, at *2 (W.D. Wash. May 4, 2009) (continuing certification briefing schedule pending ruling on dispositive motions). Indeed, where the question of certification would become moot if a dispositive motion is granted, courts should avoid the unnecessary litigation costs and judicial expenditures associated with certification. *See Hansen v. Waste Pro of S.C., Inc.,* No. 2:17-CV-02654-DCN, 2020 WL 1892243, at *9 (D.S.C. Apr. 16, 2020) ("In response, defendants argued that that [*sic*] issues of certification and tolling were premature given the pending motions to dismiss. The court agreed . . ."); *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (granting certification but suspending notification of potential class members until after resolution of the defendant's motion to dismiss).

## I.   <u>INTRODUCTION AND SUMMARY OF RESPONSE</u>

The Named and Opt-In Plaintiffs (collectively, "Plaintiffs"), daily ticket workers at Defendants'[2] temporary staffing agency, have brought an action alleging Defendants violated the minimum wage and overtime provisions of the Fair Labor Standards Act (the "FLSA"), amongst other alleged violations, by artificially deflating Plaintiffs' hours and making improper deductions from Plaintiffs' paychecks for equipment and transportation.  Plaintiffs, however, all but one of whom were employed at Defendants' Fort Lauderdale branch location, are not similarly situated to the approximately 75,000 general daily ticket workers located at 35 Pacesetter locations across Florida, Texas and Georgia that they now seek to represent for a number of reasons.

First, Plaintiffs worked at hundreds, if not thousands, of different worksites, where they were supervised by Defendants' customers—not Defendants—who recorded Plaintiffs' hours. Plaintiffs' claims that "Defendants" artificially deflated their hours ignores Pacesetter's basic business model and would require individualized inquiries into the timekeeping practices of each of Defendants' hundreds of customers, including whether thousands of supervisors, over three years, intentionally understated hours for each worker on their Daily Time Ticket.  Aside from absurdly suggesting that Defendants' customers, who have no tie to one another and act independently, all acted in concert, Plaintiffs' claims ignore that Defendants require their employees to record, and be paid for, all time worked and have policies and procedures in place to ensure that employees are paid minimum wage and overtime.  Indeed, Plaintiffs certified daily as to the accuracy of their hours, and had two opportunities to dispute any inaccuracies: first, with

---

[2] Defendants in no way concede that they are all joint employers of the daily ticket workers, *see* D.E. 148; however, for simplicity, this motion will simply refer to "Defendants."

Defendants' customers at the worksite; and second, with the individual Pacesetter branch that dispatched them.

Second, Plaintiffs' claims for improper transportation deductions further highlight how the action is improperly suited for collective treatment.   Indeed, as Defendants' 27 declarations demonstrate: (1) transportation options varied widely at Defendants' branch locations; (2) daily ticket workers were not required to take the optional Pacesetter-supplied transportation; (3) the time between when a daily ticket worker received a Daily Time Ticket and was required to report to a worksite varied between a few minutes to upwards of an hour; and (4) Defendants exerted no control over daily ticket workers during this time—Plaintiffs could, and did, engage in various personal pursuits prior to departing to a worksite.

And finally, Plaintiffs' allegations of improper equipment deductions would further necessitate individualized inquiries. The equipment provided to daily ticket workers—free of charge—varied daily depending on the daily ticket worker's job assignment, the individual branch location a worker was dispatched from, and the daily ticket worker's preference.   Indeed, as demonstrated in Defendants' 27 declarations, some daily ticket workers elected to use their own equipment and some customers provided equipment on site.

Because Plaintiffs fail to demonstrate a common unlawful policy to understate their hours, deprive them of their overtime pay, and impermissibly charge them for transportation and equipment, and Plaintiffs are indisputably not similarly situated, Plaintiffs' Motion for Conditional Certification must be denied.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

## II.   FACTUAL BACKGROUND

### A.  Pacesetter's Business Model

Pacesetter is one of the nation's leading providers of temporary labor, with approximately 35 branch offices of varying sizes located in Florida, Texas, and Georgia. Marc Plotkin Decl. ("Plotkin Decl."), attached as Ex. 1, ¶ 2. Pacesetter's business model is functionally the same as all other companies who provide temporary manual labor to customers: on a daily basis it matches job seekers with employers. Temporary workers solely decide when, if, and for what days they wish to seek work. Between daily job assignments there is no employment relationship between Pacesetter and the temporary worker.

#### 1.  Dispatch

Each of Pacesetter's 35 branch offices varies in the industries served, when the branch opens and closes, how many people are employed at that location (i.e., a dispatch agent, on-site manager, and/or equipment manager), and the transportation offered to various job sites. Plotkin Decl., Ex. 1, ¶¶ 3, 10-11. Generally, a worker will arrive at a Pacesetter branch and log-in on a keypad kiosk with the last six digits of his or her social security number. *See, e.g*., Norman Lowe Decl. ("Lowe Decl."), Ex. 19, ¶ 5; Oldrich Gill Decl. ("Gill Decl."), Ex. 20, ¶ 5. The kiosk then asks the worker if he or she has a car and transportation to the work site. *See, e.g*., Paulus March Decl. ("March Decl."), Ex. 21, ¶ 5; Peter Demos Decl. ("Demos Decl."), Ex. 22, ¶ 5. When a worker accepts Pacesetter's offer of employment, he or she is given a Daily Time Ticket that includes the work site's location, start time, the requisite equipment, and supervisor. An employee is provided with the equipment necessary for the job—free of charge—or may elect to bring their own equipment. *See, e.g.,* Renel Moreau Decl. ("Moreau Decl."), Ex. 23, ¶ 7 ("I am given a hard hat, vest, shovel and broom nearly every day."); Richard Davis Decl. ("Richard Decl."), Ex. 24, ¶

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

7 ("In 2017, I used to bring my own equipment . . ."). Equipment varies and may include boots, safety goggles, round or square shovels, flags, a hard hat, broom, gloves, picks, sledgehammers, stop signs, rakes or other specialized equipment. Amarilys Bonilla Decl. ("Bonilla Decl."), Ex. 2, ¶ 15.

### 2.  Getting to the Job Site

While Dispatch will provide assistance arranging transportation if the worker requests it, temporary workers are free to get to the job site using any mode of transportation he or she prefers. Some workers will elect to carpool from the branch, others will ride a bike, take a bus, the Pacesetter van, Uber, or any combination of the above. *See, e.g.,* Jaime Macie Fernandez Decl. ("Fernandez Decl."), Ex. 13, ¶ 3 ("I take the bus, the Pacesetter van when it's far away, or ride with a coworker, or take an Uber or Lyft."); Carlos Cedano Decl. ("Cedano Decl."), Ex. 5, ¶ 10 ("Sometimes I take the Pacesetter van, ride with a coworker, or put my bike on the bus. Today I rode with a coworker.").

Pacesetter in no way controls how the worker gets to a job. *See, e.g.*, Moreau Decl., Ex. 23, ¶ 3 ("I can provide my own transportation to the job site, take a bus, take Uber, take the Pacesetter van, or ride with a coworker"). When workers have time before work at the job site begins, they can, and do, use this time for personal pursuits—getting coffee or something to eat, sitting and reading the paper, listening to music on their cell phones, napping, watching television, or socializing with other workers. *See, e.g.*, Frederick Hamm Decl. ("Hamm Decl."), Ex. 11, ¶ 6 ("When I have time before I need to report to the job site, I wait, smoke a cigarette, and maybe stop by McDonald's for breakfast."); Demos Decl., Ex. 22, ¶ 6 ("When I have time before I need to report to the job site, I wait by the office. We sit around and talk, and if there's a store near by we might get some coffee or something.").

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

### 3.  At the Job Site

Once at the job site, the worker will report to the customer's employee who will supervise their work and provide any necessary training.  At the end of the day, the customer will document the worker's total hours worked at the site on the worker's Daily Time Ticket. Plotkin Decl., Ex. 1, ¶ 7. The worker then reviews the hours and confirms they are correct. *Id*. If the recorded hours on the Daily Time Ticket are inaccurate, a worker could, and should, raise it with the customer immediately. *Id*. at ¶ 8; *see also* Jeffrey Masterson Decl. ("Masterson Decl."), Ex. 16, ¶ 9 ("It's been inaccurate perhaps ten percent of the time and I pointed it out to the Supervisor who corrected it and initialed it.").

### 4.  Returning From the Job Site

After the work for the customer is completed, the temporary worker no longer has any obligation to Pacesetter and their employment ends. Workers are not required to return to Pacesetter the same day they work.  Bonilla Decl., Ex. 2, ¶ 11. Some workers will choose to return to the branch to get paid for the day; others may elect to return at a later date. *See, e.g.,* Davis Decl., Ex. 24, ¶ 10 ("Seventy-five percent of the time, I return to the Miami office at the end of the day. The rest of the time I come in the next day, I'm not in a rush to turn in my Daily Time Ticket."). Should a worker elect to return to the Pacesetter office to be paid that day, he or she will again have the opportunity to review their hours prior to payment and dispute any errors. Bonilla Decl., Ex. 2, ¶ 14; *see also* March Decl., Ex. 21, ¶ 9 ("Sometimes they [the one-site supervisor] accidentally put down the wrong number. When that happens, I tell Pacesetter and Pacesetter calls the subcontractor and gets the right number."). After confirming the hours are accurate, the employee will then sign the Daily Time Ticket, attesting that he or she has been "paid in full." *See, e.g.,* Franklin Paz Decl. ("Paz Decl."), Ex. 10, ¶ 10; Luis F. Monzon Decl. ("Monzon Decl."), Ex.

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

17, ¶ 10; Fernandez Decl., Ex. 13, ¶ 10; Frank Christmas Decl. ("Christmas Decl."), Ex. 9, ¶ 10. Again, what the worker does when he or she completes a job assignment depends on the choices of the temporary worker.

**B. The Experiences of Temporary Workers Vary By Customer, Branch, and the Preferences of Each Individual Worker.**

In the temporary labor industry, each day is different. The customers, availability of jobs, type of work, start and end times, method of transportation, and pay rates vary from day-to-day, branch to branch, and season to season. Plotkin Decl., Ex. 1, ¶ 3. As detailed below, upon acceptance of Pacesetter's offer of employment, workers engage in a variety of personal pursuits prior to reporting to the work site. *See* footnotes 4-13, *infra*. Moreover, the length of time an individual employee has prior to reporting to a work site varies, ranging from a few minutes to upwards of an hour. *See, e.g.*, Fernandez Decl., Ex. 13, ¶ 6 ("When I have time before I need to report to the job site, I relax, talk, and eat breakfast."); Hermann Little Decl. ("Little Decl."), Ex. 12, ¶ 6 ("When I have time before I need to report to the job site, I sometimes stop for breakfast, but prefer not to, because it can make me late for the job."). Hundreds of individual on-site supervisors at Pacesetter's job sites across three states then record an employee's time on their Daily Time Tickets. Plotkin Decl., Ex. 1, ¶¶ 7, 11. Those employees then vary in whether they elect to return to a Pacesetter branch office for payment that day, or decide instead to return on a future day. *See, e.g.*, Dumas Decl., Ex. 8, ¶ 10 ("Maybe once or twice a month I will wait until the next morning to return my Daily Time Ticket."); Corey Wiggins Decl. ("Wiggins Decl."), Ex. 7, ¶ 10 ("Once or twice last year I waited until the next morning to return to the office because I was tired.").

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

### III.   ARGUMENTS AND AUTHORITIES

**A. Conditional Certification Should Be Denied.**

Pursuant to the "two-tiered approach" approved, though not required, by the Eleventh Circuit, courts apply a "fairly lenient standard" at the initial notice stage. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217-18 (11th Cir. 2001). However, the plaintiff's burden is "not invisible." *Hart v. JP Morgan Chase Bank, N.A.*, No. 8:12-cv-00470-T-27TBM, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012) (emphasis added). Plaintiffs' claims must have a reasonable basis supported by evidence. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (holding that the plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim of class-wide discrimination).

Despite Plaintiffs' assertions to the contrary, courts often compare competing declarations at the conditional certification stage. *See Sulaj v. IL Gabbiano Miami, LLC*, No. 1:16-CV-21239-UU, 2016 WL 11214683, at *3 (S.D. Fla. June 20, 2016) (comparing the Plaintiffs' declarations with the Defendants' declarations and ultimately holding that bartenders were not similarly situated, though servers were); *Holmes v. Quest Diagnostics, Inc.*, No. 11-80567-CIV, 2012 WL 12876965, at *2 (S.D. Fla. June 14, 2012) (comparing plaintiffs' and defendants' declarations and ultimately denying conditional class certification); *Kie v. Ivox Sols., LLC*, No. 2:15-CV-14296, 2016 WL 397606, at *1 (S.D. Fla. Feb. 2, 2016) (comparing plaintiffs' and defendant's declarations and ultimately granting conditional class certification).

In fact, Defendants' declarations are *particularly* important when Plaintiffs' declarations, as here, are not factually detailed. *See Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d 1331, 1334 (S.D. Fla. 2008) (noting that defendants' declarations' "factual specificity highlights the cursory and inadequate allegations that Plaintiff has made" where defendants submitted

declarations that described job duties and "the difficulty the Court would have in determining whether certain employees are similarly situated"). Plaintiffs in the instant case include no details as to what time declarants arrive at the Pacesetter office or the work site; how much time, if any, they have prior to issuance of a Daily Time Ticket and their departure to the worksite; what activities Plaintiffs engage in prior to departing to the worksite; examples of days where declarants' time tickets did not reflect their hours worked; whether they ever disputed the inaccurate hours with Pacesetter's customer or at the individual Pacesetter branch; and specific examples of non-payment for failure to return to the office at the end of the day. *See, e.g.*, D.E. 151 exs. 4-6, ¶¶ 19, 22.

Additionally, the size of the proposed class affects the rigor with which the Court's analysis is applied. *See Holmes,* 2012 WL 12876965, at *3 (noting that "the similarity requirement must be applied with some rigor" in a case "involving this many potential plaintiffs" where 15,000 potential class members were involved and denying to grant class certification because "if the Plaintiffs could obtain conditional certification (and increase the likelihood of extracting a settlement) against a national company merely by submitting a handful of boilerplate declarations, that would present a ready opportunity for abuse"). Here, Defendants may have as many as 75,000 former and current daily ticket workers who meet the overly broad proposed class definitions. *See* Plotkin Decl., Ex. 1, ¶ 13. Because courts routinely deny motions for conditional certification under the "lenient" standard in circumstances such as these, Plaintiffs' Motion should be denied.

## B. Plaintiffs Fail to Demonstrate that Putative Collective Action Members are Similarly Situated.

Conditional class certification is appropriate only where plaintiffs have sufficiently alleged that all putative class members are similarly situated. *Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d 1331, 1334 (S.D. Fla. 2008). Further, "the similarities necessary to maintain a collective

9

action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Id.* Otherwise, "it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Id.* (citing to *Anderson v. Cagle's, Inc.,* 488 F.3d 945, 953 (11th Cir. 2007)). Here, it is indisputable that Plaintiffs are not similarly situated —indeed, Plaintiffs worked at hundreds, if not thousands, of different work sites, with different supervisors, pay rates, and job duties. Plotkin Decl., Ex. 1, ¶¶ 3; 11; *see also* Wiggins Decl., Ex. 7, ¶ 4 ("Over the past year, I have worked at approximately thirty different job sites in South Miami, Kendall, Homestead, and Key Largo. These include hospitals, condominiums, office buildings, construction sites, and schools.  Each job site has a different assigned task and I have worked in carpentry, installation, construction site clean-up, landscaping, and moving.").

Because Plaintiffs seek to abuse the FLSA's procedures to conditionally certify a putative class of potentially 75,000 daily ticket workers despite the lack of viability of Plaintiffs' case, their Motion should be denied. *See Holmes,* 2012 WL 12876965, at *3.

### 1. Plaintiffs' identical and conclusory affidavits do not support Plaintiffs' claims.

Courts "strongly disapprove" of "boilerplate and 'cookie cutter' declarations" in seeking conditional class certification. *Holmes*, 2012 WL 12876965, at *2; *see also Eggnatz v. Coventbridge (USA) Inc.,* No. 18-61250-CIV, 2019 WL 1171455, at *3 (S.D. Fla. Mar. 13, 2019) ("These identical declarations fail to 'successfully engage' the Defendant's declaration that the opt-in plaintiffs are not similarly situated" by failing to state "each employees' dates of employment, where in Florida each employee worked, and how each employee was impacted by the Defendants' allegedly unlawful practices").

In *Holmes*, plaintiffs submitted twenty-three identical declarations from employees who worked in fourteen different states. *Holmes*, 2012 WL 12876965, at *1. These "carbon copies"

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

only varied in noting "the declarant's name, place and duration of employment, and a slight variation in paragraph 7" where some plaintiffs alleged that they were required to work before they clocked in, as well as after.  *Id.* Similarly, Plaintiffs' eleven declarations, all from daily ticket workers who worked out of the Fort Lauderdale branch office with the exception of one, are carbon copies. Other than the plaintiffs' names, the only difference between the declarations are the methods of transportation and tools used. *See* D.E. 151, exs. 3-13, ¶¶ 10-11; D.E. 151, ex. 3, ¶ 2.

In *Holmes,* the plaintiffs' declarations did not provide "a single detail regarding their place of employment, supervision, hiring/firing, training, daily schedule, or rate of pay." *Holmes*, 2012 WL 12876965, at *1. Similarly, Plaintiffs do not provide a <u>specific example</u> of any single day's schedule or any details about the worksites, the activities undertaken by declarants between receiving the daily ticket and reporting to the work site, how much time they had prior to reporting to a work site, whether they ever disputed the allegedly inaccurate hours with a supervisor at a work site, or the Pacesetter branch office, what activities they engaged in after leaving the customer's work site, and whether they were ever charged for equipment or failing to return equipment.  Rather, the declarations generally allege that "Defendants sometimes charged daily ticket workers a daily fee for the issuance and sometimes the alleged misplacement of certain Pacesetter-issued items," *see, e.g.,* D.E. 151, exs. 6-10, 12, and 13, ¶ 14, and "Defendants systemically failed to accurately record our daily start times, our daily stop times, the number of hours we worked each day, and the total hours worked each week, throughout my employment," *see, e.g.,* D.E. 151, exs. 4-13, ¶ 24, without providing any details as to the individual declarant's experience.

Critically, the plaintiffs in *Holmes* generally alleged unpaid overtime, but "nowhere do the Plaintiffs supply a specific example of such an incident, identify a specific person who required

them to work off the clock, or explain with detail how such a person required them to do so." *Holmes*, 2012 WL 12876965, at *1. Similarly, Plaintiffs nowhere offer details regarding the alleged policy requiring daily ticket workers to return to the office at the end of the day, such as who enforced the policy and how it was communicated. Nor do declarants provide any examples of someone who did not receive a paycheck for not returning the same day they worked. Conversely, Defendants' declarations highlight that employees were not obligated to return to Pacesetter's office at the end of the day. *See, e.g.,* James Stanley Decl. ("Stanley Decl."), Ex. 14, ¶ 10 ("Sometimes I just come back the next day to turn in the ticket."). Finally, as in *Holmes*, the Plaintiffs generally alleged similar complaints by potential opt-in plaintiffs, but offered no details. *See* D.E. 151, ex. 3, ¶ 31; D.E. 151, exs. 4-13, ¶ 33 ("I know of numerous other daily ticket general laborers whom I am sure would be interested…").

In contrast, the defendants in *Holmes* presented detailed and particularized declarations which indicated that the plaintiffs were not similarly situated. *Holmes*, 2012 WL 12876965, at *2. Similarly, Defendants' declarations provide particular details highlighting the myriad differences among daily ticket workers, including whether they choose to return to an individual Pacesetter branch at the end of the day. *See, e.g.,* Cedano Decl., Ex. 5, ¶ 10 ("If I have to meet my daughter or grandkids, I'll come back to the office the next morning, you don't have to return to the office each day. I also won't return to the office if the job site is too far away."). Defendants' declarations also provide particular details about the type of transportation daily ticket workers elect. *See, e.g.,* Masterson Decl., Ex. 16, ¶ 10 ("Maybe once a month I'll take my own car. I've never had a coworker ride with me."). Defendants also provide particular examples of disputes with the on-site supervisor about hours logged on the Daily Tickets. *See, e.g.,* Fernandez Decl., Ex. 13, ¶ 9 ("If there is a mistake, which is not common, I correct them [with the on-site supervisor] and they fix

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

it."); Stanley Decl., Ex. 14, ¶ 9 ("Sometimes I have to tell them that I took a shorter break or something and the Supervisor fixes it.").

Courts routinely decline to certify collective actions with conclusory declarations. *Palacios v. Boehringer Ingelheim Pharm., Inc.*, No. 10-22398-CIV-UU, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011). Assertions based on "beliefs" and "conversations" are conclusory and provide no meaningful details, thus they fall short of the "substantial" and "detailed" allegations necessary to satisfy the "similarly situated" element. *Id*. Plaintiffs' declarations state:

- "Based on my observations and experiences this was typical of all Defendants' daily ticket general laborer workers as well."  D.E. 151, exs. 3-13, ¶ 25.
- "In my experience, Pacesetter's pay and employment practices were common to myself and all other daily ticket general laborers." D.E. 151, ex. 3, ¶ 31; D.E. 151, exs. 4-13, ¶ 33.
- "The manner in which I was paid, the timekeeping policies (or lack thereof), and the pay schemes I describe were uniformly applied to all daily ticket general laborer employees with whom I worked." D.E. 151, exs. 3-13, ¶ 29.

Despite how widespread these alleged practices supposedly are, none of the declarants give a single concrete example. Instead, declarants offer legal conclusions about "Defendants' impermissible charges for company-issued equipment and transportation…" D.E. 151, exs. 3-13, ¶ 27. As a preliminary matter, Plaintiffs' declarations are insufficient to support their allegations. However, there are additional problems with Plaintiffs' specific allegations.

## 2. Plaintiffs were not subjected to a common timekeeping scheme or policy that artificially understated their hours.

In determining whether plaintiffs are "similarly situated," courts regularly consider "whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker." *Didoni v. Columbus Rest., LLC*, 327 F.R.D. 475, 477 (S.D. Fla. 2018).  Although Plaintiffs attempt to define and tie together the putative class by pay practices that they (erroneously) allege that

Defendants imposed, they cite not a stitch of evidence of any such common, unlawful pay practice imposed by Defendants. In fact, Plaintiffs' own Daily Time Tickets demonstrate that Defendants' customers recorded employees' hours at the individual worksites and Plaintiffs were responsible for confirming the accuracy of their hours.

**(a) Defendants' customers logged the hours of daily ticket workers each day.**

Whether plaintiffs are subject to the same decision maker can be definitive in determining whether the plaintiffs are "similarly situated." *See id.* (finding putative plaintiffs subject to the "same decision maker" where the class was limited to one restaurant); *see also Laos v. Grand Prize Motors, Inc.*, No. 11-CIV-22973, 2012 WL 718713, at *2 (S.D. Fla. Mar. 6, 2012) (holding plaintiffs subject to the "same decision maker" where employees worked at a single contiguous car sales lot owned by one defendant). In this case, Plaintiffs were not.

Here, Plaintiffs were not subject to the same direct management at the same site. Instead, Plaintiffs' time tickets were filled out and signed by hundreds of different on-site supervisors who do not work for Defendants. Plotkin Decl., Ex. 1, ¶ 7 ("Each individual timesheet is signed and filled out by the customer."); *see also* Bonilla Decl., Ex. 2, ¶ 13 ("At each job site, it is the job site supervisor who signs off on the daily hours worked."). Plaintiffs allege that:

> Irrespective of the hours we actually worked each day, at the end of each workday, the check and stub issued to me and the other general laborers usually indicated a perfectly round number like 7.0 or 8.0 hours. This indication of hours was not accurate and greatly understated our actual hours worked each day.

D.E. 151, exs. 3-13, ¶22. Plaintiffs make this identical allegation *eleven times* without once mentioning that the person filling out the hours is not a Pacesetter employee but rather the on-site supervisor. Defendants do not control the on-site supervisor and are not privy to their time-keeping policies. Plotkin Decl., Ex. 1, ¶¶ 7-8.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

Defendants provide a resolution mechanism if daily ticket workers disagree with the amount of time that the on-site supervisor records. *Id*. Daily ticket workers have multiple avenues for objecting: they can either approach the dispatcher at their location, or call Gracie Hernandez, the Human Resources Director at Pacesetter Personnel Services, whose phone number is provided on employment forms and the website. Gracie Hernandez Decl. ("Hernandez Decl."), Ex. 3, ¶ 3. Ms. Hernandez receives about twenty calls a year from daily ticket workers, which she generally resolves in their favor. *Id*. at ¶ 6. Ama Bonilla, Regional Vice President of South and Central Florida, says that when daily ticket workers disagree with the hours the on-site supervisors record on the Daily Time Ticket, her offices, which include the Fort Lauderdale office, err on the side of correcting the Daily Time Ticket in favor of the worker. Bonilla Decl., Ex. 2, ¶ 14.

### 3.   There is no common policy or scheme requiring paycheck deductions for equipment and transportation.

Part of determining whether there was a "common scheme" is whether "plaintiffs have sufficiently pled and supported by affidavits, depositions, and the like that Defendant's decision makers have articulated and manifested a clear intent to engage in unlawful conduct." *Reyes v. Carnival Corp.*, No. 04-21861-CIV, 2005 WL 4891058, at *7 (S.D. Fla. May 25, 2005) (internal brackets removed). The violations must be a matter of official company policy, and the plaintiff must provide evidence of this policy. *See id*. (granting conditional class certification because plaintiffs submitted evidence that denial of overtime pay was official policy).

Here, there is no common policy or scheme requiring paycheck deductions for transportation. Plaintiffs repeatedly allege, without providing any specific examples, that Defendants require them to take the transportation options provided by Defendants and charge them impermissible transportation fees. D.E. 151, exs. 3-13, ¶ 6. Plaintiffs provide no details about this policy, such as how this policy is communicated, how it is enforced, and whether or not anyone

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

has ever violated this policy. This is because this policy does not exist. Bonilla Decl., Ex. 2, ¶ 7. Indeed, as Defendants' 27 declarations demonstrate, employees were permitted to take any form of transportation they desired to a worksite. *See, e.g*., Alexander Broche Decl. ("Broche Decl."), Ex. 4, ¶ 3 ("I can provide my own transportation to a job site, take the bus, Uber, the Pacesetter van, or ride with a coworker."). While dispatch would assist with transportation in the event an employee needed it, Plaintiffs were permitted to take their own cars, the bus, ride a bike, or elect any mode of transportation they chose to get to a worksite. *See, e.g.,* Cedano Decl., Ex. 5, ¶ 6 ("My transportation varies daily. Sometimes I take the Pacesetter van, ride with a coworker, or put my bicycle on the bus. Today I rode with a coworker."); Paz Decl., Ex. 10, ¶ 6 ("I usually take the van, but sometimes take the bus. Occasionally, the company gets an Uber when the vans are out or the job site is too far.").

Moreover, employees were not required to return to a Pacesetter branch at the end of the day, and many employees routinely elected not to do so, deciding instead to return home or run an errand. *See, e.g*., Yhosvany Mederos Decl. ("Mederos Decl."), Ex. 27, ¶ 10 ("I generally return to the Miami office at the end of the day unless I have an appointment."); Davis Decl., Ex. 24, ¶ 10 ("Seventy-five percent of the time, I return to the Miami office at the end of the day. The rest of the time I come back the next day, I'm not in a rush to return my Daily Time Ticket."). Employees were further not charged a "rental fee" for equipment. *See, e.g.*, James Stewart Decl. ("Stewart Decl."), Ex. 15 ¶, 6; Gill Decl., Ex. 20, ¶ 7; Lowe Decl., Ex. 19, ¶ 7 ("I have never been charged a 'rental fee' for this equipment.").

Plaintiffs' conclusory declarations do not support a finding that opt-in plaintiffs were subjected to a common policy and scheme. Rather, as demonstrated by Defendants' declarations, the daily ticket workers differed in the transportation options they elected and whether they chose

to return to a branch office at the end of the work day.  The myriad differences render Plaintiffs' claims inappropriate for class treatment.

**C. Plaintiffs Cannot Establish Their Claims Through Common Proof.**

    **1. Experiences Vary Across Employees Depending on the Assigned Job Site, Underscoring The Need To Adjudicate Each Claim Separately.**

The nature of Plaintiffs' claims and the evidence required to prove them would render a collective action anything but efficient. *See, e.g., Delano v. Mastec, Inc*., 2011 WL 2173864, at *3 (M.D. Fla. June 2, 2011). Plaintiffs ignore that the nature of Defendants' business model creates fundamental differences among employees who report to a myriad of different customer worksites with different supervisors, timekeeping policies, pay rates, equipment, modes of transportation, and other differences impacting their individual factual circumstances precluding common proof and instead necessitating individualized inquiries and thousands of mini-trials. *See, e.g.,* Plotkin Decl., Ex. 1, ¶ 13 ("Some locations primarily serve the construction industry, while others are diversified and serve the manufacturing, construction, warehousing, and hospitality industries. Even those locations which serve only the construction industry will see variation in customers, job sites and job type throughout the year.").

The varying accounts regarding the length of time employees have prior to reporting to a job site—and what they elect to do with that time—is just one illustration of the individualized nature of the putative class claims. Plaintiffs claim they were "often made to wait an hour or more at Pacesetter's offices each morning before being transported to the job site . . . for Pacesetter's benefit." *See, e.g*., D.E. 151, ex. 5, ¶ 13. Even if this were true, Plaintiffs cannot be similarly-situated to the host of others who use the time after receiving the Daily Time Ticket and before

starting work to eat breakfast[3], stop for coffee,[4] socialize,[5] call family members[6], watch videos or play games,[7] watch the news,[8] stop for cigarettes,[9] or read or study.[10] Some daily ticket workers prefer to wait at the job site[11] and some don't have time for anything[12]. Because individualized assessment would be required, class certification is inappropriate.

These varying alleged practices must be sorted out for each putative class member before determining liability. Moreover, because every employee had discretion to adjust or correct their Daily Time Ticket, the Court would have to resolve whether each employee modified their time to reflect the actual time worked, and, if not, why they chose to underreport their hours. *See Joza v. WW JFK LLC*, 2010 WL 3619551, at *10 (E.D.N.Y. Sept. 10, 2010) (rejecting wage claims of employee who knowingly underreported time worked); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 467 (S.D.N.Y. 2011) ("key issue" was the "substantial variation as to . . . plaintiffs' use of the adjustment feature to capture otherwise unreported work"). Thus, whether time was *de*

---

[3] Hamm Decl., Ex. 11, ¶ 6 ("When I have time before I need to report to the job site, I wait, smoke a cigarette, and maybe stop by McDonald's for breakfast."); Fernandez Decl., Ex. 13, ¶ 6 ("When I have time before I need to report to the job site, I relax, talk, and eat breakfast."); March Decl., Ex. 21, ¶ 6 ("When I have time before I need to report to the job site, I sometimes get breakfast."); Davis Decl., Ex. 24, ¶ 6 ("When I have time before I need to report to the job site, I go next door to the restaurant and get a guava and cheese pastry.").

[4] Demos Decl., Ex. 22, ¶ 6 ("When I have time before I need to report to the job site, I wait by the office. We sit around and talk, and if there's a store nearby we might get some coffee or something.").

[5] Stanley Decl., Ex. 14, ¶ 6 ("When I have time before I need to report to the job site, I socialize with the other contractors.").

[6] Chemaly Dorvilus Decl. ("Dorvilus Decl."), Ex. 6, ¶ 6 ("When I have time before I need to report to the job site, I wait, call my mom and let her know I'm at the job, or look at my cell phone. Sometimes the guys I'm giving a ride to want to stop for breakfast, but I don't because it might make us late.").

[7] Wiggins Decl., Ex. 7, ¶ 6 ("When I have time before I need to report to the job site, I usually play games and watch movies on my phone.").

[8] Moreau Decl., Ex. 23, ¶ 6 ("When I have time before I need to report to the job site, I watch the news on the television.").

[9] Lowe Decl., Ex. 19, ¶ 6 ("When I have time before I need to report to the job site, I go to the job site and wait. I bring my snacks so I don't have to stop for breakfast. If one of the workers in my car wants to stop for a cigarette or breakfast, I'll stop to do that.").

[10] Monzon Decl., Ex. 17, ¶ 6 ("When I have time before I need to report to the job site, I read and study on my phone.").

[11] Christmas Decl., Ex. 9, ¶ 6 ("When I have time before I need to report to the job site, I wait at the job site.").

[12] Little Decl., Ex. 12, ¶ 6. ("When I have time before I need to report to the job site, I sometimes stop for breakfast, but prefer not to, because it can make me late for the job.").

*minimis* "will necessarily vary widely according to the particular situation of each individual plaintiff." *Zivali*, 784 F. Supp. 2d at 468. In sum, the evidence shows that Plaintiffs' claims require individualized inquiries.

### D. Alternatively, the class proposed by Plaintiffs is overbroad and, if conditional certification is granted, the notice class should include only the Fort Lauderdale location.

A factor in establishing whether plaintiffs are "similarly situated" is "similarity of location." *Herrera v. Mattress Firm, Inc.,* No. 17-22048-CIV, 2017 WL 4270619, at *5 (S.D. Fla. Sept. 26, 2017) ("Although all three named Plaintiffs appear to have worked in the same geographic location, Plaintiffs do not seek to limit the prospective class to delivery drivers in South Florida. . . . As Mattress Firm operates retail locations in 36 states . . . the named Plaintiffs have not shown similarity of location among the prospective class"). Conditional certification for a large geographic area is not appropriate where the declarations are primarily from only one location. *Gelber v. Akal Sec., Inc.,* No. 16-23170-CIV, 2016 WL 8678059, at *5 (S.D. Fla. Oct. 5, 2016), *report and recommendation adopted*, No. 16-23170-CIV, 2016 WL 8678541 (S.D. Fla. Oct. 27, 2016) (refusing to certify a nationwide class where plaintiff did not provide any declarations from employees outside the Miami location); *see also Martinez v. DHL Express (USA) Inc.,* No. 15-22505-CIV, 2016 WL 455394, at *6 (S.D. Fla. Feb. 5, 2016) (holding that "Plaintiffs have failed to carry their burden of showing JFK and LAX Agents are similarly situated to those at MIA" where only one declaration conclusorily alleged that "similar practices" occurred at another airport). As in *Martinez*, Plaintiffs present only one declaration from a location outside Fort Lauderdale which conclusorily alleges that "[e]verything I describe in this Declaration regarding my compensation, job duties and typical work day, was, in my experience, also true for all other "unskilled" and/or "daily ticket" general laborers with whom I worked at all four (4)

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Pacesetter locations." D.E. 151, ex. 3, ¶ 3.  Conditionally certifying a nationwide class of up to 75,000 employees is not warranted when the declarations allege sporadic, limited violations at one South Florida location.

**D. Plaintiffs' Proposed Notice is Improper.**

For the foregoing reasons, conditional certification is improper and notice should not issue. In the event the Court disagrees, however, Plaintiffs should be directed to confer with Defendants to develop an even-handed and fair notice—something they have not done.[13] Thereafter, if the parties cannot reach an agreement, they should be permitted to submit separate proposals to address whatever issues remain open following the parties' efforts to meet and confer.

**1. Plaintiffs' proposed 90-day notice period is unnecessarily long.**

Plaintiffs fail to provide any justification or description of special circumstances supporting their request for a 90-day opt-in period. Any opt-in period in this action should not exceed 30 days. *See Guerra v. Big Johnson Concrete Pumping, Inc.,* No. 05-14237-CIV, 2006 WL 2290512, at *5 (S.D. Fla. May 17, 2006) (allowing a thirty day notice period); *Martinez v. DHL Express (USA) Inc.,* No. 15-22505-CIV, 2016 WL 455394, at *9 (S.D. Fla. Feb. 5, 2016) (allowing a forty-five day notice period).

**2. Plaintiffs' proposed notice is temporally overbroad.**

Plaintiffs' proposed notice is temporally overbroad because the FLSA's limitations period is two years. 29 U.S.C. § 255(a). A three-year limitations period can apply only in the case of a "willful" violation, and Plaintiffs have not met their burden of showing any conduct by Defendants

---

[13] *See, e.g., Anish v. Nat'l Sec. Corp.*, No. 10-80330, 2012 WL 1906500, at *4 (S.D. Fla. May 25, 2012) (ordering parties to confer on content); *Wynder v. Applied Card Sys., Inc.*, No. 09-80004, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009) (same); *Lawrence v. Berkley Grp., Inc.*, No. 10-61069, 2011 WL 13214286, at *5 (S.D. Fla. July 14, 2011) (stating that if the parties cannot agree on the form of a notice and consent, then "each party may file a Motion to Approve their own proposed Notice and Consent Form").

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

that was willful. *See Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d 1331, 1334–35 (S.D. Fla. 2008) (denying notice "that would extend beyond the two-year statute of limitations" because "[t]he only reference to any allegedly willful violations of the FLSA by [d]efendants is a conclusory allegation of willfulness in the Complaint absent any facts to substantiate the same").

### 3. Plaintiffs' proposed notice fails to fully apprise putative class members of the ramifications of joining the lawsuit.

Plaintiffs' proposed notice is inadequate because it fails to advise the recipients of the full extent of their potential involvement in the case, including the possibility that they may be required to travel to the Southern District of Florida to be deposed and/or for a trial. Moreover, the notice is deficient because it fails to inform recipients of their potential liability for attorneys' fees. Unless the named plaintiffs "choose to separately enter into agreements with the opt-ins that waive their liability for attorney's fees, these opt-ins may indeed be liable for attorney's fees and costs." *Czopek v. TBC Retail Group, Inc.,* No. 14-0675, 2015 WL 4716230, at *11 (M.D. Fla. Aug. 7, 2015) (revising the notice to include information that the potential class members may be liable for attorneys' fees and costs if there is no judgment in their favor).

### 4. Plaintiffs' proposed notice is one-sided.

Plaintiffs spend 15 lines robustly describing their allegations and the relief sought in this case, but their proposed notice provides only a minimal, inadequate statement—two lines long—that Defendants deny the claims. This partisan case description should be modified to include an equivalent statement of the positions and defenses of Defendants.[14] *See, e.g.*, *Holmes v. Swissport*

---

[14] Plaintiffs' proposed notice also does not even include contact information for Defendants' counsel and must be revised to do so. *See Dean*, 2018 WL 1083497, at *4 (holding that "courts often include the contact information for both plaintiff's counsel and defense counsel in the notice . . . in the interest of providing complete information to potential opt-in plaintiffs"); *Leo v. Sarasota Cnty. Sch. Bd.*, No. 16-3190, 2017 WL 477721, at *3 (M.D. Fla. Feb. 6, 2017) ("The Court agrees that [defendant's] counsel's information should be included.").

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

*Fueling, Inc.*, No. 16-0669, 2017 WL 8794900, at \*13 (M.D. Fla. Sept. 1, 2017) (stating that "[n]otice to putative class members should not appear to be weighted in favor of one side or the other," and agreeing that notice must include a statement of defendant's positions).

### 5. Plaintiffs' proposed modes of delivery for the notice are improperly excessive.

Although Defendants will agree that, in the event the Court orders that notice be issued, notice of putative class members' rights may be distributed via first class mail, Defendants object to the remaining forms of notice requested by Plaintiffs.

First, Plaintiffs seek to require a copy of the notice to be posted "at all of Defendants' locations where the similarly situated employees are employed." Motion at 22.  This would be massively disruptive. Class notice should be posted at the workplace "only after a showing that a defendant has failed to cooperate in the collective action process." *Gonzalez v. TZ Ins. Sols., LLC*, No. 8:13–cv–2098, 2014 WL 1248154, at \*6 (M.D. Fla. Mar. 26, 2014).

Second, Plaintiffs' request to provide notice via email should also be rejected, as electronic notice can be altered, forwarded to other people, or otherwise abused. *See, e.g.*, *Gordon v. Kaleida Health*, No. 08-378S, 2009 WL 3334784, at \*11 (W.D.N.Y. Oct. 14, 2009) (refusing electronic notice because of the "risks of distortion or misleading notification through modification of the notice itself or the addition of commentary"); *In re Wells Fargo Wage & Hour Emp't Practices Litig. (No. III)*, No. 11-2266, 2013 WL 2180014, at \*2 (S.D. Tex. May 17, 2013) (same). Even if the Court finds email to be acceptable, combined with all the other proposed forms of notice, it is simply overkill, resulting in an onslaught of notices that may very likely create the implication of judicial endorsement or that Plaintiffs' claims necessarily are meritorious.

Third, Plaintiffs' request to send notice via text message is inappropriate because "most

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

people do not expect to receive unsolicited business communications via text message," and "[a]bsent some showing" that other forms of delivery "will not reach prospective class members," this additional "form of notice is unnecessary and overly intrusive." *Slaughter v. Caidan Mgmt. Co.*, 317 F. Supp. 3d 981, 994 (N.D. Ill. 2018).

Simply put, providing notice across four mediums is overkill. It bombards Plaintiffs with the same notice and, by doing so, improperly suggests there is judicial endorsement of the case or that Plaintiffs' claims are legitimate. Given the foregoing, if notice is ordered, the Court should order the parties to meet and confer regarding an acceptable form of notice.

### 6. Plaintiffs' request for a reminder notice is improper.

Plaintiffs also propose that a reminder notice be sent at the halfway point in the notice period. However, "[r]eminder notices are unnecessary because they are redundant and could be interpreted as encouragement by the Court to join the lawsuit." *Rojas v. Garda CL Se., Inc.,* 297 F.R.D. 669, 682 (S.D. Fla. 2013), *order vacated in part on reconsideration*, No. 13-23173-CIV, 2014 WL 11906592 (S.D. Fla. Apr. 11, 2014) (denying permission to send a reminder notice).

### 7. A third-party administrator should distribute any notice.

Plaintiffs are not entitled to putative class members' names or private contact information because a third-party claims administrator should distribute the notice. The expertise of such an administrator in locating putative class members can only benefit Plaintiffs. Moreover, providing contact information to Plaintiffs' counsel would jeopardize the integrity of the Court-supervised notice process because counsel could then direct misleading and/or coercive communications to putative class members that stray beyond the negotiated, evenhanded, and Court-approved notice.

### 8. Plaintiffs' proposed Consent Form is improper.

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Plaintiffs' proposed Consent Form seeks authorization to "use this consent to file another action against Pacesetter for the same or similar violations" in the event of dismissal. As in the *Rojas* case, here, "Plaintiffs provide no legal support for the notion that they can reuse submitted consent forms in separate actions, and the notion that Plaintiffs may reuse consent forms in separate actions that, no matter how related, are likely to involve different claims or different class definitions is untenable." *Rojas*, 297 F.R.D. at 680; *see also Dean*, 2018 WL 1083497, at \*5.

### E.  Plaintiffs Provide No Justification for an Expedited Ruling.

In violation of the Local Rules, Plaintiffs' Expedited Motion for Conditional Certification does not cite a "date certain" by which a ruling is sought. *See* S.D. Fla. Local Rule 7.1(d)(2). Moreover, the Motion provides no rationale for an expedited ruling. Defendants are consequently unsure as to what relief Plaintiffs are seeking and why. Because Plaintiffs have provided no justification for an expedited ruling and any expedited ruling on the Motion for Conditional Certification is premature as Defendants' Motion to Dismiss is currently pending, this relief should be denied. *See* FN 1 *supra*.

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Conditional Certification. If the Court nonetheless conditionally certifies a collective action, the certification should be limited to daily ticket workers at the identified Fort Lauderdale location, and Plaintiffs' proposed notice should be modified as described above.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Dated: June 1, 2020                        Respectfully Submitted,

                                           By: *s/ Derek E. León*
                                           Derek E. León
                                             Florida Bar No. 625507
                                           Tiffany L. Anderson
                                             Florida Bar No. 83995
                                           John R. Byrne
                                             Florida Bar No. 126294
                                           **LEÓN COSGROVE, LLP**
                                           255 Alhambra Circle, Suite 800
                                           Coral Gables, Florida 33134
                                           Telephone:  305.740.1975
                                           Email: dleon@leoncosgrove.com
                                           Email: tanderson@leoncosgrove.com
                                           Email: jbyrne@leoncosgrove.com

                                           Joel M. Androphy, Esq. (Admitted *Pro Hac Vice*)
                                           Rebecca L. Gibson, Esq. (Admitted *Pro Hac Vice*)
                                           Caroline K. Gorman, Esq. (*Pro Hac Vice* to be filed*)
                                           **BERG & ANDROPHY**
                                           3704 Travis Street
                                           Houston, Texas 77002
                                           Telephone:  713-529-5622
                                           Email: jandrophy@bafirm.com
                                           Email: rgibson@bafirm.com
                                           Email: cgorman@bafirm.com
                                           ***Counsel for Defendants***

## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that on June 1, 2020, I electronically filed the foregoing with the

Clerk of the Court with a copy of the same to be served upon counsel via the CM/ECF system:

Dion J. Cassata, Esq.                      Andrew R. Frisch, Esq.
**CASSATA LAW, PLLC**                      **MORGAN & MORGAN, P.A.**
Boca Crown Centre                          8151 Peters Road, 4th Floor
7999 North Federal Highway, Suite 202      Plantation, FL 33324
Boca Raton, Florida 33487                  Email: afrisch@forthepeople.com
Email: dion@cassatalaw.com                 Phone: 954-967-5377
Phone: 954-364-7803

                                           *s/ Derek E. León*
                                           Derek E. León, Esq.