UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60192-CIV-SINGHAL/VALLE

SHANE VILLARINO, LAURA J.
JOHNSON, JEFFERY MONDY,
and JEROME GUNN, on behalf of
themselves and all others similarly situated,

       Plaintiffs,

v.

PACESETTER PERSONNEL SERVICE, INC.,
a Texas profit corporation; PACESETTER
PERSONNEL SERVICE OF FLORIDA, INC.,
a Florida profit corporation, and FLORIDA
STAFFING SERVICE, INC., a Florida
profit corporation,

       Defendants.
_____/

## ORDER

**THIS CAUSE** has come before the Court upon the Plaintiffs' Expedited Motion for

Conditional Certification of FLSA Collective Action and to Permit Notice (DE [151]).  The

Court has reviewed the Motion, the opposing and supporting memoranda, the applicable

law, and is otherwise fully advised.   For the reasons set forth below, the Motion

**GRANTED in part and DENIED in part.**

I.    BACKGROUND

Plaintiffs Shane Villarino, Laura J. Johnson, Jeffery Mondy, and Jerome Gunn

(collectively, "Plaintiffs") filed a four-count First Amended Collective and Class Action

Complaint (DE [152]) ("Complaint") on behalf of themselves and all others similarly

situated for unpaid overtime and minimum wages under the Fair Labor Standards Act

("FLSA") and Florida's Minimum Wage Act ("FMWA").   They also seek damages for violations of the Florida Labor Pool Act ("FLPA").  In addition to the four named Plaintiffs, approximately 130 "opt-in Plaintiffs" have submitted  Notices of Consent to Join the action as parties (DE [164] - [170], [233] –[236], [240], [241], [243], and [246]).   Defendants Pacesetter Personnel Service, Inc., Pacesetter Personnel Service of Florida, Inc., Florida Staffing Service, Inc., and Tampa Service Company (collectively "Defendants" or "Pacesetter") deny liability.

Plaintiffs are daily unskilled laborers and Defendants are personnel staffing or "temporary labor" companies which supply general laborers on a temporary/long-term basis to third-party corporate or governmental entity clients. (DE [152], ¶ 1).  Defendants operate from 35 different locations across Florida, Texas, and Georgia, and provide laborers to "hundreds, if not thousands" of different job sites. Plaintiffs claim Defendants operate in a similar manner in all locations and regularly failed to pay overtime and minimum wages.  Plaintiffs identify three separate policies or practices that led to the alleged failure to pay minimum and overtime wages: (1) under-reporting of hours worked; (2) failing to pay for waiting/travel time between Defendants' job hall to job locations; and (3) charging "on some days" for use of company-issued equipment (DE [152], ¶¶ 71-74).

The present motion seeks conditional certification of the following collectives:

> All hourly-paid "daily ticket" general labor employees who have worked for Pacesetter at any time within the three (3) years preceding April 30, 2020, up to the present [the "minimum wage collective"]; and

> All hourly-paid "daily ticket" general labor employees who have worked for Pacesetter at any time within the three (3) years preceding April 30, 2020, up to the present, who worked in excess of 40 hours in a workweek in one or more workweeks [the "overtime collective"].

Plaintiffs also seek approval of the form of notice to be provided to the members of the proposed collective class.  Defendants oppose conditional certification of the proposed class and, in the event of certification, oppose the form of the notice proposed by Plaintiffs.

II.   LEGAL STANDARD

The FLSA grants employees the right to bring a collective action for unpaid minimum wages or unpaid overtime compensation on behalf of similarly situated employees who opt in:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees *for and in behalf of himself or themselves and other employees similarly situated.* No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added).  The Eleventh Circuit uses a "suggested" two-tiered approach to collective actions.  In the first step – conditional certification – the court determines whether a court-approved notice of the action will be sent to employees. *Mickles on behalf of herself v. Country Club, Inc.,* 887 F.3d 1270, 1277 (11th Cir. 2018) (quoting *Genesis Healthcare Corp. v.  Symczyk,* 569 U.S. 66, 75 (2013).  This decision is generally made before discovery and is "usually based only on the pleadings and any affidavits which have been submitted."  *Cameron–Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1243 n. 2 (11th Cir. 2003).  At this stage, the plaintiff need only demonstrate the existence of a similarly situated class. *Pena v. Handy Wash, Inc.,* 28 F. Supp. 3d 1289, 1294–95 (S.D. Fla. 2014), as amended (July 3, 2014) (citations omitted). If the court finds the existence of a similarly situated class, it will conditionally certify the

class and putative class members are given notice and the opportunity to opt-in. *Mickles*, 887 F.3d at 1276.

The second tier – the factual determination stage – takes place after discovery is completed and the matter is ready for trial. *Id.* "At this stage, the court has more information and makes a factual determination of the similarly-situated question." *Id.* If the employees are not similarly situated, the court will decertify the class, dismiss the opt-in plaintiffs without prejudice, and proceed to trial with the original plaintiffs. *Id.*

III.   ANALYSIS

Plaintiffs' Motion addresses the first tier and seeks conditional certification of two classes, as well as approval and issuance of the notice to other employees.   To conditionally certify the action, the court must determine whether (1) there are additional potential plaintiffs who are likely to opt in and (2) the potential plaintiffs are substantially similar "with respect to their job requirements and with regard to their pay provisions." *Dybach v. Florida Dept. of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991).

A.   Potential Opt-In Employees.

Over 100 plaintiffs have filed Notices of Consent to join the case (DE [164] to [170]) and ten of those opt-in plaintiffs have submitted affidavits in support of the conditional certification (DE [151-3] to [151-13]). Each of the affidavits are from employees who work from Defendants' Fort Lauderdale location. The requirement of additional potential plaintiffs is clearly met in this case, at least for the Fort Lauderdale location. *Brooks v. A. Rainaldi Plumbing Inc.*, 2006 WL 3544737 (M.D. Fla. Dec. 8, 2006) (recognizing that even a single affidavit or consent to join by another individual meets the requirement).

Named Plaintiff Jeffery Mondy testified he worked in Texas and Pensacola, Florida prior to August 2019 (DE [151-3]).  Mondy's generalized statement that he knows of other daily ticket general laborers who would be interested in joining this lawsuit does not, however, support the conclusion that there are employees outside of Fort Lauderdale who would join the suit.  Without specifically identifying the "numbers, interest, and identifiable" employees from other locations who would *actually* join if this action were conditionally certified, Mondy's statements are speculative, vague, and conclusory, and are not entitled to weight.  *See Wooton v. Steelmaster Industries, Inc.*, 2019 WL 2423786, at *3 (M.D. Fla. Jun. 10, 2019) (vague and conclusory affidavits do not establish existence of additional employees who want to join the action).

Plaintiffs have submitted no affidavits from employees who worked from other locations. By contrast, Defendants have submitted 23 affidavits (DE [173-4] to [173-27]) from individuals who worked from Defendants' Fort Lauderdale, Miami, Atlanta, and Homestead locations and who deny having suffered any FLSA violations.  Based on the record before it, the Court concludes that Plaintiffs have failed to establish that there are other potential plaintiffs from locations outside of Fort Lauderdale who desire to opt in. *See Pendlebury v. Starbucks Coffee Co,* 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005) (affidavits from individuals who worked at seven locations in four different states supported certification of nationwide collective action).  If conditional certification is to be granted, it will be limited to Defendants' Fort Lauderdale, Florida, location.

B.  Similarly Situated Employees

The second issue in the two-tier analysis is whether the potential plaintiffs are "substantially similar" so as to justify conditional certification.  Defendants argue that

Plaintiffs have failed to meet the substantially similar requirement and ask the Court not to conditionally certify the class.  Plaintiffs respond that the standard at this stage is light, and that the factual determination of whether the opt-in plaintiffs are substantially similar should be made at the close of discovery.

"The FLSA does not define how similar the employees must be, nor has the Eleventh Circuit adopted a precise definition of 'similarly situated.'"  *Franco-Hernandez v. S. Valley Fruit & Vegetable, Inc.,* 2015 WL 500828, at *3 (M.D. Ga. Feb. 5, 2015) (citing *Morgan v. Family Dollar Stores,* 551 F.3d 1233, 1259 (11th Cir.2008)).  The "similarly situated" requirement "is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)."  *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1095 (11th Cir. 1996). "The cases in which conditional certification has been granted or upheld are clear that the 'similarly situated' standard at this stage is *lenient,* plaintiff's burden is not heavy, the evidence needed is minimal and the existence of some variations between potential claimants is *not* determinative of lack of similarity.*"  Camp v. The Progressive Corp.*, 2002 WL 31496661, at *4 (E.D. La. Nov. 8, 2002) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217-19 (11th Cir. 2001). "The plaintiff's burden is 'less lenient' at the second stage because '[a]t this point, the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity.'"  *Gelber v. Akal Sec., Inc.,* 2016 WL 8678059, at *3 (S.D. Fla. Oct. 5, 2016), *report and recommendation adopted,* 2016 WL 8678541 (S.D. Fla. Oct. 27, 2016).

Nonetheless, even under this lenient standard, plaintiffs still have "the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals

existed in the broad class that they proposed." *Hayes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983). "The plaintiffs may meet this burden, which is not heavy, by making . . . detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotations omitted).  In considering whether employees are "similarly situated, courts commonly consider five factors at the notice stage: (1) whether the plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claimed violations are similar.  *See, e.g.*, *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003).

The Declarations submitted by Plaintiffs (DE [151-3] to [151-13]) attest that the conditional class members are general unskilled laborers who are assigned by Defendants to various job sites each day.  At the start of the day, the laborers check in at Defendants' site, wait in the office until they are given their work assignments and "daily tickets," receive transportation options, and are given the necessary tools and equipment for the days' job.  At the end of the day, the laborers return to Defendants' site, submit their daily time sheets, clean and return the tools and equipment, and receive their paychecks.[1] The Declarants state they were required to take the transportation arranged or scheduled by Defendants and that they were not compensated for the time spent

---

[1] Some Declarants also worked at times on "weekly tickets" whereby they would report directly to their assigned job site in the morning and head directly home at the end of the day instead of going to Defendants' offices each day. *See, e.g.,* DE [151-4], n.1.

traveling to and from the daily job locations.  They also state that on "numerous occasions" they were charged "travel deductions" in excess of $3 per day for transportation, and that "sometimes" they were charged for the use of the tools and equipment, all of which reduced their wages below minimum wage.  In addition, the Declarants state that the time recorded on the daily tickets and their pay stubs often did not correlate to the time they actually worked and they were not paid for overtime.  More specifically, each Declarant stated that he/she typically worked nine to ten hours a day or between forty and sixty hours a week, but their daily pay stubs were only for seven or eight hours per day.

Except for minor differences – the Declarant's name, term of employment, and mode of transportation used – the Declarations are identical.[2]  These types of "carbon copy" affidavits are not looked upon with favor:

> Initially, the Court observes that the Plaintiffs' Declarations are carbon copies of each other.  Aside from the declarant's name, place and duration of employment, and a slight variation in paragraph 7, the Declarations are completely identical.  This Court, like other courts, "strongly disapproves" of the use of such boilerplate and "cookie cutter" Declarations in this context.  Such disapproval is particularly pronounced in this case because by submitting identical Declarations for [ten] different individuals . . . the Plaintiffs have elected to cast their allegations in the most generalized terms, entirely devoid of particularity.  Thus, while the Plaintiffs may be correct that their Declarations present a "consistent story," it is a story without detail and, thus, without [much] probative value.

*Holmes v. Quest Diagnostics, Inc.*, 2012 WL 12876965, at *2 (S.D. Fla. Jun. 14, 2012).

For instance, the Declarants' factual statements are couched as "usually," or "often," or "typical."  The Declarations offer no specific examples of instances of being

---

[2] The estimated number of hours worked in a week varied minimally in the affidavits, and are all found in ¶ 25:  "at least 45 to 50 hours a week" (DE [151-12]); "at least 45-60 hours a week" (DE [151-9]); "at least 45-50 hour a week" (DE [151-5])

charged for work equipment or of being charged more than $3.00 for transportation, other than to say "often" or "on numerous occasions.   Likewise, the Declarants give no indication of where, when, or how often they worked overtime hours but did not receive overtime pay.

Defendants responded with numerous Declarations of executives and daily laborers (DE [173-1] to [173-27]).   Marc Plotkin, the Executive Vice President of Pacesetter Personnel Services, explains that all daily ticket workers are paid overtime in the form of two checks.   The first is a check for daily "straight hours," which is the hourly rate for time worked.   The following week Pacesetter runs a report on overtime and issues a second set of checks for the "half time" payments (DE [173-1], ¶ 5).   The daily ticket workers receive the second check the following week.   Plaintiffs' Declarations are silent on receiving "half time" payments and they do not engage with that explanation in their reply brief.

Amarilys Bonilla is the Regional Vice President of Pacesetter Personnel Services for South and Central Florida.   She oversees offices in Homestead, Miami, Fort Lauderdale, West Palm Beach, Stuart, Orlando, and Kissimmee.   Bonilla explained that transportation for workers is voluntary at all locations (DE [173-2] ¶ 7).   Ms. Bonilla stated that all daily ticket workers are free to take their own transportation to the job site.   Vans are available in Miami, Fort Lauderdale, West Palm Beach, and Orlando for those who need rides.   Other locations offer bus passes, public transportation, and carpools for workers who do not have their own means of transportation.   By contrast, the opt-in Plaintiffs' Declarations state that they were "often made to wait an hour or more at

Pacesetter's offices each morning before being transported to the job site" and that they had no choice but to take the transportation arranged by Defendants (DE [151-6], ¶ 13).

Defendants also submitted Declarations from numerous daily ticket workers who worked from various Florida locations (DE [173-4] to [173-27]).  These workers state that they completed an Employment Contract and Transportation Agreement at their first visit to Defendants' offices.  Although neither party has submitted a copy of the Employment Contract and Transportation Agreement, every Declaration submitted by Defendants stated the daily workers were free to provide their own transportation, take a bus or Uber, the Pacesetter van or ride with a co-worker.  *Id.* ¶ 3.  These workers state that the charge for taking the van or riding with a co-worker is $1.50 each way and they have never been charged more than $3.00 for daily transportation.   Although some of the workers state they have not worked overtime, those who have testify that they are paid time and a half for any hours worked over forty in a week.  *See* (DE [173-16], ¶ 11).  It appears from review of both parties' Declarations that employees are not paid for travel or shop time; rather, the daily ticket workers' hours are based upon the time spent working at the assigned job sites.

C. Conditional Certification

"The legal foundation for approving notice to potential § 216(b) claimants is the benefit to the judicial system obtained through the "efficient resolution in one proceeding of common issues of law and fact arising from the alleged discriminatory activity." *Henderson v. Holiday CVS, LLC*, 2010 WL 1854111, at *2 (S.D. Fla. May 11, 2010) (quoting *LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170, 172 (1989) (holding that notice avoids "duplicative suits"). "Courts require, therefore, that plaintiffs demonstrate there is

a reasonable basis to conclude that they and other members of the proposed class have been treated in a similarly illegal manner." *Id.* (citing *Hipp*, 252 F.3d at 1218 (plaintiffs' proof must support the existence of "class-wide discrimination").   A plaintiff can meet this burden of proof by demonstrating a common policy, plan or scheme that creates a pattern of alleged violations, or in the absence of policy or plan, she must show some degree of commonality between her own claims and the claims of her proposed class, "beyond the mere facts of job duties and pay provisions[.]" *Horne v. United Servs. Auto. Ass'n,* 279 F.Supp.2d 1241, 1234 (M.D.Ala.2003); *Henderson v. Holiday CVS, LLC*, 2010 WL 1854111, at *2 (S.D. Fla. May 11, 2010).

Defendants argue that the Declarations submitted by them refute the statements in Plaintiffs' Declarations and, therefore, Plaintiffs have failed to establish that the opt-in Plaintiffs are similarly situated. "In order to adopt that argument, the Court would have to indulge in a fact-finding determination on the merits, which is improper at this stage of the litigation." *Henderson,* 2010 WL 1854111 at *3; *Grayson*, 79 F.3d at 1099 n. 17 ("At this first stage, however, the court does not make credibility determinations or resolve contradictory evidence presented by the parties.").   The affidavits on file illustrate a common scenario that the Plaintiffs who worked from Defendants' Fort Lauderdale, Florida office were required to take employer-supplied transportation and were not paid for waiting time.  Whether such a scheme existed may or may not be established through further discovery.  But at this stage in the proceedings, Plaintiffs have established grounds for conditional certification of a class of employees who worked at the Fort Lauderdale, Florida office.

The Court finds that Plaintiffs have failed to establish a basis for conditional certification for any areas outside of Fort Lauderdale. The affidavits submitted were from Fort Lauderdale employees; no affidavits with any specificity were submitted by employees who work in other locations and Defendants have established by affidavit that the same policy alleged by the Fort Lauderdale employees did not exist in other offices. Plaintiffs have not met their burden of establishing that employees at other locations were similarly situated. Accordingly, conditional certification will be limited to the Fort Lauderdale location. *See Martinez,* 2016 WL 455394, at *6 (S.D. Fla. Feb. 5, 2016) (conditional certification limited to one location where plaintiffs failed to establish employees in other locations were similarly situated).

D. Notice

Plaintiffs have submitted a proposed notice to be issued to the collective class. Defendants object to the form of the proposed notice and disagree with Plaintiffs' suggested notice period, modes of delivery, and consent form. The Court has considered the parties' arguments and finds as follows: (1) the opt-in period shall be 60 days; (2) notice should be mailed to putative class members' last known address; (3) no reminder notice will be sent; and (4) the parties shall confer on the form of the notice.

IV. CONCLUSION

Fort the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Conditional Certification (DE [151]) is **GRANTED IN PART AND DENIED IN PART.**

2. The Court will allow notice and opportunity to opt-in to the following collective classes:

**All hourly-paid "daily ticket" general labor employees who have worked for Pacesetter's Fort Lauderdale, Florida, location at any time within the three (3) year period from consenting to be included in this collective action.**

**All hourly-paid "daily ticket" general labor employees who worked in excess of forty hours in a workweek in one or more workweeks at Pacesetter's Fort Lauderdale, Florida, location at any time within the three (3) year period from consenting to be included in this collective action.**

3. The parties shall confer and make every attempt to reach a consensus on the language of the notice prior to requesting Court intervention.  Plaintiff shall file a motion for approval of the proposed notice within fourteen days of the date of this Order.  If the parties have been unable to agree on the form and content of the proposed notice, Defendants shall file a response to Plaintiffs' proposed notice within seven days of service.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 19th day of March 2021.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF