UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60192-CIV-SINGHAL/VALLE

SHANE VILLARINO, LAURA J.
JOHNSON, JEFFERY MONDY,
and JEROME GUNN, on behalf of
themselves and all others similarly situated,

    Plaintiffs,

v.

PACESETTER PERSONNEL SERVICE, INC.,
a Texas profit corporation; PACESETTER
PERSONNEL SERVICE OF FLORIDA, INC.,
a Florida profit corporation, and FLORIDA
STAFFING SERVICE, INC., a Florida
profit corporation,

    Defendants.
_____/

## ORDER

**THIS CAUSE** has come before the Court upon the Plaintiffs' Renewed Expedited Motion for Conditional Certification of FLSA Collective Action and to Permit Notice (DE [271]). The Court previously granted conditional class certification but only for employees who worked from Defendants' Fort Lauderdale, Florida location. (DE [256]). The present motion again seeks conditional class certification of a nationwide class of employees. For the reasons set forth below, the motion is denied.

This is an action brought by four named Plaintiffs for unpaid overtime and minimum wages under the Fair Labor Standards Act ("FLSA") and Florida's Minimum Wage Act ("FMWA"). Plaintiffs also seek damages for violations of the Florida Labor Pool Act ("FLPA"). In addition to the four named Plaintiffs, approximately 154 "opt-in Plaintiffs"

have submitted Notices of Consent to Join the action as parties (DE [271-11]). The allegations of the Complaint are set forth in detail in the Court's prior Order and need not be repeated here.

The Court previously denied conditional certification of a nationwide class in part because Plaintiffs did not meet their burden of establishing that employees at other locations were similarly situated. Additionally, the Court found that Plaintiffs failed to engage Defendants' proof that the same policy alleged by the Fort Lauderdale employees did not exist in other offices. Plaintiffs correctly note that the parameters of a collective action may be reexamined, expanded, or re-defined as discovery progresses.[1]

Plaintiffs have now submitted declarations of eight other employees who variously worked in Miami, West Palm Beach, Tampa, Orlando, Daytona Beach, Georgia, and Texas. These declarations are "cookie-cutter" forms that differ only in the declarants' names, locations worked, transportation utilized, and purported knowledge of other potential plaintiffs. Significantly, none of these declarations cite any specific instances of suffering unpaid overtime or improper equipment charges. The declarations are conclusory, without reasonable basis and, as such, entitled to little or no weight.[2] *See Wooton v. Steelmaster Industries, Inc.*, 2019 WL 2423786, at *3 (M.D. Fla. Jun. 10, 2019)

---

[1] Although Plaintiffs may renew a motion for conditional class certification as discovery progresses, the Court is not aware of any rule that permits Plaintiffs to make multiple, serial motions for conditional class certification. The Court's Order on this motion is not to be interpreted as a blueprint for filing a third motion on this issue.

[2] For example, each declaration contained the following statement: "If we failed for whatever reason to take the employer-required transportation back to Pacesetter's offices at the end of our workday, we were at risk of non-payment for that day and subject to fines by Pacesetter for failing to return the tools/equipment/safety gear they had issued us that morning. This was a practice I witnessed as common to all three labor halls." (DE [271-1] to [271-8]). No declarant testified that he/she was ever charged as described. Another statement about Pacesetter's management is entirely conclusory: "Further, all of the Defendants have common corporate management and operations, and coordinated with each other when extra daily ticket workers were needed in different geographic areas or for special events." *Id.*

(vague and conclusory affidavits do not establish existence of additional employees who want to join the action); *Holmes v. Quest Diagnostics, Inc.*, 2012 WL 12876965, at *2 (S.D. Fla. Jun. 14, 2012) ("This Court, like other courts, "strongly disapproves" of the use of such boilerplate and "cookie cutter" Declarations in this context.  Such disapproval is particularly pronounced in this case because by submitting identical Declarations for [ten] different individuals . . . the Plaintiffs have elected to cast their allegations in the most generalized terms, entirely devoid of particularity.").

To conditionally certify a collective FLSA action, the court must determine whether (1) there are additional potential plaintiffs who are likely to opt in and (2) the potential plaintiffs are substantially similar "with respect to their job requirements and with regard to their pay provisions." *Dybach v. Florida Dept. of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991). In considering whether employees are "similarly situated, courts commonly consider five factors at the notice stage: (1) whether the plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claimed violations are similar.  *See, e.g.*, *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003).

Even though the standard for establishing that employees are similarly situated at this stage is a lenient one, plaintiffs still have "the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals existed in the broad class that they proposed." *Hayes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983).  "The

plaintiffs may meet this burden, which is not heavy, by making . . . detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotations omitted).

Even assuming Plaintiffs have identified employees from other locations who would likely join this action and that those employees had similar jobs, Plaintiffs have not met their burden of establishing that those employees are similarly situated. Particularly, the fourth and fifth factors -- whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and the degree to which the actions constituting the claimed violations are similar – weigh against certifying a nationwide class. Plaintiffs have not produced evidence of a centralized, common policy or practice that engages Defendants' affidavits to the contrary.[3]

Plaintiffs' declarations assert (without specific detail) that Defendants regularly reduced and paid for the hours actually worked: "Defendants systematically failed to accurately record our daily start times, our daily stop times, the number of hours we worked each day, and the total hours worked each week, throughout my employment." (DE [271-4], ¶ 26). "Irrespective of the hours we actually worked each day, at the end of each workday, the check and stub issued to me and the other general laborers usually indicated a perfectly round number such as 7.0 or 8.0 hours. This indication of hours was not accurate and greatly understated our actual hours worked each day." (*Id.,* ¶ 24).

---

[3] Plaintiffs' citation to a Department of Labor investigation into Pacesetter's Central Florida offices does not support their efforts; the audit found no FLSA violations. (DE [271-12], p. 67).

Defendants' declarations explain in great detail the method by which hours are recorded and overtime is paid:

> At each job site, it is the job site supervisor who signs off on the daily hours worked. The job site supervisor is an employee of Pacesetter's customer, not of Pacesetter. Pacesetter has no control over that individual. When daily ticket workers bring their ticket back to Pacesetter, prior to payment they must confirm that the hours reflected on the ticket are correct and attest that "I have been paid in full" and that they haven't been injured. If an employee identifies an error, we'll look at it, and we'll call the supervisor and get it sorted out. It has happened that the supervisor writes down the wrong number of hours, and the supervisor will say they made a mistake and we'll fix it. If the supervisor won't admit a mistake, we'll just pay the worker anyway and Pacesetter will eat the cost difference. (DE [290-7], ¶¶ 18-19).
>
> Daily ticket workers get paid on a daily basis for the "straight time" worked. On Tuesday and Wednesday of the following week, we calculate overtime for the previous week. This allows extra time for workers to bring in their tickets if they didn't bring in their tickets on the same day they worked. No matter when the worker shows up even if it's weeks afterward, we have their check waiting for them. … There is sometime confusion among the daily ticket workers. They think what they're getting paid on the following Monday is the time and a half, but we already paid them for their time so we only owe them for half time. This happens often, and I have to explain this 2-3 times per week. (DE 290-6] ¶¶ 12,13).

The declarations of other general managers and the employees confirm that process:

> My time is tracked on the Daily Time Ticket. The Supervisor at the job site records the hours I work and rounds up to the next quarter hour. At the end of the day, the Supervisor gives me the Daily Time Ticket to take to Pacesetter for payment. Before I leave the job site, I always confirm my hours are correct. If they put down the wrong number, I'll inform them. I've never had them put down the wrong number. If they are ever wrong, I just speak to dispatch back at the Pacesetter office. … I have always been paid time and a half for any hours I worked over forty in a week. (DE [290-7], ¶ 9, 11).

5

> At the end of the day, the Supervisor writes my hours on the ticket. I check to make sure those hours are correct. I don't recall having any issues with my hours. … I have worked overtime many times. I have always been paid time and a half for any hours I worked over forty in a week. I get a check for normal hours and a second check for overtime. (DE [290-18], ¶¶ 9, 12).

> "I have always been paid time and a half for any hours I worked over forty in a week. I didn't understand it at first, but I got paid. … When I arrive at the job site, I report to the Supervisor on the Daily Time Ticket. I may work anywhere from four to ten hours on a particular day. I have no regular schedule or shift; each day is different. … Before I leave the job site, I always confirm that the hours are correct. They've never been wrong. I always count my hours and make sure. They're going to pay me what I work for." (DE [290-13], ¶¶ 8, 10, 12).

Defendants have also introduced the Transportation Agreement (DE [290-12]) signed by employees that specifies employees may provide their own transportation (if validly licensed), take public transportation, or utilize Pacesetters' vans or carpool for a charge not to exceed $3.00 roundtrip. The declarations from Defendants' regional managers confirms that all transportation is voluntary. (DE [6], [7], and [8]). The 16 declarations submitted by Defendants from Pacesetter workers[4] confirm the transportation policy and specify how each employee utilized it. The general managers affirm that there is no policy requiring rental of equipment and also state that each site has an "equipment guy" who is responsible for cleaning and storing returned equipment. The employee declarations confirm this as well. (DE [290]). These employees also explain that they were never charged a rental fee for equipment provided, were not required to clean equipment they

---

[4] The 16 employee-declarations attached to Defendants' Response (DE [290]) are from Pacesetter employees who worked in Irving, Texas, Houston, Kissimmee, Fort Myers, Palm Beach, Daytona, Tampa, and Pensacola.

used and that they were not required to return to the Pacesetter office at the end of the day.

By contrast, Plaintiffs' declarations present no evidence of a nationwide (or even state-wide) policy that governs, or a central decision maker whose decisions led to their claims. The Plaintiffs' declarations state that use of Pacesetter transportation is mandatory but do not identify any policy or decision maker responsible for that policy. The declarations state that workers were required to return and clean the equipment each day but fail to identify any policy or decision maker responsible for that policy. Plaintiffs' declarations describe situations that differ dramatically from Defendants' expressed policies and procedures. Further, Defendants have established that each location is managed by different people.

The employee declarations submitted by Plaintiffs and Defendants contradict each other in their descriptions of how transportation, equipment, and payroll are handled. Although the Court cannot resolve the competing declarations at this stage, the factual differences in the declarations prevent the Court from concluding that there is a common scheme or policy at each of Defendants' locations that would support conditional certification of a nationwide class. "Because of the class size and lack of cohesion among the claims, this class and resulting litigation could easily become unmanageable. Therefore, because of the failure to identify a nationwide policy or commonality among the proposed class members, the Court concludes Plaintiffs have failed to show Plaintiffs and potential class members are similarly situated." *Beecher v. Steak N Shake Operations, Inc.,* 904 F. Supp. 2d 1289, 1299 (N.D. Ga. 2012)

7

The cases cited by Plaintiffs as support for certifying a nationwide class do not compel a different conclusion. Each of those cases involved employees who alleged they were improperly classified as exempt from FLSA coverage. In each case, the corporate parent classified a job (usually a retail manager or assistant manager) as exempt and the employees' job descriptions and job duties were identical regardless of location. *See McGuire v. Intelident Sols., Inc.,* 385 F. Supp. 3d 1261 (M.D. Fla. 2019); *Palma v. MetroPCS Wireless, Inc.,* 2013 WL 6597079, at *3 (M.D. Fla. Dec. 16, 2013); *Bradford v. CVS Pharmacy, Inc.,* 2013 WL 425060 (N.D. Ga. Feb. 4, 2013)[5]; *Reyes v. AT&T Corp.,* 801 F. Supp. 2d 1350, 1353 (S.D. Fla. 2011); *Pendlebury v. Starbucks Coffee Co.,* 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005). In each case, the corporate policy that led to the alleged FLSA violations came from a central decision maker and applied across the board to employees holding those positions. The disputes, therefore, were suitable for resolution by a nationwide collective action.

By contrast, in this case, the conflicting declarations and absence of a common scheme or policy would necessarily involve resolutions of tens of thousands[6] of individual claims. This would not serve the interests of judicial economy that are the underlying rationale for a collective action. *Mancuso v. Fla. Metro. Univ., Inc.,* 2010 WL 3702511, at *3 (S.D. Fla. Sept. 16, 2010); *Robinson v. Dolgencorp, Inc.,* 2006 WL 3360944, at *6 (M.D. Fla. Nov. 13, 2006) ("existence of a common policy or plan is relevant to the Court's exercise of discretion in granting conditional certification because the underlying rationale for granting a collective action is to preserve judicial economy"). Accordingly, it is hereby

---

[5] The conditional class was eventually decertified. *Bradford v. CVS Pharmacy, Inc.,* 308 F.R.D. 696 (N.D. Ga. 2015).
[6] Defendants estimate that a nationwide collective class would consist of between 50,000 and 75,000 persons. (DE [290]).

**ORDERED AND ADJUDGED** that Plaintiffs' Renewed Expedited Motion for Conditional Class Certification of FLSA Collective Action and to Permit Notice (DE [271]) is **DENIED.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 22nd day of September 2021.

                                                     RAAG SINGHAL
                                                     UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF