**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 0:20-CIV-60192-AHS**

SHANE VILLARINO, *et al*.,

      Plaintiffs,

v.

PACESETTER  PERSONNEL  SERVICE,
INC., *et al*.,

      Defendants.

_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR**
**CLASS CERTIFICATION [D.E. 520]**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendants Pacesetter Personnel Service, Inc., Pacesetter Personnel Service of Florida, Inc., Florida Staffing Service, Inc., and Tampa Service Company, Inc., (collectively, "Defendants"), hereby file their Response in Opposition to Plaintiffs' Motion for Class Certification (the "Motion") [D.E. 520] and state as follows:

**INTRODUCTION**

At this late stage of the litigation—twenty-four months after the Complaint was filed—Plaintiffs seek an untimely certification of a state-wide Rule 23 class with three sub-classes. Plaintiffs' Motion should be denied for untimeliness alone.

Notwithstanding its tardiness, Plaintiffs' Motion also fails on the merits. Plaintiffs similarly sought conditional certification of a nationwide collective based on identical facts and were denied under the <u>lower</u> standard applied to collective actions. [D.E. 499.]; *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1214, 1217 (11th Cir. 2001). Further, threshold issues require dismissal of two of the three sub-classes: (1) the alleged "class representatives" lack standing to bring claims that they were charged more than $3.00 per day for transportation; and (2) the two sub-classes

alleging impermissible deductions for transportation and equipment are so-called "fail safe" classes whose class definition requires a finding on the merits. In addition to these threshold issues, Plaintiffs—though they are required by Rule 23 to meet <u>every one</u> of the four Rule 23 requirements—cannot establish typicality, commonality, or adequacy; the only requirement Plaintiffs can reliably meet is the low bar of numerosity. Nor can Plaintiffs meet either of the Rule 23(b)(3) requirements, both of which must be met to achieve class certification. For all of these reasons, class certification should be denied.

## **PROCEDURAL BACKGROUND**

Plaintiffs filed their Complaint on January 20, 2020, alleging the following violations of the Florida Minimum Wage Act ("FMWA") and the Florida Labor Pool Act ("FLPA"):

- Charging workers daily rental fees for safety equipment such as work boots, goggles, and gloves;
- Charging workers more than Defendants' actual costs for various items, including, but not limited to, reflective vests, shirts, hardhats, and the replacement cost of tools;
- Charging workers more than $3.00 per day for transportation to/from a worksite(s);
- Failing to provide workers with restroom facilities at a labor hall;
- Failing to provide workers with drinking water at a labor hall.

[D.E. 1 at § 162.]

Three months later, on April 30, 2020, Plaintiffs filed a Motion for Conditional Certification of FLSA Collection Action and to Permit Notice, seeking a collective action of all Pacesetter daily ticket workers in Georgia, Texas, and Florida. [D.E. 151.]  Upon denial [D.E. 256], Plaintiffs filed a Renewed Motion for Conditional Certification [D.E. 271], which was also denied [D.E. 499].[1] Ultimately, this Court granted a limited collective action as to Fort Lauderdale, Florida, only. [D.E. 256.]

---

[1] Two weeks after the denial of the Renewed Motion for Conditional Certification, Plaintiffs sought an end-run around this Court's decision by filing a new case in Miami, alleging identical causes of action based on identical facts. Complaint, *Joseph et. al. v. Pacesetter Personnel Service,*

Twenty-four months after the Complaint was filed, on January 4, 2022, Plaintiffs filed their Motion for Class Certification, seeking to certify a Rule 23 class consisting of all Pacesetter daily ticket workers in the state of Florida during the relevant time period. [D.E. 520.] Plaintiffs defined their proposed class as:

> All employees who worked for Defendants as hourly "unskilled" or "general" laborers ("daily ticket laborers") and were employed by Defendants on "daily tickets" in Florida from January 29, 2015, to the present. This includes (1) those employees who were charged in excess of $3.00 per day for transportation (2) and/or charged for safety equipment, clothing, accessories, or any other items required by the nature of the work, on or after January 29, 2016, and (3) includes those employees who worked at Defendants' Fort Lauderdale, Florida location, FL 33334 from January 29, 2016 to the location's closure.

[D.E. 520 at 2] (numbers added). The Proposed Class consists of tens of thousands of daily ticket workers in the State of Florida.[2] The Proposed Class consists of daily ticket workers who were not paid minimum wage under the FMWA. *Id*. at 1. The three sub-classes consist of daily ticket workers who received deductions in violation of the FLPA or were denied water or bathroom access in violation of the FLPA. *Id*.

Plaintiffs seek the appointment of Laura Johnson ("L. Johnson"), Jeffrey Mondy ("J. Mondy"), Jerome Gunn ("J. Gunn") and Shane Villarino ("S. Villarino") as class representatives ("Class Representatives"). [D.E. 520 at 2.]

## FACTUAL BACKGROUND

For the sake of brevity, Defendants refer to, and reincorporate herein, the full factual background set forth in their Response to Plaintiffs' Motion for Conditional Certification [D.E. 173] and their Response to Plaintiffs' Renewed Motion for Conditional Certification [D.E. 290.]

---

*Inc., et. al.,* Case No. 1:21-cv-23529 (filed S. D. Fla. Oct. 7, 2021). In violation of this Court's rules, Plaintiffs did not notify this Court of the pending case.

[2] Due to the size of the proposed class, as well as the complexity of any Rule 23 analysis, Defendants have requested leave to extend the page limits for this Response to thirty (30) pages. [D.E. 535.]

As part of those Responses, Defendants provided supporting declarations from forty putative plaintiffs who worked at Pacesetter's Fort Lauderdale, Homestead, Pensacola, Tampa, Kissimmee, Daytona, Palm Beach, Fort Myers and Miami locations, plus declarations from Marc Plotkin, Executive Vice President of Pacesetter Personnel Services, Amarylis Bonilla, the Regional Vice President of South and Central Florida, and Gracie Hernandez, the Human Resources Director. [D.E. 173-1, D.E. 173-2, D.E. 173-3 and D.E 173 at 4 and D.E. 290-1 to 290-16.] In addition, Plaintiffs have deposed eight putative plaintiffs, and have noticed an additional nine depositions at which putative plaintiffs did not appear.

These declarations confirm and further support all the factual background provided in Defendants' first Response,[3] and uniformly rebut Plaintiffs' claims that daily ticket workers are underpaid, forced to take mandatory transportation, required to wait, overcharged for transportation, charged for equipment rental, or required to return to the Pacesetter labor hall at the end of the day.

Plaintiffs once again attach eight almost identical declarations, altered only to include the declarant's name and location. [D.E. 521-11 to 521-17.] All declarations have extensive exhibits, but those exhibits do not appear to be tailored to the declarant (for example, Cassandra Burgess' 588 pages of Ticket reports [D.E. 521-11] do not include any for Cassandra Burgess).

**1. Alleged Failure to Pay for Waiting and Travel Time.**

Plaintiffs allege that Defendants failed to pay for waiting and travel time between Defendants' office to job sites. [D.E. 520 at 4.] Plaintiffs neglect to mention that waiting and travel time is voluntary and varies highly among potential class members. Workers arrive to the

---

[3] Defendants will not recite the same declarations cited in Defendants' first Response but note here that *all* of Defendants' previous declarations support the same findings as the deposition transcripts attached to this Response.

Pacesetter offices when they choose to and at a variety of times.[4] Waiting time varies greatly and may be spent on personal pursuits.[5] There is no mandatory "travel time" because daily ticket workers are not required to wait or to take Pacesetter-provided transportation.[6]

---

[4] [D.E. 290-18] (D. Heath Decl. ¶ 4) (stating that he arrives "anywhere between 4 and 5 a.m."); [D.E. 290-16] (Klose Decl. ¶ 4) ("I try to arrive at the office by 7:30 a.m."); [D.E. 290-14] (G. Hamilton Decl. ¶ 4) ("I generally report to the Daytona office around 5:15 a.m."); [D.E. 290-13] (Y. Nunez Decl. ¶ 4) (stating that she generally reports to the labor hall around 6:15 a.m.); [D.E. 290-11] (M. Bonilla Decl. ¶ 4) (reporting to the office between 5:30 and 6:00); [D.E. 290-10] (A. Aguirre Decl. ¶ 4) (reporting to the office at 5 a.m.); [D.E. 290-5] (C. Davila Decl. ¶ 4) (arriving at the labor hall around 6:30 a.m.); L. Johnson Dep. Tr. at 44:19-45:5 (stating that she generally arrives at the Pacesetter office at 4:30 a.m.) (attached as Exhibit 1); M. Johnson Dep. Tr.at 44: 15 ("I'll be there between 4:00 o'clock, 4:00 and 5:30") (attached as Exhibit 2); S. Villarino Dep. Tr. at 85:1-5 ("I will get there normally at 6...no later than 6:15") (attached as Exhibit 3);  J. Gunn Dep. Tr. at 51:1-12 (he arrived at the office at varying times including 4:30, 5:00, 5:30, and 6:00) (attached as Exhibit 4); K. Williams Dep. Tr. at 47:7-16 (he normally arrived at the office between 5:00 and 5:45) (attached as Exhibit 5).

[5] [D.E. 290-11] (M. Bonilla Decl. ¶ 5) ("I never waited a long time because I called ahead of time. I would say the most I waited was ten (10) minutes."); [D.E. 290-10] (A. Aguirre Decl. ¶ 4) (waiting "no more than five (5) minutes" to receive a daily time ticket); [D.E. 290-4] (M. Reid Decl. ¶ 5) ("I then sit there and watch the news or go buy coffee while I wait to see if I'm offered a job assignment for that day."); [D.E. 290-12] (E. Propnet Decl. ¶ 5) ("I like to stay in the office, but other people chill outside."); [D.E. 290-13] (Y. Nunez Decl. ¶ 5) ("I then sit there and watch the news or go buy coffee while I wait to see if I'm offered a job assignment for that day."); [D.E. 290-14] (G. Hamilton Decl. ¶ 4) ("I then sit in the waiting room, sleep, go outside for a cigarette, or go to the J Food store for coffee or food while I wait to see if I'm offered an assignment for the day"); Ex. 2, M. Johnson Dep. Tr. at 48:22-49:1 (stating he plays on his phone and reads the news on his phone, while he waits); Ex. 5, K. Williams Dep. Tr. at 51:4-23 (stating while he waited, he would watch TV, drink coffee, talk, go outside to smoke a cigarette, nap, and go to the convenience store nearby to get food); Ex. 1, L. Johnson Dep. Tr. at 50:1-16 (stating while she waits, she watches TV, looks at her cell phone, sometimes chats with coworkers, and will eat a snack if she brings one); Ex. 3, S. Villarino Dep. Tr. at 89: 8-14 (Q. Do you ever have a snack, grab a cup of coffee or eat something?" A. "Yes...Occasionally, I might have my little breakfast or something, waiting on the ticket." Q. "And do you bring breakfast with you to the office?" A. "I always do...").

[6] Plaintiffs attach samples of the "Transportation Agreement" signed by every daily ticket worker prior to beginning work with Pacesetter [D.E. 520 at 4, citing to 520-7] but fail to note that the Transportation Agreement only provides transportations "options," and that it is the daily ticket worker's responsibility to arrive on time at the job site. [D.E. 520-7 at 3.]

Further, it is Pacesetter policy[7] that workers are not required to return to the Pacesetter labor hall at the end of the day.[8] Workers return to the office the same day if they wish to be paid that day[9], or if they wish to return the bulky equipment rather than keep it overnight.[10] Though most daily ticket workers wish to be paid immediately, some choose to return the following day.[11] Because daily ticket workers are not required, for any reason, to return to the Pacesetter labor hall at the end of the night, the alleged "waiting and transportation time" is voluntary and highly variable among putative class members.

---

[7] [D.E. 290-7] (J. Cairel Decl. at ¶ 11); [D.E. 290-6] (D. Quatrino Decl. at ¶10); [D.E. 290-8] (S. Parlante Decl. at ¶ 9); [D.E. 173-2] (A. Bonilla Decl. at ¶ 11).

[8] Ex. 3, S. Villarino Dep. Tr. at 52:15-18 ("There are some people that go back, like, the next day, and there are some people, don't go back two or three in a row. I guess it depends on how they feel that day."); (A. Camilo Dep. Tr. 73:7-22) ("Like if they had their tickets and let's say, they were working late or they wanted to go straight home at the end of the day, they could bring it the next day") (attached as Exhibit 6); [D.E. 290-16] (J. Klose Decl. Ex. 16, ¶ 10) ("I don't have to return to the Pacesetter office at the end of day. I make a decision based on convenience. If I am close to home, I go home. If I am close to the office, I go to the office."); [D.E. 290-4] (M. Reid Decl. ¶ 11) ("I normally choose to go the same day so I can get my check that day."); [D.E. 290-5] (C. Davila Decl. ¶ 10) ("Fifty percent of the time, I return to the Kissimmee office at the end of the day…I don't have to return to the Pacesetter branch at the end of the day.").

[9] *See e.g.,* Ex. 3, S. Villarino Dep. Tr. 50:15-19 ("I was just saying, if you don't go back at the end of that day, you don't get paid. You get paid whatever day you bring back the ticket, whether it be the next day, the following day"); Ex. 5, K. Williams Dep. Tr. at 60:10-11 ("Because I wanted to turn my stuff in and I want to get paid."); Ex. 6, A. Camilo Dep. Tr. at 73:7-22 (agreeing that most workers want to get paid the same day).

[10] Ex. 2, M. Johnson Dep. Tr. at 70:13-19 ("Q. Okay. Could you turn in the tool the next day?" A. "I mean, you can but who wants to lie around tools all day." Q. "So it is inconvenient–" A. "Inconvenient for us as an individual to take back the tools."); [D.E. 290-16] (J. Klose Decl. ¶ 11) ("When I bring in my ticket, I return my supplies."); H. Motley Dep. at 39: 8-19 (Q. "Has there ever been a time that you did not go back to the office that night?" A. "Yes…[s]o then you're stuck with it at the office with your tool and shovel." …Q. "But the next day, you weren't docked any pay or anything, right? Right? They would pay you?" A. "No. Whatever was on the ticket, that's what you receive.") (attached as Exhibit 7).

[11] Ex. 2, M. Johnson Dep. Tr. at 70:21-71:12 (stating that, on occasion, he did not return to the Pacesetter office at the end of the day, but faced no penalty for turning in tools the next day and was paid as usual); Ex. 4, J. Gunn Dep. Tr. at 81:10-24 (same).

### 2. Alleged failure to provide water and bathroom facilities at the Commercial Boulevard location.

Pacesetter policy mandates that both water and restroom facilities be available at every labor hall.[12] Water was provided at the Commercial Boulevard location as per policy.[13] A bathroom was provided at the Commercial Boulevard location as per policy.[14]

### 3. Alleged deductions of more than $3.00 per day for transportation.

There is no policy permitting transportation deductions of more than $3.00 per day.[15] Though charges of more than $3.00 occasionally appear on the daily time tickets, these charges are not for a single day's transportation, but rather for multiple days' transportation or bus passes for personal use, which some daily ticket workers elect to purchase.[16] Additionally, though Plaintiffs allege that all class members "have taken employer-arranged transportation," [D.E. 520 at 4] taking employer-arranged transportation is voluntary and not all workers take Pacesetter-coordinated transportation.[17]

---

[12] A. Bonilla Dep. Tr. at 57:15-17 (water is provided at all locations and always has been) (attached as Exhibit 8); M. Plotkin Decl. at ¶ 5 (attached as Exhibit 9).

[13] Ex. 8, A. Bonilla Dep. Tr. at 57:15-17.

[14] Ex. 6, Camilo Dep. Tr. at 56:101-8 (stating that there was a functional bathroom available at the Commercial Boulevard location); Ex. 9, M. Plotkin Decl. at 5 (stating that providing bathrooms was policy at all locations).

[15] Ex. 9 (M. Plotkin Decl. at ¶ 6); Ex. 5, K. Williams Dep. at 34:16-22 (Q. "When you took the Pacesetter van or rode with a coworker or took the bus or an Uber, were you ever charged more than $3 for that?... A. "No, no, no no, it was always $3. Yeah, it was always $3."); Ex. 3, S. Villarino Dep. Tr. at 43:16-19 (Q. "Were you ever charged more than $3 for transportation in a single day?" A. "Not that I can recall…not that I recall right now—I wasn't."); Ex. 1, L. Johnson Dep. Tr. at 31:10-12 (Q. "And were you ever charged more than $3 for transportation in a single day?" A. "No.").

[16] H. Smith Dep. Tr. at 48:13-49:11 (attached as Exhibit 10); Ex. 6, Camilo Dep. Tr. 27:5-28:10; D.E. 521-4 at 30 (comments on ticket report noting "3x bus passes"); [D.E. 173-14] (J. Stanley Decl. at ¶ 3) ("They charge me for the bus pass, only $3, but it's normally $5, so that's below the rate of the bus line, which is really nice in my book.").

[17] [D.E. 290-11] (M. Bonilla Decl. ¶ 7) ("The transportation options are voluntary, and all daily ticket workers are free to take their own transportation to the job site."); Ex. 3, S. Villarino Dep. Tr. at 43:3-4, 44:4-6 (stating that he would use the Pacesetter van, carpool or take the bus); Ex. 4, J. Gunn Tr. at 69:9-11, 73:23-24   (stating he occasionally drove his personal car); Ex. 5, K.

### 4.  Alleged deductions for equipment.

There is no Pacesetter policy requiring or permitting deductions for the "rental" of equipment.[18] Equipment deductions that appear on pay records are for unreturned equipment or voluntary equipment purchase.[19]

Additionally, workers themselves agree they were not charged for equipment.[20]

## <u>MEMORANDUM OF LAW</u>

**A. Unlike collective action certification, Rule 23 Certification is more "stringent" and "demanding" than collective action certification—a *lower* bar that Plaintiffs did not meet.**

This Court has already held that a nationwide conditional collective action is not appropriate—similarly, under the higher standard required for Rule 23 class certification statewide class certification is not appropriate. *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1106 (11th Cir. 1996) (noting that generally, "the requirements for satisfying Rule 23 are considerably more involved than is the unitary 'similarly situated' requirement of §216(b)." At the certification stage, the §216(b) requirement is "not particularly stringent" because opt-in plaintiffs "need show only that their positions are similar, not identical, to the positions held by the putative class members." *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1214, 1217 (11th Cir. 2001); *Calderone v. Scott,* 838

---

Williams Dep. Tr. at 32: 1-2, 33:14-19  (stating that on occasion he would drive his own without any other workers in his car).

[18] [D.E. 290-7] (Cairel Decl. ¶ 21); [D.E. 290-6] (Quatrino Decl. ¶ 20); [D.E. 290-8] (Sal Parlante Decl. ¶ 17) ("There is no policy that permits renting equipment. That would be a bookkeeping nightmare.").

[19] Ex. 9 (M. Plotkin Decl. at ¶ 11); Ex. 4,  J. Gunn Dep. Tr. at 67:24-68:2 (Q. "But they won't charge you just for taking the shovel for the day; right? As long as you return it?" A. "Yeah. As long as you return it.").

[20]  Ex. 2, M. Johnson Dep. Tr. at 57:1-2 ("Q. "Were you charged for any equipment?" A. "I wasn't charged for equipment."); Ex. 3, S. Villarino Dep. Tr. at 54: (Q. "But you, yourself, have never been charged for equipment?" A. "I have not—again, that I recall, I, myself, have never been charged with equipment…"); Ex. 4, J. Gunn Dep. Tr. at 67:12- 14 (Q. "Has anyone at Pacesetter ever told you that there's a rental fee for equipment?" A. "Rental fee? No. They never told me that.").

F.3d 1101, 1104 (11th Cir. 2016) (contrasting the "not particularly stringent" requirements of 216(b) with the "more demanding" requirements for a Rule 23 class action). Here, Plaintiffs twice sought conditional certification for nationwide claims based on identical facts and were twice denied—under the *lower* standard for 216(b) certification. Unsurprisingly, Plaintiffs cannot now meet the higher standard for Rule 23 class certification for their proposed statewide class.

In deciding whether to certify a class, a district court has broad discretion. *See Paris v. Progressive Am. Ins. Co.*, Case No. 19-217612020, 2020 WL 7039018 at *1 (S.D. Fla. 2020). "A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met." *Id.* (citing to *Gilchrist v. Bolger*, 733 F.2d 1551 (11th Cir. 1992)).

"[B]efore a district court determines the efficacy of class certification, it may be required to make an informed assessment of the parties' evidence. That a trial court does so does not mean that it has erroneously 'reached the merits' of the litigation." *Id.* (citing *Cooper v. S. Co.*, 390 F.3d 695, 712-13 (11th Cir. 1987). Here, an informed assessment of the evidence suggests that class certification is inappropriate. *See Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (<sup>h</sup> 11th Cir. 2016) ("All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation.").

**B. Untimeliness warrants dismissal.**

Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure prescribes that **"[a]t an early practicable time** after a person sues ... as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added).

The Court may deny a motion for class certification if it is untimely. *See Schaevitz v. Braman Hyundai, Inc.*, No. 1:17-CV-23890-KMM, 2019 WL 3890219, at *2 (S.D. Fla. May 8, 2019). In *Schaevitz*, this Court noted that the Motion for Class Certification was untimely because

it was filed "nearly eighteen months after the Complaint was filed" and therefore "Plaintiff failed to move for class certification at 'an early practicable time' as required under Rule 23(c)(1)(A)." *Id*. (citing to *Gaisser v. Portfolio Recovery Assocs., LLC.,* No. 08-60177-CIV, 2009 WL 10666810, at *3 (S.D. Fla. Mar. 2, 2009)) (noting that the "untimely nature" of a Motion for Class Certification filed eleven months after the Complaint created "logistical problems [which] weigh against a finding that a class action is the superior means of adjudicating the claims of potential plaintiffs in this case"). As in *Gaisser*, "[w]ere the class certified, notice would have to be given, followed by a period allowing class members to opt out. Considerable discovery would have to take place regarding the class members, discovery which Defendants did not conduct as the action was not a class action. All remaining deadlines would have to be reset, and the trial delayed." *Id.*

As explained above, Plaintiffs waited twenty-four months before seeking to certify their class. Not only have defendants been prejudiced by further delay in a costly and invasive litigation, but "the public business of the court…has been hampered and delayed." *Jones v. Hartford Ins. Co. of Midwest*, 243 F.R.D. 694, 696 (N.D. Fla. 2006) (citing to *Walker v. Columbia University,* 62 F.R.D. 63, 64 (S.D.N.Y.1973)) (denying class certification even where defendants were not prejudiced because motion to certify class was untimely); *see also Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014) (denying a motion for class certification in part due to untimeliness).

Here, Plaintiffs' Motion for Class Certification was filed *twenty-four months after the Complaint*—and only three weeks before the end of discovery, which will create numerous logistical problems if class certification is granted.[21] Consequently, the Motion should be denied as untimely.

---

[21] The discovery deadline has, pursuant to this Court's Order [D.E. 534], been extended for thirty days solely to permit deposition of Defendant's corporate representative and Executive Vice President.

**C. Plaintiffs do not support their claim that Rule 23 treatment is appropriate for the Florida Labor Pool Act claims.**

Defendants agree that federal courts routinely grant class certification for wage and hour claims under the FMWA. [D.E. 520 at 9-10.] However, Plaintiffs cite no case law supporting their position that the FLPA is appropriate for Rule 23 certification. It appears to be a matter of first impression.

**D. Threshold issues warrant dismissal of two of the subclasses.**

Standing and ascertainability are two threshold issues which, if not met, warrant dismissal of all or part of Plaintiffs' claims. *See Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1280 (11th Cir. 2000); *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021).  Plaintiffs' subclass alleging impermissible deductions of more than $3.00 per day for transportation warrants dismissal because none of the Class Representatives have standing to pursue these claims. Further, Plaintiffs' two subclasses alleging impermissible deductions (1) of more than $3.00 per day for transportation and (2) for equipment are not ascertainable and warrant dismissal for lack of ascertainability.

**1.   Class Representatives lack standing to bring any claim alleging deductions of more than $3.00 per day for transportation.**

Class representatives' standing is a threshold matter in determining class certification. *See Prado-Steiman,* 221 F.3d 1266, 1280. Standing requires that a plaintiff must have suffered an injury in fact that is "distinct and palpable, and not abstract or conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). When examining the standing of the class representatives, courts may look beyond the pleadings to the record. *See Bryant v. Wal-Mart Stores, Inc.*, No. 16-24818-CIV, 2020 WL 4333452, at *10 (S.D. Fla. July 15, 2020) (weighing deposition evidence in recommending denial of a certification motion for lack of standing); *see also Prado-Steiman,* 221 F.3d 1266 at 1280 (remanding for review of "affidavits and other

evidentiary documents" to establish whether named plaintiffs had standing). "**[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim**." *Prado-Steiman*, 221 F.3d 1266 at 1280 (emphasis added); *see also Griffin v. Duggar*, 823 F.2d 1476, 1482 (11th Cir. 1987).

Where class representatives lack standing, dismissal is appropriate. *See e.g.*, *Ohio State Troopers Ass'n v. Point Blank Enters.*, 347 F. Supp. 3d 1207, 1230-31 (S.D. Fla. 2018) (dismissing claims because named plaintiffs did not have standing to maintain class claims for an entire category of products when they had only purchased a small subset of those products); *Prado-Steiman*, 221 F.3d 1266 at 1280-83 (vacating class certification because class representatives did not have standing to raise all of the ten classwide claims and noting that "the class…appears to be composed of too many subgroups with disparate legal claims to warrant certification.").

Here, Plaintiffs lack standing because they have not shown that <u>any</u> named plaintiff has suffered an injury in fact for the Florida Labor Pool sub-class alleging daily ticket workers were charged more than $3.00 per day for transportation. Rather, **all named plaintiffs**—except Mondy, who did not attend his deposition—**have stated in their depositions that they have never been charged more than $3.00 per day for transportation to or from a worksite.**[22]

Consequently, this Court should deny Plaintiff's motion for class certification for lack of standing for the sub-class alleging deductions for more than $3.00 per day for transportation.

---

[22] Ex. 1, L. Johnson Depo. Tr. at 31:10 - 31:12 (Q. "And were you ever charged more than $3 for transportation in a single day?" A. "No."); Ex. 3, S. Villarino Depo. Tr. at 43:16 - 43:19 (Q. "Were you ever charged more than $3 for transportation in a single day? A. "Not that I can recall. No, ma'am; not that I recall right now I wasn't."); Ex. 4, J. Gunn Dep. Tr. at 37:2 - 37:4 ("Q. Okay. So they never overcharged you for transportation; is that correct? A. Correct."). Later, Gunn did testify that "they probably" "one day charged [him] for both the Uber and the van, but that it did not happen more than "one or two times." Ex. 4, J. Gunn Depo. Tr. at 72:3 - 72:17. This latter assertion by Gunn is neither "distinct" nor "palpable," as required to establish standing. *Vision Power, LLC v. Midnight Express Power Boats, Inc.*, Case No. 18-cv-61700, 2020 WL 808284 (S.D. Fla. Feb. 18, 2020) (J. Singhal). (citing to *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

**2. Two of the three sub-classes are not ascertainable without reference to the merits.**

"Ascertainability is an implied prerequisite of Rule 23" that must be established by the class representatives "before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). A class is not ascertainable "where the proposed class definition employs conclusory language identifying class members in terms of the ultimate merits question of the defendant's liability." *Alhassid v. Bank of Am.*, N.A., 307 F.R.D. 684, 693 (S.D. Fla. July 31, 2015). A so-called "fail-safe class," such as the proposed class here, is "a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability." *Hurt v. Shelby Cnty. Bd. Of Educ.*, No. 2:13–CV–230–VEH, 2014 WL 4269113, at *8 (N.D. Ala. Aug 21, 2014). A "fail safe" class should be denied class certification. *See Russell v. Tyson Farms, Inc.*, Case No.: 5:19-cv-1179-LCB, 2020 WL 3051241 (N.D. Ala. June 8, 2020) (defining a "fail safe" class as "classes whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury"); *see also Fennell v. Navient Sols., LLC*, Case No. 6:17-cv-2083-Orl-37DCI, 2019 WL 3854815 (M.D. Fla. June 13, 2019) (denying certification in part because the "proposed class definition would necessarily mean that only those with a successful claim …will be a member of …the proposed class.").

Plaintiffs define two of the three subclasses as:

(1) those employees who were charged in excess of $3.00 per day for transportation; *and*

(2) those employees who were…charged for safety equipment, clothing accessories, or any other items required by the nature of the work.

[D.E. 520 at 2.] Neither of these classes are ascertainable and consequently should be struck as "fail safe" classes whose definition requires a successful claim.

At the outset, there is no administratively feasible method to identify employees who were charged more than $3.00 per day for transportation. Plaintiffs claim that "this information can be obtained from Defendants' daily tickets and related documents" [D.E. 520 at 11, referencing D.E. 520-6 and D.E. 521-11-Exhibit A], but these charges are not necessarily for daily transportation, nor for "items required by the nature of the work" as required by the class definition. [D.E. 520 at 2.][23] Instead, transportation charges in excess of $3.00 may be for bus passes, which workers may elect to purchase at a discount for their personal use.[24] Similarly, equipment charges may be for unreturned equipment,[25] voluntary equipment purchases,[26] or the "rental" that Plaintiffs allege.[27] Charges for stolen equipment or voluntary equipment purchase are not "charge[s]…required by the nature of the work," as provided in the subclass definition. Consequently, this class is also not ascertainable by reference to documentation, but instead would require instance-by-instance analysis.

Here, as in *Russell*, *Fennell*, and *Alhassid*, the definition of these two sub-classes would necessarily mean that only those with a successful claim—those who have in fact been charged for more than $3.00 per day for transportation or those who were charged for equipment "required by the work"—will be members of the proposed subclasses. This Court will have to determine the

---

[23] Because Plaintiffs do not point to any particular deduction,  Defendants would like to clarify a potential misconception: in the Ticket Reports which Plaintiffs attach, deductions are listed as positive numbers in the transportation column, while payments to the worker (usually for providing rides to co-workers) are listed as negative amounts. *See e.g.,* D.E. 521-11 at 11 (listing amounts from $3.00 to $18.00 paid to daily ticket workers).

[24] Ex. 10, H. Smith Dep. Tr. at 48:13-49:11; Ex. 6, A. Camilo Dep. Tr. 27:5-28:10; [D.E. 521-4 at 30] (comments on ticket report noting "3x bus passes"); Ex. 9 (M. Plotkin Decl. at ¶ 6) ("Daily ticket workers at some Florida offices may elect to purchase unlimited all-day bus passes for $3.00 for their personal use. These bus passes may be used for multiple rides on any one day, and may be used on a different day than purchased. Broward County bus passes cost $5.00, but Pacesetter provides them at a loss for $3.00 each. Daily ticket workers may purchase multiple bus tickets at once.").

[25] Ex. 6, Camilo Dep. Tr. at 62:10-63:24.

[26] [D.E. 290-1] (A. Bonilla Decl. ¶ 15).

[27] [D.E. 520 at 11.]

merits—whether a particular employee was charged any impermissible fees—*before* participation in the class may be determined. This inefficiency alone renders Plaintiffs' proposed class a "fail safe" class and vitiates Plaintiffs' attempts at certification.

As a result, the Court should deny certification of the two sub-classes alleging transportation charges of more than $3.00 per day and charges for equipment "required by the work" as "fail-safe" classes.

**E.  Plaintiffs additionally fail to meet the four enumerated requirements of Rule 23.**

For a class to be certified, a court must find that: (1) the class is so numerous that joinder is impractical (numerosity); (2) questions of law or fact are common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). *See* Fed. R. Civ. P. 23. Plaintiffs cannot meet these requirements.

The party moving for class certification bears the burden of establishing each element of Rule 23(a). *See London v. Wal-Mart Stores*, 340 F.3d 1246, 1253 (11th Cir. 2003). "If the party seeking class certification fails to demonstrate any single requirement, then the case may not continue as a class action." *Paris v. Progressive Am. Ins. Co.*, Case No. 19-217612020, WL 7039018 at *2 (S.D. Fla. Nov. 12, 2020) (emphasis added) (citing to *Jones v. Roy*, 202 F.R.D. 658, 662 (M.D. Ala. 2001)) (denying motion for class certification for failing typicality).

**1.  Numerosity**

The focus of the numerosity inquiry is whether joinder of proposed class members is impractical. *See Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986).

For the FMWA class and the Fort Lauderdale subclass, Plaintiffs have likely met the low bar for numerosity. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (noting that a class size of forty is adequate); *see also Manno v. Healthcare Rev. Recovery Grp.,*

*LLC,* 289 F.R.D. 674, 684 (S.D. Fla. 2013) (noting that the numerosity requirement is a "low hurdle"). However, as explained above, the FLPA subclasses (1) and (2) are "fail-safe" classes that cannot be determined without findings as to whether each charge for transportation or equipment was for permissible or impermissible reasons. As such, it is impossible to properly determine whether these two sub-classes meet the numerosity requirement, and the Court should therefore conclude that Plaintiffs have failed to meet their burden of establishing this element for these two sub-classes.

### 2.   Commonality

Commonality requires the plaintiffs to demonstrate that the class members have suffered the same injury, and the plaintiffs' common contention must be of such a nature that it is capable of classwide resolution. *See Bennett v. Hayes Robertson Group, Inc*., 880 F. Supp. 2d 1270, 1280 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 534 U.S. 338, 350 (2011)).

Courts have found an absence of commonality where, as here, the proposed class was too broad. *See Balassiano v. Fogo De Chao Churrascaria Orlando, LLC,* Case No. 6:19-cv-2140-Orl-78EJK, 2020 U.S. Dist. WL7365264 at *5 (M.D. Fla. December 15, 2020) (finding plaintiff did not prove commonality where proposed class included two categories of claimants with different claims). Courts have also found that commonality fails where, as here, there is no common policy. *See O'Neill v. The Home Depot U.S.A., Inc*., 243 F.R.D. 469 (S.D. Fla. 2006) (finding a lack of commonality where a substantial number of issues were not common to the class—including alleged occasional violations of defendant company's written policy).

Plaintiffs allege the following common questions of fact:

- Whether all class members were required to report to a Pacesetter labor hall location at the beginning of each workday and received employer-issued equipment, safety, gear and a daily job paper "ticket" (which details the job site and work to performed that day) all [*sic*] which was required for each day's work;

16

- Whether all class members were required to transport the employer-issued equipment, and safety gear necessary to perform the day's job assignment to and from the assigned job site;
- Whether Defendants failed to compensate class members for time spent at the labor hall at the beginning or conclusion of each work day;
- Whether Defendants failed to compensate class members for time spent traveling from the labor hall to the worksite and then from the work site back to the labor hall;
- Whether Defendants charged class members in excess of $3.00 for transportation to and from the worksite when Plaintiffs rode the Pacesetter bus, carpooled with another employee, or utilized some other form of employer-provided transportation;
- Whether Defendants charged class members for tools or equipment to be utilized at the worksite; *and*
- Whether Defendants failed to provide class members with water or a restroom at their Fort Lauderdale, Florida labor hall located at 381 East Commercial Boulevard, Fort Lauderdale, FL 3334.

[D.E. 520 at 14.]

These purportedly-common facts are either not "common," or are simply wrong. Putative plaintiffs were not required to report to a Pacesetter labor hall location at the beginning of each work day.[28] Additionally, not all putative plaintiffs received safety gear.[29] Whether daily ticket workers were charged in excess of $3.00 per day for transportation is not a common question of fact since many putative plaintiffs fully deny that they ever were.[30] Plaintiffs have an identical

---

[28] M. Johnson Dep. Tr. 43:5-15 (stating that the days he worked change from week to week and "then if I want to take a break on Wednesday, I take a break."); Ex. 5, K. Williams Dep. Tr. 46:12-14 (stating that Pacesetter did not tell him what days to work);  Ex. 1, L. Johnson Dep. Tr. at 57: 17-23 (at times she would take the public bus from the bus stop closest to her home directly to the work site).

[29] Ex. 4, J. Gunn Dep. Tr. at 64:24-25 (stating that he would bring his own hardhat); Ex. 3, S. Villarino Dep. Tr. at 83:6 (stating that he would bring his own gloves); Ex. 1, L. Johnson Dep. Tr. 52:21-11 (noting that "on occasion" she brings her own equipment); [D.E. 173-24] (R. Davis Decl. ¶ 7) ("I used to bring my own equipment").

[30] K. William Dep. Tr. 34: 13-22 (Q. "Were you ever charged more than $3 per day for transportation?" A. "'No, no, no, no, it was always $3. Yeah, it was always $3"); Johnson Dep. Tr. at 31:10 - 31:12 (Question: "And were you ever charged more than $3 for transportation in a single day?" Answer: "No."); Ex. 3, S. Villarino Dep. Tr. at 43:16 - 43:19 (Question: "Were you ever charged more than $3 for transportation in a single day? Answer: "Not that I can recall. No, ma'am; not that I recall right now I wasn't."); Ex. 4, J. Gunn Dep. Tr. at 36:4 - 36:6 (stating that Pacesetter "never overcharged [him] for transportation."); Ex. 2, M. Johnson Dep. Tr. 57:17-19 (Q. "All right. Have you ever been charged more than 1.50 on the way and 1.50 on the way back?" A "No."); Ex.

problem with the allegedly common question of fact as to being charged for equipment: many putative plaintiffs straightforwardly deny that they were ever charged.[31] Similarly, allegations of failure to provide water or restrooms are similarly lacking.[32] In short, all of Plaintiffs' "common questions of fact"[33] are not common, as the evidence clearly shows a number of putative plaintiffs who disagree with the allegations.

Similarly, Plaintiffs' common questions of law are neither common nor questions. Plaintiffs allege the following common questions of law:

- Whether class members' travel time is compensable under the FMWA, such that Defendants' failure to compensate daily ticket workers for such time constitutes a violation of the FMWA;
- Whether Defendants' failure to compensate Plaintiffs and the class members for time spent at the labor hall violates the FMWA;
- Whether Defendants' charges in excess of $3.00 for Pacesetter-provided transportation violates the FMWA and/or the FLPA;
- Whether Defendants' charges for tools or equipment to be used at the worksite violates the FMWA and/or the FLPA; and
- Whether Defendants' failure to provide water and/or a restroom to class members who worked in Defendants' Fort Lauderdale, Florida labor hall location at 381 East Commercial Blvd., Fort Lauderdale, FL 33334, violates the FLPA.

---

7, H. Motley Dep. at 34:20-22 (Q. "Have they ever charged you even more than three dollars for a day's transportation?" A. "No.")

[31] Ex. 2, M. Johnson Dep. Tr. 57:1-2 (Q. "Were you charged for any equipment?" A. "I wasn't charged for equipment."); Ex. 3, S. Villarino Dep. Tr. 106:14-16 (Q. "Mr. Villarino, have you ever been charged a rental feel for equipment?" A. "Myself has never been charged; no, ma'am. Not that I know of."); [D.E. 290-17] (L. O'Neal Decl. ¶ 13) ("I have never been charged for equipment rental."); [D.E. 173-15] (J. Stewart Decl. ¶ 6 ); [D.E. 173-19] (N. Lowe Decl. ¶ 7 ("I have never been charged a 'rental fee' for this equipment.") [D.E. 173-20 (O. Gill Decl. ¶ 7) (same); Ex. 7, H. Motley Dep. at 34: 6-10.

[32]Ex. 6,  A. Camilo Dep. Tr. at 57:1-2 (stating that there was a bathroom available to daily ticket workers at the Commercial Boulevard location); Ex. 10,  H. Smith Dep. Tr. at 39:15-20 (same); *see also* Ex. 5, K. Williams Dep. Tr. at 20:15-25 (stating that the location on Commercial Boulevard provided water bottles to workers).

[33] Defendants also improperly mischaracterize questions of law as questions of fact: there has never been any debate about whether Defendants compensate daily ticket workers for time spent traveling to and from the labor hall or for time spent at the labor hall; Defendants do not, because such time is not compensable. *See e.g., IBP, Inc. v. Alvarez*, 546 U.S. 21, 40–41, 126 S.Ct. 514, 527, 163 L.Ed. 2d 288 (2005); *see also Bonilla v. Baker Concrete Const., Inc*., 487 F.3d 1340, 1344 (11th Cir. 2007).

[D.E. 520 at 15.]

These allegedly common questions of law may be characterized as questions of law related either to (1) compensability or (2) violations of the FLPA.

The allegedly common questions of law related to compensability will necessarily turn on a myriad of individualized factors, such as:

- how putative plaintiffs spent their waiting time; *see e.g.*, *Skidmore v. Swift & Co.,* 323 U.S. 134, 162, 65 S. Ct. 161, 164, 89 L. Ed. 124 (1944) (finding that waiting time spent "in sleep or in amusement as they saw fit" was not compensable); *Birdwell v. City of Gadsden, Ala*., 970 F.2d 802, 810 (11th Cir. 1992);

- whether activities such as collecting tools was "integral and indispensable" to a "principal activity"; *see e.g., IBP, Inc. v. Alvarez*, 546 U.S. 21, 40–41, 126 S.Ct. 514, 527, 163 L.Ed. 2d 288 (2005);  *see also Bonilla v. Baker Concrete Const., Inc*., 487 F.3d 1340, 1344 (11th Cir. 2007);

- whether such activities were for the workers' benefit and/or merely logistical; *see Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274, 1288 (10th Cir. 2006); *see also Bernal v. Trueblue, Inc*., 730 F. Supp. 2d 736, 744 (W.D. Mich. 2010).

For these reasons alone, any question of law related to the FMWA violations based on the compensability of time spent waiting, being transporting and checking out and/or returning tools is not a common question of law, but rather questions that will require a myriad of individualized examinations.

The allegedly common questions of law related to violations of the FLPA are not common in the absence of a common policy that permits overcharging for transportation, for necessary equipment, or denying bathroom access. *See, e.g., Balassiano v. Fogo De Chao Churrascaria Orlando, LLC,* Case No. 6:19-cv-2140-Orl-78EJK, 2020 U.S. Dist. WL7365264 at *5-6 (M.D.

Fla. December 15, 2020) (finding failure of commonality where a common policy was absent); *O'Neill,* 243 F.R.D. 469 (finding a lack of commonality where a substantial number of issues were not common to the class—including alleged occasional violations of defendant company's written policy). The record to date shows that there is no policy permitting: (1) charges of more than $3.00 per day for transportation[34]; (2) charges for equipment rental[35]; or (3) denial of water or restrooms at any location.[36]

In short, Plaintiffs' claims require individualized analysis of each plaintiff's circumstances. This, coupled with the lack of a required common policy sufficient to support certain of their claims, prevents a finding that the claims are sufficiently common to pursue this as a class action. This Court therefore deny Plaintiff's Motion for this reason, too.

### 3. Typicality

One or more members of a class may sue or be sued as representative parties on behalf of all the members only if the claims or defenses of the representative parties are typical of the claims or defenses of the class. *See* Fed. R. Civ. P. 23(a)(3). Typicality differs from commonality in that it focuses on the named class representatives' individual characteristics in comparison to the proposed class. *See Piazza v. EBSCO Indus. Co*., 273 F.3d 1341, 1346 ( 11th Cir. 2001); *Prado-Steiman* 221 F.3d 1266, 1269. To satisfy the typicality requirement, a class representative "must be part of the class and possess the same interest and suffer the same injury as class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982); *see Brooks v. Southern Bell Telephone & Telegraph Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990) (finding lack of typicality where the named representatives were all retired Florida residents, but putative class members

---

[34] Ex. 9 (M. Plotkin Decl. at ¶ 6).
[35] [D.E. 290-7] (J. Cairel Decl. ¶ 21); [D.E. 2906-] (D. Quatrino Decl. ¶ 20); [D.E. 290-8] (S. Parlante Decl. ¶ 17) ("There is no policy that permits renting equipment. That would be a bookkeeping nightmare."); Ex. 9 (M. Plotkin Decl. at ¶ 11).
[36] Ex. 9 (M. Plotkin Decl. at ¶ 5).

were employed, some union, some management, and working for different defendants at different times).

Typicality fails where, as here, the named plaintiffs lack standing. *See Prado-Steiman,* 221 F.3d 1266, 1278 ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class."); *see also Piazza v. Ebsco Indus., Inc*., 273 F.3d 1341, 1347 (11th Cir. 2001) ("Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class."); *Luczak v. National Beverage Corp*., Case No. 0:18-cv-61631, 2021 WL 3163544 at *6 (S.D. Fla July 12, 2021) ("[T]he named Plaintiff's claim is atypical of those of the rest of the Putative Class because he lacks individual standing."). Here, the Court should find that typicality fails for the FLPA transportation subclass because, as explained above, the named plaintiffs lack standing to bring these claims, and lack of standing implicates typicality.

Further, Class Representatives' claim are not typical for the FMWA Class, either. Class representatives' claims are atypical if they are grounded in factual situations differing from those of other class members. *See, e.g., Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990). Stated differently, factual variances may preclude a finding that the typicality requirement has been met. *Id*. Where a class action may "degenerate[e] into a series of mini-trials…a class suit here would not advance Rule 23's goal of judicial economy." *Id*. As noted above, substantial factual differences exist between and among the putative plaintiffs.

The Court should deny Plaintiff's motion for class certification for lack of typicality.

### 4. Adequate Representation

As noted above in Section B, Plaintiffs' Motion for Class Certification, filed twenty-four months after the initial Complaint, is untimely. Untimely filing of a Motion for Class Certification suggests that class counsel in inadequate:

> Although the Southern District does not have a corresponding local rule, the Middle and Northern Districts of Florida require that a motion for class certification be filed within 90 days of the filing of the complaint. M.D. Fla. R. 4.04(b); N.D. Fla. R. 23.1…And "numerous other courts have held that when a plaintiff has failed to move for class certification in a timely manner…such a plaintiff has failed to satisfy the mandate of Rule 23(a)(4) of fairly and adequately representing the interests of the putative class."

*Rensel v. Centra Tech, Inc*., No. CV 17-24500-CIV, 2019 WL 7376759, at *3 (S.D. Fla. Sept. 17, 2019), *vacated and remanded*, 2 F.4th 1359 (11th Cir. 2021) (citing to *Williams v. Southern Bell T&T Co.*, No. 77-1895, 1978 WL 73, at *2 (S.D. Fla. April 4, 1978)).

Untimely filing of the Motion for Class Certification additionally raises issues about the adequacy of class representation. *See Porter v. Collecto, Inc.,* No. 14-21270-CIV, 2015 WL 6777601, at *2 (S.D. Fla. Nov. 2, 2015). "Inexcusable delay in moving for class certification" "constitutes a 'failure to protect the interests of class members' " and "surely bears strongly on the adequacy of the representation that those class members might expect to receive." *Jones v. Hartford Ins. Co. of Midwest*, 243 F.R.D. 694, 696 (N.D. Fla. 2006) (citing *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977)); *see also Williams,*1978 WL 73 at *2 (failure of plaintiff to properly and timely move for class determination "raises serious questions" as to adequacy of class representatives).

Because Plaintiffs' Motion for Class Certification is untimely, the element of adequate representation is not met.

**F.  Plaintiffs additionally fail to meet any of the requirements of Rule 23(b)(3).**

Rule 23(b)(3) requires that common questions of law or fact predominate and that class treatment be superior to other methods of adjudicating class members' claims. *See* Fed. R. Civ. P. 23(b)(3).  However, here common questions of law and fact do not predominate and class action certification is not the superior method of litigating this action.

**1.   Common questions of law and fact do not predominate over individual issues of fact and law.**

The predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement. *See O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 479 (S.D. Fla. 2006) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997)). A class is certifiable under Rule 23(b)(3) only when the issues in the action that are subject to generalized proof predominate over the issues that will require individualized proof. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).

Common issues will not predominate over individual questions if, as a practical matter, "**the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues**." *Bussey v. Macon County Greyhound Park, Inc*., 562 Fed. App'x 782, 789 ( 11th Cir. 2014) (quoting *Andrews v. Am. Tel. & Tel. Co*., 95 F.3d 1014, 1023 (11th Cir. 1996)). Certification is inappropriate if the plaintiffs must still introduce a great deal of individualized proof or argue multiple individualized legal points to establish most or all of the elements of their individual claims. *Id*. (citing to *Klay v. Humana*, 382 F.3d 1241, 1255 (11th Cir. 2004)) (quotes omitted).

"**[I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class should not have a substantial effect on the substance or quantity of evidence offered** . . . . If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a

whole relatively undisturbed, then common issues are likely to predominate*." Brown v. Electrolux Home Products*, Inc., 817 F.3d 1225, 1234 (11th Cir. 2016) (quoting *Vega v. T-MOBILE USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009)).

Predominance fails where, as here, there is no common policy. *See, e.g., O'Neill*, 243 F.R.D. 469 (finding common issues did not predominate where a substantial number of issues were not common to the class—including alleged occasional violations of defendant company's written policy.). Predominance also fails where, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues. *See e.g., Bussey,* 562 F. App'x. 782, 789 (11th Cir. 2014).

Here, for the same reasons that commonality fails, so must the far more demanding predominance inquiry.

Each plaintiff will require an individualized analysis as to when each plaintiff arrived at the Pacesetter labor hall, how long they waited, in what personal pursuits they spent their waiting time, what transportation options they selected, how long their period in transport was, whether and for how long they waited at the job site before beginning work, whether they elected to return to the Pacesetter labor hall at night, if any daily ticket worker was ever instructed to return to the labor hall, whether and why an equipment charge was deducted, whether and why transportation charges were applied, and whether and when daily ticket workers were allegedly denied bathroom visits.

Plaintiffs have shown no method for allocating damages among the putative plaintiffs based on their individual fact-specific claims. Putative plaintiffs are not required to report to the labor hall in the morning.[37] Nor are they required to take Pacesetter-coordinated transportation.[38] Not all putative plaintiffs received safety gear.[39] Many putative plaintiffs fully deny that they ever were charged in excess of $3.00 per day for transportation.[40] Allegations of failure to provide water or restrooms are similarly vague and non-specific.[41] Computing and allocating any damages for each individual will require a complex, fact-specific, difficult, and burdensome process.

This Court therefore should not certify the Florida Labor Pool Act Class because Plaintiffs have failed to establish the required predominance.

---

[37] M. Johnson Dep. Tr. 43:5-15 (stating that the days he worked change from week to week and "then if I want to take a break on Wednesday, I take a break."); Ex. 5, K. Williams Dep. Tr. 46:12-14 (stating that Pacesetter did not tell him what days to work); Ex. 1, L. Johnson Dep. Tr. at 57: 17-23 (at times she would take the public bus from the bus stop closest to her home directly to the work site).

[38] [D.E. 290-11] (M. Bonilla Decl. ¶ 7) ("The transportation options are voluntary, and all daily ticket workers are free to take their own transportation to the job site."); Ex. 3, S. Villarino Dep. Tr. at 43:3-4, 44:4-6 (stating that he would use the Pacesetter van, would carpool and that he has "taken a public bus to the job site"); Ex. 4, J. Gunn Tr. at 69:9-11, 73:23-24 (stating he occasionally drove his personal car); Ex. 5, K. Williams Dep. Tr. at 32: 1-2, 33:14-19 (stating that on occasion he would drive his own without any other workers in his car).

[39] Ex. 4, J. Gunn Dep. Tr. at 64:24-25 (stating that he would bring his own hardhat); Ex. 3, S. Villarino Dep. Tr. at 83:6 (stating that he would bring his own gloves); Ex. 1, L. Johnson Dep. Tr. 52:21-11 (noting that "on occasion" she brings her own equipment); [D.E. 173-24] (R. Davis Decl. ¶ 7) ("I used to bring my own equipment . . .").

[40] Ex. 5, K. Williams Dep. Tr. at 34:16-22 (Q. "When you took the Pacesetter van or rode with a coworker or took the bus or an Uber, were you ever charged more than $3 for that?... A. "No, no, no no, it was always $3. Yeah, it was always $3."); Ex. 3, S. Villarino Dep. Tr. at 43:16-19 (Q. "Were you ever charged more than $3 for transportation in a single day?" A. "Not that I can recall…not that I recall right now—I wasn't."); Ex. 1, L. Johnson Dep. Tr. at 31:10-12 (Q. "And were you ever charged more than $3 for transportation in a single day?" A. "No.").

[41] Ex. 6, A. Camilo Dep. Tr. at 57:1-2 (stating that there was a bathroom available to daily ticket workers at the Commercial Boulevard location); Ex. 10, H. Smith Dep. Tr. at 39:15-20 (same); Ex. 5, K. Williams Dep. Tr. at 20:15-25 (stating that the location on Commercial Boulevard provided water bottles to workers).

### 2.   A class action is not the superior method of adjudication for these claims.

Plaintiffs must additionally show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant to this finding is "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(d). Though the predominance inquiry is similar to the commonality requirement, it additionally requires that "those common questions must predominate such that they 'ha[ve] a direct impact on every class member's effort to establish liability' that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (citing to *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)).

Here, the addition of each plaintiff will introduce new questions: when each plaintiff arrived in the morning, how each worker spent their waiting time, whether he received equipment that was "necessary for the job"; whether he was charged for equipment rental; whether he elected to take Pacesetter-provided transportation; if he was ever charged more than $3.00 per day for transportation (and whether the worker can prove that); whether he denied bathroom access and water, and when. In short, a multitude of individual, varying factors would prevent a class wide analysis of liability, as noted in the section on predominance above.[42]

### G. Defendants object to the Proposed Class Notice because it is (1) temporally overbroad; (2) one-sided; and (3) provides a false appearance of judicial imprimatur.

### 1.   Plaintiffs' Proposed Notice is temporally overbroad.

Plaintiffs' Proposed Notice seeks all Pacesetter employees in the State of Florida "from January 29, 2015, to the present." [D.E. 501-1 at 2.] Plaintiffs' Proposed Notice is temporally overbroad because the FMWA's limitations period is four years. *See* Fla. Stats. § 448.110 (8) *and*

---

[42] Plaintiffs additionally make sweeping references to "fear of retaliation," but omit any evidence of retaliation. There is none.

95.11(2)(q). A five-year limitations period can apply only in the case of a "willful" violation, and Plaintiffs have not met their burden of showing any conduct by Defendants that was willful. *Id*. at §95.11(2)(d); *see also Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d 1331, 1334–35 (S.D. Fla. 2008) (denying notice beyond the two-year statute of limitations because willfulness allegations were conclusory).

### 2.   Plaintiffs' Proposed Notice is one-sided.

Plaintiffs spend nine lines robustly describing their allegations and the relief sought in this case,[43] but their Proposed Notice provides only a minimal, inadequate statement—two lines long—that Defendants deny the claims. This partisan case description should be modified to include an equivalent statement of the positions and defenses of Defendants.[44] *See Mohamed v. Off Lease Only, Inc.*, No. 15-CV-23352-CIV, 2018 WL 398326, at *3 (S.D. Fla. Jan. 12, 2018) (ordering modification of proposed notice to "clearly explain the defenses").

### 3.   The Notice provides a false appearance of judicial imprimatur.

Plaintiffs' Proposed Notice bears the case caption. This Court previously "conclude[d] that the case caption tends to grant a seal of judicial imprimatur on the Notice," and, as a result, ordered that the Notice for Conditional Certification not include the case caption. [D.E. 279 at 2.]

---

[43] "Plaintiffs, SHANE VILLARINO, LAURA J. JOHNSON, JEFFREY MONDY, and JEROME GUNN (collectively "Plaintiffs"), former "unskilled" or "general" labor workers who were employed by Pacesetter have sued Pacesetter in the United States District Court for the Southern District of Florida alleging that Pacesetter violated Florida minimum wage laws and the Florida Labor Pool Act by (1) failing to account for all hours worked, (2) making improper deductions for transportation and tools/equipment, and (3) in Pacesetter's Fort Lauderdale location located at 381 East Commercial Blvd, Fort Lauderdale, FL 33334, for failing to provide a restroom and water. Plaintiffs filed this lawsuit on behalf of themselves and a class of similarly situated "unskilled" or "general" labor workers." [D.E. 520-1 at 1.]

[44] The Notice approved by this Court for the class conditionally certified as to Fort Lauderdale stated that "The Court has not yet decided whether Pacesetter has done anything wrong or whether this case will proceed to trial. There is no money available now and no guarantees that there will be." [D.E. 279 at 2.] Defendants request that the Proposed Notice be modified to include, at a minimum, these statements.

Nonetheless, Plaintiffs once again include the case caption in their Proposed Notice, and Defendants once again object.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Class Certification. If the Court nonetheless certifies a class action, Defendants request that:

(1) Plaintiffs Shane Villarino, Laura Johnson, Jeffrey Mondy and Jerome Gunn should not be appointed class representatives;

(2) Dion J. Cassata, Esq., Cassata Law, PLLC, and Andrew R. Frisch, Esq., Morgan & Morgan, P.A., should not be appointed as class counsel;

(3) Plaintiffs' Proposed Notice should be modified as described above; and

(4) Grant Defendants any other relief that is just and proper.

Respectfully submitted this 1st day of February, 2022.

By: *s/ Ronald J. Tomassi, Jr.*
Ronald J. Tomassi, Jr.
  Florida Bar No. 29751
Derek E. León, Esq.
  Florida Bar No. 625507
LEÓN COSGROVE, LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone:  305-740-1975
Email: dleon@leoncosgrove.com
Email: rtomassi@leoncosgrove.com

Joel M. Androphy, Esq.
Caroline Gorman, Esq.
BERG & ANDROPHY
3704 Travis Street
Houston, Texas 77002
Telephone:  713-529-5622
Email: cgorman@bafirm.com
Email: jandrophy@bafirm.com
*Admitted Pro Hac Vice*

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 1, 2022, I electronically filed the foregoing with

the Clerk of the Court with a copy of the same to be served upon counsel via the CM/ECF system:

Dion J. Cassata, Esq.
**CASSATA LAW, PLLC**
Boca Crown Centre
7999 North Federal Highway, Suite 202
Boca Raton, Florida 33487
Email: dion@cassatalaw.com
Phone: 954-364-7803

Andrew R. Frisch, Esq.
**MORGAN & MORGAN, P.A.**
8151 Peters Road, 4th Floor
Plantation, FL 33324
Email: dion@cassatalaw.com
Phone: 954-967-5377

By: *s/ Ronald J. Tomassi, Jr.*
    Ronald J. Tomassi, Jr.