## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:20-CIV-60192-AHS

SHANE VILLARINO, *et al*.,

       Plaintiffs,

v.

PACESETTER   PERSONNEL   SERVICE,
INC., *et al*.,

       Defendants.

_____/

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Pacesetter Personnel Service, Inc., Pacesetter Personnel Service of Florida, Inc., Florida Staffing Service, Inc., and Tampa Service Company, Inc., (collectively, "Defendants" or "Pacesetter"), pursuant to Rule 56, Federal Rules of Civil Procedure, file this Motion for Summary Judgment because, as a matter of law, (1) Pacesetter fully compensated daily ticket workers for all hours worked; (2) time spent in the labor hall or traveling to and from the job site is not compensable; and (3) Plaintiffs' allegations of violations of the Florida Labor Pool Act are supported by nothing more than speculation. In support of this Motion, Pacesetter states as follows:

### INTRODUCTION

Pacesetter is entitled to summary judgment for several reasons. First, Plaintiffs have no evidence to support their allegation that they were not properly compensated for all hours worked. Plaintiffs have not and cannot demonstrate the amount or extent of such allegedly uncompensated time, or that Pacesetter knew of such lack of compensation.

Second, time spent in the labor hall or traveling to and from the job site is not compensable time. In fact, the undisputed evidence shows that the Department of Labor ("DOL") conducted an

audit for the 2016-2018 time period of another of Pacesetter's locations, which operates under the same policies and procedures as all other Florida branches, including the Fort Lauderdale branch at issue here. **That DOL audit found that Pacesetter was committing <u>zero</u> Fair Labor Standards Act ("FLSA") violations.**

Specifically, the DOL audit found Defendant in compliance with the FLSA because daily ticket workers were properly paid minimum wage and overtime[1] and "the time waiting for an assignment or travelling from the central location to the worksite is not compensable"[2]:

<u>Investigative Result</u> ███████ (b) 7(E) ███████. The WHI attempted to interview 26 EE's but was only able to conduct 4 EE's interviews. The other 22 EE's were either unresponsive to the WHI's attempts to contact them or declined to give an interview statement. The interviewees ███ (b) 7(E) ███ stated that they arrive at Pacesetter's office in the morning to receive job assignments and then travel to jobsites throughout Central Florida. However, they also stated that it is optional to accept job assignments. Furthermore, they stated that if they do not like the assignment offered that day they could wait for another assignment or come back another day to see if there is a job assignment they would like to take. In addition, they also stated that they do transport workers to jobsites but it is not required by the ER. If the EE's do decide to transport other workers they receive $3.00 per person, which deducted from the workers checks who travelled with the driver **(See Ex. A-0, (b) 7(C) ).**

According to section 31c09, Temporary Help Firms, of the Field Operation Handbook (FOH), for types of jobs where the registrant voluntarily shows up at a central where the workers awaits employment opportunities, the time waiting for assignment or travelling from the central location to the worksite is not compensable **(See Ex. E-2).**

███████ (b) 7(E) ███████

<u>Section 6 Minimum Wage:</u> No violations of Section 6 of the FLSA were found . All EE's earned at least the Federal MW during the investigation period. The subject firm is a temporary help firm and assignments are voluntary; therefore, according to section 31c09 FOH, the time waiting for assignment or travelling from the central location to the worksite is not compensable **(See Ex. A-0, (b) 7(C) )**

<u>Section 7 Overtime:</u> No violations of Section 7 of the FLSA were found. All EE's earn time and a half

*Fig. 1*

---

[1] Statement of Material Facts ¶ 2 at 2, filed concurrently with this MSJ.
[2] *Id.* at 5 (redactions in original).

As such, Defendants are entitled to summary judgment on these claims.

Third, Plaintiffs' allegations of violations of Florida's Labor Pool Act of 1995 (the "Labor Pool Act" or "FLPA") are supported by mere speculation. *See Nebula Glass Int'l, Inc. v. Reichhold, Inc.,* Case No. 02-60703-CIV, 2004 WL 4946483, at *6–7 (S.D. Fla. Apr. 27, 2004) (granting summary judgment where damages were merely speculative).

For all these reasons, Pacesetter's Motion for Summary Judgment should be granted.

## PROCEDURAL BACKGROUND

In their Complaint, filed January 29, 2020, Plaintiffs alleged the following causes of action:

COUNT I: Violations of 29 U.S.C. §§ 207, 216(b) regarding overtime compensation;

COUNT II: Violations of 29 U.S.C. §§ 206, 216(b) regarding minimum wage;

COUNT III: Violations of the Florida Constitution, Art. X, § 24; Florida Minimum Wage Act-regarding minimum wages; and

COUNT IV: Violations of the Florida Labor Pool Act and Florida Statutes §448.20 *et seq.*

[D.E. 1 at ¶¶ 134-163] (Original Complaint); [D.E. 152 at ¶¶ 134-163] (Amended Complaint hereafter referred to as the "Complaint"). The "hybrid" Complaint alleged both (a) a collective action under 216(b) for Fair Labor Standards Act ("FLSA") wage-and-hour claims and (b) a Rule 23 (a) and (b) class action for state claims under the Florida Minimum Wage Act ("FLWA") and the Florida Labor Pool Act ("FLPA"). [D.E. 152 at ¶ 112 *et. seq.* and ¶ 125 *et seq.*]

Regarding the alleged violations in Counts I, II and III, Plaintiffs contend that they were not paid for all compensable hours worked and therefore they were not properly paid minimum wage and overtime for all hours worked over forty (40) in a workweek.  [D.E. 152 at ¶¶ 134-139.] Plaintiffs make two claims to support their theory that they were not paid for all hours worked:

(1)  Plaintiffs and others similarly situated were on the job sites for longer than what the pay stub indicated, and

(2)  Defendants failed to pay Plaintiffs for the time they spent travelling to and from the job site or the time spent at the labor hall waiting and being issued and returning tools, safety gear and other items.

[D.E. 152 at ¶ 74] (numbers added).

In Count 4, Plaintiffs allege that Pacesetter violated the FLPA, Florida Statutes § 448.20

*et. seq.* by:

1.  Charging workers daily rental fees for safety equipment such as work boots, goggles, and gloves;

2.  Charging workers more than Defendants' actual costs for various items, including, but not limited to, reflective vests, shirts, hardhats, and the replacement cost of tools;

3.  Charging workers more than $3.00 per day for transportation to/from a worksite(s);

4.  Failing to provide workers with restroom facilities at a labor hall;

5.  Failing to provide workers with drinking water at a labor hall.

[D.E. 152 at ¶ 162.]

## STATEMENT OF MATERIAL FACTS

In compliance with this Court's Local Rule, Pacesetter has simultaneously filed a Statement of Material Facts ("SMF").

## STANDARD OF REVIEW

Summary judgment is appropriate where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Allen v. Bd. Of Pub. Educ. For Bibb Cty.,* 495 F.3d 1306, 1313 (11th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). Entry of summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

The non-movant may not merely allege or conclusively deny the matters raised; instead, the non-movant must establish the existence of evidence as to every essential element to that party's case. *See, e.g., Celotex Corp.,* 477 U.S. at 322; *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir. 1997). Speculation or conjecture cannot create a genuine issue of material fact. *Johnson v. England*, 350 F. App'x 314, 317 (11th Cir. 2009) (citing *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005)). "Conclusory allegations without specific supporting facts have no probative value." *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1309 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008) (citing *Leigh v. Warner Bros*., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000)).

Where allegations are supported only by speculation, granting summary judgment is appropriate. *See, e.g., Francis v. MSC Cruises, S.A*., 835 F. App'x 512, 517 (11th Cir. 2020) ("Such speculation cannot be the basis on which a party overcomes summary judgment.").

I.    **Plaintiffs' Counts I, II and III fail because Pacesetter properly paid Plaintiffs for all compensable time.**

Plaintiffs' Counts I, II and III allege violations of the minimum wage and overtime provisions of 29 U.S.C. 216(b), as well as of the Florida Minimum Wage Act. [D.E. 152 at ¶ 2.] Because the Florida Minimum Wage Act incorporates the definitions of "wages" under the FLSA, Counts I, II and III are properly analyzed together. [3]

---

[3] The Florida Minimum Wage Act (Fla. Const. Art. X, § 24) incorporates the provisions of the federal Fair Labor Standards Act (29 U.S.C.A. § 201 *et seq*.), including its exceptions and exemptions. Florida Op.Atty.Gen., 2005-64, November 23, 2005 (2005 WL 3132090); *see also* Fla. Const. art. X, § 24 (b) ("As used in this amendment, the terms "Employer," "Employee" and "Wage" shall have the meanings established under the federal Fair Labor Standards Act (FLSA)

Plaintiffs allege that Pacesetter failed to pay them properly for all compensable time based on two separate allegations:

(1) Plaintiffs were required to be on the job sites for longer than the hours reflected on their pay stubs, and

(2) Defendants failed to pay Plaintiffs for the time they spent travelling to and from the job site or the time spent at the labor hall waiting for an assignment and/or to be issued/return tools, safety gear and other items.

[D.E. 152 at ¶ 74] (numbers added).

> ### A.   Plaintiffs' allegations that Pacesetter failed to pay them for all compensable time on the job site fails as a matter of law.

Plaintiffs allege that they worked "off the clock," at the job site. [D.E. 152 at ¶ 74.] To state a claim for unpaid wages under the FLSA, a plaintiff must provide sufficient evidence to show that he has in fact performed work for which he was not properly compensated and the amount and extent of that work as a matter of just and reasonable inference. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  Plaintiffs cannot create a question of fact where, in the face of strong documentary evidence, they fail to support their claims with anything more than speculation and unsupported, self-serving testimony. *See Debose v. Broward Health*, Case No. 08–61411–CIV, 2009 WL 4884535, at *9 (S.D. Fla. Dec. 17, 2009).  In addition, a plaintiff must establish that he was "suffered" or "permitted" to work for improper compensation; courts have consistently interpreted "suffer" and "permit" to mean with the employer's knowledge. *See, e.g., Allen*, 495 F.3d at 1314.

> ### 1.   Plaintiffs' claims fail because they have not demonstrated they were not properly paid for compensable work, i.e., that Plaintiffs worked "off the clock."

---

and its implementing regulations"). Consequently, any analysis of wages owed under the Florida Minimum Wage Act is identical to the analysis under the Fair Labor Standards Act.

Plaintiffs cannot meet their "burden of proving that [they] performed work for which [they were] not properly compensated." *Estrada v. FTS USA, LLC*, Case No. 1:14-CV-23388, 2016 WL 6157989, at *3 (S.D. Fla. Oct. 24, 2016), *aff'd*, 688 F. App'x 830 (11th Cir. 2017) (citing *Anderson*, 328 U.S. at 688 (1946)). In *Estrada*, the court granted defendant's motion for summary judgment on plaintiff's claim of unpaid overtime because (1) the employer had a policy mandating payment for overtime that the employee acknowledged at the outset of his employment and (2) plaintiff failed to provide any evidence that the times listed on his timesheets were incorrect. *Estrada*, 2016 WL 6157989, at *3. Additionally, the court found that the defendant in *Estrada*:

> maintained a Compensation Policy that required payment for all hours worked by the employee…regardless of whether the time worked was overtime. The Compensation Policy also required employees to keep daily time records, verify the amount of time reflected on the employee's weekly Time Sheet, and alert a supervisor if the hours incorrectly reflected the amount of time the employee worked.

*Id.* at *3. As a result, the *Estrada* court granted summary judgment.

Here, any claim that daily ticket workers worked hours for which they were not paid is easily refuted by Pacesetter's policies. Similar to *Estrada*, Pacesetter has a policy that requires daily ticket workers like Plaintiffs to make sure that their hours worked are accurately recorded on the Daily Time Ticket. SMF ¶ 4. As in *Estrada*, after the site supervisor enters their hours worked, Plaintiffs acknowledge their hours worked by signing that, "I have been paid in full." *Id.* ¶ 5. If a daily ticket worker disputes the hours for which he is being paid, Pacesetter provides multiple avenues for Plaintiffs to contest their hours. As a matter of policy, Pacesetter investigates and adjusts hours as appropriate. *Id.* ¶ 6. In fact, Pacesetter provides at least *three* opportunities for workers to contest hours worked: (1) at the job site when they acknowledge the hours being entered by the site supervisor, (2) at the individual Pacesetter branch office that dispatched them, (3)

through a provided phone number to Pacesetter's Human Resources Department. *Id.* ¶¶ 7-8. Employees, like Plaintiffs, have taken advantage of all three options when they believed their hours were not accurate. *Id*. ¶ 8.

Here, Plaintiffs present no evidence that the hours entered on their Daily Time Tickets for time on the job site are incorrect. Indeed, many of the individual Plaintiffs concede that the site supervisor accurately input their hours into the Daily Time Ticket. *Id*. ¶ 9. Other Plaintiffs testified that they were successful in using the reporting avenues set forth above to have incorrect hours corrected by Pacesetter. *Id*. ¶ 10.

The absence of evidence is fatal to Plaintiffs' claims because they must produce evidence that demonstrates that their hours are not accurate. *See Debose,* 2009 WL 4884535, at *36.  If Plaintiffs establish that "the employer's records cannot be trusted," the plaintiff must prove "that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Allen*, 495 F.3d at 1316 (citing *Anderson*, 328 U.S. at 687 (1946)).  Without evidence as to "the amount and extent of that work as a matter of just and reasonable inference," then summary judgment is appropriate. *Pigford v. Flotel Inc*., Case No. 1:17-cv-01652, 2018 WL 10741753, at *15 (N.D. Ga. Nov. 19, 2018)*, report and recommendation adopted*, 2018 WL 10741755 (N.D. Ga. Dec. 10, 2018) (citing *Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1278 (11th Cir. 2008) (granting defendant's motion for summary judgment because plaintiff "fail[ed] to provide any evidence to substantiate her claims or show the amount or extent of any hours she worked without compensation.")); *Morgan v. Kalka & Baer, LLC*, 750 F. App'x 784, 790 (11th Cir. 2018) (granting summary judgment because "[t]o the extent [plaintiff] rejects

[defendant's] records, the burden is on her to produce specific evidence showing she did in fact perform work without compensation and that her work was in excess of the 40-hour workweek.").

Plaintiffs have not cleared the first hurdle: they have not demonstrated by a preponderance of the evidence that Pacesetter's records are not accurate. Instead, they merely claim that the hours recorded are not accurate. [D.E. 152 at ¶ 74.] But they present no evidence to support a claim that they were on job sites for different hours than their time records reflect. Their allegations are blanket assertions without evidence of specific dates, instances, or triggering events. SMF ¶ 11. In other words, there is no specificity regarding who instructed them to work longer hours than they recorded, the days on which they worked different hours then they recorded, or of the amount of unpaid hours (by day or week). Instead, Plaintiffs merely assert they worked time for which they were not paid. These naked assertions cannot support their claims because Plaintiffs must "demonstrate by a preponderance of the evidence that the defendant violated the terms of the FLSA with regards to the plaintiff's employment." *Debose*, 2009 WL 4884535, at *13.

> **2.** **Plaintiffs' claims fail as a matter of law because Plaintiffs cannot show that Pacesetter suffered or permitted Plaintiffs to work "off-the-clock."**

Assuming Plaintiffs could establish they were not fully paid for all compensable time, which they cannot, Plaintiffs must also present evidence to establish show that "the [the employer] knew or should have known of the overtime work." *Allen*, 495 F.3d at 1314–15. "To summarize the Court's ruling on the issue, [a]n employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur." *Gilbert v. City of Miami Gardens, Fla*., Case No. 12-24234-CIV, 2015 WL 12866377, at *4 (S.D. Fla. Feb. 4, 2015) (internal quotations removed) (citing *Gaylord v. Miami-Dade Cnty.,* 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999) and *Forrester v. Roth's I.G.A. Foodliner, Inc*., 646 F.2d 413, 414 (9th Cir.

1981) ("[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207.")). *See also Walker v. City of Hapeville*, Case No. 1:08-CV-1036, 2009 WL 10665771 at *16 (N.D. Ga. June 17, 2009), *report and recommendation adopted,* 2010 WL 11508303 (N.D. Ga. Feb. 22, 2010) ("Even if Plaintiff could establish that she worked overtime hours, her FLSA claim still fails because she has not shown that her employer had actual or constructive knowledge that she was working unreported overtime"). Constructive knowledge may be inferred where, for example, "an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge." *See Allen*, 495 F.3d at 1319 (citing *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 828 (5th Cir. 1973)). Where, as here, plaintiffs cannot prove that defendants had actual or constructive knowledge of underreporting of hours, defendant's motion for summary judgment should be granted. *See Walker*, 2009 WL 10665771 at *16.

Plaintiffs have failed to present any evidence that Pacesetter had reason to believe Plaintiffs' Daily Time Tickets were inaccurate. Instead, the evidence establishes that Pacesetter undertakes extensive efforts to ensure that all daily ticket workers are fully compensated. SMF at ¶ 7. Nothing in this case suggests Pacesetter had constructive knowledge of any underreporting of hours worked. There is no evidence of any indicia alerting Pacesetter that hours were being underreported.  Given the available complaint avenues of which Plaintiffs themselves concede they were aware and availed themselves, it defies belief that the tens of thousands of daily ticket workers who received work from Pacesetter labor halls in the relevant time period *all* kept silent about inaccurate hours on a daily basis *and* that thousands of site supervisors—who are not

Pacesetter's employees but rather Pacesetter's customer's employees—somehow coordinated to underpay the daily ticket workers. As such, Defendants are entitled to summary judgment.

> **B.**   **As a matter of law, time spent (1) waiting at the labor hall (2) checking out or returning equipment and (3) travelling to and from the job site is not compensable work time.**

Plaintiffs allege three separate categories of time are compensable under the FLSA and for which they were not paid: (1) time spent waiting at the labor hall to receive a job ticket in the morning; (2) time spent checking out or returning tools and equipment; and (3) time spent travelling to and from the job site. None constitute compensable work time under the FLSA or the Portal-to-Portal Act of 1947 (29 U.S.C. §§ 251-262). [D.E. 152 at ¶ 75.]

> **1.**   **"Waiting" for a job assignment is not compensable.**

Plaintiffs incorrectly claim that time spent waiting at the labor halls is compensable. The Portal-to-Portal Act, 29 U.S.C. § 254(a), exempts specific activities from compensation under the FLSA, including:

> activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).   Moreover, the DOL investigated exactly this issue at another of Defendant's Florida locations and concluded that the time spent at the labor hall in the morning or evening was not compensable. The DOL's findings stated that "[t]he subject firm is a temporary help firm and assignments are voluntary; therefore, according to section 31c09 FOH, the time waiting for assignment or travelling from the central location to the worksite is not compensable." SMF ¶ 2.

Waiting is a "principal activity" only where workers are "engaged to wait" as opposed to "waiting to be engaged." *Skidmore v. Swift & Co*., 323 U.S. 134, 137 (1944). Whether workers are

"waiting to be engaged" may be determined by reference to the agreements of the parties, the nature of the employment, and whether the employee may use the waiting time for their own purposes. *Id*.  Time that workers may use for their own purposes is not compensable. *Id.* at 162 (finding that waiting time spent "in sleep or in amusement as they saw fit" was not compensable); *Birdwell v. City of Gadsden, Ala*., 970 F.2d 802, 810 (11th Cir. 1992) (finding that "on duty" waiting time was not compensable because "[t]he Gadsden detectives' off-time was not so restricted that it was not used predominately for their benefit" and "[t]hey could do anything they normally did so long as they were able to respond to a call promptly and sober," and emphasizing that "it is clear that an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA"); *see also Bernal v. Trueblue, Inc*., 730 F. Supp. 2d 736, 739 (W.D. Mich. 2010) (finding that time spent by daily workers at labor hall waiting for a job ticket was not compensable because workers "were free to watch television, socialize with other workers, read, use the restroom, and even leave the dispatch office and return at their own convenience, if at all.").

Here, time spent waiting at the labor hall is not compensable because (1) Plaintiffs are free to use this time as they wish and (2) the parties' employment agreement clearly states that payment is for hours worked only at the job sites.  The undisputed evidence demonstrates that the Plaintiffs were free to and did use their time at the labor hall in their discretion. SMF ¶ 12.  As in *Bernal*, Plaintiffs testified that they spent time watching television, socializing, reading, taking cigarette breaks, and eating during their waiting time. *Bernal,* 730 F. Supp. 2d at 739.

Further, waiting time is not compensable where, as here, employer and employee have an understanding that waiting time is not compensable. *See* DOL Field Operations Handbook[4] 31c09 titled *Temporary Help Firms* ("If the employment understanding clearly is that the pay or the time of the employee begins and ends at the customer's establishment, waiting for assignments at the central location or in travel from there to the customer's establishment and return would not be compensable worktime."). The summary judgment evidence conclusively establishes that Plaintiffs were told that they would only be paid for time spent at the job location (and not for time at the labor hall). For example, initial paperwork that Pacesetter provided Plaintiffs clearly differentiated between compensable time on the job site and non-compensable time at the labor hall. SMF ¶ 13. Plaintiffs' testimony demonstrates they understood this. *Id.*

> **2.     Time spent checking out or returning equipment and/or tools is not compensable because (a) it is not an "integral and indispensable part of the principal activities" and (b) constitutes preliminary and postliminary activities which are not compensable under DOL guidelines.**

The Portal-to-Portal Act, 29 U.S.C. § 254(a), exempts from compensability "activities … preliminary to or postliminary to said principal activity or activities…." 29 U.S.C. § 254(a). DOL regulations, and the findings of the 2016-2018 DOL audit, support a finding that time spent by daily ticket workers checking out or returning equipment and/or tools is not compensable. *See* 29 C.F.R. § 785.28; SMF ¶ 2. Case law also establishes that in employment situations in which employees may also bring their tools and equipment from home and/or wear the same gear from home, time spent by those employees who choose to pick up equipment or gear at an intermediary

---

[4] While the DOL Field Operations Handbook is not binding, courts may and do consider them in analyzing FLSA claims. *Bernal*, 730 F. Supp. 2d at 741.

location is not compensable work. *See Medina v. 3C Constr. Corp.,* Case No. 04-20010-CIV, 2005

WL 8156725, at *9 (S.D. Fla. Nov. 22, 2005). In *Medina*:

> the testimony of the Plaintiffs establishes that they carried and/or wore their work gear from their home to the Milam Dairy lot as well. **Thus, if the Court were to accept Plaintiffs' argument, then it would also have to find that Plaintiffs' travel time from their homes to the parking lot was compensable, as the Plaintiffs carried and/or wore their work gear from home**. Such a determination would both undermine the exception established by Section 254 (a)(1) and run contrary to the intent and purpose of the statute. *See* 29 C.F.R. § 785.35 ("Normal travel from home to work is not worktime").

*Id.* (emphasis added). Similarly, the DOL's longstanding position is if employees have the option

and the ability to change into the required gear at home, changing into that gear is not a principal

activity, even when it takes place at the plant. *See Llorca*, 893 F.3d at 1326 (citing a May 31, 2006

DOL memorandum).  Similarly, where borrowing equipment is for the worker's benefit, the time

is not compensable. *See Bernal,* 730 F. Supp. 2d at 744 (obtaining tools from a central worksite

benefits employees as they will be equipped to perform work when they arrive at a job location);

*see also Preston v. Settle Down Enterprises, Inc.,* 90 F. Supp. 2d 1267, 1280–81 (N.D. Ga. 2000);

*Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274, 1288 (10th Cir. 2006) (finding that time spent

meeting at a non-work location to carpool, loading personal safety equipment in to the car and

travelling were not compensable because "…the plaintiffs were required to travel together for

reasons related to the logistics of commuting rather than anything integral and indispensable to

their principal activities.").

The time Plaintiffs *voluntarily* chose to spend picking up from, or returning tools to,

Pacesetter's labor halls is not integral and indispensable. Plaintiffs could and did supply their own

tools and the tools were provided for the benefit and convenience of the workers.  As in *Bernal*

and *Smith*, Plaintiffs chose the transportation and equipment options most convenient to them.

14

SMF ¶ 15. Showing up with the tools requested by the customer helps the daily ticket worker's chances of being employed for the full day but does not guarantee it. *Id*. at ¶ 16.  In short, such activities are not considered compensable work time.

### 3.    Travel from the hall to the job site is not compensable.

*Choosing* to report to a central location to possibly receive a daily job which is not guaranteed is <u>not</u> being "required to report at a meeting place." *See Gilmer v. Alameda-Contra Costa Transit Dist.,* Case No. C08–05186 CW, 2010 WL 289299, at *6 (N.D. Cal. Jan. 15, 2010) (discussing that whether the meeting place was offered as a convenience for workers is a factor in determining compensability); *see also Jones v. Hoffberger Moving Servs. LLC,* 92 F. Supp. 3d 405, 413 (D. Md. 2015) (plaintiffs were not "required" to go to meeting place if they do so only to take advantage of transportation options). In *Preston,* 90 F. Supp. 2d at 1281, the court considered whether arriving at a labor hall for a temporary job meant that the worker was "required to report at a meeting place," and held that because workers "came to Tempcor's office in hopes of securing work on a day to day basis" they were not "required to report to a meeting place" and further that "[a]rriving at a business on one's own initiative seeking employment does not trigger the protection of the FLSA." *Id.* Plaintiffs are not *required* to report to the Pacesetter office at all because, as in *Preston*, they report on their own initiative seeking employment.

 The Portal-to-Portal Act, 29 U.S.C. § 254(a), exempts specific activities from compensation under the FLSA including "**traveling to and from the actual place of performance of the principal activity or activities** which such employee is employed to perform…." 29 U.S.C. § 254(a) (emphasis added).  DOL regulations state that:

> Examples of walking, riding, or traveling which may be performed outside the
> workday and would normally be considered "preliminary" or "postliminary"
> activities are (1) walking or riding by an employee between the plant gate and the

employee's lathe, workbench or other actual place of performance of his principal activity or activities; (2) riding on buses between a town and an outlying mine or factory where the employee is employed; and (3) riding on buses or trains from a logging camp to a particular site at which the logging operations are actually being conducted.

29 C.F.R. § 790.7(f).

Courts interpreting the FLSA regulations hold that time spent traveling to the "final place of performance falls within the Portal-to-Portal Act" and is not compensable. *Humphries v. Hartford S., LLC*, Case No. 6:16–cv–109–Orl–31KRS, 2017 WL 1196667 at *3 (M.D. Fla. Mar. 31, 2017). In *Humphries*, the court granted summary judgment because time spent riding in trucks to various job sites was not compensable. The court emphasized that that the "integral and indispensable test is tied to the productive work that the employee is employed to perform." *Id*. (citing *Integrity Staffing Sols. Inc. v. Busk*, 574 U.S. 27, 28 (2014)). "Under this test, an activity is integral and indispensable if it is an intrinsic element of those principal activities that an employee is employed to perform" and "one with which the employee cannot dispense if he is to perform his principal activities." *Id.* In analyzing whether an activity is integral and indispensable, the court noted that "…it is undisputed that Plaintiffs could have reported directly to the jobsite in the mornings and left directly from the jobsite at shift's end, without ever reporting to Hartford South's shop." *Id*. at *4.

Additionally, courts have held that time spent traveling to the site of principal performance is not compensable. *See, e.g., Bonilla v. Baker Concrete Const., Inc.,* 487 F.3d 1340, 1345 (11th Cir. 2007) (affirming summary judgment in favor of employer because time spent on required employer-provided transportation to site and going through security screening was not compensable); *see also Del Rosario v. Lab. Ready Se., Inc*., 124 F. Supp. 3d 1300 (S.D. Fla. 2015)

(finding that commute on shuttle from employee parking lot to work site in Miami International Airport was a preliminary and/or postliminary activity that was not compensable).

The "final place of performance" for daily ticket workers is the job site. No work is performed while being transported. SMF at ¶ 31.  Plaintiffs were not required to report to Pacesetter labor halls on any day or at any time. *Id*. at ¶ 19.  Plaintiffs attach samples of the "Transportation Agreement" signed by every daily ticket worker prior to beginning work with Pacesetter [D.E. 520 at 4, citing D.E. 520-7] but fail to note that it provides transportation ***options***, and the only requirement it imposes on the daily ticket worker's is to arrive on time at the job site.  Daily ticket workers may proceed to the job site directly from their homes if they have a repeat ticket. SMF at ¶ 20. If daily ticket workers choose to pick up a ticket from the labor hall, they are free to proceed directly to the job site from the labor hall if they have their own transportation. *Id*. at ¶ 21. Given that the worker's own choice determines whether they appear for a daily ticket each morning, it cannot be said that workers are "required" to meet at the Pacesetter labor halls each morning.

### 4. Bringing equipment to/Returning equipment from the job site is not compensable activity.

To the extent that Plaintiffs arrived a job site with tools, the tool is a small item – like a shovel or a rake. SMF at ¶ 24. Daily ticket workers are not required to load materials or additional equipment and perform no work prior to arriving on site, including at the labor hall. *Id*. at ¶¶ 25-26.  The acquisition of a single rake or shovel, as is the case for Plaintiffs, is *de minimus* and therefore not compensable. *See Medina v. Ricardos Mech., Inc.,* Case No. 16-CV-1407, 2018 WL 3973007, at *4 (E.D.N.Y. Aug. 20, 2018) (noting that "[t]he majority of cases, however, state that, in the context of picking up tools or equipment, the employee must actually load the tools onto the truck, **or do other work,** in order for the workday to begin") (emphasis added); *see also*

*Dieffenbauch v. Rhinehart R.R. Constr., Inc.,* Case No. 8:17-CV-1180, 2021 WL 736885, at *4 (N.D.N.Y. Feb. 25, 2021)  (citing *McCann v. W.C. Pitts Constr. Co.*, Case No. 8:17-CV-1180, 2011 WL 3924855 at *3 (S.D. Miss. Sept. 7, 2011) (collecting cases) ("Courts deciding whether to compensate employees for travel time from designated meeting points to a worksite have primarily considered whether employees' presence at the meeting point was required by the employer and what types of duties employees were required or requested to perform at the meet site.")); *Beecher v. TWC Admin. LLC,* Case No. 15-CV-00154, 2016 WL 11113685, at *7 (W.D.N.Y. Aug. 22, 2016) ("Merely transporting tools or supplies should not change the noncompensable nature of travel.").[5]

The evidence shows that Plaintiffs may have occasionally arrived at the job site without the recommended tool. SMF at ¶ 22. At the customer's discretion, they may be turned away, provided the required tools, or assigned other tasks which do not require the tool. *Id.*  Providing the tools is for the worker's benefit as it increases their chances of being gainfully employed for the maximum possible number of hours for that day. *Id.* at ¶ 23.

Similarly, time spent returning tools, safety gear and other items is similarly not compensable because, again, it is not required. Plaintiffs are not required to return to the Pacesetter

---

[5] In contrast, picking up tools is only *per se* compensable "where the tools are heavy, specialized, or difficult to transport." *Medina v. Ricardos Mech., Inc.*, Case No. 16-CV-1407, 2018 WL 3973007, at *4 (E.D.N.Y. Aug. 20, 2018) (citing *Crenshaw v. Quarles Drilling Corp.*, 798 F.2d 1345, 1350 (10th Cir. 1986) (finding a compensable commute where employer "provided [employee] with a specially equipped truck containing many of the tools that he needed to service drilling rigs scattered across several states")); *D A & S Oil Well Servicing, Inc. v. Mitchell*, 262 F.2d 552, 555 (10th Cir. 1958) (holding that the driving of pick-up trucks with oil well servicing equipment was a compensable commute); *Clarke v. City of New York*, Case No. 06 Civ. 11397, 2008 WL 3398474, at *7 (S.D.N.Y. June 16, 2008) (finding a triable issue of fact for plaintiffs who alleged that they carried heavy bags during their commute, but no triable issue for plaintiffs who carried only light bags).

labor halls in the evening even if they have tools. *Id*. at ¶ 27. Daily ticket workers who choose to return to labor hall the same day do so to be paid immediately. *Id*. at ¶ 28.  But they are free to return the equipment at a later day if they did not want to return to the labor hall that day. *Id*. at ¶ 29. When the daily ticket workers submit their daily time ticket for payment, they turn in checked-out equipment at that time, which may be the following day or weeks later at their option. *Id*. at ¶ 30.  Therefore, the time is not compensable.

## II.      COUNT IV - Violations of the Florida Labor Pool Act, Florida Statutes § 448.20 *et seq.*

Plaintiffs allege that Pacesetter violated the FLPA, Florida Statutes § 448.20 *et. seq.* by:

1. Charging workers daily rental fees for safety equipment such as work boots, goggles, and gloves;
2. Charging workers more than Defendants' actual costs for various items, including, but not limited to, reflective vests, shirts, hardhats, and the replacement cost of tools;
3. Charging workers more than $3.00 per day for transportation to/from a worksite(s);
4. Failing to provide workers with restroom facilities at a labor hall; and
5. Failing to provide workers with drinking water at a labor hall.

[D.E. 152 at ¶ 162.] However, Plaintiffs have provided no evidence to support these allegations.

### A.      There is no evidence that Pacesetter charges daily rental fees for equipment.

Plaintiffs have provided limited evidence[6]—other than cookie-cutter declarations that provide no specific evidence of rental charges.  Any pay stub listing "equipment charges" does not

---

[6] In response to Request for Production No. 17, requesting all documents supporting Plaintiffs' allegations that they were charged "rental fees" for equipment, Plaintiffs provided four pay stubs that list one-time "equipment charges" of $5.00. [D.E. 520-14 at 52-54] (pay stubs of Earnest Merritt, Jacob Cadet and Jerome Gunn). As noted elsewhere, equipment charges for unreturned equipment are occasionally incurred; plaintiffs did not provide any testimony in the form of declarations or otherwise that these charges were for rental, and consequently these naked pay stubs do not support Plaintiffs' position. The seven declarations attached to Plaintiffs' Motion for

demonstrate that these charges are for rental, as opposed to for voluntary purchase or for unreturned equipment, both of which are permitted by law.[7] In contrast, Pacesetter has presented uncontroverted evidence that there is no policy permitting charging for equipment rental. SMF at ¶ 15. Plaintiffs' "evidence"—which consists only of pay stubs and ticket records that on their face do not state whether the charge was for equipment rental as opposed to a charge for unreturned equipment, and one self-serving and inconsistent piece of testimony—is speculative and insufficient to defeat summary judgment.

> **B.      There is no evidence that, when, as permitted under the FLPA, Pacesetter charges workers for unreturned items, Pacesetter charges more than the items' cost.**

---

Class Certification have a similar flaw: *none* of the ticket reports have supporting declarations stating with specificity that the "equipment charges" listed on the ticket report are for rental as opposed to for failure to return. [D.E. 520-11 to 520-17 ¶ 18.] For example, the 580 pages of Exhibit A attached to Cassandra Burgess' declaration do not include any daily ticket records for Cassandra Burgess herself. Other declarations, such as those attached to Plaintiffs Motion for Conditional Certification, only repeat generalities without ever providing direct testimony or specific circumstances. *See e.g.,* [D.E. 151-3 at ¶ 15] (Decl. of J. Mondy) (stating that "[o]n at least some days, Defendants charged general laborers a "daily rental fee" for equipment" but without stating that the declarant witnessed such an event or was personally charged). In fact, only *one* Plaintiff has provided testimony alleging that the charges for equipment were for rental fees which was coordinated with a Ticket Report or pay stub. *See* [D.E. 520-14] (Decl. of L. Johnson at ¶ 18) (stating that "on numerous occasions, I was charged a $5 daily rental fee for work boots that were required for the job.") (attaching Ticket Report noting $3.00 equipment charge as Ex. A). However, Ms. Johnson's Ticket report does not anywhere note multiple $5 charges for equipment—or any $5 charges for equipment. This *one* self-serving declaration which is not consistent with the ticket records does not constitute evidence.

[7] *See* 29 U.S.C. 231 (m) (1) (defining "wage" as including the reasonable cost of furnishing "other facilities" and 29 U.S.C. 531.32 (c) defining "other facilities" to include "general merchandise."); *see also* 29 C.F.R § 778.307 (noting that deductions for theft or disciplinary reasons are permitted as long as the deduction does not cause wages to dip below minimum); Fla. Stat. § 448.24 (stating that "[t]his subsection shall not preclude the labor pool from charging the day laborer the market value of items temporarily provided to the worker by the labor pool, in the event that the worker willfully fails to return such items to the labor pool.").

As permitted by law,[8] Pacesetter charges for unreturned equipment. SMF at ¶ 33.  Plaintiffs have presented no evidence that the equipment charges ever exceed the fair market value of the items. They do not. *Id*. at ¶ 34. This further defeats Plaintiffs' FLPA claims.

### C.    Pacesetter does not charge workers more than $3.00 per day for transportation.

Pacesetter's policy only permits transportation deductions of $3.00 per day, as permissible under the FLPA.[9] SMF at ¶ 35. Any charges in excess of $3.00 on the daily time tickets are charges for bus passes for personal use, which some daily ticket workers voluntarily elect to purchase for their convenience. *Id*. at ¶ 36.

Many Plaintiffs admit that they were never charged more than $3.00 per day for transportation. *Id*. at ¶ 37. And, of those who claim they were overcharged, none provide evidence to identify particular dates, nor did they notify Pacesetter of the error. *Id*. at ¶ 38. At times, Pacesetter has sold daily ticket workers bus passes for all-day personal use at less than market price. *Id*. at ¶ 39. Any transportation charges for more than $3.00 are due to Plaintiffs' choice to purchase discounted bus tickets from Pacesetter. *Id*. As such, Plaintiffs have not provided competent evidence to defeat summary judgment on this issue.

### D.    Pacesetter provides restroom facilities at all its labor halls.

Plaintiffs allege that Pacesetter did not provide a restroom at its 381 E. Commercial Boulevard, Fort Lauderdale location, during the relevant time period. [D.E. 152 at ¶ 126.]

Some Plaintiffs claim they were denied bathroom access, (SMF at ¶ 43), but others admit they never asked to use the bathroom (*see id*.), while others state that they were able to use the

---

[8] *Id*.
[9] FLPA 448.24 (2)(b) (permitting deductions for transportation up to $1.50 each way).

bathroom at the Commercial Boulevard location. *Id.* None of Plaintiffs' declarations or depositions cite a particular instance. *Id.* Plaintiffs who state that there was "never" a bathroom available themselves admit elsewhere that there was one available. *Id.* These inconsistencies reveal the truth: a bathroom was provided at the Commercial Boulevard location as per policy. *Id.* at ¶ 41. In fact, the location in question has not one but two restrooms. *Id.* at ¶ 42. At all times, there was a bathroom available to daily ticket workers. *Id.* at ¶ 44. If one restroom was being repaired, workers were permitted to use the other. *Id.* at ¶ 45. On one occasion, both bathrooms were out of order, Pacesetter provided portable toilets. *Id.* at ¶ 45.

Those Plaintiffs who do claim that they were denied bathroom access cannot identify specific dates or occasions of those alleged denials or otherwise provide any sort of competent evidence showing they were denied use of the bathroom. *Id.* at ¶ 46. As a result, Plaintiffs' allegations are merely speculative, not the "specific facts that demonstrate an actual or imminent injury." *Nebula Glass Int'l, Inc. v. Reichhold, Inc.,* Case No. 02-60703-CIV, 2004 WL 4946483, at *6–7 (S.D. Fla. Apr. 27, 2004) (granting summary judgment where damages were merely speculative). To survive summary judgment, "the amount of damages must be capable of proof to a reasonable certainty and not left to speculation or conjecture." *Id.*

Because plaintiffs can only speculate as to when these alleged violations occurred, they have provided no genuine issue of material fact as to these claims and summary judgment should be granted to Pacesetter.

### E. Pacesetter provides workers with drinking water at its labor halls.

Similarly, Plaintiffs have provided no evidence that Pacesetter failed to provide drinking water at it its labor halls. The uncontroverted evidence establishes that Pacesetter provides water

bottles or water fountains at all locations. SMF at ¶ 48. Pacesetter is, therefore, also entitled to summary judgment on these claims.

WHEREFORE, Pacesetter respectfully requests that the Court enter an order: (1) granting the instant Motion for Summary Judgment; (2) entering summary judgment in favor of Pacesetter as to every count in Plaintiffs' Amended Complaint; and (3) awarding any other and further relief the Court deems just and proper

### Certificate of Compliance with Local Rule 7.1(a)(3)

Because this motion is a motion for summary judgment, Pacesetter is not required to confer with Plaintiffs before filing this Motion.

 Respectfully submitted this 9th day of March, 2022.

By: *s/ Ronald J. Tomassi, Jr.*
Ronald J. Tomassi, Jr.
 Florida Bar No. 29751
Derek E. León, Esq.
 Florida Bar No. 625507
LEÓN COSGROVE, LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone:  305-740-1975
Email: dleon@leoncosgrove.com
Email: rtomassi@leoncosgrove.com

Joel M. Androphy, Esq.
Caroline Gorman, Esq.
BERG & ANDROPHY
3704 Travis Street
Houston, Texas 77002
Telephone:  713-529-5622
Email: cgorman@bafirm.com
Email: jandrophy@bafirm.com
Admitted Pro Hac Vice

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 9, 2022, I electronically filed the foregoing with the

Clerk of the Court with a copy of the same to be served upon counsel via the CM/ECF system:

Dion J. Cassata, Esq.
**CASSATA LAW, PLLC**
Boca Crown Centre
7999 North Federal Highway, Suite 202
Boca Raton, Florida 33487
Email: dion@cassatalaw.com
Phone: 954-364-7803

Andrew R. Frisch, Esq.
**MORGAN & MORGAN, P.A.**
8151 Peters Road, 4th Floor
Plantation, FL 33324
Email: dion@cassatalaw.com
Phone: 954-967-5377

By: *s/ Ronald J. Tomassi, Jr.*
Ronald J. Tomassi, Jr.

24