UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:  20-60192-CIV-AHS

SHANE VILLARINO, *et al.*,

       Plaintiffs,                                    <u>Class and Collective Action</u>

v.

PACESETTER PERSONNEL SERVICE, INC., *et al.*,

       Defendants.

_____/

## <u>PLAINTIFFS' MOTION FOR *PARTIAL* SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT</u>

Plaintiffs, SHANE VILLARINO, LAURA J. JOHNSON, JEFFREY MONDY, and JEROME GUNN (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their retained undersigned attorneys and pursuant to Southern District of Florida Local Rule 7.5 and Federal Rule of Civil Procedure 56(c), respectfully move this Court to enter *partial* summary judgment in their favor on <u>five (5) issues</u> as the undisputed facts and binding case law establish that Plaintiffs are entitled to judgment as a matter of law in their favor on these five (5) issues against Defendants (collectively "Pacesetter").[1]

By their instant Motion, Plaintiffs seek partial summary judgment as to five (5) issues:

> First, Plaintiffs ask the Court to find that the undisputed facts establish that the daily $3 transportation fees deducted from workers' daily pay violated the minimum wage provisions of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. 201 *et seq.,* ("FLSA") and Florida Minimum Wage Act ("FMWA"), in that the deductions resulted in workers not receiving a lawful "free and clear" minimum wage.

---

[1]  A statement of undisputed material facts (cited hereinafter as "SOF, ¶ ___"), has been contemporaneously filed herewith. Excerpts of relevant deposition transcripts and other materials cited in the statement of undisputed material facts are attached thereto for convenience of reference. Any exhibits attached to this Motion are generally sources of authority rather than documents that attest to facts.

Second, Plaintiffs ask the Court to find that the undisputed facts establish that, regardless of whether the $3 transportation charge deduction is permissible under the FLSA and/or FMWA, the daily transportation fees charged to "daily ticket" laborers who worked in Florida <u>which exceeded $3 per day</u> violated the Florida Labor Pool Act ("FLPA"), 448.20 *et seq*.

Third, Plaintiffs ask the Court to find that the undisputed facts establish that the travel time of daily ticket workers is statutorily compensable work time under the FLSA and FMWA.

Fourth, Plaintiffs ask the Court to find that Pacesetter's failure to provide drinking water at the Commercial Boulevard labor hall for workers waiting at the labor hall for a job assignment violated the FLPA (§ 448.24(5)(b)).

Fifth, Plaintiffs ask the Court to hold that Pacesetter is liable for mandatory liquidated damages in an amount equal to the wages damages due under both the FLSA and FMWA.

## <u>SUMMARY OF ARGUMENT</u>

With annual revenues well in excess of $150,000,000.00 per year, Pacesetter is a group of related closely-held corporations engaged in the business of labor staffing or "personnel staffing" and provides payroll services to its clients as well. *See* SOF, ¶¶1-2, 10.  At any given time Pacesetter employs thousands of unskilled "daily ticket" laborers ("DTWs") which it deploys on a temporary basis to third-party corporate and governmental entity clients. *Id*., ¶12. Defendants jointly operate under the d/b/a or "umbrella" name of "Pacesetter" and operate in the Southeastern United States, primarily in Florida, Texas, and Georgia. Pacesetter has dozens of what it refers to as "worker reporting" or "labor hall" locations, and currently operates 16 locations in the state of Florida alone. Pacesetter's customers include large general contractors, construction companies, municipalities and other governmental entities, airports, shopping malls, commercial complexes, and sporting and concert venues. *Id*., ¶¶3-9.

Pacesetter ensures the delivery of its DTWs to its clients' jobsites through its dispatchers at all labor halls which coordinate all travel for all DTWs each day. *Id*., ¶¶17-19. Pacesetter's "comprehensive employee transport system," is featured prominently on its website and in its marketing materials. *Id*., ¶¶75-80. Indeed, Pacesetter acknowledges that the control it exerts over transportation of its workers is a competitive advantage over its competitors that it routinely exploits in trying to win new business. *Id*., ¶77.

Plaintiffs and the putative class members (collectively "class members" or "the class") are current and former non-exempt, hourly-paid "unskilled" or "general" laborers who were employed by Defendants on "daily tickets" in Florida from January 29, 2015 to present. *Id*., ¶¶13-16. "Daily ticket" is a term which Pacesetter uses to mean that "daily ticket" laborers are required to report to a Pacesetter labor hall location at the beginning of each workday and receive employer-issued equipment, safety gear, and a daily job paper "ticket," (which details the job site and instructions regarding work to be performed that day) which they are then required to transport to/from the jobsite each day. *Id*., ¶18. All Pacesetter locations or "labor halls" use the same daily tickets that come from Pacesetter's corporate office in Houston, Texas. *Id*., ¶20

At all times relevant, the class members have taken employer-arranged transportation from Pacesetter's reporting locations to job sites in the morning, carrying their daily tickets and Pacesetter-assigned equipment and tools, and employer-arranged transportation back to Pacesetter's locations at the end of the workday to turn in the employer-issued tools, gear and equipment, and submit their job ticket to receive their pay. *Id*., ¶¶17-40.

Regardless of whether DTWs drive their personal vehicles, receive a ride in other employees' personal vehicles, receive a ride in a Pacesetter van, utilize public transportation, or use a ride-sharing service, they are required to report to the labor hall each workday to receive

instructions and tools necessary for that day's work, transport the Pacesetter-issued daily ticket and tools/equipment to the Pacesetter-designated jobsite, and return same at the end of each workday. *Id.*

Pacesetter subjected Plaintiffs and the class members to numerous common policies and schemes, which resulted in violations of the Fair Labor Standards Act ("FLSA"), Florida Constitution, Article X, § 24(a) ("FMWA") and Florida's Labor Pool Act ("FLPA").

First, Pacesetter routinely and as a matter of course deducted at least $1.50 each way ($3.00 per day) for Pacesetter-arranged transportation, from the daily pay of all DTWs. Because the transportation was primarily for the benefit of Pacesetter, it was not permitted to take such deductions to the extent they brought Plaintiffs' pay below minimum wage.  Because many of the deductions resulted in pay of less than the applicable minimum wage under the FLSA and FMWA, Pacesetter necessarily violated the FLSA and FMWA, as a matter of course.

Second, Pacesetter made thousands of deductions from Plaintiffs' paychecks for daily transportation in excess of $1.50 each way (or $3.00 per day) in violation of § 448.24(1)(a)(2)(b) of the FLPA.  While a minimal number of the excess deductions were attributable to bus passes purchased by DTWs for personal use or multiple days of transportation charged on a single day, the vast majority of charges in excess of $3.00 were for a single day's transportation to/from the Pacesetter-assigned jobsite.  Each such excess charge violated the FLPA.

Third, Pacesetter failed to properly record and account for all of the class members' hours worked each day/week under their system through which they failed to record/credit daily ticket laborers for travel time.  Specifically, Pacesetter failed to account for time spent traveling to the Pacesetter-assigned job site from the labor hall, and then drive time from the job site back to the Pacesetter labor hall, notwithstanding the fact that Plaintiffs were required to report to the labor

hall each work day to receive that day's instructions (daily ticket) and Pacesetter-assigned tools, gear and equipment and carry same to/from the jobsite each day. Because Pacesetter typically pays "daily ticket" laborers an amount which equates with minimum wage for hours credited, its failure to properly record and pay all hours worked resulted in minimum wage violations for virtually every employee for every week worked.

Fourth, with respect to Pacesetter's labor hall at 381 East Commercial Blvd, Fort Lauderdale, FL 33334, the undisputed evidence demonstrates that Pacesetter failed to provide drinking water to DTWs who worked out of that location, in violation of Fla. Stats. 448.24(5)(a), until that facility was closed.

Finally, Pacesetter cannot demonstrate the requisite "good faith" to avoid the imposition of liquidated damages under the FLSA and FMWA, because discovery is now closed and it is undisputed that it never sought the legal advice of an attorney or the DOL or an accountant to ascertain whether the pay policies at issue here were in compliance with the FLSA. Moreover, the fact that it is in the payroll processing business and has previously been found in violation of the FLSA by the DOL at least 500 times precludes any possibility that the instant FLSA/FMWA violations were subjectively or objectively in "good faith."

For these reasons, Plaintiffs are due to be awarded partial summary judgment finding that: (1) Pacesetter's deductions for transportation to/from Pacesetter-assigned jobsites each day violated the FLSA and FMWA; (2) Pacesetter's deductions for daily transportation in excess of $3.00 violated the FLPA; (3) All travel time incurred by Plaintiffs traveling to/from the Pacesetter-assigned worksite carrying the daily ticket and Pacesetter-issued tools and equipment is compensable under the FLSA and FMWA; (4) Pacesetter's failure to provide drinking water at the Commercial Boulevard labor hall violated the FLPA; and (5) Pacesetter is liable for

mandatory liquidated damages in an amount equal to the underlying damages due under the FLSA and FMWA.

**MEMORANDUM OF LAW**

    A. **Standard on Motion for Summary Judgment**.

        Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* (further citation omitted).

    B. *All* **Deductions for Transportation Violated the FLSA and FMWA[2], to the Extent They Brought DTWs' Pay Below Lawful Minimum Wage.[3]**

        Pacesetter violated the minimum age provisions of the FLSA and FMWA, to the extent they made ***any*** deduction for transportation at all from the pay of DTWs who were only paid an

---

[2] The FMWA explicitly incorporates by reference all definitions from the FLSA, as interpreted by the applicable regulations and implemented by the Secretary of Labor. FL Stat. § 448.110 (3) ("The provisions of ss. 213 and 214 of the federal Fair Labor Standards Act, as interpreted by applicable federal regulations and implemented by the Secretary of Labor, are incorporated herein."). Thus, any violation of the FLSA is necessarily a violation of the FMWA as well.

[3] The lawful minimum wage under both the FLSA and the FMWA is the Florida minimum wage. 29 C.F.R. § 541.4 ("The Fair Labor Standards Act provides minimum standards that may be exceeded, but cannot be waived or reduced. Employers must comply, for example, with any Federal, State or municipal laws, regulations or ordinances establishing a higher minimum wage or lower maximum workweek than those established under the Act.").

hourly rate equal to the minimum wage.[4]  Such deductions are not permissible under the FLSA or FMWA and necessarily brought the DTWs' weekly pay below the minimum wage.  Likewise, to the extent that such DTWs worked in excess of 40 hours in such workweeks, they also violated the FLSA's overtime provisions.[5]

"[T]here is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear. An employer may not deduct from employee wages the cost of facilities which primarily benefit the employer if such deductions drive wages below the minimum wage." *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236–37 (11th Cir. 2002) (holding that employer impermissibly deducted travel cost from pay of migrant workers pay), citing 29 C.F.R. § 531.36(b); *Marshall v. Root's Rest.,* 667 F.2d 559, 560 (6th Cir.1982) (affirming district court finding that defendants required waitresses to wear uniforms at work and that the cost of uniforms, borne by the waitresses, pushed their pay below minimum wage).

An employer is allowed to count as wages the reasonable cost "of furnishing [an] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m). Although the FLSA does not define "other facilities", DOL has promulgated regulations dedicated to this term which identify circumstances when an employer may claim a wage credit or deduction for

---

[4] The FLPA sets a ceiling on amounts a labor hall may charge workers for daily transportation but does **not** authorize such deductions to the extent they bring a worker's pay below minimum wage under the FLSA and/or FMWA.  Rather, the FLPA's clear language indicates that transportation deductions which comply with the FLPA may still violate the FLSA and/or FMWA.  *See* FL Stat. § 448.24(2)(d) ("A labor pool shall [c]ompensate day laborers at or above the minimum wage, in conformance with s. 448.01. Deductions, other than those authorized by federal or state law, may not bring the worker's pay below minimum wage for the hours worked.").

[5] *See* 29 C.F.R. § 778.315 (Overtime pay "for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.").

the provision of "other facilities." *See* 29 C.F.R. § 531.32. One of the DOL regulations states that "the cost of furnishing 'facilities' which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." *Id.* § 531.32(c).

For guidance in applying this test, DOL regulations provide "a list of facilities found by the Administrator to be primarily for the benefit [or] convenience of the employer," which includes tools and uniforms. *Id.* § 531.3(d)(2). The expenses which are primarily for the benefit of the employee, and therefore constitute other facilities, include: meals; dormitory rooms; housing; merchandise from company stores such as "food, clothing, and household effects"; and fuel, electricity, water and gas "furnished for the noncommercial personal use of the employee." *Id.* § 531.32(a).

To determine whether or not this cost is "primarily for the benefit or convenience of the employer," we begin with the DOL regulations, §§ 531.3 and 531.32. As the Eleventh Circuit noted in *Arriaga*, transportation costs are twice mentioned, and in each situation the regulation states that where such transportation is "an incident of and necessary to the employment," it does not constitute "other facilities." 29 C.F.R. § 531.32(a) & (c). *Arriaga*, 305 F.3d at 1236–37 (11th Cir. 2002) ("Transportation costs -- aside from regular commuting costs -- are nothing like board or lodging" and would normally not be considered "other facilities."); *see also Shultz v. Hinojosa*, 432 F.2d 259, 267 (5th Cir. 1970)[6] ("We conclude that as used in the statute, the words 'other facilities' are to be considered as being in *pari materia* with the preceding words 'board and lodging.' "); 29 C.F.R. § 531.32(c) ("transportation charges where such transportation is an

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad)" are "primarily for the benefit or convenience of the employer"); *Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 392 (D. Mass. 2019) ("This is not an ordinary commuting expense that a worker would incur in daily life. Therefore, transportation costs… are not "other facilities" under § 203(m) and cannot be deducted to the extent they lower drivers' pay below minimum wage."); *Marshall v. Glassboro Service Ass'n* and *Brock v. Glassboro Service Ass'n* are opinions arising from the same litigation but at different times. *See Marshall v. Glassboro Serv. Ass'n,* 1979 WL 1989, *2–*3 (D.N.J. Oct. 19, 1979) (finding that the transportation costs do not constitute other facilities); *Brock v. Glassboro Serv. Ass'n,* No. 78–0377, 1987 WL 25334, at *5–*6 (D.N.J. July 23, 1987), *aff'd sub. nom. McLaughlin v. Glassboro Serv. Ass'n,* 841 F.2d 1119 (3d Cir.1988) (holding that "the cost of transportation from the point of recruitment to the point of hire (Puerto Rico to New Jersey) was part of the *employer's recruitment cost* and thus could not be considered part of the employee's wage").

Although the facts at bar are slightly different from those in the migrant worker cases, the legal premise is the same.  Here, the transportation of the DTWs is part and parcel of the very service and product Pacesetter provides to its clients. *See* SOF, ¶¶75-80. Pacesetter highlights its "comprehensive employee transportation system" on its website and in its marketing materials and it acknowledges that the transportation of workers is a competitive advantage it seizes upon to make sales to new and existing customers.  *Id*. Moreover, Pacesetter acknowledges that it would not be possible for employees to drive their own vehicles to many of its jobsites, and that is also a reason Pacesetter coordinates and controls the transportation. *Id., ¶80.* Indeed, absent its comprehensive employee transportation system Pacesetter would be unable to provide the vast

majority of its workers to its clients, many of whom lack their own vehicles. Under these circumstances, the transportation provided by Pacesetter is most certainly primarily for Pacesetter's benefit and thus, the cost of same may not be passed on to DTWs.

In conclusion, this Court should grant partial summary judgment on this issue and find that any transportation charges deducted from DTWs pay which took their pay below lawful minimum wage were in violation of the minimum wage provisions of the FLSA and FMWA. *See, e.g.,* SOF, ¶¶56-65.

**C. <u>Independent of the FLSA and FMWA, All Daily Transportation Charges In Excess Of $3.00 Per Day Charged To DTWs Working Within the State of Florida Violated the FLPA.</u>**

Independent of whether the transportation charges violated the FLSA and FMWA as detailed in section B *supra*, the undisputed facts establish that any "transportation charges" which Pacesetter charged Plaintiffs in excess of $1.50 each way ($3.00 per day) violated the FLPA.[7]

Under the FLPA, Pacesetter may not deduct more than $1.50 each way ($3.00 total) each day for transportation of DTWs to/from daily jobsites.[8]  Notwithstanding FLPA's clear dictate in this regard, Pacesetter's records are replete with thousands of examples where they deducted more than $3.00 per day from the daily pay of DTWs for transportation.

**1.  The FLPA is a Remedial Statute Intended to Reform Labor Pool Abuses In Florida For the Most Vulnerable of Workers, Day Laborers, Like Plaintiffs.**

---

[7] Plaintiffs do not seek summary judgment for excess travel charges where there is a notation/explanation that the DTW purchased a bus ticket for personal use or where a notation explains that the charges pertain to multiple days of work, such that the charges attributable to a single day's transport to/from the Pacesetter assigned worksite for that day did not exceed $3.00.  Rather, Plaintiffs only seek summary judgment with regard to daily transportation charges in excess of $3.00 per day reflected in Pacesetter's records, which Pacesetter acknowledges it cannot explain, due to its insufficient records.

[8] § 448.24 (1)(b) Fla Stat.

The FLPA was originally enacted in 1995 and was intended to address a long and unfortunate history of appalling abuses to Florida' arguably most vulnerable workers: day laborers employed by labor pool companies, like Pacesetter.[9]  The FLPA is remedial in nature.[10] *See* FL Stat. § 448.21.  Specifically, FL Stat. § 448.21, entitled "Legislative intent," provides:

> The Legislature finds that this part is necessary to provide for the health, safety, and well-being of day laborers throughout the state and to establish uniform standards of conduct and practice for labor pools in the state, and this part shall be carried out in accordance with this purpose.[11]

### 2. The FLPA Unambiguously Prohibits Charges of More Than $1.50 Each Way ($3.00 Per Day) to Transport a Worker To or From a Designated Worksite.

Among those protections are that labor pool workers cannot be charged more than $1.50 each way for transportation in a workday ($3.00 per day total), and they cannot be charged a fee for the use of "safety equipment, clothing, accessories, or any other items required by the nature of the work."

§ 448.24   *Duties and rights.—*

---

[9] *See An Examination of Homeless Men, Day Labor and The University West Community,* Glenn R. Brown, University of South Florida, Dec. 1998. *https://digital.lib.usf.edu/SFS0044184/00001* ("The potential for the abuse of contingency labor has been taken seriously by legislative authorities, and section 448.20 of the Florida statutes is titled "The Labor Pool Act," [and] clearly describe[es] minimal standards to which labor pools must conform." p.15. "Prior to the Florida's Labor Pool Act in 1994, which is a Florida statute which attempts to protect day laborers from abuse, some labor pools around the state sought to increase profits by exploiting laborers…" p. 4. "When the state Legislature passed the law a decade ago, day laborers were being exploited by companies that paid them low wages, then deducted hefty fees for transportation, meals, check-cashing privileges and work gear." *https://www.heraldtribune.com/story/news/2005/12/30/high-cost-of-labor/28453567007/*

[10] *Connor v. Div. of Elections,* 643 So. 2d 75, 77 (Fla. 1st DCA 1994); *see also Golf Channel v. Jenkins,* 752 So. 2d 561, 565-566 (Fla. 2000) (a "remedial" statute should be "liberally construed in favor of granting access to the remedy provided by the Legislature"); *see also Adams v. Wright,* 403 So. 2d 391, 394 (Fla. 1981) ("A remedial statute is 'designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good.' It is also defined as '(a) statute giving a party a mode of remedy for a wrong, where he [previously] had none, or a different one, before.'" (internal citation omitted)).

[11] *But see Liner v. Workers Temporary Staffing, Inc.,* 990 So.2d 473 (2008) (explaining that ambiguities must be construed in favor of the defendant-employer because the remedies are penal in nature). Because the Labor Pool Act was amended following *Liner,* specifically to remove the ambiguities referenced in *Liner,* the ambiguities referenced no longer exist and thus *Liner* has no application here.

> **(1)   No labor pool shall charge a day laborer:**
>
> **(a)   For safety equipment, clothing, accessories, or any other items** *required by the nature of the work either by law, custom, or as a requirement of the third-party user:*
>
> **\* \* \***
>
> **(b)   More than a reasonable amount to transport a worker to or from the designated worksite, but in no event shall the amount exceed $1.50 each way;**

§ 448.24 (1) Fla Stat. (emphasis added).

As is clear from the face of the statute, when analyzing FLPA claims, the workers' designated hourly pay rate is irrelevant. Although the vast majority of the DTWs in this case were paid for credited hours at the Florida minimum wage, the FLPA on its face applies to all labor pool workers who fall within its protections regardless of their hourly pay rate, as the Act does not contain any provisions exempting labor pool workers who happen to be paid more than minimum wage.

Further, like other remedial wage and hour statutes, the FLPA contains a recordkeeping provision which requires that the labor hall employer, here Pacesetter, "furnish each worker a written itemized statement showing in detail each deduction made from such wages." FL Stat. § 448.24(2)(g).  Section 448.24(2)(g) is clear on its face that absent a detailed written itemized statement a deduction may not be made to a day laborer's pay.  The reason for the FLPA's recordkeeping requirement is clear from the legislative intent, to protect day laborers from potentially unscrupulous labor hall employers who might otherwise unilaterally make illegal deductions from their pay, without explanation.

### 3. Pacesetter Routinely Charged Plaintiffs in Excess of $3.00 Per Day for Daily Transportation to/from the Day's Designated Worksite in Violation of the FLPA.

It is undisputed that Pacesetter frequently charged DTWs at its Fort Lauderdale area labor halls more than $1.50 each way ($3.00 per day) for daily transportation to and from designated jobsites. SOF, ¶50. Defendants' own records undeniably indicate that Pacesetter charged DTWs more than $3.00 per day for transportation ***thousands*** of times at just these two labor halls from 2015 through the present.[12] *Id*.  While some charges are documented (as required by the FLPA) as associated with the purchase by a DTW of a bus pass for personal use, Pacesetter made the vast majority of excess charges without explanation, in violation of the FLPA.  *Id*., ¶51. Moreover, Pacesetter's corporate representative admitted that Pacesetter is unable to explain any of the thousands of excess transportation charges, in the absence of a written details in its records. *Id*., ¶53.

### 4. Every Unexplained Daily Transportation Charge in Excess of $3.00 Violated the FLPA.

Pacesetter's own records indicate that the workers in this case were charged daily transportation fees in excess of $3.00 thousands of times. *Id*., ¶50. Very occasionally and sporadically some of these excessive transportation charges have a notation in the records indicating that that amount charged in excess of $3.00 per day was either for "bus tickets/ passes," or encompassed transportation for more than a single day of work. *Id*., ¶52. However, the overwhelming majority of the excess daily transportation charges contain no explanation other than that the charge is designated as a "trans" (transportation) charge to the worker for that

---

[12] Defendants' own records produced in discovery indicate across all its Florida locations Pacesetter collectively charged DTWs transportation fees in excess of $3.00 per day ***tens of thousands*** of times from 2015 through the present, and thousands of times at Fort Lauderdale alone. *Id*., ¶50.

day.  Id., ¶¶50, 55. Equally important, Pacesetter acknowledges that it cannot explain any excess daily transportation charge in the absence of a written notation in its records.  *Id*., ¶50. Moreover, Plaintiffs aver that such unexplained charges were **<u>never</u>** due to the purchase of personal bus passes.  *Id*., ¶54.  Based on this record, there is and can be no issue of fact and unexplained daily transportation charges in excess of $3.00 per day necessarily violated the FLPA.

While a small minority of charges in excess of $3.00 are accompanied by a notation in Pacesetter's records that the DTW purchased a bus ticket for personal use (in addition to incurring the usual $3 daily charge for transportation) on a specific day and/or a notation that the transportation deductions are for multiple days of work, the vast majority of the excess charges bear no such notations. *Id*., ¶51.  Critically, Pacesetter's corporate representative acknowledges that, in the absence of a notation, it is impossible to know why any DTW was charged more than $3.00 on any given day, and Plaintiffs' aver that such charges were not for personal bus passes. *Id*., ¶¶53-54. Moreover, given Pacesetter's failure to comply with the recordkeeping requirements of the FLPA, there is no defense to transportation charges in excess of $3.00 per day, to the extent there is insufficient detail regarding the basis of same. FL Stat. § 448.24(2)(g) ("A labor pool shall: At the time of each payment of wages, furnish each worker a written itemized statement showing *in detail* each deduction made from such wages.") (emphasis added).  For these reasons, the Court is due to grant Plaintiffs' summary judgment on their claims that the subject daily transportation charges in excess of $3.00 per day violated the FLPA.

### D.  <u>All Travel Time Incurred by DTWs Is Compensable Pursuant to the FLSA/FMWA</u>.

It is undisputed that, on virtually all workdays, DTWs must report to Pacesetter's labor hall in order to get their instructions regarding that day's work, and to pick up the tools and gear

necessary to perform the work.  *Id.*, ¶18. After receipt of such instructions—in the form of the daily ticket—and Pacesetter-issued tools (brooms, rakes, pickaxes, shovels, personnel protective equipment, etc.)—all of which are required for the day's work—all DTWs are required to carry both the instructions and tools with them to their assigned job sites, regardless of the method of transportation. *Id.*, ¶¶19, 23, 26, 28. Notwithstanding these facts Pacesetter acknowledges that it does compensate not any DTW, including those who drive co-employees to/from the daily jobsites, for their travel time.  Likewise, Pacesetter acknowledges that it does not compensate DTWs for time spent traveling back to the labor hall at the end of the day.  Pacesetter's failure to compensate this travel time is a flagrant violation of both the FLSA and FMWA.

The applicable regulation is clear that travel time is compensable under the circumstances here.  *See* 29 C.F.R. § 785.38 ("Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or[13] to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time."); *see also Breen v. Concrete by Wagner, Inc.,* No. 98 C 3611, 1999 WL 1016267 (N.D. Ill., Nov.4, 1999) (requiring workers to report and receive instructions triggers start of work day); *Dole v. Enduro Plumbing,* 1990 WL 252270, at *2, *5-*6 (C.D. Cal. Oct.16, 1990) (travel time compensable where the workers reported to a shop where they checked in, met their fellow workers, picked up the company trucks, and loaded tools on the trucks when needed).

---

[13] The regulation is disjunctive.  The necessity of reporting to the meeting place to receive instructions **or** pick up and to carry tools renders the subsequent travel compensable. Here, both conditions are satisfied.

Plaintiffs anticipate that Pacesetter will attempt to rely on *Bernal v. Trueblue, Inc*., 730 F.Supp.2d 736 (W.D. Mich. 2010) for the proposition that Plaintiffs' travel time here is not compensable.  However, *Bernal* is easily distinguished from the case at bar, because in *Bernal* there was "no evidence that any Plaintiff was ever required to transport any equipment 'without which [the customer's business] could not be done.'"[14]  Furthermore, in *Bernal* there was evidence that the defendant used a variety of methods to transport the daily paperwork to its client sites, including mail, fax, or delivery of the work ticket by another employee.  In contrast, here it is undisputed that the DTWs were required to (and did) transport the daily tickets and the tools necessary and integral for each day's work to the customer jobsite each day,[15] and likewise that they transported them back to the labor hall at the end of virtually all work days.

In sum, based on the undisputed facts here, Plaintiffs' travel time to/from the day's assigned worksite and the labor hall is compensable under both the FLSA and FMWA.

### E. <u>Pacesetter's Failure to Provide Drinking Water at the Commercial Boulevard Labor Hall Violated the FLPA.</u>

It is also undisputed that, on the vast majority of workdays within the relevant statutory period, Pacesetter failed to provide drinking water to DTW who were waiting at the Commercial Boulevard labor hall for a job assignment.  As such, Pacesetter violated the FLPA in this regard as well, as a matter of law.

---

[14] *Bernal* specifically noted that the result would be different if the employees were required to transport equipment essential to the performance of the job.  730 F.Supp.2d at 746.  ("Courts have held that travel may be considered an indispensable activity of employment if the employees are required to transport equipment that is essential to the performance of the job."), citing *Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274, 1285–90 (10th Cir.2006); *Sec'y of Labor v. E.R. Field Inc.,* 495 F.2d 749, 751 (1st Cir.1974); *DA & S Oil Well Servicing, Inc. v. Mitchell,* 262 F.2d 552, 554–55 (10th Cir.1958); *see also Spencer v. Auditor of Public Accounts,* No. 88–54, 1990 WL 8034, 1990 U.S. Dist. Lexis 1076 (E.D. Ky. Jan. 30, 1990) (where employees are transporting equipment to the job site, "it can be concluded that the transportation of [ ] equipment, provided by the employer, is work in and of itself.").

[15] To the extent Pacesetter relies on language from *Preston v. Settle Down Enterprises, Inc.,* 90 F. Supp. 2d 1267, 1280 (N.D. Ga. 2000), it is factually distinguishable for the same reasons.

Section 448.24(5)(b) provides that:

*A labor pool that operates a labor hall must provide facilities for a worker waiting, at the labor hall for a job assignment that include: . . . Drinking water.*

Here, it is undisputed that—on the vast majority of days within the relevant statutory period — Pacesetter failed to provide drinking water to DTWs who were waiting for a job assignment while at the Commercial Boulevard labor hall in that Pacesetter failed to provide a drinking fountain (SOF, ¶83), failed to provide a water cooler (*Id.*, ¶84) and with very limited exceptions failed to provide bottled drinking water (*Id.*, ¶¶83, 85).  While Pacesetter contends that its policies dictated that drinking water be made available, it acknowledges that there would be records indicating any/all purchases of same and/or reimbursements to employees who purchased bottled water.  Discovery is now closed however, and they have failed to produce evidence that even a single bottle of water was provided to a DTW at the Commercial Boulevard labor hall, and the Plaintiffs likewise aver that Pacesetter failed to do so. In light of the undisputed record in this regard, Plaintiffs are entitled to summary judgment finding that Pacesetter violated § 448.24(5)(b) of the Labor Pool Act by virtue of its failure to provide drinking water at that labor hall, as required.

**F.  Under the Facts of this Case An Award of Liquidated Damages is Mandatory Under the FLSA and FMWA.[16]**

"Any employer who violates the provisions of section 206 [minimum wages] or section 207 [overtime wages] of this title *shall be liable* to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added). *See Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1272 (11th Cir.2008). "In

---

[16] The FMWA incorporates the FLSA's standards for mandatory imposition of liquidated damages by explicit reference in the statute.  FL Stat. § 448.110(6)(c)1.

any action ... to recover ... unpaid overtime compensation, or liquidated damages, under the [FLSA] ..., if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] ..., the court may, in its sound discretion, award no liquidated damages or award any amount thereof ....“ 29 U.S.C. § 260. “Before a district court may exercise its discretion to award less than the full amount of liquidated damages, it must explicitly find that the employer acted in good faith.” *Joiner v. City of Macon,* 814 F.2d 1537, 1539 (11th Cir. 1987).

    “An employer who seeks to avoid liquidated damages bears the burden of proving that its violation was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.” *Joiner,* 814 F.2d at 1539 (citations and internal quotation marks omitted). The Defendants in this case bear the burden of showing good faith. *See Dybach v. State of Florida Department of Corrections,* 942 F.2d 1562, 1566 (11th Cir.1991). To satisfy the good faith requirement, an employer must show that it acted with both objective and subjective good faith. *Farm Stores Grocery, Inc.,* 518 F.3d at 1272.

    Subjective good faith is satisfied when the employer shows it possessed “an honest intention to ascertain what [the Act] requires and to act in accordance with it.” *Dybach,* 942 F.2d at 1566 (citations omitted). In the instant case, Defendants acknowledge that they did not seek the advice of counsel, and did not proactively seek an opinion from the DOL, an accountant or any other qualified professional, despite the fact that they are in the temporary staffing business and have been for decades. Under these circumstances, the law is clear that Defendants cannot meet their high burden to avoid the mandatory application of liquidated damages.

    The Defendants’ experience and expertise in the industry should have made them aware

of the annual changes in minimum wage and overtime wages and other compensation issues, even if actual (repeated) notice that its pay policies were in violation of the FLSA from the DOL did not. *See Caballero v. Sum Yum Gai, Inc.,* 2011 WL 772841, at *2 (S.D. Fla. Feb. 28, 2011) ("[T]he defendants' experience in the industry" and failure to comply with the FLSA nonetheless, "contradicts a finding of subjective good faith.").  Defendants are in the business of temporary staffing and **provide payroll services to their clients**.[17] SOF, ¶2. Especially in the face of this industry experience and specialization, ignorance or confusion of the law does not refute lack of good faith. *See Barcellona v. Tiffany English Pub,* 579 F.2d 464,469 (5th Cir. 1979) (stating that "[e]ven inexperienced businessmen cannot claim good faith when they blindly operate a business without making an investigation as to their responsibilities under the labor laws."). Here, Defendants failed to satisfy the subjective good faith requirement because they undertook *no investigation* to ascertain their FLSA obligations, notwithstanding the fact that they provide payroll services to other businesses and have a repeated history whereby the DOL has found them in violation of the FLSA, over 500 violations, dating back approximately two (2) decades. SOF, ¶¶86-91.

Moreover, even if the subjective good faith requirement was satisfied, the Defendants must also demonstrate objective good faith. *See Dybach,* 942 F.2d at 1567. This standard is satisfied if the employer had reasonable grounds for believing that its conduct comported with the FLSA and took *affirmative steps to investigate* and ensure that the payment of wages was in conformity with the federal wage laws. *Id.; see also Friedman v. S. Fla. Psychiatric Assocs., Inc.*, 139 F.App'x 183, 186 (11th Cir. 2005) (explaining that good faith "requires some duty to

---

[17] *See* http://www.PPS.com ("PAYROLL SERVICES We love paperwork. With our payroll services division, you can outsource your benefits management, employer tax, payroll and claims administration."); see also https://pps.com/payroll-services/ (detailing payroll services Pacesetter provides to its clients).

investigate potential liability under the FLSA") (quoting *Barcellona,* 597 F.2d at 469.

Defendants acknowledge that they have not consulted a labor and employment attorney, the DOL or a payroll specialist regarding the deductions made for daily transportation to/from their daily jobsites and there is no evidence that they did so with regard to their failure to compensate daily ticket workers for wait and/or travel time. SOF, ¶¶85-91. Consequently, the imposition of liquidated damages is mandatory. *Dybach,* 942 F.2d at 1567 (citation omitted); *Joiner,* 814 F.2d at 1539 (citation omitted); *Caballero*, 2011 WL 772841, at *3 (no good faith absent affirmative steps to ascertain applicable law).

"Confusion of law or applicable minimum wage rate does not constitute objective good faith." *Caballero*, 2011 WL 772841, at *3; *see also Arias v. Alpine Towing, Inc*., 2011 WL 1233229, at *3 (S.D. Fla. Mar. 30, 2011) (reasonable belief in the absence of affirmative steps to ascertain compliance insufficient to avoid mandatory liquidated damages). "[A]n employer may [not] rely on ignorance alone as reasonable grounds for believing that its actions were not in violation of the Act." *Barcellona,* 597 F.2d at 468. In *Joiner,* the court addressed the situation where an exempt employee was no longer exempt from the FLSA requirements due to an amendment of the law. *Joiner,* 814 F.2d at 1539. The court held that from that day forward the city could not reasonably and in good faith believe that the FLSA requirement did not apply, and, therefore, the imposition of liquidated damages was mandatory. *Id* .

Liquidated damages under 29 U.S.C. § 216(b) are mandatory absent a showing of good faith. *Joiner,* 814 F.2d 1539 (citing *EEOC v. First Citizen Bank of Billings,* 758 F.2d 397, 403 (9th Cir.1985), *cert. denied,* 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985)). The Defendants cannot satisfy at least the objective good faith standard with regard to Plaintiffs. Thus, Plaintiffs are entitled to a mandatory imposition of liquidated damages in an amount equal

to their unpaid wages/overtime damages.

## <u>CONCLUSION</u>

For the aforementioned reasons, the Court is due to grant Plaintiffs partial summary judgment, and find that: (1) Pacesetter's deductions for transportation to/from Pacesetter-assigned jobsites each day violated the FLSA and FMWA; (2) Pacesetter's deductions in excess of $3.00 per day for transportation violated the FLPA; (3) All travel time incurred by Plaintiffs traveling to/from the Pacesetter-assigned worksite while carrying the daily ticket and Pacesetter-issued tools and equipment is compensable under the FLSA and FMWA; (4) Pacesetter's failure to provide drinking water at the Commercial Boulevard labor hall violated the FLPA; and (5) Pacesetter is liable for mandatory liquidated damages in an amount equal to the underlying damages due under the FLSA and FMWA.

## <u>REQUEST FOR HEARING</u>

Pursuant to Southern District of Florida Local Rule 7.1(B)(2), Plaintiffs hereby request that the Court set a hearing to provide for oral argument on the instant Motion.  Plaintiffs believe oral argument would be helpful to the Court.  Undersigned counsel believe <u>1-2 hours</u> would be an appropriate amount of time to be reserved for hearing.

## <u>CERTIFICATE OF CONFERRAL</u>

Undersigned Counsel has conferred with counsel for Defendants and is authorized to represent that Defendants' <u>do not oppose</u> this Request for Hearing.

**DATED:**      March 9, 2022           Respectfully submitted,

                        BY:    *s/Andrew R. Frisch*
                                 Andrew R. Frisch, Esq.
                                 Fla. Bar No. 27777
                                 *afrisch@forthepeople.com*

MORGAN & MORGAN, P.A.
8151 Peters Road, 4th Floor
Plantation, FL 33324
Telephone:     (954) WORKERS
Facsimile:      (954) 327-3013

-and-

BY:   *s/Dion J. Cassata*

      Dion J. Cassata, Esq.
      Fla. Bar No. 672564
      *dion@cassatalaw.com*

CASSATA LAW, PLLC
Boca Crown Centre
7999 North Federal Highway, Suite 202
Boca Raton, Florida 33487
Telephone:   (954) 364-7803

*Counsel for Plaintiffs and the Classes/Collectives*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2022, I electronically filed the foregoing with the Clerk of the Court with a copy of the same to be served upon all counsel of record via the CM/ECF system.