UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 20-60192-CIV-AHS

SHANE VILLARINO, *et al.*,

    Plaintiffs,　　　　　　　　　　　　　　　　　　　Class and Collective Action

v.

PACESETTER PERSONNEL SERVICE, INC., *et al.*,

    Defendants.
_____/

**PLAINTIFFS' CORRECTED[1] STATEMENT OF *DISPUTED* MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(In "traditional" stand-alone format in compliance with Local Rule 56.1(a)(2)) Plaintiffs, SHANE VILLARINO, LAURA J. JOHNSON, JEFFREY MONDY, and JEROME GUNN (hereinafter collectively "Plaintiffs"), pursuant to L.R. 56.1(a)(2) of the Southern District of Florida, submit the below Statement of *Disputed* Material Facts in Opposition to Defendants' Motion for Summary Judgment (hereinafter "PSODF")and state:

    1.    Admitted.

    2.    Denied. Because Defendants failed to provide a certified copy of the DOL's investigative record, this assertion is supported solely by unauthenticated hearsay and thus, Defendants have not met their initial burden of proof as to these facts as the movant on summary judgment. *Compare Hotel Employees-Hotel Ass'n Pension Fund v. Timperio,* 622 F.Supp.2d 606, 608 (S.D. Fla. Oct. 15, 1985) (certified copy of the investigative record made in response to a subpoena is admissible).

    Furthermore, in the course of discovery, Plaintiffs requested that Defendants provide all

---

[1] Plaintiffs file this Corrected Statement of Disputed Material Facts in Opposition to Defendants Motion for Summary Judgment because Plaintiffs' original filing contained exhibits that were mis-labeled or inadvertently not labeled due to scrivener's error. Plaintiffs also inadvertently failed to include all pages of the deposition transcripts that were cited herein. Therefore, Plaintiff refiles this Corrected Statement of Disputed Material Facts and corrected exhibits.

1

DOL audit/investigation records for the time period July 17, 2010, to date (*see* Request for Production, attached as **EXHIBIT A**). Defendants failed to produce the full records regarding the Orlando investigation or any records from any of the more than 10 (ten) investigations of Pacesetter, the vast majority of which found one (1) or more FLSA violations, and which combined found more than **500 FLSA violations.** *See* Summary of Information Available on DOL's Enforcement website, attached as **EXHIBIT B** (https://enforcedata.dol.gov/views/search.php).

Moreover, on the face of the hearsay records, it appears that the Orlando investigation was limited to a single issue that the DOL resolved by reference to its internal guidelines, which conflict with the relevant CFR regulation, and which are not due deference. Finally, it appears that the DOL's conclusions were based on the limited facts referenced in the report, which are distinguishable from those at bar.

Specifically, here there is voluminous evidence that the transportation was mandatory, and that Plaintiffs who refused the Pacesetter-assigned transportation were sent home for the day. *See* Deposition of Shane Villarino ("Villarino Dep.") (**EXHIBIT C**), at 44:23-25 ("[W]hen they give you a ticket, it's a must that we get on whatever transportation they tell us to get on right then or we don't go to work."); Deposition of Jerome Gunn ("Gunn Dep.") (**EXHIBIT D**), at 70:10-17 (required to take the Pacesetter-assigned mode of transport); Deposition of Martin Johnson ("Martin Johnson Dep.") (**EXHIBIT E**), at 58:22-59:9, 61:9-11 (when he objected to the assigned mode of transportation Pacesetter sent him home).

Likewise, the DOL's report makes no reference to the fact that daily ticket workers are required to carry their daily ticket and Pacesetter-issued tools to and from the Pacesetter-assigned job site each day. *Compare* Deposition of Dominick Jean Charles ("Charles Dep.") (**EXHIBIT F**) at 41:13-20 (regardless of mode of transport, every daily ticket workers required to transport Pacesetter-assigned tools and daily ticket to/from the job site every day).

Finally, the limited records pertaining to the Orlando investigation do not reference the deductions Pacesetter makes/made to workers' pay for transportation and/or equipment.

3. Admitted. However, employees and employers cannot contract out of the FLSA's application (and its minimum and overtime wage requirements) across any given "workweek." *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (Employees' rights under the FLSA "cannot be abridged by contract or

otherwise waived."); see also 29 C.F.R. § 778.104 ("It is [] necessary to determine the hours worked and the compensation earned…on a weekly basis.")

4. Denied. The FLSA imposes a non-delegable duty on employers, **not** employees, to maintain accurate records of the time worked by employees. 29 U.S.C. § 211(c) ("Every employer subject to any provision of this chapter…shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records…").

Notwithstanding the FLSA's record-keeping requirement, Pacesetter admits it failed to track wait/travel time and that it relied on its clients to record Plaintiffs' time worked at the daily job sites. *See* Response to First Request for Admissions (**EXHIBIT G**), ¶¶6-8 ("Defendant admits that Defendant does not record the time between receipt of the Daily Time Ticket and check-in with the Site Supervisor."); D.E. 173-1, ¶7 (Acknowledging Pacesetter does not record DTWs' hours worked and that Pacesetter's customer and **not** its employees record the hours worked on-site each day).

5. Admitted. Plaintiffs testified that they did not read this pre-printed language on the Daily Time Ticket forms, and that they were required to sign the Daily Time Ticket in order to get paid each day. Villarino Dep. at 70:2-5, 16-17 ("I never read that fine print. But… [w]e have to sign this before we get paid."); Gunn Dep. at 40:1-22; Deposition of Kendall Williams ("Williams Dep.") (**EXHIBIT H**), at 42:3-11.

6. Denied. The unrebutted testimony here confirms Plaintiffs repeatedly complained and ***Pacesetter did nothing*** in response to their repeated complaints, or told them they could find someplace else to work if they did not like it. Villarino Dep. at 125:14-24, 126:20-24 (when he complained Pacesetter's management responded "[t]here's nothing I can do about it."); Deposition of Laura Johnson ("Laura Johnson Dep.") (**EXHIBIT I**) at 93:9-10 (no response to complaints); Gunn Dep. at 44:4-20 (complained but Pacesetter did not do anything in response); Williams Dep. 61:16-62:12 (same).

7. Denied. *See* response to ¶6, *supra*.

8. Denied. There is no evidence that Pacesetter provided the phone number for Defendants' Human Resources Department. The cited declaration states "[m]aybe twenty times a year, I receive a phone call from a daily ticket worker…" Furthermore, there is no evidence any of the supposed roughly twenty (20) instances concerns a daily ticket worker at the Fort

Lauderdale branch.

9. Denied. Pacesetter admits it failed to track wait/travel time and that it relied on its clients to record Plaintiffs' time worked at the daily job sites, and that the only time credited was time worked at the assigned daily job site. *See* **EXHIBIT G**, ¶¶6-8 ("Defendant admits that Defendant does not record the time between receipt of the Daily Time Ticket and check-in with the Site Supervisor.").

10. Denied. The unrebutted testimony here confirms Plaintiffs repeatedly complained and ***Pacesetter did nothing*** in response to their repeated complaints, or told them they could find someplace else to work if they did not like it. Villarino Dep. at 125:14-24, 126:20-24 (when he complained Pacesetter's management responded "[t]here's nothing I can do about it."); Laura Johnson Dep. at 93:9-10 (no response to complaints); Gunn Dep. at 44:4-20 (complained but Pacesetter did not do anything in response); Williams Dep. 61:16-62:12 (same).

11. Denied, to the extent this statement is intended to include wait/travel time. *See* ¶4, *supra.*

12. Denied. It is unclear whether this statement is intended to pertain to all time at the labor hall or just time prior to receipt of a daily time ticket.

To the extent the statement is intended to encompass all time spent at the labor hall, including the time after a DTW receives his or her daily time ticket and prior to the departure of his or her Pacesetter-assigned daily transport, this statement is denied.

The Plaintiffs testified that they were unable to leave the labor hall after they received their daily time ticket each day, prior to the departure of their assigned transport, and had to wait at the labor hall until the transport was ready to leave. Laura Johnson Dep. at 56:14-17 (had to wait), 58:5-22 (waiting anywhere between 30 minutes to 3 hours but unable to use time for personal pursuits because did not know when transport would depart so could not use the time for personal pursuits); Deposition of Gloria Hernandez ("Hernandez Dep.") (**EXHIBIT J**) at 24:20-25:1 (after assigned daily time ticket, workers had to wait 20-30 minutes until Pacesetter rounded up everyone for the transport assigned by the dispatcher); Dowdy Dep. (**EXHIBIT K**) at 23:5-15 (after receipt of ticket had to wait for everyone going on same transport to get tickets/tools and meet up before they could depart).

13. Denied. The purported PPS policies, as submitted are unauthenticated hearsay,

4

because they are offered for the truth of the matter asserted.

Furthermore, Pacesetter told Plaintiffs, and Plaintiffs understood that they would be paid from the time they received a daily time ticket until the time they returned their daily time ticket and got paid each day. Hernandez 15:10-16:5 (Pacesetter told DTWs they would be paid from time they punch in at labor hall in the morning until time they return in afternoon).

14. Denied. There is **no evidence** that any daily ticket worker chose their mode of transportation on any work day. In fact, the sole evidence demonstrates the opposite is true. Martin Johnson Dep. at 58:17-21 ("You don't choose."); Laura Johnson Dep. at 49:1-10 (workers do not choose their mode of transport). Pacesetter asks each daily ticket worker each day whether they have a car. *See* Kiosk screenshots attached as **EXHIBIT L**); Laura Johnson Dep. at 49:1-10 (Kiosk just asks if they have their own car.). If they have a car they are required to drive co-workers to and from the job site. Deposition of John Anthony Osorio ("Osorio Dep.") (**EXHIBIT M**), at 15:6-10 (not allowed to drive own vehicle to job site without taking co-workers and never did), 21-23 ("Either I take them or I don't go. Because they didn't want you driving by yourself."). If they do not have a car, Pacesetter assigns them transportation to/from the job site. Martin Johnson Dep. at 57:8-10.

To the extent a daily ticket worker refuses the Pacesetter-assigned transportation for any reason, Pacesetter sends them home for the day. Martin Johnson 58:22-59:9, 61:9-11 (When he objected to assigned transport, Pacesetter sent him home.)

Plaintiffs testified that they understood the Pacesetter-assigned transportation was mandatory. Villarino Dep. at 42:13-17, 44:14-19, 44:23-25 ("[W]hen they give you a ticket, it's a must that we get on whatever transportation they tell us to get on right then or we don't go to work."); Laura Johnson Dep. at 92:3-5 (could not just take the bus to work site, had to take Pacesetter-assigned transport); Gunn Dep. at 70:10-17 (required to take the Pacesetter-assigned mode of transport); Martin Johnson Dep. at 58:17-21 ("You don't choose.").

15. Denied. Pacesetter gets information from each customer regarding tools/equipment needed for each job and then issues the tools/equipment to each worker. Deposition of Alexander Alvarez Camilo ("Camilo Dep.") (**EXHIBIT N**), at 24:5-15; Villarino Dep. at 82:20-22 ("[T]he office… [t]hat's where you get tools from."), 93:4-8 (even when a job site has tools, still have to bring Pacesetter-issued tools); *see also* D.E. 556-1, ¶4 ("Company shall furnish applicant with any and all safety equipment requested by customer to whom they

5

are assigned or, as needed, in the sole judgment of the Company.").

While workers on a weekly ticket (i.e. non-daily ticket workers) may bring their own tools to job sites, daily ticket workers receive Pacesetter-issued equipment/tools every work day. Laura Johnson Dep. at 54:11-13, 69:13-15 (Pacesetter issued any equipment needed for the job); Hernandez Dep. at 26:14-20, 27:3-20 (Pacesetter issues all DTWs equipment every work day).

Pacesetter charges workers to rent equipment required at the work sites, including work boots. Villarino Dep. at 106:18-25 (Pacesetter charges to rent work boots); Laura Johnson Dep. 55:11-56:9 (charged $3-$5 per day to rent work boots); Gunn Dep. at 22:9, 31:5, 64:13-16, 65:14-15, 66:9-13) (charged $5 per day to rent work boots); Williams Dep. at 57:8-13, 58:1-7, 59:3-11 (charged $5 to rent work boots multiple times; other co-workers charged $5 rental fee for boots also); *see also* Deposition of Salvatore Parlante ("Parlante Dep.") (**EXHIBIT O**), at 92-98 (acknowledging unaware of any item with replacement cost of .75¢ and unable to explain such equipment charges in Pacesetter's records).

16. Denied. The Pacesetter-issued equipment and tools are required every day to perform that day's work. Parlante Dep. 123:23-124:17 (required to bring tools to/from job site every day); Camilo 24:16-21; Villarino Dep. at 48:23-49:11 ("You can't go to the job site without these products…If I show up at a job site without my safety equipment and tools, you can't work that day."), 91:18-22 (equipment "mandatory"); Laura Johnson Dep. at 54:11-13 (had to bring Pacesetter-issued tool to every job site as a daily ticket worker); D.E. 556-1,¶4.

17. Denied. *See* PSODF, ¶16, *supra.*

18. Admitted.

19. Denied. Multiple Plaintiffs testified that Pacesetter required them to be at the labor hall. Laura Johnson Dep. at 45:12-17; Gunn Dep. at 51:19-25 (sometimes they tell you to be there at a certain time); Williams Dep. 48:18-22 (told to be there at a specific time in the morning); Martin Johnson Dep. 45:23-25 (same).

20. Denied. No daily ticket work may proceed direct to the job site from their homes and there is **no evidence** any Plaintiff ever did so.

All daily ticket workers must go to the labor hall to receive their daily time ticket each day. *See* Defendants' Statement of Material Facts, *infra,* ¶1; Parlante Dep. at 127:4-12 (daily ticket workers required to get a new daily time ticket every day); Gunn Dep. at 52:10-18 (Pacesetter does not give out daily time tickets ahead of time or prior to the date of work); Laura

Johnson Dep. 46:19-22 (Repeat ticket just means Pacesetter tells you what time to report to the office in the morning, not that you can go straight to the job site.).

21.    Denied. If a daily ticket worker has a car they are required to drive co-workers to and from the job site. Osorio Dep. at 15:6-10 (not allowed to drive own vehicle to job site without taking co-workers and never did), 21-23 ("Either I take them or I don't go. Because they didn't want you driving by yourself.").

The Plaintiffs testified that they were unable to leave the labor hall after they received their daily time ticket each day, prior to the departure of their assigned transport. Hernandez Dep. at 24:20-25:1 (after assigned daily time ticket, workers had to wait 20-30 minutes until Pacesetter rounded up everyone for the transport assigned by the dispatcher); Dowdy Dep. at 23:5-15 (after receipt of ticket had to wait for everyone going on same transport to get tickets/tools and meet up before they could depart).

Workers are not free to choose their mode of transportation. Villarino Dep. at 42:13-17, 44:14-19, 44:23-25 ("[W]hen they give you a ticket, it's a must that we get on whatever transportation they tell us to get on right then or we don't go to work."); Laura Johnson Dep. at 92:3-5 (could not just take the bus to work site, had to take Pacesetter-assigned transport); Gunn Dep. at 70:10-17 (required to take the Pacesetter-assigned mode of transport); Martin Johnson Dep. at 58:17-21 ("You don't choose.").

22.    Denied. The Pacesetter-issued equipment and tools are required every day. Parlante Dep. 123:23-124:17 (required to bring tools to/from job site every day); Camilo 24:16-21; Villarino Dep. at 48:23-49:11 ("You can't go to the job site without these products…If I show up at a job site without my safety equipment and tools, you can't work that day."), 91:18-22 (equipment "mandatory"); Laura Johnson Dep. at 54:11-13 (had to bring Pacesetter-issued tool to every job site as a daily ticket worker); Dowdy Dep. at 25:4-14 (had to take tools to job site every day and tools always used); D.E. 556-1, ¶4.

23.    Denied. *See* Response to ¶22, *supra*.

24.    Admitted. In addition to these items, all daily ticket workers are required to pick up and carry a variety of Pacesetter-issued tools and safety equipment to and from every job site every day, regardless of mode of transport. Parlante Dep. 112:17-22, 123:23-124:17; Camilo Dep. at 24:16-21 (every worker must wear a Pacesetter-issued high visibility vest every day), 25:2-15 (hardhats, safety vest, brooms, shovels, rakes, pickaxes, post hole diggers), 28:11-19;

7

Charles Dep. at 41:13-20; Villarino Dep. 91:18-22 ("I can't recall one single job site—you would never ever go on a job site without a hardhat, vest, or broom and shovel. That's mandatory."); D.E. 556-1, ¶4.

25.     Denied. Daily ticket workers are required to load/carry all Pacesetter-assigned tools and equipment to and from every job site every day, regardless of mode of transport. Camilo Dep. at 24:16-21 (every worker must wear a Pacesetter-issued high visibility vest every day), 25:2-15 (hardhats, safety vest, brooms, shovels, rakes, pickaxes, post hole diggers), 28:11-19; Charles Dep., at 41:13-20; Villarino Dep. 91:18-22 ("I can't recall one single job site—you would never ever go on a job site without a hardhat, vest, or broom and shovel. That's mandatory."); D.E. 556-1, ¶4.

In addition, daily ticket workers are required to carry the Pacesetter-issued daily time ticket, containing that day's instructions, to/from the job site every day. Deposition of Horace Smith ("Smith Dep.") (**EXHIBIT P**), at 29:22-30:17; Parlante Dep. at 112:17-22.

26.     Denied. "[C]onclusory allegations without specific supporting facts have no probative value." *See Leigh v. Warner Bros.,* 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985)). *See* PSODF, ¶¶12-25, *supra.*

27.     Denied. Daily ticket workers are required to return to the Pacesetter labor hall in the afternoon/evening at the end of each work day. If daily ticket workers fail to return the same day, Pacesetter fines/charges for equipment. Camilo Dep. at 67:15-22; Charles Dep. at 25:2-24; Villarino Dep. at 49:24-50:1, 146:7-14 ("[T]hey require us to come back that day and bring back their tools and supplies—the same day. Not the next day."); 115:15-116:19 (managers told them they had to return at the end of the day); Laura Johnson Dep. 86:23-87:6 (even when office is closed people return and throw tools over the fence to make sure the tools are returned the same day so they are not charged); Gunn Dep. at 80:14-25 (required to return at end of each day); Martin Johnson Dep. 70:2-20 (same); Hernandez Dep. 32:1-14 (could not go straight home from the job site). *See* attached Declarations of Plaintiffs Calvin Lewis, Wilfranse Telusme, Kendall Williams, Jerome Gunn, Roderick Marchum, and Hugh Motely detailing fines incurred (as a percentage of daily pay) of between 7% and 23% for failure to bring tools/equipment back to the labor hall at the end of the day. *See* Calvin Lewis Decl., ¶20 (**EXHIBIT Q**); Wilfranse Telusme Decl., ¶20 (**EXHIBIT R**); Kendall Williams Decl., ¶21 (**EXHIBIT S**); Jerome Gunn, ¶21

**(EXHIBIT T);** Roderick Marchum, ¶20 **(EXHIBIT U)**; and Hugh Motely Decl., ¶20 **(EXHIBIT V)**.

28. Denied. Daily ticket workers are required to return the same day. *See* Plaintiffs' Statement of Disputed Facts ("PSODF"), ¶27, *supra.*

29. Denied. There is no evidence that any Plaintiff ever chose to return to the Pacesetter labor hall at a later date. Gunn (whose deposition Defendants cite) testified that Pacesetter told him that he had to return the same day and that he never went straight home or somewhere else from the job site. Gunn Dep. at 81:1-9.

30. Denied. If daily ticket workers do not return the Pacesetter-issued tools/equipment at the end of the day the tools/equipment is issued they are charged/fined. Smith Dep. at 33:14-23, 24:10-16; *see also* Villarino Dep. at 49:24-50:1, 146:7-14 ("[T]hey require us to come back that day and bring back their tools and supplies—the same day. Not the next day.").

31. Denied. "[C]onclusory allegations without specific supporting facts have no probative value." *See Leigh v. Warner Bros.,* 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985)).
To the extent necessary, Plaintiffs respond by incorporating PSODF ¶¶12-25.

32. Denied. When they began working for Pacesetter, Plaintiffs understood and expected that they would be paid for travel time. Osorio Dep. at 14:4-6; Hernandez Dep. 15:10-16:5 (Pacesetter told them they would paid from the time they punch in at labor hall until they return).

33. Admitted. Pacesetter also charges if equipment is not returned on the same day it is issued by Pacesetter. Camilo Dep. at 67:15-22; Charles Dep. at 25:2-24; Smith Dep. at 34:10-16; Laura Johnson Dep. 86:23-87:6 (even when office is closed people return and throw tools over the fence to make sure the tools are returned the same day so they are not charged).

34. Denied. Defendants' only support for this claim is reference to a one-page document entitled "PPS Borrowed Equipment Policy," *See* D.E. 556-18 (DEFENDANT000031299) (List of deductions for various types of equipment as of 2020)."

Exhibit 18 (D.E. 556-18), however, merely details the amounts that Pacesetter ostensibly charges workers for unreturned/damaged equipment. Defendants have provided no evidence in support of summary judgment whatsoever as to what the actual purchase cost to Defendants was

regarding the tools/safety equipment at issue.

35. Denied. Pacesetter's records are replete with thousands of examples of transportation deductions in excess of $3.00 per day. *See* **EXHIBIT W.**

Likewise, Plaintiffs testified that Pacesetter repeatedly deducted more than $3.00 per day for transportation. Gunn Dep. 72:3-25 (Charged $1.50 for an uber to job site and $3.00 for van ride back to the labor hall. Complained and nothing done.); Hernandez Dep. 29:9-18 ("Sometimes it was three dollars. Sometimes it was more."); Dowdy Dep. at 18:7-9 ("$3 a ride. In some cases I was charged over $3 a ride.").

36. Denied. "[C]onclusory allegations without specific supporting facts have no probative value." *See Leigh v. Warner Bros.,* 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985)).

A small minority of the excess transportation charges are attributable to bus passes daily ticket workers purchased for personal use. However, the vast majority of these charges in excess of $3.00 per day were not. *See* Wilfrance Telusme Decl. ¶¶ 24, 25 ("In total, Pacesetter charged me more than $3.00 per day for transportation on at least one hundred and forty-nine (149) occasions" (citing Exhibit 1 to his Declaration)…"None of these charges in excess of $3.00 were for bus passes purchased for my own personal use outside of work."); Kendall Williams Decl. ¶¶25-26 ("Pacesetter charged me more than $3.00 per day for transportation on at least thirteen (13) occasions," with only one such purchase, on October 21 2019, being for a personal bus pass); Martin Johnson Decl. (**EXHIBIT X**) ¶¶ 22-24 (charged over $3 per day for transportation on at least four occasions; never purchased a bus pass for personal use); Calvin Lewis Decl. ¶¶ 23-25 (charged over $3 per day for transportation on at least 29 occasions; never purchased a bus pass for personal use).

Every such instance is noted in Defendants' records as such. *See id.;* Smith Dep. at 50:23-51:6.

Pacesetter acknowledges that--in the absence of a notation in its records--it is impossible to say if any excess charge was for anything other than daily transport to/from the day's designated job site. Parlante Dep. at 78:24-79:4, 82-85, 86:4-20, 104:1-8, 110:4-13.

Pacesetter's long-time dispatcher at the Fort Lauderdale labor hall cannot recall a single instance when a daily ticket worker purchased a bus ticket for personal use. Charles Dep. at 29:6-12.

37. Denied.

While some Plaintiffs mistakenly believed they had not been charged in excess of $3.00 per day for transportation, Defendants' own records clearly demonstrate otherwise. *See* **EXHIBIT W.**

With regard to Gunn, he testified that he complained when he was charged more than $3.00 for transportation and nothing was done to fix it. Gunn Dep. at 72:3-9, 20-25.

38. Denied. *See* **EXHIBIT W**; *see also* Wilfrance Telusme Decl, ¶¶ 24, 25 ("In total, Pacesetter charged me more than $3.00 per day for transportation on at least one hundred and forty-nine (149) occasions" (citing Exhibit 1 to his Declaration)…"None of these charges in excess of $3.00 were for bus passes purchased for my own personal use outside of work."); Kendall Williams Decl., ¶¶25-26 ("Pacesetter charged me more than $3.00 per day for transportation on at least thirteen (13) occasions," with only one such purchase, on October 21 2019, being for a personal bus pass); Martin Johnson Decl., ¶¶ 22-24 (charged over $3 per day for transportation on at least four occasions; never purchased a bus pass for personal use); Calvin Lewis Decl., ¶¶ 23-25 (charged over $3 per day for transportation on at least 29 occasions; never purchased a bus pass for personal use).

39. Admitted.

40. Denied. "[C]onclusory allegations without specific supporting facts have no probative value." *See Leigh v. Warner Bros.,* 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985)).

A small minority of the excess transportation charges are attributable to bus passes daily ticket workers purchased for personal use. *See* PSODF, ¶38, *supra.* Every such instance is noted in Defendants' records as such. *See id*.; Smith Dep. at 50:23-51:6.

Pacesetter acknowledges that--in the absence of a notation in its records--it is impossible to say if any excess charge was for anything other than daily transport to/from the day's designated job site. Parlante Dep. at 78:24-79:4, 82-85, 86:4-0, 104:1-8, 110:4-13.

41. Denied. There was no bathroom at the Commercial Boulevard location at any time relevant to this case (2015 to 2020). Villarino Dep. at 26:5-9 ("[I]t was known for us to go behind the building…we brought our own toilet paper, because there was no bathroom."), 28:15-25, 32:3-9; Laura Johnson Dep. at 17:15-17, 18:23-19:21 (no bathroom ever from 2017-2020),

11

97:9-11 ("I would ask 'Can I use the restroom,' and they said 'You had to go to Walgreens.'"); Gunn Dep. at 24:15-16 (bathroom out of order for the entirety of his employment), 24:23-24 ("We used the bathroom outside."); Williams Dep. at 21:9-22, 23:7-24 (no bathroom); Osorio Dep. at 11:5-18 (no bathroom available for daily ticket workers); Hernandez Dep. at 10:20-12:23 (no bathroom from 2015 on); Dowdy Dep. at 31:13-21 (no bathroom from 2013 on).

42. Denied. *See* PSODF, ¶41, *supra*. Although the building originally had two restrooms, the bathroom that was supposed to be for the daily ticket workers was converted into a tool room. *See* Kendall Williams Decl., ¶¶43-45 (authenticating photos of the supposed "restroom"). Pacesetter ripped out the toilet and the bathtub completely. Dowdy Dep. at 12:12-20. There was no bathroom at the Commercial Boulevard labor hall from 2013 on. *Id.* at 31:13-21.

43. Denied. Plaintiffs testified that there was no bathroom available for them to use and they had to go to the bathroom outside or at a store down the block from the labor hall. *See* PSODF, ¶¶41, 42, *supra*.

There was a bathroom behind a glass partition and behind a locked door. Defendants acknowledge that bathroom was solely for management and not for use by daily ticket workers. Charles Dep. at 33:24-34:5, 41:9-12; Parlante Dep. at 136:1-23 (never saw a daily ticket worker using the management bathroom). This bathroom was frequently out of order and, to the extent daily ticket workers asked to use the management bathroom, they were refused and told to go to the bathroom elsewhere. Villarino Dep. at 23:15-22 ("We were not allowed to use the bathroom inside. We all went on the outside."); Smith Dep. 41-43 (denied use of the management bathroom on multiple occasions); Laura Johnson Dep. at 97:9-11 ("I would ask 'Can I use the restroom,'" and they said 'You had to go to Walgreens.'"); Williams Dep. at 21:9-22:22, 23:7-24) (told no when asked to use bathroom).

44. Denied. *See* PSODF, ¶¶41-43, *supra*.

45. Denied. *See* PSODF, ¶¶41-43, *supra*. There was no bathroom for daily ticket workers. Martin Johnson Dep. at 19:13-14; Dowdy Dep. 31:13-21; Osorio 11:5-18; Laura Johnson Dep. 17:5-17, 18:23-19:21, 20:1-3.

Pacesetter provided a porta potty for 2 days only. It was the only restroom ever provided to daily ticket workers during the relevant time period. Villarino Dep. 24:23-25 ("They moved a movable porta-pot out front for two days only. It was only out from for two days. That's the

only bathroom we ever had.").

46. Denied. There was **never** a bathroom available for daily ticket workers at the Commercial Boulevard labor hall during the relevant period of time, with the exception of the 2 days when they had a porta potty outside. *See* PSODF, ¶¶41-45, *supra*.

47. Admitted.

48. Denied. While Pacesetter contends its policy is to provide drinking water, Pacesetter has provided no evidence of water in any form (ie. water bottles, 5-gallon cooler containers, etc.) ever being regularly delivered to or purchased by the Fort Lauderdale labor hall, or of any water fountain ever being present in the building. While this Paragraph claims "Defendants have provided receipts for purchases of bottled water disbursed to Plaintiffs at the Fort Lauderdale location" and site to Ex. 22 of their SOF (DEFENDANT0093633),that (hearsay) record does not, on its face, demonstrate a single purchase or delivery of water attributable to the Fort Lauderdale labor hall.

Pacesetter itself acknowledges that there was no water cooler or water fountain at the Commercial Boulevard labor hall at any time relevant to this lawsuit. Parlante Dep. at 141:10-13 (no water cooler); Camilo Dep. at 60:2-8 (no water cooler and no water fountain); Martin Johnson Dep. at 19:5-8 (same); Gloria Hernandez Dep. at 10:15-17 (same).

Moreover, there is no evidence that Pacesetter had bottles available to daily ticket workers and virtually all witnesses testified there was no bottled water available for daily ticket workers on any date during the relevant time period. Charles Dep. at 36:6-13 (Pacesetter did not have bottled water for daily ticket workers); Villarino Dep. at 23:3-10, 31:13 (no water, no water fountain, no water cooler); Williams Dep. at 19:18-25 (same); Osorio Dep. 11:2-4 (no water bottles available); Dowdy Dep. at 12:6-8 (same).

**DATED:** May 2, 2022         Respectfully submitted,


BY:   *s/Andrew R. Frisch*
         Andrew R. Frisch, Esq.
         Fla. Bar No. 27777
         *afrisch@forthepeople.com*

MORGAN & MORGAN, P.A.
8151 Peters Road, 4th Floor
Plantation, FL 33324

13

        Telephone:    (954) WORKERS
        Facsimile:    (954) 327-3013

-and-

BY: *s/Dion J. Cassata*

    Dion J. Cassata, Esq.
    Fla. Bar No. 672564
    *dion@cassatalaw.com*

CASSATA LAW, PLLC
Boca Crown Centre
7999 North Federal Highway, Suite 202
Boca Raton, Florida 33487
Telephone:   (954) 364-7803

*Counsel for Plaintiffs and the Classes/Collectives*


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 2, 2022, I electronically filed the foregoing with the Clerk of the Court with a copy of the same to be served upon all counsel of record via the CM/ECF system.

                */s/Andrew R. Frisch*
                Andrew R. Frisch