## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:20-CIV-60192-AHS

SHANE VILLARINO, *et al.*,

     Plaintiffs,

v.

PACESETTER PERSONNEL SERVICE, INC., *et al.*,

     Defendants.

_____/

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

Defendants Pacesetter Personnel Service, Inc., Pacesetter Personnel Service of Florida, Inc., Florida Staffing Service, Inc., and Tampa Service Company, Inc., (collectively, "Defendants" or "Pacesetter"), submit this Reply ("Reply") in Support of Defendants' Motion for Summary Judgment [D.E. 555] (the "Motion").

## INTRODUCTION

Plaintiffs repeatedly try to present—or mistake—their own choices for requirements. Here, Plaintiffs *choose* to report to a central meeting spot, *choose* whether or not to supply their own tools, *choose* whether or not to take Pacesetter-coordinated transportation (and consequently choose to wait for it), *choose* whether or not to return to the labor hall at the end of the day, and similarly *choose* how to spend any of any of their wait time for voluntary transportation. Many of the Plaintiffs make the same choices every time they visit Defendants' labor halls; but choices, no matter how often repeated, are still choices. Repetition does not nullify voluntariness.

The nature of daily labor is that day laborers choose to work daily shifts with no ongoing obligation in order to have a flexible source of income. Against this background fact, showing up at a labor hall in the morning—on some days, but not others, with weeks or months in between visits—cannot be a requirement. It is instead a choice: "[a]rriving at a business on one's own initiative seeking employment does not trigger the protection of the FLSA." *Preston v. Settle Down Enterprises, Inc.,* 90 F. Supp. 2d 1267, 1280–81 (N.D. Ga. 2000).

Plaintiffs' allegations of violations of the Florida Labor Pool Act are speculative, lacking specific instances or confirming details, and instead rely on the self-serving testimony of the interested Plaintiffs. This lack of evidence does not meet Plaintiffs' burden of proof, and consequently Defendants' Motion for Summary Judgment should be granted as to Plaintiffs' FLPA and FLSA claims.

## RELEVANT FACTS

Plaintiffs attempt to shift attention away from the declarations of daily ticket workers, but Plaintiffs' own testimony shows that they agree with many of Defendants' points. For example, **transportation is voluntary and not all daily ticket workers take Pacesetter-coordinated transportation**. The "comprehensive employee transport system"—which Plaintiffs refer to using an acronym they created in order to inflate its importance—is no more than this: for some workers, who choose to participate, Defendants will coordinate travel to the job site.[1] Not all workers take

---

[1] [D.E. 520 at 4, citing to 520-7] (Transportation Agreement) (stating that Pacesetter only provides transportations "options," and further stating that it is the daily ticket worker's responsibility to arrive on time at the job site); [D.E. 173-17] (J. Masterson Decl. ¶ 10) ("Maybe once a month I'll take my own car. I've never had a coworker ride with me."); K. Williams Dep. Tr. at 33:14 – 34:22 (stating he could have told them he'd rather drive himself without coworkers, but chose not to) (attached as Ex. 1). Additionally, all Plaintiffs signed the Transportation Agreement, which states that "I understand and agree that I have the following options I may choose regarding transportation" and lists "own transportation, public transportation, transportation provided by Pacesetter or transportation provided by a co-worker as the options." [D.E. 520-7.]

the Pacesetter-coordinated travel.[2] Nor is the Pacesetter-coordinated transportation for Pacesetter's benefit.[3] As stated by Pacesetter staff, "The customers will never tell us, you know, workers have to be dropped off." Ex. 2, A. Bonilla Dep. at 64:22-23. Ms. Bonilla further stated that "we don't use that as a sales pitch." Ex. 2, A. Bonilla Dep. at 61:20-25. This is because Pacesetter-coordinated transportation, which is provided as a voluntary courtesy to some of the daily ticket workers, is for the daily ticket worker's benefit. Workers are free to take other forms of transportation.[4] Contrary to what Plaintiffs allege, there is evidence that daily ticket workers select their method of transportation.[5]

Some daily ticket workers wait in the labor hall for Pacesetter-coordinated transportation because they have chosen to take Pacesetter-coordinated transportation.[6] It is similarly a choice— whether to pursue only daily tickets, not weekly or repeat tickets—which results in daily travel from the labor hall to the job site: those daily ticket workers with repeat ticket may proceed straight to the job site.[7] Further, any charges for transportation are at the election of the daily ticket worker,

---

[2] *Id*. K. Williams 33:14-18 (stating that a few times he drove his own car).

[3] Plaintiffs claim that "the transportation of the DTWs [Daily Ticket Workers] is part and parcel of the very service and product Pacesetter provides to its clients," (Motion at 9) and yet cannot identify a single quote letter or contract, of the approximately 25,000 produced, which identifies any job-specific transportation guarantees or provisions—nothing but the general marketing language which appears on Defendants' quote letter. *See* Pls SMF ¶¶ 75-80.

[4] *See* the Transportation Agreement, which is signed by all daily ticket workers, and states that "I understand and agree that I have the following options I may choose regarding transportation" and lists "own transportation, public transportation, transportation provided by Pacesetter or transportation provided by a co-worker as the options." [D.E. 520-7.]

[5] [D.E. 173-17] (J. Masterson Decl. ¶ 10) ("Maybe once a month I'll take my own car. I've never had a coworker ride with me.").

[6] Supra FN 1.

[7] [D.E. 536-9] (M. Plotkin Decl. ¶ 13).

and not applied due to any policy of Pacesetter's.[8] Daily ticket workers receive equipment if they elect not to provide their own.[9] Similarly, daily ticket workers are not required to return to the labor hall on the same day they worked.[10]

## MEMORANDUM OF LAW

A. **Plaintiffs' arguments that certain of Defendants' evidence supporting summary judgment is "inadmissible hearsay" is without merit.**

Plaintiffs cite no case law to support their novel claim that any declaratory testimony from a party is somehow inadmissible. *See* [D.E. 583 at 4] ("Response") (referencing "self-serving conclusory declaration testimony"). If parties could not testify on their own behalf, Plaintiffs would have no testimony to offer—since Plaintiffs' evidence consists almost entirely of varying,

---

[8] [D.E. 536-10] (H. Smith Dep. Tr. at 48:13-49:11); [D.E. 536-6] (A. Camilo Dep. Tr. at 27:5-28:10); [D.E. 521-4 at 30] (comments on ticket report noting "3x bus passes").

[9] [D.E. 536-2] (M. Johnson Dep. Tr. at 70:13-19) ("Q. Okay. Could you turn in the tool the next day?" A. "I mean, you can but who wants to lie around tools all day."); [D.E. 290-16] (J. Klose Decl. ¶ 11) ("When I bring in my ticket, I return my supplies."); [D.E.536-8] (H. Motley Dep. Tr. at 39: 8-19) (Q. "Has there ever been a time that you did not go back to the office that night?" A. "Yes…[s]o then you're stuck with it at the office with your tool and shovel."); [D.E.536-9 ] (G. Hernandez Dep. Tr. at 33:3-9) ("And number one, you would have to carry all the tools with you everywhere. You're carrying a heavy shovel, a heavy broom, heavy equipment, hardhat, all of this. Why would you go home? You got to go back to the office and turn all that in."). [D.E. 536-4](J. Gunn Dep. Tr. at 64:24-25) (he would bring his own hardhat); [D.E. 536-3] (S. Villarino Dep. Tr. at 83:6) (he would bring his own gloves); [D.E. 536-1] (L. Johnson Dep. Tr. 52:21-11 ("on occasion" she brings her own equipment); [D.E. 173-24] (R. Davis Decl. ¶ 7) ("I used to bring my own equipment"). Pacesetter does not charge for equipment rentals at any of its branches. [D.E. 536-9] (Decl. of M. Plotkin at ¶ 11).

[10] S. Villarino Dep. tr. at 154:2-12 ("But, normally, we go right back to the office when we're done. But there are a couple times when people don't want to go back to the office and they'll let them out of the car on the side of the road. Sure."); Some daily ticket workers choose to return the same day to be paid immediately. [D.E.556-11] (K. Williams Dep. Tr. at 60:8-11) ("I always went back to Pacesetter…Because I wanted to turn my stuff in and I want to get paid"); [D.E. 556-9] (G. Hernandez 3215 - 33:4) ("as far as me, I want to get paid."). Other daily ticket workers choose to return to the Pacesetter labor hall at a later date. [D.E. 556-12] (J. Gunn Dep. Tr. at 81:18-24).

at times contradictory, testimony from Plaintiffs themselves. Additionally, Rule 56 itself contemplates reliance on affidavits and declarations. Fed. R. Civ. Proc. 56. Specifically:

(c) PROCEDURES.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials

…

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Plaintiffs' argument that Defendants cannot rely on declarations is absurd: the rule itself contemplates affidavits and declarations filed in support of a motion for summary judgment.

Plaintiffs also claim that the 2018 Department of Labor ("DOL") report is hearsay. *See* Response at 2 (citing to *Hotel Employees-Hotel Ass'n Pension Fund v. Timperio,* 622 F. Supp. 2d 606, 608 (S.D. Fla. Oct. 15, 1985)). It is not. The case that Plaintiffs cite held that "reports generated and compiled in the regular course of Labor Department law enforcement investigations have been held to be admissible in private cases." *Hotel Emps.-Hotel Ass'n Pension Fund v. Timperio*, 622 F. Supp. 606, 608 (S.D. Fla. 1985). In other words, the case cited by Plaintiffs hold that DOL reports are admissible.

Despite arguing that DOL reports are inadmissible, Plaintiffs then argue that the DOL reports that they wish to introduce *are* admissible. *See* Response at 2. Plaintiffs do not explain this convenient contradiction. Plaintiffs further claim that Defendants concealed information regarding other DOL reports but, as communicated to Plaintiffs weeks ago, Defendants explicitly limited their discovery responses and corporate representative's testimony to investigations occurring within Florida in the five years preceding the instant suit—and Plaintiffs never complained or

sought to compel a further response.[11]. [D.E. 559-12.] The violations that Plaintiffs claim are relevant occurred in Texas in 2004, outside the scope of this lawsuit, which is limited to, at best, Florida. *See* [D.E. 256 and D.E. 499] (limiting conditional certification to Fort Lauderdale) and [D.E. 520] (pending motion seeking Rule 23 class certification for Florida). *Id*. Further, the evidence of "FLSA Violations" in the DOL audits consists solely of one column in a spreadsheet, with no narrative or supporting facts. *Id*. In contrast, the DOL report Defendants present includes a full narrative of the investigation and findings—which found that Pacesetter was committing zero Fair Labor Standards Act ("FLSA") violations under the FLSA because daily ticket workers were paid minimum wage and overtime and "the time waiting for an assignment or travelling from the central location to the worksite is not compensable." [D.E. 555-4.]

### B. Pre-travel waiting time, time spent traveling and time spent checking out or returning tools is not compensable because the daily ticket worker chooses to participate for their own convenience.

Plaintiffs claim that time spent waiting after the receipt of the Daily Time Ticket and before the departure of the Pacesetter-coordinated transportation is compensable. Response at 7. Plaintiffs correctly note that the primary inquiry here is "whether 'the time is spent predominantly for the employer's benefit or for the employees.'" Response at 7 (citing *Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 807 (11th Cir. 1992) (citing *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944)). But Pacesetter-coordinated transportation is provided at the worker's election because they may otherwise lack transportation or prefer not to use their car. [D.E. 556-14.]  Similarly, time spent checking out and returning equipment and/or tools is also not

---

[11] *See* Ex. 3, Pacesetter Personnel Services , Inc., Response to Plaintiff Jeffrey Mondy's interrogatories, ("Defendant objects to Interrogatory No. 7 because it is overbroad in seeking claims and demands against "any entity owned in whole or in part by Defendant" and claims within "the last(10) ten years.") Defendants produced subject to and without waiving that objection. Plaintiffs did not move to compel or otherwise challenge this objection and limitation.

compensable because the daily ticket workers choose to use Pacesetter's equipment, instead of providing their own. Because Pacesetter-provided transportation is voluntary, any travel time associated with the Pacesetter-coordinated transportation is also not compensable.

**C.   Summary Judgment on Plaintiffs' FLPA claims is appropriate because Plaintiffs' evidence is not sufficiently specific and concrete to survive summary judgment.**

**a.   The evidence does not demonstrate that Pacesetter charged Plaintiffs "rental fees" for equipment.**

Pacesetter has explained that there is not now and never has been "equipment rental," at any location, including the Fort Lauderdale location. Motion at 20. Plaintiffs' self-serving testimony to the contrary cannot overcome the fact that any charges for equipment are for unreturned equipment. *Id*.

**b.   The evidence does not demonstrate that Pacesetter charged more than the market value of tools and equipment.**

Plaintiffs attempt to flip the burden of proof by claiming that it is Pacesetter's obligation to prove that Plaintiffs were charged more than the actual cost in violation of 448.24(1)(a)(2). But this is Plaintiffs' burden, and they have presented nothing, nor could they, to show that Pacesetter charged more than market value for replacement items. As Plaintiffs point out, there is no record evidence other than a list of replacements costs—which itself does not show the market value of those items. Response at 23. It is Plaintiffs' failure to produce any evidence that Pacesetter charged more than market cost which makes summary judgment appropriate.

**c.   The evidence does not demonstrate that Pacesetter charged Plaintiffs more than $3.00 per day for transportation to and from the job site.**

Plaintiffs seek yet again to elide the difference between a charge for a personal-use bus pass and a charge of more than $3.00 per day for transportation to the job site by referring to both as charges for transportation. Response at 23-24 ("Pacesetter impermissibly charged Plaintiffs

more than $3.00 for transportation….”). However, as noted in the Motion, any charges for above $3.00 for transportation were incurred due to Plaintiffs' choices to purchase a personal-use bus pass from Pacesetter. Motion at 21; *see also* [D.E. 556 at ¶ 13] (noting that sometimes daily ticket workers are charged for bus passes and the ticket report sometimes notes this). This does not violate the Florida Labor Pool Act.

> **d.   There is evidence that Pacesetter provided restroom facilities and water, and Plaintiffs' "evidence" to the contrary is non-specific self-serving testimony that does not survive summary judgment.**

Plaintiffs do not explain the contradictory reports from Plaintiffs themselves regarding bathroom access. *See* Motion at 21-22 (noting that some Plaintiffs state they were able to use the bathroom). Nor do Plaintiffs address the fact that those Plaintiffs who do claim that they were denied bathroom access cannot identify specific dates or occasions for being denied use of the bathroom. *Id.* (citing [D.E. 556 at ¶ 46]).

Similarly, the self-serving testimony of Plaintiffs regarding water lacks the "specific facts that demonstrate an actual or imminent injury," and, because Plaintiffs' testimony is merely speculative, summary judgment in favor of Defendants on both claims is therefore appropriate. *Nebula Glass Int'l, Inc. v. Reichhold, Inc.,* Case No. 02-60703-CIV, 2004 WL 4946483, at *6–7 (S.D. Fla. Apr. 27, 2004) (denying summary judgment where damages were merely speculative). In order to survive summary judgment, "the amount of damages must be capable of proof to a reasonable certainty and not left to speculation or conjecture." *Id*. Plaintiffs cannot meet this requirement here, further justifying summary judgment in Defendants' favor.

## <u>CONCLUSION</u>

For the foregoing reasons, the undersigned respectfully request that Defendants' Motion for Summary Judgment [D.E. 555] be granted in its entirety.

Dated: May 4, 2022                         Respectfully submitted,

                                By: **Ronald J. Tomassi, Jr.**
                                    Derek E. León, Esq.
                                     Florida Bar No. 625507
                                    Ronald J. Tomassi, Jr.
                                     Florida Bar No. 29751
                                    LEÓN COSGROVE, LLP
                                    255 Alhambra Circle, 8th Floor
                                    Miami, Florida 33134
                                    Telephone:  305.740.1975
                                    Email:  dleon@leoncosgrove.com
                                    Email:  rtomassi@leoncosgrove.com


                                    Joel M. Androphy, Esq. (*admitted Pro Hac Vice*)
                                    Caroline Gorman, Esq. (*admitted Pro Hac Vice*)
                                    BERG & ANDROPHY
                                    3704 Travis Street
                                    Houston, Texas 77002
                                    Telephone:  713-529-5622
                                    Email:  cgorman@bafirm.com
                                    Email:  jandrophy@bafirm.com

                                    *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which in turn will serve by notice of electronic filing to all counsel of record listed below.

Dion J. Cassata, Esq.
**CASSATA LAW, PLLC**
Boca Crown Centre
7999 North Federal Highway, Suite 202
Boca Raton, Florida 33487
Email: dion@cassatalaw.com
Phone: 954-364-7803

Andrew R. Frisch, Esq.
**MORGAN & MORGAN, P.A.**
8151 Peters Road, 4th Floor
Plantation, FL 33324
Email: dion@cassatalaw.com
Phone: 954-967-5377

By: **Ronald J. Tomassi, Jr.**
     Ronald J. Tomassi, Jr.