UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:20-CIV-60192-AHS

SHANE VILLARINO, *et al.*,

    Plaintiffs,

v.

PACESETTER PERSONNEL SERVICE, INC., *et al.*,

    Defendants.

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS

Defendants Pacesetter Personnel Service, Inc., Pacesetter Personnel Service of Florida, Inc., Florida Staffing Service, Inc., and Tampa Service Company, Inc., (collectively, "Defendants" or "Pacesetter"), respond to Plaintiffs' Motion for Sanctions [D.E. 598] ("Motion"), as follows.

## INTRODUCTION

Pacesetter and its affiliated companies are a successful family-owned business started in 1998. The core of Pacesetter's business centers on providing temporary labor – "daily ticket workers" – across multiple industries. Over the past twenty-four years, Pacesetter has been able to steadily grow its business to a number of different industries in three states. Defendants' growth is the direct result of Pacesetter's relationship with its workers. As Sal Parlante, Defendants' corporate representative, put it: "Without the workers we have nothing." (Decl. of S. Parlante[1])

---

[1] In his deposition, Mr. Parlante further testified:

Q: Are there other labor halls that compete in these markets in which Pacesetter operates?

A: Absolutely. Yes. And the workers – the workers, in the time that I've been here, are known to leave a location in the middle of the day and just not come back. And if they're not happy,

[D.E. 290-8 at ¶ 8.] As a consequence, Pacesetter takes very seriously its obligation to comply with all national and state employment regulations and statutes. And it does.

In the twenty-four years of its existence, Pacesetter has been audited at various times, both by the Department of Labor ("DOL") and through its own self-audits. And those audits confirm that Pacesetter consistently complies with labor laws. That is not to suggest that it operates without error, of course, but any such errors are *de minimus* relative to the amount of payroll Pacesetter processes. Indeed, in the sixteen audits spanning from 2004 to 2016, Pacesetter's errors total $48,860.07 over twelve years—a time period during which Pacesetter issued *millions* of paychecks. Further, seven of the audits Plaintiffs wish to bring to this Court's attention found *zero* violations.

Plaintiffs brought this lawsuit as a putative class and collective action on January 29, 2020. While the Court has since narrowed the claims substantially in its recent Order [D.E. 601], at the time it was filed, the statutory "lookback" period for each of the Plaintiffs' claims ranged from two to five years from the date the action was filed. In other words, anything occurring before 2015 is completely irrelevant to the case.

Such is and was Pacesetter's position in responding to discovery requests for the entirety of the discovery period in this case. And, frankly, it was a position with which the Plaintiffs tacitly agreed insofar as they did not seek to overrule a single one of Pacesetter's various objections to any discovery sought before 2015 throughout the discovery period. Indeed, none of Plaintiffs' discovery requests would have covered an eighteen-year-old audit even *before* Defendants' objections. And Plaintiffs, up until now, agreed that audits from more than five years ago are

---

they'll go to the competitor as well, which is why we have to take care of our workers. Going back to if we have no workers, we have no business. I don't know what else to say to that. [D.E. 598-4] (Parlante Dep. 178: 24-25; 179: 1-8.)

simply not relevant—as indicated by the fact that Plaintiffs never challenged *a single objection to any discovery requested regarding DOL audits.*

Nonetheless, Plaintiffs filed a motion for sanctions against Pacesetter claiming that Pacesetter is attempting to hide an eighteen-year-old audit—which was not the subject of any discovery requests—while ignoring that the majority of the sixteen audits identified by Plaintiffs *confirm* that Pacesetter has consistently complied with applicable labor laws. For example, of the nine audits related to FLSA compliance, five found zero violations—and the ones in 2012 and 2015 found *one* violation, for one individual, resulting in zero back wages owed. It is beyond absurd to claim that Pacesetter would intentionally hide audits that on the whole support Pacesetter's defenses.

The record itself reveals the real impetus behind Plaintiffs' Motion – their own failure to diligently prosecute this case. For example, Plaintiffs did not seek the corporate representative deposition until fourteen days before the discovery cut-off—despite the fact that discovery had been open for two years. [D.E. 525.] Plaintiffs also never sought to depose Gracie Hernandez, the Director of Human Resources, the employee currently responsible for assisting with DOL audits, despite the fact that her declaration was attached to Defendants' Response to Plaintiffs' Motion for Conditional Certification, filed June 1, 2020. [D.E. 173-3.] Instead, Plaintiffs now ask this Court to overlook their lack of diligence by seeking – as part of their sanctions request – a post-discovery deposition of Judith Sadler, a Board-certified Labor & Employment lawyer who represented Pacesetter during the 2004 DOL audit.[2] What Plaintiffs neglect to mention is that Ms. Sadler also handled the 2016-2018 Orlando audit, the case narrative of which mentions Ms. Sadler

---

[2] Judith Sadler, DIGGS & SADLER, https://www.texasadvocates.com/our-attorneys/judith-sadler/ (last viewed May 25, 2022) (noting that Ms. Sadler is Board-certified in Labor & Employment Law in Texas).

*four* times. [D.E. 555-4.] The Orlando audit was initially provided to Plaintiffs and this Court in June 2020, when Defendants received it pursuant to a FOIA request. Ex. 1 at ¶ 4 (Decl. of C. Gorman); *see also* [D.E. 179] (Motion for Leave to Supplement Response to Plaintiffs' Expedited Motion for Conditional Certification). In other words, Plaintiffs have been aware of Ms. Sadler's involvement with Defendants' audits for over two years, yet never sought her deposition—and do so only now under the guise of "sanctions."

Stated differently, now, after the close of discovery, Plaintiffs seek sanctions because of their own failure to prosecute this case or seek out eighteen-year old publicly-available documents. Even if Plaintiffs' own delay and lack of diligence could somehow be attributable to Defendants, which they cannot, Plaintiffs still cannot meet the high standard required for imposition of sanctions and their Motion should be denied.

## **FACTS**

**A.    Defendants first provided relevant audit information nearly two years ago.**

This case was filed on January 29, 2020. [D.E. 1.] In the First Amended Complaint, filed May 6, 2020, Plaintiffs alleged violations of the Fair Labor Standards Act ("FLSA") and of the Florida Labor Pool Act ("FLPA"). [D.E. 152.] The former has a "lookback" period of, at most, three years from the date of the action's filing; the latter has a "lookback" period of, at most, five years. *Id*. In other words, at all times the relevant "lookback" window has been, at most, to January 29, 2015. *Id*.

Discovery began immediately after the case was filed, with Defendants producing their initial disclosures in April 2020. Ex. 1 at ¶ 3 (Decl. of C. Gorman).

As this case progressed, on June 8, 2020, Defendants sought leave to supplement their opposition to Plaintiffs' Expedited Motion for Conditional Certification to provide this Court with the case narrative from the 2016-2018 Orlando audit, which had recently been received by

4

Defendants via FOIA request. [D.E. 179] (attaching 2016-2018 DOL audit case narrative as Exhibit 1). This audit, which mentioned Judith Sadler's name four times, found that there were no violations of the FLSA and that time spent waiting and being transported was not compensable. *Id*.

### B. Pacesetter objected to discovery involving irrelevant audits, and Plaintiffs did not seek to overrule objections to written discovery.

Thereafter, on September 17, 2020, Defendants served Defendants' Responses to Plaintiffs' First Interrogatories, which included the following interrogatory and objection:

> **INTERROGATORY NO. 7:**
> If Defendant or any entity owned in whole or in part by Defendant has been sued or investigated by the U.S. Department of Labor or a private individual or has received a claim by or demand from any employee regarding minimum wage or overtime compensation within the last ten (10) years, state the name of the claimant for the suit, claim and/or investigation and describe in detail the factual basis of the suit, claim and/or investigation.
>
> **RESPONSE:**
> Defendant objects to Interrogatory No. 7 because it is overbroad in seeking claims and demands against "any entity owned in whole or in part by Defendant" and claims within "the last (10) ten years." **Subject to, but without waiving the foregoing objection, and pursuant to Federal Rule of Civil Procedure 33(d), Defendant refers Plaintiff to the DOL's Compliance Action Report ("CAR") and FLSA Narrative summarizing its 2016-2018 investigation at Pacesetter's Orlando branch. See [D.E. 179-2].** The investigation concluded that "[n]o violations of Section 6 of the FLSA were found," and "[n]o violations of Section 7 of the FLSA were found." *See* [D.E. 179-2] at 6. Defendant further refers Plaintiff to *Castilla v. Pacesetter Personnel Service of Florida Inc*., *et al*., Case No. 9:18-cv-81431-RLR, Southern District of Florida; and *Vaughn v. Pacesetter Personnel Service of Florida, Inc*., *et al*., Case No. 3:14-cv-00351-MCR-CJK, Northern District of Florida. Pursuant to Federal Rule of Civil Procedure 33(d), Defendant will produce copies of the complaints.

Ex. 2 at 5 (Defendant Pacesetter Personnel Service Inc.'s Response to Shane Villarino's First Interrogatories) (emphasis added). Plaintiffs never challenged Defendants' response or objections, never sought to confer with Defendants regarding the response and objections, and never moved to compel better responses. Ex. 1 at ¶ 5 (Decl. of C. Gorman).

### C. There was one discovery response that did not include objections to discovery on previous DOL audits.

Contemporaneous with serving the aforementioned interrogatory responses and objections, Defendants served Defendants' Responses to Plaintiffs First Request for Admission. [D.E. 598-2.] In their Response to Request for Admission No. 19, Defendants stated what was true to their knowledge: that there were no other DOL audits or consultations. Ex. 3 at ¶¶ 3-7 (Decl. of G. Hernandez); *see also* Ex. 1 at ¶ 10 (Decl. of C. Gorman). At that time, current counsel, who was not retained until November 2019, was not aware of any audits other than the 2018-2018 Orlando audit. *Id*. Moreover, the Pacesetter employee currently responsible for overseeing audits was not employed by Pacesetter when the prior audits occurred and had no knowledge of them. Ex. 3 at ¶¶ 3-7 (Decl. of G. Hernandez). As noted above, this discovery response was served contemporaneously with the above-referenced interrogatories, which included an express objection to discovery on previous irrelevant audits. To the extent Plaintiffs now seek to seize upon this response as support for their request for sanctions, as explained below, they cannot do so.

Plaintiffs served five additional Requests for Production over the course of discovery, which closed on January 24, 2022. Ex. 1 at ¶ 7 (Decl. of C. Gorman). Plaintiffs filed a Motion to Compel, but that Motion was not directed at any of Defendants' responses or objections to requests relating to DOL audits. [D.E. 248.] Rather, that Motion to Compel sought personnel files on all daily ticket workers in all of Florida going back five years, even though, by that point, this Court had already limited the collective action to Fort Lauderdale. *Id*. Defendants again objected based on overbreadth and invasion of privacy, and this Court agreed.[3] Plaintiffs never brought a Motion

---

[3] *See* [D.E. 248] (Plaintiffs' Motion to Compel) *and* [D.E. 291] (paperless Order denying Plaintiffs' Motion to Compel because "Although Plaintiffs sought to certify a class for employees in several states, the District Court conditionally certified the class only as to employees who worked in Defendants' Fort Lauderdale location. *See* ECF No. 256 at 5. In the face of the District

6

to Compel on any other discovery response, including but not limited to challenging any of the objections or responses reference above

### D. Plaintiffs did not seek to overrule objections to deposition topics.

On July 22, 2021, Plaintiffs provided proposed topics for Defendants' corporate representative deposition. Ex. 4 at 1-2 (July 21, 2022, email from Dion Cassata). The proposed topics included:

> A corporate representative with knowledge of prior lawsuits, claims and/or Department of Labor audits of or against Defendants, pertaining to allegations that they underpaid employees who performed duties similar to Plaintiffs, to the extent such lawsuits, claims or audits preceded this lawsuit;

*Id*.

Defendants responded with objections to the proposed topics on September 1, 2021, which included the following objection:

> **OBJECTION:** Defendants object to this request as unduly burdensome and overly broad. Defendants' corporate representative will be prepared to testify regarding of prior lawsuits, claims and/or Department of Labor audits of or against Defendants, pertaining to allegations that they underpaid employees who performed duties similar to Plaintiffs, to the extent such lawsuits, claims or audits preceded this lawsuit **in the previous five years in Florida**.

Ex. 5 at 4 (emphasis added); *see also* Ex. 1 at ¶ 6 (Decl. of C. Gorman). **In other words, Defendants specifically objected to providing information on DOL audits which occurred prior to 2015, and instead limited its responses to DOL audits which occurred in Florida between 2015 and 2020—of which the Orlando audit was the only one.** Again, Plaintiffs never challenged Defendants' objections, sought a conferral to discuss the objections, or brought a

---

Court's ruling, Plaintiffs' purported desire to "better evaluate their own legal claims," ECF No. 269 at 1, is not a basis for obtaining discovery beyond the conditionally certified Fort Lauderdale class.").

motion to compel. In fact, Plaintiffs did not even follow up with a deposition date until January 10, 2022, fourteen days before the close of discovery.

### E. Plaintiffs did not pursue prior DOL audits in the corporate representative deposition.

Plaintiffs were similarly uninterested in prior DOL audits—which they now claim are crucial—during Pacesetter's corporate representative's deposition, during which they asked only:

> QUESTION: Are you aware of whether the Department of Labor has ever investigated or audited Pacesetter regarding complaints of unpaid minimum wages or overtime?
>
> ANSWER: Yes. **That one I remember.** I'm almost – I'm almost 99 percent sure that would have been Orlando and I believe that was not proven. I believe – I believe we won that case. We passed the audit, in other words.
>
> QUESTION: Got it.

[D.E. 598-4] (S. Parlante Dep. at 163:20-164:3) (emphasis added). The corporate representative clearly testified, consistent with the unchallenged objections to the Notice, only regarding "[t]hat one I remember." *Id*. Plaintiffs did not press the witness about others that might lie outside his personal recollection; Plaintiffs, in fact, asked no follow-up questions. *Id*. at 164-165.[4] And, of course, Plaintiffs again did not challenge the answer or pursue a motion to compel a better answer.

### F. Defendants had no reason to hide additional audits that, on the whole, are beneficial to Defendants' defenses.

In March of this year, Plaintiffs alerted Defendants to the existence of fifteen additional audits, for all Pacesetter locations, going back to 2004. Ex. 1 at ¶ 11 (Decl. of C. Gorman). Of these sixteen, only nine were related to FLSA compliance, and of those, five found zero violations—and the ones in 2012 and 2015 found *one* violation, for one individual, resulting in

---

[4] Though further questioning would only have revealed what Pacesetter knew to be true at that time—that there were no other DOL audits—Plaintiffs' failure to even pursue this topic suggests it is not as important as Plaintiffs claim.

zero back wages owed. It is beyond absurd to claim that Pacesetter would intentionally hide overwhelmingly positive and helpful audits that go to the very heart of its defenses.

To summarize, Plaintiffs served discovery. That discovery drew limiting objections from Defendants. Plaintiffs ignored those objections. Defendants provided responses consistent with those unchallenged objections. Plaintiffs then obtained publicly-available information that was outside of the scope of Defendants' unchallenged objections. Plaintiffs then claimed "gotcha" and now seek sanctions because of their own failure to diligently prosecute this case. Simply put, Defendants should not be sanctioned under these facts.

## ARGUMENT

### A. Plaintiffs' Motion is nothing more than an attempted end-run around their own failure to conduct zealous discovery.

Sanctions should not be granted where, as here, the party seeking sanctions has demonstrated a lack of diligence in conducting their case. Stated differently, sanctions are inappropriate to prevent "harm stemming from [the party's] own lack of diligence." *Goodloe v. Daphne Utilities,* No. CIV.A. 13-0605-WS-C, 2015 WL 4523974, at *3 (S.D. Ala. July 27, 2015), *aff'd sub nom. Nettles v. Daphne Utilities,* 689 F. App'x 925 (11th Cir. 2017). In *Goodloe*, the defendant served a subpoena on the EEOC five months after the close of discovery and less than six weeks before trial and obtained a copy of records that were used to successfully impeach plaintiff's testimony at trial. *Id*. at *1. Defendant failed to serve plaintiff with a copy of the subpoena. *Id*. at *2. Plaintiff sought sanctions, alleging failure to disclose. *Id*. at *3. The court agreed that defendant should have served plaintiff with the subpoena, but refused to grant sanctions, noting that the plaintiff was put on notice by the Joint Pre-Trial Document, which listed the EEOC record as Exhibit 34. *Id*. at *3. The court held that "Plaintiff will not be awarded any form of sanctions or post-trial relief against Daphne Utilities for harm stemming from his own lack

9

of diligence," and, noting specifically that plaintiff did not thoroughly review the Joint Pre-Trial Document because he assumed it would be identical to an earlier version. "Such omissions and unwarranted assumptions by plaintiff's counsel do not raise a credible inference of nefarious behavior or sanction-worthy misconduct by defendant's counsel." *Id*. at *2.

Moreover, a motion for sanctions should be denied where, as here, the "motion is a thinly-veiled attempt to get around the already-expired discovery deadline." *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.,* No. 219CV10360RGKPLA, 2021 WL 3260606, at *4–5 (C.D. Cal. Apr. 30, 2021). In *Global Master*, plaintiffs alleged interference with their third-party subpoenas, defendants' failure to produce documents, and defendants' failure to appear at a scheduled deposition. *Id*. at *3. In refusing to grant sanctions, the court noted that plaintiff's discovery complaints were "all issues which could have *and should have* been addressed earlier in discovery, rather than waiting until after the discovery cut-off…." *Id.* at *3 (emphasis in original). The court went on to conclude that "Plaintiffs' lack of diligence weighs against granting their requested sanctions" and that "imposing the requested sanctions would essentially reward Plaintiffs for their untimeliness." *Id*. at *5.

This is precisely the case here. Plaintiffs have not diligently prosecuted their case. Nor did they make any attempt whatsoever to timely address Defendants' objections that resulted in the documents, testimony, and information Plaintiffs received through discovery. Plaintiffs waited until the last moment to depose the corporate representative. Plaintiffs never sought to depose either Judith Sadler or Gracie Hernandez, both of whom Plaintiffs had notice of no later than June 2020. Nor did Plaintiffs seek publicly-available documents until *after* discovery closed. To quote *Global Master*, Plaintiffs "could have and *should have*" addressed their alleged discovery complaints "earlier in discovery, rather than waiting until after the discovery cut-off…." *Id* at *3

(emphasis in original). Plaintiffs' failure to do so cannot be blamed on anyone other than themselves and certainly should not result in sanctions against Defendants. To hold otherwise would "reward Plaintiffs for their untimeliness." *Id.* at 5.

> **B.     Plaintiffs fail to meet the high standard for imposing sanctions under the Rules of Civil Procedure or the Court's inherent power.**

Even if Defendants could somehow be deemed responsible for Plaintiffs' failure to diligently prosecute their case, which they cannot, Plaintiffs still have not shown anything that meets the high standard for sanctionable conduct. *See In re Sunshine Jr. Stores, Inc.,* 456 F.3d 1291, 1306 (11th Cir. 2006) (affirming sanctions because party had a "clear history of bad faith stonewalling"). Indeed, "[s]evere sanctions require a finding that the 'noncompliance' with the compel order was intentional or in bad faith." *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1371 (11th Cir. 1997).

Moreover, mere inability to locate records does not warrant sanctions. "A discovery respondent need not conduct a perfect search, nor a comprehensive one." *Cutlass Collieries, LLC, v. Garrett Myron Jones*, Case No. 20-CV-80001-RLR, 2021 WL 6135152, at *3 (S.D. Fla. Dec. 7, 2021). And regular, timely supplementation also suggests there is no "discovery abuse." *See Pendlebury v. Starbucks Coffee Co.,* No. 04-80521-CIV, 2005 WL 8156159, at *1 (S.D. Fla. Aug. 9, 2005) (refusing to grant sanctions under Rule 37 or 26 in part due to the party's history of regular supplementation).

Further, in their effort to leverage Defendants' responses to requests for admission as a basis for their Motion, Plaintiffs mistake the role of requests for admissions. First, requests for admissions are not covered by Rule 26(g), which applies only to disclosures. *See* Rule 26(a) (listing "disclosures" as including initial disclosures, expert disclosures and pre-trial disclosures). Second, "[t]he purpose of [] Rule [36] is to enable the parties and the court to narrow or eliminate issues in

a case." *In re Camero Enterprises, Inc.*, 240 B.R. 446, 449 (Bankr. M.D. Fla. 1997) (citing Fed. R. Civ. P. 36). "Therefore, requests for admissions are not principally discovery devices." *Superior Sales W., Inc. v. Gonzalez*, 335 F.R.D. 98, 105 (W.D. Tex. 2020) (internal brackets removed). Instead, "Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Advisory Committee Note to 1970 Amendment to Fed. R. Civ. P. 36, 48 F.R.D. 531–532 (1970). Given this, "[s]trictly speaking Rule 36 is not a discovery procedure at all, since it presupposes that the party proceeding under it knows the facts or has the document and merely wishes its opponent to concede their genuineness. A party who desires to discover what the facts are should resort to other discovery rules rather than Rule 36." *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (citing Advisory Committee Note to 1970 Amendment to Fed. R. Civ. P. 36, 48 F.R.D. 531–532 (1970)). Here, to the limited extent that Plaintiffs sought discovery of DOL audits through means other than RFAs, Defendants objected and narrowed the scope of their responses—without complaint from Plaintiffs.

Further, even with their unchallenged objections in place, Defendants have produced 108,614 documents to Plaintiffs. Ex. 1 at ¶ 8 (Decl. of C. Gorman). Defendants have continuously reviewed past discovery and provided supplementation promptly when necessary. *Id*. Indeed, when Plaintiffs first notified Defendants in March of the existence of the allegedly-hidden DOL audits, Defendants again immediately reviewed their records but found no additional responsive documents. *Id*. at ¶ 11.

Additionally, the fact that Plaintiffs never sought a motion to compel on any issue related to DOL audits is fatal to their Motion because sanctions under Rule 37 require a previous court

order. *See Osborne Assocs., Inc. v. Cangemi*, No. 3:17-CV-1135-J-34MCR, 2018 WL 4997080, at *3 (M.D. Fla. Apr. 3, 2018) ("Assuming the sanctions are sought under Rule 37(b)(2), Plaintiff's subpoena did not specifically violate a court order, and, therefore, sanctions under this rule are inappropriate."); *see also Jangjoo v. Sieg*, No. 1:16-CV-00870 (TNM), 2018 WL 11255535, at *2 (refusing to grant sanctions under Rule 37 because there was "no court order compelling disclosure or discovery in this case."). Here, there is no previous court order because Plaintiffs never sought to compel responses (or even confer with Defendants regarding Defendants' objections to the discovery), when Defendants: (a) served their objections to Plaintiffs' interrogatories; (b) served their initial Responses to Plaintiffs' Request for Admissions in September 2020; (c) objected to the corporate representative topics in September 2021; or (d) provided testimony, subject to unchallenged objections, regarding DOL audits during Defendants' corporate representative's deposition in February 2022. Consequently, Plaintiffs cannot seek sanctions now.[5]

Sanctions are also inappropriate using the court's inherent power because "[t]he key to unlocking [the] court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998); *see also Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) ("before a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct constituted or was tantamount to bad faith"). Here, there is no evidence whatsoever of bad faith. Nor could there be where Plaintiffs discovered, through a public records request, an eighteen-year-old irrelevant DOL audit that was well outside of the timeframe framed by Defendants' unchallenged discovery objections. And, without the requisite bad faith, there is

---

[5] Nor can Plaintiffs seek sanctions under Rule 26(g) because neither Defendants nor their counsel were aware of the previous DOL audits until Plaintiffs provided them. Ex. 1 at ¶ 10 (Decl. of Caroline Gorman); *see also* Ex. 3 at ¶¶ 3-7 (Decl. of G. Hernandez).

no "key to unlock" the court's inherent power to sanction Defendants. *See Barnes,* 158 F.3d at 1214.

      **C.    Plaintiffs' requested "mitigations" are impermissibly overbroad and ask this Court to reward Plaintiffs for their own lack of diligence.**

Plaintiffs ask the Court to ignore their own indolence and request the Court award them a "less drastic 'constellation' of sanctions" (Motion at 18) but then request *seven* pie-in-the-sky "mitigations," which serve as thinly-veiled "gotcha" tactics aimed at generating some leverage to salvage Plaintiffs' recently-narrowed claims. *See* Motion at 21-22. For example, Plaintiffs request that their Motions for Class Certification be granted,[6] and that the Renewed Motion for Conditional Certification be granted, immediately establishing both a state-wide Florida Labor Pool Act class action *and* a nationwide collective action based solely on an eighteen-year-old DOL audit. Motion at 5. Similarly, Plaintiffs request this Court order the deposition of Judith Sadler, Defendants' attorney, despite the passage of the discovery cut-off and knowing of Ms. Sadler's involvement in DOL audits since June 2020. Motion at 5.[7]

The facts here simply do not provide a basis for Plaintiffs' requested draconian sanctions. As in *Global Master International*, "Plaintiffs would attain a windfall as their requested sanctions are expansive and include exclusion of testimony and multiple adverse inferences that would stack

---

[6] In the time between the filing of Plaintiffs' Motion for Sanctions and this Response, this Court issued an order denying Plaintiffs' Motion for Class Certification for the class and proposed subclass except for the subclass alleging bathroom and water violations of the Florida Labor Pool Act. [D.E. 601.]

[7] Plaintiffs do not ask for an entry of default because they are well aware of the high standard applied to review of default entries. *See, e.g., Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1371 (11th Cir. 1997) (citing *Adolph Coors Co. v. Movement Against Racism & the Klan,* 777 F.2d 1538, 1543 (11th Cir. 1985)) ("Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default...."). However, Plaintiffs' seven sweeping sanctions amount to default—and the higher standard of review should consequently be applied to these requests. That said, regardless of what standard is applied here, Plaintiffs simply cannot meet it.

all the cards against Defendants. Such draconian sanctions for Defendants' actions are out of step with the realities of this case and do not account for Plaintiffs' own lack of diligence." 2021 WL 3260606, at *5. This is precisely the case here. Plaintiffs should not be rewarded in any manner for their own lack of diligence, let alone be granted a windfall because of it. The Court should deny the Motion.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully request that Plaintiffs' Motion for Sanctions be denied.

Respectfully submitted this 27th day of May, 2022.

> By: **Ronald J. Tomassi, Jr.**
> Derek E. León, Esq.
>   Florida Bar No. 625507
> Ronald J. Tomassi, Jr.
>   Florida Bar No. 29751
> LEÓN COSGROVE, LLP
> 255 Alhambra Circle, 8th Floor
> Miami, Florida 33134
> Telephone:  305.740.1975
> Email: dleon@leoncosgrove.com
> Email: rtomassi@leoncosgrove.com
>
> Joel M. Androphy, Esq. (*Admitted Pro Hac Vice*)
> Caroline Gorman, Esq. (*Admitted Pro Hac Vice*)
> BERG & ANDROPHY
> 3704 Travis Street
> Houston, Texas 77002
> Telephone:  713-529-5622
> Email: cgorman@bafirm.com
> Email: jandrophy@bafirm.com
>
> *Counsel for Defendants*

15

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which in turn will serve by notice of electronic filing to all counsel of record listed below.

| | |
|---|---|
| Dion J. Cassata, Esq.<br>**CASSATA LAW, PLLC**<br>Boca Crown Centre<br>7999 North Federal Highway, Suite 202<br>Boca Raton, Florida 33487<br>Email: dion@cassatalaw.com<br>Phone: 954-364-7803 | Andrew R. Frisch, Esq.<br>**MORGAN & MORGAN, P.A.**<br>8151 Peters Road, 4th Floor<br>Plantation, FL 33324<br>Email: dion@cassatalaw.com<br>Phone: 954-967-5377 |

By: **Ronald J. Tomassi, Jr.**
　　Ronald J. Tomassi, Jr.