**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 0:20-CIV-60192-AHS**

SHANE VILLARINO, *et al*.,

  Plaintiffs,

v.

PACESETTER PERSONNEL SERVICE, INC., *et al*.,

  Defendants.

_____/

**PLAINTIFFS' COMBINED MOTION FOR RECONSIDERATION OF THE**
**COURT'S ORDER [DE 601] GRANTING IN PART AND DENYING IN PART**
**PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION AND**
***RENEWED* MOTION FOR RULE 23 CLASS CERTIFICATION**
**AND INCORPORATED MEMORANDUM OF LAW[1]**

  Plaintiffs, SHANE VILLARINO, LAURA J. JOHNSON, JEFFREY MONDY, and

JEROME GUNN (collectively "Plaintiffs"), by and through undersigned counsel, hereby file the

instant Combined Motion for Reconsideration of the Court's Order [DE 601] granting in part and

denying in part Plaintiffs' Motion for Rule 23 Class Certification [DE 520], and Renewed

Motion for Rule 23 Class Certification, and state:

**SUMMARY OF THE ARGUMENT**

  By their instant Motion, Plaintiffs respectfully entreat the Court to reconsider two related

aspects of its Order [DE 601]: (1) its holding that individual issues predominate with respect to

Plaintiffs' proposed class under the Florida Labor Pool Act ("FLPA") regarding daily

transportation charges in excess of $3; and (2) its holding that individual issues predominate with

regard to Plaintiffs' claims under the Florida Minimum Wage Act ("FMWA"). In the alternative,

Plaintiffs request that the Court certify both classes on either Rule 23(b)(1) or (2) grounds, a

---

[1] For the sake of brevity, Plaintiffs incorporate by reference all facts and argument from their Motion for Summary Judgment, Motion for Class Certification and Memorandum in Opposition to Defendants' Motion for Summary Judgment, by reference herein.

request the Court correctly noted was omitted from Plaintiffs' initial Motion for Class Certification.   [*See Order,* DE 601 at 4] ("Plaintiffs' Motion for Class Certification seeks certification only under Rule 23(b)(3)…").[2]

With respect to the "excessive" transportation fee claims (ie. the transportation charges <u>in excess of</u> $3.00 per day),[3] Plaintiffs ask the Court to reconsider its finding that "individualized proof" inquiries would predominate, and thereby the excessive transportation charge subclass is not suitable for class treatment. *See* Order [DE 601 at 12].

Respectfully, individualized proof inquiries <u>do not predominate</u> with this subclass, and the Court's holding in this regard was contrary to binding authority from the former Fifth Circuit. In fact, <u>there are virtually no individualized proof issues involved</u>. Plaintiffs do not contemplate offering **<u>any</u>** individualized evidence regarding these transportation charges because Pacesetter's payroll records speak for themselves. The determination and adjudication of the excessive daily transportation charges can be accomplished <u>entirely based on examination within "the four corners" of Pacesetter's own payroll records</u>: the records clearly detail each daily charge in excess of $3.00 for transportation and clearly notate the instances where the charge was attributable to anything other than transportation (i.e. personal bus pass purchases or for multiple days' worth of transportation). Defendants admit that absent a notation in their records (required by the recordkeeping provision of the FLPA),[4] they cannot demonstrate that such excess charges

---

[2] Plaintiffs do not ask for reconsideration of the Court's denial as to the subclass of daily ticket workers who were charged rental fees for safety equipment.

[3] (1) No labor pool shall charge a day laborer:

    (b) More than a reasonable amount to transport a worker to or from the designated worksite, but in no event shall the amount exceed $1.50 each way;

§ 448.24 (1) Fla Stat.

[4] §448.24 Duties and rights.-
*. * *

were for anything other than daily transportation to and from that day's Pacesetter-assigned job site. *See* Parlante Depo. 86:4-20 [DE 559.1], referenced and quoted, *infra.* Put another way, Defendants admit **there is no "individualized" proof** (i.e. testimony or other evidence unique to any plaintiff) as to any daily transportation charge in excess of $3.00. Thus, as no party to this case intends on offering any meaningful individualized proof as to **any** of the facially excessive transportation charges, and the charge instances and subclass members can be determined entirely from the pay records themselves, individual issues do not predominate, the excess transportation claim can be efficiently resolved on a class-wide basis, and such class should be certified.

With respect to the FMWA claims, the Court's Order suggests that Plaintiffs likely satisfy all of the requirements of Rule 23(a), but again denied class certification holding that individual issues predominate. [DE 601 at 10-11]. The Court held: "The issue of whether wait and travel time is compensable for the daily ticket workers necessarily involves proof that is specific to each job site, each mode of transportation, and each assignment of tools." *Id*. Respectfully, this holding was clear error based on the record before the Court because such facts are "distinctions without a [material] difference." It is irrelevant to the compensability analysis what job site a worker worked at on a given day, what mode of transportation he/she took to and from the site, and what tools they were issued that day. None of these factors require individual inquiry because: (1) "The Complaint and the record establish that *none* of the daily ticket workers were ever compensated for waiting or travel time." [*id*. at 9]; and (2) *all daily ticket*

---

(2) A labor hall shall:
    *. *. *
    (g) At the time of each payment of wages, furnish each worker **a written itemized statement showing in detail each deduction made from such wages**. A labor pool may deliver this statement electronically upon written request of the day laborer.

§448.24(2)(g) (emphasis added).

*workers* were required to report to the labor hall every work day in order to obtain a job assignment and daily time ticket from Pacesetter dispatch, obtain tools and equipment necessary to perform that day's work, and then transport their daily time ticket and tools/equipment to the Pacesetter-assigned job site, regardless of the job site, mode of transportation, or which tools were necessary for that day's work.[5] Because differences in the job site, mode of transportation or tools/equipment required for daily jobs do not impact the resolution of the travel time compensability issue, the Court's denial of class certification on this ground was clear error.

Finally, in the alternative, Plaintiffs respectfully request that the Court certify the FMWA and FLPA excessive transportation fees classes pursuant to Rule 23(b)(1) or (2) (grounds distinct from section (b)(3) of the Rule) even in the event that the Court still believes that individual issues predominate with respect to one or both classes.

## LEGAL AUTHORITY AND ARGUMENT

I. **Plaintiffs Respectfully Ask The Court To Reconsider Denial of Statewide Class Certification As To The Excessive Transportation Fees Class.**

In its Order, the Court declined to certify **any** statewide classes of Pacesetter daily ticket workers. Specifically, Plaintiffs had proposed to create three (3) statewide classes with claims arising under the FMWA and the FLPA. The classes sought were: (1) a primary class of Florida daily ticket workers (with FMWA claims largely hinging on whether travel and wait time are

---

[5] Defendants' Statement of Material Facts, ¶1; Parlante Dep. at 127:4-12 (daily ticket workers required to get a new daily time ticket every day); Gunn Dep. at 52:10-18 (Pacesetter does not give out daily time tickets ahead of time or prior to the date of work); Laura Johnson Dep. 46:19-22 (You must report to the office in the morning for a work assignment, you cannot go straight to the job site.); Parlante Dep. 123:23-124:17 (required to bring tools to/from job site every day); Camilo 24:16- 21; Villarino Dep. at 48:23-49:11 ("You can't go to the job site without these products…If I show up at a job site without my safety equipment and tools, you can't work that day."), 91:18- 22 (equipment "mandatory"); Laura Johnson Dep. at 54:11-13 (had to bring Pacesetter-issued tool to every job site as a daily ticket worker); Dowdy Dep. at 25:4-14 (had to take tools to job site every day and tools always used); D.E. 556-1, ¶4; Daily ticket workers are required to load/carry all Pacesetter-assigned tools and equipment to and from every job site every day, regardless of mode of transport. Camilo Dep. at 24:16-21 (every worker must wear a Pacesetter-issued high visibility vest every day), 25:2-15 (hardhats, safety vest, brooms, shovels, rakes, pickaxes, post hole diggers), 28:11- 19; Charles Dep., at 41:13-20; Villarino Dep. 91:18-22 ("I can't recall one single job site—you would never ever go on a job site without a hardhat, vest, or broom and shovel. That's mandatory."); D.E. 556-1, ¶4; Parlante Dep. at 112:17-22.

compensable under the FLSA/ FMWA); (2) a sub-class of Florida daily ticket workers who have been charged more than $3.00 per day for transportation (the FLPA §448.24(1)(b) claims, ie. the "excessive" transportation charges); and (3) a sub-class of Florida daily ticket workers who were charged fees for safety equipment, clothing and accessories (FLPA claims).[6] [7]  With respect to the FWMA and excessive transportation charge claims, Plaintiffs respectfully submit the Court's Order was in error.

> **A.  <u>Because the over $3.00 Transportation Charge Claims Can Be Resolved Efficiently, Solely By Reference to Pacesetter's Own Records, Common Issues Predominate</u>.**

Respectfully, Plaintiffs ask for reconsideration as to the sub-class regarding workers who were charged transportation fees in excess of $3.00 per day. As to this proposed sub-class, the Court found:

> Assuming without deciding that the transportation and equipment subclasses meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), these subclasses cannot be certified because they do not satisfy the Rule 23(b) criteria. Specifically, <u>resolution of the transportation and equipment subclass claims will require extensive amounts of individualized proof that would predominate</u>.

Order at 11. (emphasis added).

The Court further found:

> Testimony in the record establishes that Pacesetter allowed employees to purchase bus passes at cost and those purchases were

---

[6] (1) No labor pool shall charge a day laborer:

> (a) For safety equipment, clothing, accessories, or any other items required by the nature of the work either by law, custom, or as a requirement of the third-party user:
> * * *
> (b) More than a reasonable amount to transport a worker to or from the designated worksite, but in no event shall the amount exceed $1.50

each way;
§ 448.24 (1) Fla Stat.
[7] Again, Plaintiffs are not seeking reconsideration of the Court's denial as to this third subclass (daily ticket workers who were charged rental fees for safety equipment).

included in transportation charges. <u>Resolution of the transportation charges would, therefore, require individualized proof, not just for damages but for liability as well. This individualized proof would predominate and would be necessary to establish most or all the individualized claims.</u> The resolution of the excess transportation charge issue "breaks down into an unmanageable variety of individual legal and factual issues."

Order at 12 (emphasis added).

Respectfully, <u>virtually no individualized proof</u> would be required to establish the *prima facie* excessive transportation fee claims (or defenses thereto). All daily transportation charges (including those in excess of $3.00 per day), are detailed in Pacesetter's own records. They show the specific employees that were charged the excessive fees, the dates these fees were charged, and contain a notation in any instance where the charge was **for anything other than** a daily transportation charge (the records clearly indicate the very occasional instances where an employee bought a bus pass for personal use and the cost was labeled as a "transportation charge").

Examples of excessive transportation charges as opposed to separate bus pass purchases, as demonstrated on the face of Pacesetter's payroll records, can be seen in the attached Composite **EXHIBIT 1**. As is clear on the face of the records, any personal bus pass purchases are clearly notated in the pay records. It is also clear from the face of the records instances in which workers were charged in excess of $3.00 for transportation, where there is no notation (and thus necessarily a violation of the FLPA). For example, page 4 of the attached Composite Exhibit (Bates No. 27348) clearly indicates that opt-in Plaintiff Wilfrance Telusme was charged in excess of $3.00 for transportation on seven (7) occasions.  On their face, Pacesetter's records indicate that Telusme purchased bus passes on March 29, 2018 and April 3, 2018 (and thus there was no violation of the FLPA). The same record also indicates he was charged over $3.00 for transportation on April 5, 11, 12, 13, and 16, 2018. The excessive charges on April 5, 11, 12, 13

and 16, 2018 are unaccompanied by any notation, and thus Pacesetter acknowledges it cannot show the charges were for anything other than that day's transportation to and from the Pacesetter-assigned job site.

The excessive transportation charge claims can be resolved entirely by reference to Pacesetter's payroll records and the records are replete with thousands of examples.

Another example of the records distinctly showing bus pass purchases as opposed to charges for transportation can be found on page 2 of the Composite Exhibit (Bates No. 27594). Page 4 of the attached Composite Exhibit (Bates No. 27594) clearly indicates that opt-in Plaintiff Ernest Merritt was charged in excess of $3.00 for transportation on nine (9) occasions.  On their face, Pacesetter's records indicate that Merritt purchased bus passes on May 29, July 9 and July 13, 2018 (and thus there was no violation of the FLPA). The same record also indicates he was charged over $3.00 for transportation on April 12, 16 and 17, and on July 16, 18, 20, 2019. The excessive charges on April 5, 11, 12, 13 and 16, 2018 are unaccompanied by any notation, and thus Pacesetter acknowledges it cannot show the charges were for anything other than that day's transportation to and from the Pacesetter-assigned job site.

Pacesetter's corporate representative confirmed at deposition that, in the absence of a notation next to a specific transportation charge, (ie. "bus pass" or the like) Pacesetter has **<u>no basis</u>** to challenge any transportation charge as being anything other than what it on its face purports to be in Pacesetter's own records: a charge to the employee for a single day's transportation to/from that day's job site.[8] Thus, there would be no "mini" trials on each instance

---

[8] BY MR. FRISCH:

QUESTION:   And is it fair to say, if we looked at any daily ticket laborer's daily - I'm sorry – ticket reports pertaining to any daily ticket worker who worked in Florida and looked through the transportation column in Defendant's records, we would be able to tell the amount they were charged for that day's transportation, right?

MR. TOMASSI:   Form.

of excessive transportation charges, because each instance when an employee purchased a bus pass is clearly noted in the pay records.[9] *See* EXHBIT 1. Pacesetter itself agrees that beyond the pay records, there is no other proof shedding light on the circumstances surrounding any particular excessive daily transportation fee. Thus, **neither side** intends on offering any real "individualized" proof as to any given +$3.00 transportation charge. As such, the subclass as to the workers who were charged excessive transportation fees is well suited for Rule 23 class treatment.

This is far from an issue of first impression.  At least two Circuits have held that common issues predominate where, as here, claims can be resolved solely by reference to the defendants' own records. "Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003), citing *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1112 (5th Cir.1978)[10] ("This is a classic case for a Rule 23(b)(3) class action…While it may be necessary to make

---

| THE WITNESS: | Correct. |
| --- | --- |

QUESTION:     And is it similarly correct that in the absence of any comment or additional information, it would be impossible to say if they were charged, you know, for anything other than that day's transportation going to and from the Pacesetter job site?

MR. TOMASSI:     Object to the form.

THE WITNESS:     Correct.

*Parlante Depo.* 86:4-20 [DE 559.1].

[9] While the records themselves must be referenced on each occasion on which Pacesetter subjected someone to a transportation charge in excess of $3.00, this does not mean that individualized issues predominate.  Rather, as the Fourth Circuit has observed, "Rule 23(b)(3)'s commonality-predominance test is qualitative rather than quantitative." <u>Stillmock v. Weis Markets, Inc.,</u> 385 F. App'x 267, 273 (4th Cir. 2010).

[10] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n. 4 (11th Cir.2009) (discussing the continuing validity of *Nettles*).

individual fact determinations with respect to charges, if that question is reached, these will depend on objective criteria that can be organized by a computer, perhaps with some clerical assistance."), *aff'd on other grounds sub nom., Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); 5 Moore, *supra,* § 23.46[3], at 23–210 & n. 18 (collecting cases holding that class certification is appropriate where damages are calculable by mathematical formula); *see also Schorr v. Countrywide Home Loans, Inc.,* 2015 WL 13402606, at *4 (M.D. Ga. Apr. 1, 2015) (same).

Here, as in *Smilow* and *Roper*, Plaintiffs' excess transportation charge claims can be resolved using objective criteria, by reference to Pacesetter's computerized payroll records, with some clerical assistance.  Thus, Plaintiffs respectfully submit that the Court's holding that individualized issues predominate with regard to such claims was in error and should be reconsidered.

**B.** **Under the FPLA Each Workday "Stands Alone" and Excessive Transportation Charges Are Not Susceptible to Offsets Across Days, Weeks, or Months to Avoid FLPA Liability.**

While the Court held that individual issues predominate, it appears that its holding in this regard was based on a fundamental misunderstanding of the FLPA. In support of its finding in this regard, the Court gave the following example:

> For example, the Ticket Reports (DE [504] Ex. 1) submitted by Plaintiffs show that in an 18-day span, one or two transportation charges exceeded the $3.00 daily limit. … The Ticket Reports also show days where there were no charges for transportation, or on some days, transportation credits were made. For example, on August 17, 2018, and September 7, 2018, Laura Johnson was charged $4.50 for transportation but received a $7.50 transportation credit on August 27, 2018. *See, e.g., id.,* pp. 1. Likewise, a $4.50 charge was made on November 21, 2018, but no charge for transportation was made on November 17. *Id.,* p. 2. A $3.00 transportation credit was given on June 26, 2019. *Id.,* p. 3. Testimony in the record establishes that Pacesetter allowed employees to purchase bus passes at cost and those purchases were included in transportation charges.

> Resolution of the transportation charges would, therefore, require individualized proof, not just for damages but for liability as well.

Order at 11-12.

With all due respect to the Court, under the FLPA (an act enacted to establish some basic protections for "day" laborers) **each workday stands alone**: i.e. charging a worker more than $3.00 for transportation on any given day is a violation of the FLPA. The fact that Laura Johnson had a $7.50 and a $3.00 transportation credit on a random workday a few weeks or months prior to or after an excessive transportation charge is not determinative of or germane to whether an FLPA violation **on a given day** occurred. There is no basis in the FLPA to "even out" daily transportation charges across weeks or months, (nor has Pacesetter argued such a theory is permissible). Additionally, the $7.50 credit which occurred on August 27, 2018 has a notation which reads "Comments: [REBILL 100418MEC]." See DE 540, Ex. 1, p. 1. Undersigned counsel does not know what this notation means. Nor has defense counsel even argued this $7.50 charge is relevant to Laura Johnson's FLPA excessive transportation charge claims or means anything which would negate the idea that "each workday stands alone" under the FLPA. Similarly, the $3.00 transportation credit given to Ms. Johnson on June 26, 2019 (months after the instances of the $4.50 transportation charges) is simply irrelevant to the analysis: Ms. Johnson may have happened to been a driver that day and drove a co-worker to and from a job site (i.e. daily ticket workers who elect to be "carpool" drivers on a given day are paid $3.00 for each co-worker that they drive to and from the jobsite) or the credit was for some other unknown reason. Respectfully, it does not matter to the FLPA daily transportation charge analysis.[11]

---

[11] Furthermore, consistent with Pacesetter's records, Ms. Johnson's testimony makes clear that none of the excess transportation charges are attributable to the purchase of bus passes for personal use. *See* Johnson Decl., DE 559-6, ¶26. Instead, she paid cash in all instances in which she purchased a bus pass for personal use. *See id.* For these reasons, notwithstanding the Court's concerns regarding some of the excess transportation charges with regard to Ms. Johnson, such concerns are unwarranted.

Again, the parameters of the claims brought by this specific subclass can be ascertained solely by looking within the "four corners" of Pacesetter's own pay records, which indicate on their face that Ms. Johnson and other daily ticket workers throughout Florida were charged (thousands of times) more than $3.00 for transportation on **specific, individual days**.

### C. **A Class Action is Superior to Thousands of Individual Claims for Statutory Damages.**

Although not addressed by the Court, for the sake of fullness, Plaintiffs also address 23(b)(3)'s superiority requirement, in an excess of caution. The focus of the superiority analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183–84 (11th Cir. 2010) (internal citation omitted). In this vein, "the predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims, both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability[.]" *Id.* at 1184 (internal citations and alterations omitted).

Regarding Rule 23(b)(3)'s superiority factors inquiry, a class action is clearly superior to tens of thousands of small value individual claims for statutory damages, which would overwhelm the court system.[12]

---

[12] *See Kubiak v. S.W. Cowboy, Inc.,* No. 312-CV-1306-J-34JRK, 2014 WL 2625181, at *20 (M.D. Fla. June 12, 2014) ("This case appears to fall squarely within the category of cases where the individual members of the proposed class would lack incentive to pursue individual actions as the possible recovery would likely be far outweighed by the expense of such action. Also, where, as here, common issues predominate, it would be far more efficient to have the common issues raised by Count VI litigated in a single action, as opposed to a hundred or more individual actions. Therefore, the Court finds that a class action is superior to other methods of adjudicating Count VI, and that both the requirements of Rule 23(b)(3) are met in this case.").

First, given the cost of litigation relative to any likely recovery, "it [is] unlikely that the majority of putative class members would have any interest in maintaining a separate action." *Ruffin*, 2012 WL 5472165, at *11. Second, while there is another litigation with potential class members pending in this district, the plaintiffs in *Jerome* have alleged only FLSA violations. Third, litigation of this case in this forum is desirable because a large number of putative class members reside in this District and the Parties have fully litigated the excess transportation charge issue. Finally, it is unlikely that any difficulties will be encountered in the management of this case, other than typical issues of the language of the notice to the putative class members.  For these reasons, a class action is superior to individual actions regard the FLPA excess transportation charge claims.

As such, Plaintiffs respectfully ask the Court to reconsider its Order, and authorize Rule 23 certification of a statewide class as to the FLPA §448.24(1)(b) claims (ie. the "excessive" transportation charges).

## II.  Plaintiffs Respectfully Ask The Court To Reconsider Its Denial of Class Certification As To The Plaintiffs' FMWA Claims.

The Court also found that individual issues predominated with regard to Plaintiffs' FMWA claims. *See* [DE 601 at 11]. As with the FLPA claims however, Plaintiffs respectfully submit that the Court's Order in this regard was in error.

Specifically, the Court found:

> The issue of whether wait and travel time is compensable for the daily ticket workers necessarily involves proof that is specific to each job site, each mode of transportation, and each assignment of tools. The case-by-case and fact-specific inquiry necessary to resolve whether the wait and transportation times were compensable makes it impossible to resolve the central issue in "one stroke." For this reason, the Court concludes that the individual questions predominate over the undisputed issue that Pacesetter did not pay for the time in question. Class certification

on the FMWA issues is, therefore, not appropriate because the requirements of Rule 23(b)(3) are not met.

*Order,* DE at 10-11.

The Court also noted, "Other factors that are considered are whether the employee did any "work" for the employer during the wait and travel time, such as training, instruction, or planning." *Id.* at 10. Respectfully, whether Plaintiffs did any additional "work" while travelling to and from the job site each day (on a Pacesetter van, or in a carpool as a passenger or driver) is not a relevant inquiry and not what makes the travel time at issue here compensable under the FLSA (and in turn, the FMWA). Whether the travel time in this case is compensable under the FLSA (the travel to and from the jobsite) hinges on the following three questions:

**TRAVEL TO JOB SITE FROM LABOR HALL:**

- Were Plaintiffs required to report the labor hall each morning to pick up their tools, gear, equipment and daily tickets, and receive their assignment to Pacesetter-coordinated transportation?

- Were Plaintiffs required to carry the tools/gear/equipment and daily ticket (all of which Pacesetter acknowledges was necessary and integral to the performance of their work each day) to the job site each day

**TRAVEL FROM JOB SITE TO LABOR HALL:**

- Were Plaintiffs required to carry the tools/gear/equipment and daily ticket back to the labor hall at the end of the day?

This is because:

> Where an employee is **required to report at a meeting place to receive instructions** or to perform other work there, **or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.** If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., **all of the time is working time.**

29 C.F.R. § 785.38 (emphasis added).

In short, if the answer is "yes" to the three questions set forth above, the travel time is compensable under the 29 C.F.R. § 785.38 and the FLSA. **It does not matter what Plaintiffs were doing while they were being transported to and from the jobsite**: whether they were napping, playing cards, reading a book, looking at their cellphones, eating a snack, or talking with one another is wholly irrelevant. Thus, there will be no meaningful "individualized inquiry" into what Plaintiffs were doing during the travel time **because it does not matter what they were doing while they were travelling.**

Additionally, with all due respect to the Court, the determination of whether wait and travel time is compensable has nothing to do with any facts "specific to each job site" *Order* at 11. The determination of whether the travel or wait time at issue in this case is compensable has nothing to do with what kind of job site a worker went to on a given day: whether the job site was a construction site, a warehouse, an office building, a marina, an event or anything else **makes no difference** to the analysis. Similarly, it makes no difference what "each mode of transportation" Plaintiffs took to and from the jobsite. Under the 29 C.F.R. § 785.38 and interpretive case law it is irrelevant to this case what mode of transportation a worker took on a given day. Applying the 29 C.F.R. § 785.38 analysis to the facts of this case, it is not germane whether a daily ticket worker on a given day was transported in a Pacesetter van, a co-worker's car, a bus, a train, a trolley, or if they drove their own car. Rather, the question is to what degree was it **required** to report to the labor hall at the beginning and end of each day, and to what degree was the transporting of the tools/equipment/ gear and daily ticket from and back to the labor hall required.

Finally, it makes no difference what tools were issued to a worker on a given workday. It is undisputed some combination of tools/gear/equipment are issued to daily ticket workers **every** day, and Defendants admit the tools issued to the workers each morning are the tools necessary

to perform that day's work and the tools necessary to perform the work the customer needs done. Without the specific tools issued each day, a worker would be unable to perform the work tasks they are assigned that day. See Plaintiff's Statement of Undisputed Material Facts [DE 557, ¶26, citing Parlante Depo. at 176:4-9; 182:7-10; 182:18-183:7; 184:4-11; Decl. of Johnson, ¶15; Decl. of Merritt, ¶15; Decl. of Emmanuel, ¶15].

As such, Plaintiffs ask the Court to reconsider its conclusion that "individualized" issues predominate with the proposed FMWA class.

Assuming that all the requirements of Rule 23(a) are met, a class may be maintained where "the court finds that the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This does not mean a class should be denied where there are **some** individualized issues or inquiries (conceptually almost all multiple worker cases likely have **some** individualized issues). Rather, the standard is whether common questions of law or fact "predominate" over individualized issues or inquiries.

Respectfully to the Court, the Plaintiffs in this case (low paid day laborers) are about as "fungible" a group of workers as one can imagine, and there are far more common issues of fact and law as to these workers and the pay policies they were subjected to than any relevant individualized issues. There are very few "individualized" aspects to their work or the choices they can make during their workday.[13] During the time period relevant to this case (January 29, 2015 through the present) Pacesetter has employed over 62,000 daily ticket workers in the state of Florida. There are no credentials, education or training required for these jobs: literally any

---

[13] *See* Parlante 112:17-22 (All daily ticket workers, regardless of mode of transport, required to bring daily ticket to their assigned daily job site from the labor hall); Charles 41:13-20 (Regardless of mode of transport, or job site, every DTW had to carry tools and daily ticket to/from job site every day.).

able-bodied adult can work as a Pacesetter daily ticket worker. Thus, with full respect to the Court, if this highly fungible group of workers cannot qualify for a Rule 23 class, it is difficult to imagine any group of workers doing so.[14]

For the forgoing reasons, Plaintiffs respectfully ask the Court to reconsider its Order, and authorize Rule 23 certification of a statewide class as to the FMWA claims.

### III.   THE FMWA AND FLPA EXCESS TRANSPORTATION CHARGES SHOULD ALTERNATIVELY BE CERTIFIED PURSUANT TO RULES 23(b)(1) and (2).

As more fully addressed in Plaintiffs' Motion for Class Certification [DE 520], Plaintiffs proposed classes meet all of the requirements for class certification under Rule 23(a). Members of the proposed class are identifiable and numerous, the proposed class representatives have claims that are typical of the class, and will fairly and adequately represent class interests.

Additionally, on a motion to certify class, the court must accept as true the allegations contained in Plaintiffs' complaint. *See Moreno–Espinosa v. J & J Ag Prods., Inc.,* 247 F.R.D. 686, 691 (S.D.Fla.2007) (*citing Heffner v. Blue Cross and Blue Shield of Alabama, Inc.,* 443 F.3d 1330, 1337 (11th Cir.2006)); *Napoles-Arcila v. Pero Fam. Farms, LLC,* No. 08-80779-CIV, 2009 WL 1585970, at *4 (S.D. Fla. June 4, 2009)

Plaintiffs satisfy the requirements for certification under Rule 23(b)(1) in that prosecuting hundreds and potentially thousands of separate actions arising under state law in dozens of different state and county courts all over Florida by individual class members would create a very real risk of inconsistent or varying adjudications with respect to individual class members

---

[14] Low wage workers in Florida have many times been granted Rule 23 class status as to claims brought under the FMWA. *Lopez v. Hayes Robertson Grp., Inc.,* No. I3-10004-CIV, 2013 WL 10561294, at *1 (S.D. Fla. Sept. 23, 2013), amended, No. I3-10004-CIV, 2013 WL 10568828 (S.D. Fla. Sept. 25, 2013); *Kubiak v. S.W. Cowboy, Inc.,* No. 312-CV-1306-J-34JRK, 2014 WL 2625181, at *19 (M.D. Fla. June 12, 2014); *Shaw v. Set Enterprises, Inc.,* No. 15-62152-CIV, 2017 WL 2954675, at *2 (S.D. Fla. June 30, 2017); *Seghroughni v. Advantus Rest., Inc.,* No. 8:12-CV-2000-T-23TBM, 2015 WL 390329, at *2 (M.D. Fla. Jan. 28, 2015); *Pierre-Val v. Buccaneers Ltd. P'ship,* No. 8:14-CV-01182-CEH, 2015 WL 3776918, at *3 (M.D. Fla. June 17, 2015); *Encarnacion v. J.W. Lee, Inc.,* No. CV 14-61927, 2015 WL 12550747, at *2 (S.D. Fla. June 30, 2015).

that could establish incompatible standards of conduct for Pacesetter, and could potentially impair, prejudice and undermine the interests of other potential class members.

Likewise, Rule 23(b)(2) is satisfied where there is a basic pattern of action or inaction on the part of the defendant that causes, or has the potential for causing, all members to be subjected to the challenged practices and conditions, as here with regard to both the FMWA and FLPA claims

As such, this Court should certify for class status both the FMWA claims class and the class of Florida daily ticket workers who have been charged more than $3.00 per day for transportation (the FLPA §448.24(1)(b) claims, ie. the "excessive" transportation charges), and permit and supervise notice to all employees who meet the class definitions.

As Plaintiffs have already extensively briefed the issue of satisfying all of the requirements of the Rule's section (a) (numerosity, commonality, typicality, and adequacy of representation) (See DE 520 at 7-17), and per the Court's Order [DE 601] those requirements were not the Court's basis for denial of class certification, Plaintiffs file the instant Renewed Motion and turn to the requirements of sections (b)(1) and (2) of the Rule.

**A. <u>Plaintiffs Satisfy the Requirements of Rule 23(b)(1).</u>**

Certification is proper under Rule 23(b)(1).  Rule 23(b)(1)(A) authorizes a class action if "prosecuting separate actions by or against individual class members would create a risk of ... inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A). Alternatively, Rule 23(b)(1)(B) permits class certification where:

> prosecuting separate actions by or against individual class members would create a risk of ... adjudications with respect to individual class members, that, as a practical matter, would be dispositive of the interests of the other members not parties to the

individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed.R.Civ.P. 23(b)(1)(B).

Certification under Rule 23(b)(1) requires not only that there be a realistic risk of separate litigation, but also that such litigation could likely result in inconsistent or varying adjudications imposing incompatible standards of conduct on the defendants. *In re Agent Orange Prod. Liab. Litig.,* 100 F.RD. 718, 724–25 (E.D.N.Y. 1983), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

Here, the future risk of inconsistent adjudications is high because these are purely state law claims currently in federal court. If the Court does not certify the two classes sought, the opt-in Plaintiffs (there are already over 285 in this case) along with hundreds and possibly even thousands of other workers residing in and who worked in dozens of counties all over Florida would have to file their cases in a myriad of Florida county and circuit courts. Simply put, if certification is not granted here there is a very real possibility of hundreds if not thousands of cases being brought in scores of different county and circuit courts all over the state. This is not a situation where future filed cases would somehow get assigned to the same court and/or judge, as these are state law claims. *See Leyva v. Buley*, 125 F.R.D. 512, 517 (E.D. Wash. 1989) (certifying wage and hour claims pursuant to Rule 23(b)(1).[15]

**B.  Plaintiffs Also Satisfy the Requirements of Rule 23(b)(2).**

Certification is also appropriate pursuant to Rule 23(b)(2). A Rule 23(b)(2) class is appropriate when:

---

[15] "Plaintiff asserts that the requirements of Rule 23(b)(1)(A) have been met because prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for defendant. Defendant merely asserts that, because of the differences in the workers' situations, potential incompatibility has not been established. Defendant points out that some of the workers were working two jobs at the same time, some were housed by defendant, some of those housed by defendant did not actually work for defendant, and some worked for an hourly wage, rather than piecework. However, these differences are minor, and are insufficient to defeat class certification." *Id.*

> The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P.23(b)(2). The proposed plaintiff class here fulfills the definition of a Rule 23(b)(2) class.

The term "generally applicable" as it appears in Rule 23(b)(2) has been interpreted to mean that the party opposing the class "has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity, or has established a regulatory scheme common to all class members." 7A Wright & Miller, Federal Practice and Procedure, § 1775 at 19-20 (1972). Rule 23(b)(2) is satisfied where there is a basic pattern of action or inaction on the part of the defendant that causes, or has the potential for causing, all members to be subjected to the challenged practices and conditions. *See Conover v. Montemuro*, 477 F.2d 1073 (3d Cir.1972) reinstated in relevant part, 477 F.2d 1093 (3d Cir.1973).

The practices challenged here (failure to pay travel time and charging workers transportation fees that take their pay below lawful minimum wage) exemplify such a basic pattern of action. *See Lawson v. Wainwright,* 108 F.R.D. 450 (S.D. Fla. 1986) (finding where complaint alleges basic pattern of action generally applicable to members of the class warrants certification under section (b)(2). Here, Plaintiffs, in addition to seeking monetary damages, are also implicitly seeking injunctive or declaratory relief in that they are seeking an eventual court finding that Defendants' practice of charging its minimum wage workers transportation fees is unlawful, a practice universally applied at all of Pacesetter's Florida labor halls.

## IV.    PROPOSED CLASS NOTICE

Attached as **Exhibit 2** is Plaintiffs' proposed class notice form. The notice sets forth in

clear, concise and easily understood language, the requirements set forth by Rule 23(c)(2)(B). Given the size and makeup of this Class, the Notice is to be provided to Class Members by mail at each Class Member's last known address.21 *See Holman v. Student Loan Xpress, Inc.,* 2009 WL 4015573, at *6 (M.D. Fla. Nov. 19, 2009) (in a Rule 23 class settlement, approving proposed method of notice which consisted of the settlement administrator's mailing notice by first class mail to the most current mailing address of each member of the settlement class). For the reasons set forth above, the notice is fair, reasonable, and adequate and consistent with due process and should be approved.

## CONCLUSION

For all of the foregoing reasons, this Court must grant this Motion and order the following relief:

1. Certifying the following two (2) classes defined as follows:

**Class 1:** **All employees who worked for Defendants as hourly "unskilled" "general" laborers ("daily ticket workers") and were employed by Defendants on "daily tickets" in Florida at any time from January 29, 2015, to the present.**

**Class 2:** **All employees who worked for Defendants as hourly "unskilled" "general" laborers ("daily ticket workers") and were employed by Defendants on "daily tickets" in Florida and incurred one or more daily transportation charges in excess of $3 per day at any time from January 29, 2016 to the present.**

2. Appointing Plaintiffs, Shane Villarino, Laura Johnson, Jeffrey Mondy, and Jerome Gunn, as Class Representatives;

3. Appointing counsel for the Plaintiffs, Dion J. Cassata, Esq., Cassata Law, PLLC, and Andrew R. Frisch, Esq., Morgan & Morgan, P.A., as Class Counsel;

4. Compelling Defendants to produce a complete and accurate employee list of all employees within the class definitions;

5.   Approving the form and method of Notice to be provided to the Class, as set forth below and attached hereto as EXHIBIT 2, and finding said Notice to be fair, reasonable, and adequate and Consistent with due process, and;

6.   Any other relief that is just and proper.

**DATED:**            June 15, 2022                    Respectfully submitted,


BY:      */s/  Andrew R. Frisch*

Andrew R. Frisch, Esq.
Fla. Bar No. 27777
*afrisch@forthepeople.com*

MORGAN & MORGAN, P.A.
8151 Peters Road, 4th Floor
Plantation, FL 33324
Telephone:     (954) WORKERS
Facsimile:      (954) 327-3013

-and-

BY:      */s/  Dion J. Cassata*

Dion J. Cassata, Esq.
Fla. Bar No. 672564
*dion@cassatalaw.com*

CASSATA LAW, PLLC
7999 North Federal Highway, Suite 202
Boca Raton, Florida 33487
Telephone:   (954) 364-7803

*Counsel for Plaintiffs and the Classes/Collective*

21

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this June 15, 2022, I electronically filed the forgoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive notices of electronic filing.

By:     <u>*/s/  Dion J. Cassata*</u>
        Dion J. Cassata, Esq.
        Fla. Bar No. 672564