**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60192-CIV-SINGHAL/VALLE

SHANE VILLARINO, *et al.*,

    Plaintiffs,

v.

PACESETTER PERSONNEL SERVICE,
INC., *et al.*,

    Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Class Certification (DE [520]). The matter is fully briefed and the Court heard oral argument of counsel on March 17, 2022. For the reasons discussed below, the motion is granted in part and denied in part.

I.    INTRODUCTION

This is an action for unpaid minimum and overtime wages in violation of the Federal Fair Labor Standards Act ("FLSA") and the Florida Minimum Wage Act ("FMWA"), as well as alleged violations of the Florida Labor Pool Act ("FLPA"), Fla. Stat. 448.20 *et seq.* Plaintiffs are general day laborers employed by Defendants, Pacesetter Personnel Service, Inc., Pacesetter Personnel Service of Florida, Inc., Florida Staffing Service, Inc., Tampa Service Company, Inc., Pacesetter, Pacesetter Personnel, Pacesetter Personnel Service, Pacesetter Personnel Services, Pacesetter Personnel Services, LLC, PPS and/or FW Services (collectively, "Defendants" or "Pacesetter").

Pacesetter provides temporary labor to a variety of industries. On days the workers choose to work, they visit or sign into the local Pacesetter office. Pacesetter then

assigns workers to available positions and gives them a job slip to be completed by the employer. Several workers allege that the Commercial Boulevard Pacesetter office lacked required seating, bathroom facilities, or water, but other workers acknowledge those amenities were present. While waiting for their job assignments and/or their transportation, workers pass the time by resting, watching television, looking at their phones, or walking to a nearby convenience store for coffee or cigarettes.

Pacesetter provides van transportation to the job sites, or workers carpool from the Pacesetter office, or workers travel to the job sites independently: some take the van, some carpool, some bicycle, some take the bus, some drive their own cars. Pacesetter charges $1.50 per trip/$3.00 per day for taking the Pacesetter van or a carpool. If a Pacesetter employee drives his or her personal car for a carpool, he or she is paid at the same rate for each passenger.

Pacesetter also provides tools and equipment necessary for the day's job. These tools could include goggles, gloves, shovels, brooms, masks, or work boots. Some workers bring their own equipment, such as boots, gloves, hard hats, etc. Workers who use Pacesetter equipment and tools receive them on their way out to the job. After the day's work, a worker can return to Pacesetter to turn in the job slip, receive the day's wages, and return the borrowed tools. If a worker does not return to Pacesetter at the end of the day, the worker can complete those tasks and get paid on his or her next day at the Pacesetter office.

The workers are compensated for the hours they work at the employers' sites. Workers are not paid for time spent waiting at Pacesetter's offices in the morning, or for travel to and from the job sites. In addition, transportation charges for using Pacesetter vans or carpools are deducted from the workers' daily pay. Some workers allege that

2

they were charged in excess of $3.00 per day[1] for transportation in violation of the FLPA. Other workers allege that Pacesetter improperly deducted charges for tools and equipment from their pay, again in violation of the FLPA.[2] Plaintiffs also allege that, as a result of these practices, their pay did not meet the federal and state minimum wage and overtime laws. Plaintiffs also allege that Defendants' Commercial Boulevard facility lacked restroom facilities and/or water.[3]

Plaintiffs seek Rule 23 certification of a class of workers with three subclasses with claims under the FWPA and FLPA:

> All employees who worked for Defendants as hourly "unskilled" or "general" laborers ("daily ticket laborers") and were employed by Defendants on "daily tickets" in Florida from January 29, 2015, to the present. This includes those employees who were charged in excess of $3.00 per day for transportation [the "transportation subclass'"] and/or charged for safety equipment, clothing, accessories, or any other items required by the nature of their work [the "equipment subclass"], on or after January 29, 2016, and includes those employees who worked at Defendants' Fort Lauderdale, Florida location, located at 381 East Commercial Blvd., Fort Lauderdale, FL 33334 from January 29, 2016, to the location's close [the "Commercial Boulevard" subclass].

Pacesetter opposes class certification on several grounds, which are addressed below.

## II. LEGAL STANDARDS

A district court is afforded broad discretion in deciding whether to certify a class. *Joffe v. GEICO Indem. Ins. Co.*, 2019 WL 5078228, at *1 (S.D. Fla. July 31, 2019). However, this discretion is not unfettered. Our case law instructs that a court must engage

---

[1] Fla. Stat. § 448.24(2)(b) sets a $1.50 per way maximum daily transportation charge.
[2] Fla. Stat. § 448.24(1) prohibits charging a day laborer "for safety equipment, clothing, accessories, or any other items required by the nature of the work either by law, custom, or as a requirement of the third-party user." Charges may be made for items purchased or willfully not returned by the laborer.
[3] Fla. Stat. § 448.24(5) provides that "[a] labor pool that operates a labor hall must provide facilities for a worker waiting at the labor hall for a job assignment that include: (a) [r]estroom facilities; (b) [d]rinking water; [and] (c) [s]ufficient seating."

3

in a "rigorous analysis," *Ohio State Troopers Ass'n v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1217 (S.D. Fla. 2018), and "the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prod., Inc.,* 817 F.3d 1225, 1233 (11th Cir. 2016).

Federal Rule of Civil Procedure 23 controls the inquiry. To begin, the court must determine whether the proposed class is "adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.,* 986 F.3d 1296, 1302 (11th Cir. 2021) (quoting *Little v. T-Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012)). If the proposed class is ascertainable, the court must determine if it meets the four explicit factors in Rule 23(a).

For a class to be certified, the court must find that: (1) the class is so numerous that joinder is impractical (numerosity)[4]; (2) questions of law or fact are common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). *See* Fed. R. Civ. P. 23(a). If Rule 23(a) is satisfied, the class action may be maintained if the case meets one of three requirements of Rule 23(b).

Plaintiffs' Motion for Class Certification seeks certification only under Rule 23(b)(3),[5] which provides that a case may be certified as a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to all other

---

[4] Pacesetter agrees that Plaintiffs have satisfied Rule 23's numerosity requirement.
[5] Plaintiffs' Motion for Class Certification addresses only the elements of Fed. R. Civ. P. 23(b)(3). But in their reply memorandum (DE [540]), Plaintiffs argue the case meets the requirements of Rule(b)(1) as well. Local Rule 7.1(c)(1) strictly limits the reply memorandum to rebuttal of matters raised in the memorandum in opposition.

4

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Rule 23 analysis is "rigorous" and "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification questions." *Id.* (quoting *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160 (1982)). "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 (1978)). Indeed, the Eleventh Circuit recognizes that district courts must often permit "some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Rensel,* 2 F.4th at 1365 (quoting *Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1309 (11th Cir. 2008)).

III. DISCUSSION

A. Preliminary Considerations

1. Untimeliness of the motion

Pacesetter argues that class certification should be denied because Plaintiffs untimely filed their motion 24 months after the Complaint was filed. "District courts have broad discretion to control their dockets and surely may deny class certification motions as untimely, such as when unreasonable delay causes prejudice to the opposing party." *Rensel v. Centra Tech, Inc.,* 2 F.4th 1359, 1365 (11th Cir. 2021) (holding district court abused its discretion in denying motion for class certification as untimely where trial court

5

did not establish a deadline and defendant showed no prejudice). In this case, the pretrial schedule did not include a deadline for filing a motion for class certification. The motion was filed well before the dispositive motion deadline and Defendants have not identified any prejudice caused by the date the motion was filed. This case has been litigated since the first day as a class and collective action. Indeed, Defendants could have, but did not, move preemptively to deny class certification. The Court cannot deny the motion on grounds of untimeliness.

        2.        Class actions under the FLPA

Next, Pacesetter argues that a class action is not an appropriate vehicle for prosecuting claims under the FLPA. Neither the statute nor Florida case law supports that argument. Section 448.25, Fla. Stat., provides the remedies, damages, and costs available to a worker aggrieved by a violation of § 448.24. These include the right to sue for actual and consequential damages, or $1,000 statutory damages, plus costs. The statute provides that the remedies "are not exclusive and shall not preclude the worker from pursuing any other remedy at law or equity which the worker may have." Fla. Stat. § 448.25(2). Furthermore, Florida courts have recognized FLPA claims brought within class actions. *Liner v. Workers Temporary Staffing, Inc.,* 990 So. 2d 473 (Fla. 2008), involved a class action FLPA claim. Although judgment was ultimately entered in favor of the defendant, no challenge was made to suitability of a class action in the context of an FLPA claim. And in *Tampa Service Co., Inc. v. Hartigan,* 966 So. 2d 465 (Fla. 4th DCA 2007), the court affirmed class certification in an FLPA case. There is no statutory impediment to bringing an FLPA as a class action.

6

### 3. Lack of Standing

Pacesetter also argues that the transportation subclass cannot be certified because the class representatives lack standing. *See Prado-Steiman ex re. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000) ("Thus, it is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."). According to Pacesetter, the class representatives each testified in deposition that they were never charged more than $3.00 for transportation. (DE [536] p. 12). Plaintiffs do not deny that testimony but state that Pacesetters' own records show that two of the named plaintiffs – Laura Johnson and Jeffery Mondy -- were charged in excess of $3.00 for transportation on multiple occasions. (See DE [540], Ex. 1). Mondy was never deposed and his ticket reports for August 25, 2019 and September 1, 2019, indicate that he was twice charged $4.50 for transportation. Although Pacesetter may have an explanation of why Mondy was twice charged more than $3.00 for transportation, the evidence in the record is sufficient to establish that at least Mondy and Johnson have standing to pursue the transportation claim.

### 4. Ascertainability

Pacesetter argues that the transportation and equipment subclasses fail to meet Rule 23's implicit ascertainability requirement. *See Cherry,* 986 F.3d at 1302 (ascertainability must be determined before a district court can consider the requirements of Rule 23(a)). Pacesetter argues there is no administratively feasible way to determine which employees paid more than $3.00 per day for transportation, but the Eleventh Circuit has rejected the "feasibility" requirement. *Id.* at 1304; *Rensel,* 2 F.4th at 1369 ("the words

7

'administrative feasibility' are nowhere to be found in Rule 23"). A class may be ascertainable if there is an "objective, verifiable criterion" but convenience and feasibility are not requirements.[6] *Id.* And a charge of more than $3.00 for transportation or for equipment is an objective, verifiable criterion available from the Defendants' daily tickets.

Pacesetter also argues that the transportation and equipment subclasses are "fail-safe" classes and, therefore, should not be permitted to proceed. A fail-safe class is one "whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury." *Cordoba v. DirectTV, LLC,* 942 F.3d 1259, 1277 (11th Cir. 2019). The Eleventh Circuit has not opined whether a fail-safe class can be certified, but there is division among other courts of appeal. *See Reyes v. BCA Fin. Servs., Inc.,* 2018 WL 3145807, at *18 (S.D. Fla. June 26, 2018) (collecting cases)*.* Assuming for purposes of this motion that the Eleventh Circuit would disallow fail-safe classes, the proposed subclasses in this case are not fail-safe classes.

Pacesetter argues that the Court will need to evaluate the merits of the case by determining whether each potential class member was in fact charged more than $3.00 per day for transportation or whether those who were charged for equipment were charged for equipment "required by the work." But Pacesetter also argues that there are legitimate, legally permissible reasons for the transportation and equipment charges. The proposed class definitions are not, therefore, fail-safe classes.

B.  Rule 23 Factors

The Rule 23 factors must exist for every proposed class and sub-class. If one of the requirements is not met, the class (or sub-class) may not be certified. *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1279 (11th Cir. 2000). The parties do not dispute that

---

[6] A comparative analysis of administrative feasibility may, however, be relevant to "the manageability criterion of Rule 23(b)(3)(D)." *Rensel,* 2 F.4th at 1370.

the numerosity requirement is met for each class and subclass. The Court will evaluate the remaining factors for the class and each sub-class separately.

1. <u>FMWA</u>

Plaintiffs argue that the FMWA class meets the commonality requirement because Pacesetter has a common policy of not paying day ticket laborers for time spent waiting at Defendants' offices, picking up tools, and traveling to and from the job sites. Plaintiffs allege that as a result of Pacesetter's policy of not paying waiting or travel time, their pay did not meet the minimum wage requirements of the FMWA. The policy and practice of not paying waiting and travel time is undisputed. "Where the complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004) (citing *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1113 (5th Cir. 1978)). The Complaint and the record establish that none of the daily ticket workers were ever compensated for waiting or travel time. This is a common practice that satisfies the commonality requirement of Rule 23(a).

But "it is not just the presence of common questions that matters, but the ability of the class action device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Muzuco v. Re$submitIt, LLC,* 297 F.R.D. 504, 515 (S.D. Fla. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)). Even if all the requirements of Rule 23(a) are met, a class may not be maintained unless "the court finds that the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

"To determine whether common issues predominate, a district court first must 'identify the parties' claims and defenses and their elements and 'then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial.'" *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1040 (11th Cir. 2019) (quoting *Brown v. Electrolux Home Prods., Inc.,* 817 F.3d 1225, 1234 (11th Cir. 2016)). Pacesetter argues that resolution of the FMWA claim will require multiple individual examinations because resolution of whether waiting and travel time is compensable is entirely fact-dependent:

> When employees are engaged to wait for the employer's call to duty, this time may be compensable…. The question of whether the employees are working during this time … depends on the degree to which the employee may use the time for personal activities. This question has been formulated as whether the time is spent predominately for the employer's benefit or for the employee's. This question is dependent upon all the circumstances of the case.

*Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 807 (11th Cir. 1992) (internal citations and quotations omitted). Other factors that are considered are whether the employee did any "work" for the employer during the wait and travel time, such as training, instruction, or planning. *See Bonilla v. Baker Concrete Const., Inc.,* 487 F.3d 1340, 1342 (11th Cir. 2007) (mandatory travel on employer-supplied transportation compensable only if employees engaged in work-related activity that is "integral and indispensable" to their work).

The Eleventh Circuit has held that "certification is inappropriate when after adjudication of the class-wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individualized claims." *Sellers v. Rushmore Loan Mgmt. Servs., LLC,* 941 F.3d 1031, 1040 (11th Cir. 2019) (internal citations omitted). The issue of

10

whether wait and travel time is compensable for the daily ticket workers necessarily involves proof that is specific to each job site, each mode of transportation, and each assignment of tools. The case-by-case and fact-specific inquiry necessary to resolve whether the wait and transportation times were compensable makes it impossible to resolve the central issue in "one stroke." For this reason, the Court concludes that the individual questions predominate over the undisputed issue that Pacesetter did not pay for the time in question. Class certification on the FMWA issues is, therefore, not appropriate because the requirements of Rule 23(b)(3) are not met.

    2.    <u>The FLPA claims</u>

Plaintiffs also seek to certify several subclasses of workers who allegedly suffered violations of the FLPA. Specifically, Plaintiffs allege some workers were charged more than $3.00 per day for transportation, some workers were charged for tools and safety equipment, and all workers at the Commercial Boulevard site reported to a labor hall that lacked bathroom facilities and water.

Assuming without deciding that the transportation and equipment subclasses meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), these subclasses cannot be certified because they do not satisfy the Rule 23(b) criteria. Specifically, resolution of the transportation and equipment subclass claims will require extensive amounts of individualized proof that would predominate. For example, the Ticket Reports (DE [504] Ex. 1) submitted by Plaintiffs show that in an 18-day span, one or two transportation charges exceeded the $3.00 daily limit. There is, clearly no policy of charging more than $3.00 per day for transportation, even if it did sometimes occur. The Ticket Reports also show days where there were no charges for transportation, or on some days, transportation credits were made. For example, on August 17, 2018, and

11

September 7, 2018, Laura Johnson was charged $4.50 for transportation but received a $7.50 transportation credit on August 27, 2018. *See, e.g., id.,* pp. 1. Likewise, a $4.50 charge was made on November 21, 2018, but no charge for transportation was made on November 17. *Id.,* p. 2. A $3.00 transportation credit was given on June 26, 2019. *Id.,* p. 3. Testimony in the record establishes that Pacesetter allowed employees to purchase bus passes at cost and those purchases were included in transportation charges. Resolution of the transportation charges would, therefore, require individualized proof, not just for damages but for liability as well. This individualized proof would predominate and would be necessary to establish most or all the individualized claims. The resolution of the excess transportation charge issue "breaks down into an unmanageable variety of individual legal and factual issues." *Bussey v. Macon County Greyhound Park, Inc.,* 562 Fed. Appx. 782, 789 (11th Cir. 2014) (quoting *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014, 1023 (11th Cir. 1996)). This is not suitable for a class action. *Sellers*, 941 F.3d at 1040.

Likewise, the equipment charges were sporadically imposed and the testimony shows that employees were charged for equipment when it was not returned. Determining whether an equipment charge was for a permissible reason or violated the FLPA is a matter of individualized proof that would predominate over any common questions of law or fact. Thus, the equipment class cannot be certified.

The Commercial Boulevard class, by contrast, can be certified. This subclass alleges that Defendants' Commercial Boulevard location, which is now closed, lacked restroom facilities and drinking water as required by FLPA. Fla. Stat. § 448.24(5). Plaintiffs seek to certify "those employees who worked at Defendants' Fort Lauderdale,

Florida, location, located at 381 East Commercial Blvd., Fort Lauderdale, FL 33334 from January 29, 2016, to the location's closure."

Several Plaintiffs testified that the Commercial Boulevard location lacked both water to drink and usable restrooms for employees to use. (DE [520]). Defendants dispute these claims, but these are issues of fact that would resolve the claims of the subclass "in one stroke." *Dukes,* 564 U.S. at 350. Thus, the required commonality exists. Similarly, the typicality requirement is met: the claims and defenses are identical for each class member; the Commercial Boulevard locations provided water and restrooms, or it did not. There is no individual variation in the claims. The Court finds that the adequacy requirement is met; the representative parties will adequately and fairly represent the class. They are represented by able counsel and have vigorously pursued the claims to date. Thus, the Court finds that the requirements of Rule 23(a) are met for the Commercial Boulevard subclass. Finally, the Court finds that the questions of law and fact common to class members predominate over any questions affecting only individual members and that a class action is superior to all other available methods for resolving the controversy. Thus, the requirements of Rule 23(b) are met as well, for the Commercial Boulevard subclass.

The Court will certify as a class those employees who worked at Defendants' Fort Lauderdale, Florida location, located at 381 East Commercial Boulevard, Fort Lauderdale, Florida 33334 from January 29, 2016, to the location's closure. The Court will appoint Plaintiffs Shane Villarino, Laura Johnson, Jeffrey Mondy, and Jerome Gunn as Class Representatives.

### C. Class Counsel

Under Rule 23(g), a district court that certifies a class action must also appoint class counsel. Fed. R. Civ. P. 23(g). The Court must determine that counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making the determination, the court must consider the investigative work done by counsel, counsel's experience in handling class actions and knowledge of applicable law, and the resources counsel will commit to the representation. Fed. R. Civ. P. 23(g)(A)(i)-(iv).

The Court finds that counsel for Plaintiffs, Dion J. Cassata, Esq., Cassata Law, PLLC, and Andrew R. Frisch, Esq., Morgan & Morgan, P.A., will fairly and adequately represent the interests of the class and appoints them as Class Counsel.

### D. Class Notice

The parties dispute the form and content of the Class Notice. The Court requests that the parties confer and submit a joint proposed Class Notice that (1) omits a case caption; (2) refers to only the claims made by the Commercial Boulevard class; and (3) includes the language: "The Court has not yet decided whether Pacesetter has done anything wrong or whether this case will proceed to trial. There is no money available now and no guarantees that there will be."

## IV. CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Class Certification (DE [520]) is **GRANTED IN PART AND DENIED IN PART.**

2. The Court will certify as a class those employees who worked at Defendants' Fort Lauderdale, Florida location, located at 381 East Commercial Boulevard, Fort Lauderdale, Florida 33334 from January 29, 2016, to the location's closure. Plaintiffs Shane Villarino, Laura Johnson, Jeffrey Mondy, and Jerome Gunn are appointed Class Representatives.

3. Plaintiffs, Dion J. Cassata, Esq., Cassata Law, PLLC, and Andrew R. Frisch, Esq., Morgan & Morgan, P.A., are appointed Class Counsel.

4. The parties shall submit a joint proposed Class Notice as limited in this Order by **June 2, 2022.**

5. Defendants shall produce a complete list of all employees within the class definition, with their last known addresses, by **June 16, 2022.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 19th day of May 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF