# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60192-CIV-SINGHAL/VALLE

SHANE VILLARINO, *et al.,*

    Plaintiffs,

v.

**Class and Collective Action**

PACESETTER PERSONNEL SERVICE, INC., *et al.,*

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Partial Summary Judgment (DE [558]). The Court has reviewed the Motion, the opposing and supporting memoranda, the parties' statements of fact and supporting documentation, the applicable law, and is otherwise fully advised. For the reasons discussed below, the motion is denied.

I.    INTRODUCTION

Plaintiffs worked as temporary unskilled laborers through Defendant Pacesetter Personnel Service, Inc.[1] Pacesetter provides unskilled temporary labor to clients in various industries, including construction, entertainment, and healthcare. Plaintiffs allege Pacesetter violated the Fair Labor Standards Act ("FLSA"), the Florida Minimum Wage Act ("FMWA") and the Florida Labor Pool Act ("FLPA") and seek damages, liquidated damages, and attorneys' fees and costs.

---

[1] Defendants operate under several names, but for purposes of this Order will be referred to collectively as "Pacesetter."

Plaintiffs allege Pacesetter violated the FLSA and FMWA[2] by (1) allowing clients to under report hours worked; (2) failing to pay workers for time spent waiting and traveling to and from job sites; and (3) charging workers for transportation and equipment to an extent that they were paid less than minimum wage. The Court conditionally certified two collective FLSA classes:

> **All hourly-paid "daily ticket" general labor employees who have worked for Pacesetter's Fort Lauderdale, Florida, location at any time within the three (3) year period from consenting to be included in this collective action.**
>
> **All hourly-paid "daily ticket" general labor employees who worked in excess of forty hours in a workweek in one or more workweeks at Pacesetter's Fort Lauderdale, Florida, location at any time within the three (3) year period from consenting to be included in this collective action.**

(DE [256]). The Court recently denied Pacesetter's Motion to Decertify the collective classes. (DE [635]).

Plaintiffs allege Pacesetter violated the FLPA by charging an amount over the statutory limit for transportation, improperly charging for use of safety equipment and tools, and failing to provide drinking water and restrooms at Pacesetter's Commercial Boulevard facility. The Court denied class certification on the transportation and equipment charge issues but granted class certification on the drinking water and restroom issue. (DE [601]).

Plaintiffs seek summary judgment on five issues: (1) whether deductions for transportation to and from job sites violates the FLSA and FMWA; (2) whether transportation fees charged in excess of $3.00 per day violated the FLPA; (3) whether

---

[2] The FMWA explicitly incorporates by reference all definitions from the FLSA, as interpreted by the applicable regulations and implemented by the Secretary of Labor. Fla. Stat. § 448.110(3). Except for the required hourly rate, *see n. 4, infra,* duties and liabilities under the FLSA and FMWA are identical.

2

"Daily Ticket Workers" ("DTWs") were entitled under the FLSA and FMWA to be compensated for their travel time; (4) whether Pacesetter violated the FLPA by not providing drinking water at the Commercial Boulevard location; and (5) whether Pacesetter is liable for mandatory liquidated damages under the FLSA and FMWA.

II.     LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[3] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants, LLC*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

---

[3] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "genuine issue" of any material fact.

3

The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

III.  DISCUSSION

  A.  Factual Background

Plaintiffs allege the following undisputed facts. Pacesetter's responses are included, where necessary.

  1.  *The nature of the work*

Pacesetter employs unskilled general laborers referred to as DTWs and supplies laborers to various industries including construction contractors, municipalities, entertainment venues, shopping malls, and commercial and residential complexes. (DE [557] ¶¶ 8,9). The work performed varies each day but is always general "unskilled" labor such as debris clean up, light demolition, trash removal, moving construction, building, landscaping, or other similar tasks. ¶ 21.

DTWs are given a paper "daily ticket" that gives them the location of the job site, the type of work to be done, the name of the client supervisor to report to, the mode of transportation to the job site, and what tools and safety equipment are needed for the job.

4

(DE [557] ¶ 19). At the end of the day, the client supervisor records the hours worked and signs the daily ticket. ¶ 32. The DTWs return to the labor hall to turn in their daily tickets, return the equipment, and collect their pay. DTWs are not required to return to Pacesetter's office at the end of the day; they can turn in their daily ticket and get paid on a later date. (DE [577] ¶ 40, 68). DTWs are only paid for the hours spent working on the job site; no pay is given for time spent at the labor hall after receiving the daily ticket or for travel. (DE [557] ¶¶ 69-73).

        2.    *Transportation*

Each day a DTW reports to Pacesetter's job hall and signs in on a wall-mounted tablet to indicate that he is ready, able, and willing to work. ¶ 41. The screen asks whether the DTW has his or her own vehicle to drive or whether he requires transportation. ¶ 42. DTWs take Pacesetter-coordinated transportation to and from jobsites, which usually consists of either Pacesetter-owned vans or Pacesetter-organized carpools with other DTWs. ¶ 27. DTWs who agree to drive a carpool are paid $3.00 ($1.50 each way) for each person driven. ¶ 43. DTWs who ride in a carpool or on the Pacesetter van are charged $3.00 per day ($1.50 each way). Pacesetter states that DTWs are not required to use Pacesetter-arranged transportation and are free to use their own cars without being a carpool driver. (DE [577] ¶ 44).

Pacesetters' records contain instances where DTWs were charged more than $3.00 per day for transportation. (DE [557] ¶ 50). In some cases, the extra charges contain a notation attributing the charge to a bus pass. In other cases, there are no notations. ¶ 51. Pacesetter states that charges exceeding $3.00 per day were for bus passes sold by Pacesetter to DTWs who requested them for personal use. (DE [577] ¶

5

50; [556] ¶ 36). ¶ 53). Pacesetter explained that due to the fast-paced nature of dispatching dozens of DTWs at a time, notations for bus pass purchase are not always made. (DE [577] ¶¶ 54-55. Pacesetter acknowledges that without a notation it is impossible to say why a DTW was charged more than $3.00 for transportation on any given day. (DE [557]).

   3. *Equipment*

Before they leave for the job site, DTWs pick up tools, equipment and/or safety gear or clothing to use for the day. ¶ 26. Plaintiffs contend that carrying Pacesetter supplied equipment is required. Pacesetter's testimony is that DTWs are not required to bring tools and/or equipment but may choose to use their own. Some DTWs occasionally bring their own vests, gloves, or hard hats. (DE [577] ¶¶ 18-26). If a DTW does not bring back equipment, he is charged for it. (DE [557]), ¶ 38). DTWs are expected to turn in their Pacesetter-issued equipment when they turn in their daily ticket for payment, but if equipment was left at the job site, Pacesetter will work with DTWs to provide an additional opportunity to prevent incursion of a fee. (DE [577] ¶ 2).

B. <u>Analysis</u>

   1. *Travel charges and minimum wage*

Pacesetter charges DTWs who travel in Pacesetter-arranged transportation $3.00 per day (or $1.50 each way). This charge is deducted from the DTWs' daily pay. Plaintiffs contend the charges reduce their wages to below minimum wage in violation of the FLSA and FMWA and seek summary judgment on that issue. (DE [558]). Pacesetter argues

6

that the transportation charges were permissible even if they brought wages below the statutory minimum wage.[4]

Under the FLSA, the cost of "board, lodging, or other facilities" may be added toward or deducted from a stipulated wage. 29 U.S.C. § 203(m); 29 C.F.R. § 531.29. The FLSA does not define "other facilities," but the Department of Labor ("DOL") regulations prescribe that "other facilities … must be something *like* board or lodging." 29 C.F.R. § 531.32(a). "One of the DOL regulations states that 'the cost of furnishing "facilities" which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." *Arriaga v. Florida Pacific Farms, L.L.C.,* 305 F.3d 1228, 1236 (11th Cir. 2002) (citing 29 C.F.R. § 531.36(b)).

In *Arriaga*, the court held that bus transportation for H-2 visa migrant workers from Monterrey, Mexico, to farms in Florida did not constitute "other facilities" and the transportation costs could not be counted as wages. 305 F.3d at 1241. The cost of transporting migrant workers under the H-2 visa program was primarily for the benefit of the employer. In the present case, Plaintiffs argue that *Arriaga* controls and the transportation costs are not "other facilities." Pacesetter argues that *Arriaga* is limited by its facts to workers under the H-2 program and that, in this case, the transportation charges are properly considered commuting costs and, therefore, "other facilities."

---

[4] Plaintiffs argue that Florida's minimum hourly wage applies to their FLSA claims as well. This is incorrect. Section 218(a) of the FLSA preserves the rights of states to enact a higher minimum wage or a lower maximum work week than those prescribed by the FLSA, but the FLSA does not incorporate state minimum or overtime requirements. *See Bonich v. NAS Component Maintenance, Inc.,* 2020 WL 3000187, at *2 (S.D. Fla. Jun. 4, 2020) ("The Fair Labor Standards Act only entitles Plaintiff to the federal minimum wage); *Moser v. Action Towing Inc. of Tampa,* 2017 WL 10276702, at *3 (M.D. Fla. Feb. 6, 2017) ("Although states are entitled to set a minimum wage rate that is higher than the federal minimum wage rate, the FLSA contains no provision requiring the payment of the higher state minimum wage."); *Cloer v. Green Mountain Specialties Corp.,* 2019 WL 13063434, at *7 (M.D. Fla. Oct. 2, 2019); *Alvarado v. Robo Enters., Inc.,* 2016 WL 11566330, at *7 (M.D. Fla. Jan. 6, 2016).

7

This Court agrees with Pacesetter that *Arriaga* is not binding on this case. The *Arriaga* court noted that transportation costs "*may or may not be considered 'other facilities' depending on whether the travel is 'an incident of and necessary to the employment.'*" *Id.* (citing 29 C.F.R. § § 531.32(a) and (c) (emphasis added). The test is whether the transportation costs are primarily for the benefit of the employer. *Id.* at 1242. "When evaluating expenses that are directly or indirectly related to employment, the examples in § 531.32 show a consistent line being drawn between those costs arising from the employment itself and those that would arise in the course of ordinary life." *Id.*

Plaintiffs argue that Pacesetter provided transportation to the workers for its own marketing and business purposes and, therefore, the transportation is not an "other facility" under the FLSA. They cite Pacesetter's website, where Pacesetter advertises that it has "a fleet of transport vehicles to ensure the timely arrival of workers to onsite projects." (DE [557] Ex. 1). Other solicitation letters state that Pacesetter provides "general labor delivered to you" and that it has a "comprehensive employee transport system" that supplies "dependable, timely general labor" directly to the client. (DE [559] Ex. 11).

Pacesetter argues this is nothing but general marketing language and that out of the 25,000 quote letters and contracts produced in discovery, none include a job-specific transportation guarantee or clause. Pacesetter's regional vice-president, Amarylis Bonilla, testified that customers never require that DTWs be dropped off at a job site and that if parking is tight at a job site, DTWs can park on the street or in a parking garage and Pacesetter will reimburse the parking fee. (DE [557] Ex. 2). She said that DTWs can take the van, carpool, Uber, or ride public transportation. *Id.*

8

Pacesetter argues that transportation is provided for the convenience of the DTWs and it is, therefore, similar to a commuting expense that would arise in ordinary life. Upon signing up with Pacesetter, each DTW completes a Transportation Agreement (DE [520] Ex. 7) wherein he acknowledges that "it is my responsibility to arrive at that job/customer/work site by the time designated in my Time Ticket." The Transportation Agreement lists the options the DTW may choose regarding transportation: the DTW's own transportation, public transportation, carpool, or Pacesetter provided transportation. Plaintiffs describe the Transportation Agreement as "self-serving", but Plaintiffs have not produced evidence that Pacesetter does not adhere to the Transportation Agreement.

Plaintiffs cite two DTW depositions (M. Johnson and L. Johnson) as stating that Pacesetter dictates the form of transportation the DTWs must take. But that is not the end of the inquiry. The issue is whether the evidence supports Plaintiffs' contention taking Pacesetter's transportation was required for the benefit of Pacesetter. *See* Plaintiff's Reply Memorandum (DE [590], p. 6). The Court concludes that it does not. Martin Johnson stated that he takes the van, a carpool ride, or rides the public bus. (DE [588], Ex. 6). According to him, the dispatcher tells the mode of transportation to take. But Johnson never stated that he cannot drive his own vehicle. Laura Johnson testified that she was *never* told she couldn't take a different form of transportation to the work sites. (DE [588] Ex. 10, p. 22). The DTW testimony in the record establishes that they did not own cars or, alternatively, their testimony was silent on whether they owned a car. *See* Laura Johnson (DE [588] Ex. 10, p. 13) (reported on kiosk that she did not have a car); Shane Villarino (DE [588] Ex. 4, p. 13) (never had a vehicle); Jerome Gunn (DE [588] Ex. 5) (was never told he could not drive his own car); M. Johnson (DE [588] Ex. 6) (took

9

either van, carpool, or bus, but never stated he had a car that he would have driven). To the extent a DTW needed to take Pacesetter arranged transportation, Pacesetter assigned the mode of transportation. But that assignment does not compel the finding that the transportation was primarily for the benefit of Pacesetter. The transportation provided by Pacesetter to the DTWs is akin to the daily transportation required to go to work; its cost is precisely the type of cost "that would arise in the course of ordinary life." *Arriaga,* 305 F.3d at 1241-42 ("Clearly, § 531.32 considers expenses related to commuting between home and work … to be primarily for the benefit of the employee and thus they would constitute 'other facilities.'"). Plaintiffs are not entitled to summary judgment on this issue.

2. *Travel and waiting time*

Plaintiffs argue that Pacesetter violated the FLSA and FMWA by not paying them for the periods of time spent at the labor hall after they receive their daily ticket and before they sign out for the day. It is undisputed that DTWs are only paid for the hours spent working at the assigned job sites. Pacesetter argues that the pre- and post- job site time is not compensable under the Portal-to-Portal Act.

The Portal-to-Portal Act exempts certain activities from the compensation requirements of the FLSA. These exempt activities are described as follows:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on

> any particular workday at which he ceases, such principal activity or activities ....

29 U.S.C. § 254(a). "[C]ompensability under the FLSA turns on whether an activity is 'integral and indispensable' to the work an employee is 'employed to perform.'" *Bennett v. McDermott Int'l, Inc.,* 855 Fed. Appx. 932, 933 (5th Cir. 2021) (quoting *Integrity Staffing Sols., Inc. v. Busk,* 574 U.S. 27, 30 (2014)). Whether "a particular set of facts and circumstances is compensable under the FLSA is a question of law for the Court to decide." *Llorca v. Sheriff, Collier County,* 893 F.3d 1319, 1324 (11th Cir. 2018).

Plaintiffs contend that Pacesetter requires DTWs to ride in a van or carpool or, if they have their own cars, to drive other DTWs to job sites. They argue that because use of company-provided transportation to and from Pacesetter's office is mandatory and benefits Pacesetter, DTWs are entitled to compensation for the travel time and the time spent waiting to depart from Pacesetter's office. They also argue that mandatory pick up and return of safety equipment renders their activities integral and indispensable to the work they are required to perform, making the time compensable. Pacesetter disagrees and contends that DTWs are free to take whatever mode of transportation suits them and they are not engaged in any work activities during the travel or waiting periods. Whether Pacesetter requires the mode of transportation and collection of safety equipment is, however, not material. *Bonilla v. Baker Concrete Const., Inc.,* 487 F.3d 1340, 1343 (11th Cir. 2007) ("even mandatory travel time is exempted from compensation under the Portal-to-Portal Act."). "Under *Integrity Staffing,* it is not enough to make activity compensable under the Fair Labor Standards Act that the employer requires it and it is done for the benefit of the employer. Even activities required by the employer and for the employer's benefit are "preliminary" or "postliminary" if not integral and indispensable to "the

11

productive work that the employee is employed to perform." *Balestrieri v. Menlo Park Fire Prot. Dist*., 800 F.3d 1094, 1101 (9th Cir. 2015) (quoting *Integrity Staffing,* 574 U.S. at 36).

Even assuming that DTWs are required to take Pacesetter-arranged transportation to and from the job sites each day, this requirement does not meet the integral and indispensable standard. Travel time is only compensable "if it is intertwined with the employee's principal activities, 'such as travel from job site to job site during the workday.'" *Bennett,* 855 Fed. Appx. 936. For example, in *Burton v. Hillsborough County, Fla.,* 181 Fed. Appx. 829 (11th Cir. 2006), employees whose principal activity was to drive county vehicles to inspect public works construction sites were entitled to compensation from the time they picked up the county vehicles at the start of their shift to the time they returned those vehicles to the lot at the end of the shift. The court rejected the county's argument that driving from the lot to the first appointment was akin to travel to or from work. Driving the vehicles was intertwined with the employees' principal job duties. *Id.* at 837. By contrast, in *Bennett,* the "great deal of time" spent by welders and pipefitters waiting for and traveling on an employer-mandated bus to access the employer's remote facility was not compensable, because the travel time was not an integral part of their principal activities. *Bennett,* 855 Fed. Appx. at 936. As the *Bennett* court stated, "commuting is only compensable when the commute is connected to the employees' specific work obligations." *Id.* at 938. In the present case, none of Plaintiffs' principal job duties require travel; their work is performed at job sites to which they must travel. The travel options available to Plaintiffs – even if required – do not entitle them to payment under the FLSA or FMWA.

Likewise, Plaintiffs' pick up and return of safety equipment at Pacesetter's office does not convert non-compensable travel time to compensable. Nor is the acquisition and return of the safety equipment integral and indispensable to Plaintiffs' principal activities. The Supreme Court defined "integral" and "indispensable" in their ordinary senses. "The word 'integral' means '[b]elonging to or making up an integral whole; constituent, component; spec[ifically] necessary to the completeness or integrity of the whole; forming an intrinsic portion or element, as distinguished from an adjunct or appendage.'" *Integrity Staffing*, 574 U.S. at 33 (quoting 5 Oxford English Dictionary 366 (1933) (OED)). The word "indispensable" "means a duty '[t]hat cannot be dispensed with, remitted, set aside, disregarded, or neglected.'" *Id.* (quoting 5 OED 219).

Plaintiffs argue that because equipment such as hard hats, gloves, vests, and shovels are required for their work and the DTWs are required to bring those items with them to the job sites, they must be compensated for their time. The Court does not agree. In *IBP, Inc. v. Alvarez,* 546 U.S. 21 (2005), the Court held that time spent by workers waiting to put on protective gear was not integral to their principal activities of cutting and bagging meat and, therefore, was not compensable. The time spent walking from the locker room to the work floor after donning that protective gear was, however, compensable. The Court explained the difference:

> By contrast, petitioners, supported by the United States as *amicus curiae,* maintain that the pre-donning waiting time is "integral and indispensable" to the "principal activity" of donning, and is therefore itself a principal activity. However, unlike the donning of certain types of protective gear, which is *always* essential if the worker is to do his job, the waiting may or may not be necessary in particular situations or for every employee. It is certainly not "integral and indispensable" in the same sense that the donning is. It does, however, always comfortably qualify as a "preliminary" activity.

13

*Id.* at 40. The Court concluded that waiting to put on protective clothing was "two steps removed from the productive activity on the assembly line" and was not, therefore, compensable activity. *Id.* at 42.

The Court contrasted *Steiner v. Mitchell,* 350 U.S. 247, 248 (1956), which held that workers in a battery plant were entitled to compensation for the time spent changing into clothes at the beginning of the shift and showering at the end. There, the workers' principal job activities exposed them to "dangerously caustic and toxic materials." The Court distinguished between "changing clothes and showering under normal conditions" and the "important health and safety risks associated with the production of batteries" and found that under the circumstances, changing into protective clothing and showering were integral and indispensable to the principal activities. *Id.* at 249-52.

In this case, the generic nature of the equipment provided to the Plaintiffs before the start of their workday was not unique to the performance of their duties. They received hard hats, safety vests, gloves, brooms, and/or shovels. "These implements are not specialized and are used in a breadth of manual labor jobs." *Whitehead v. Sparrow Enterprise, Inc.,* 605 S.E.2d 234, 243 (N.C. App. 2004) (denying FLSA coverage for travel time that involved carrying employer-provided safety equipment). "No one would expect to pay an office worker for the time it takes to shave and put on a suit and tie. Everyone expects to pay an electrical worker for the time it takes to carry conduit from the pile of construction materials at the site to the location on the site where the conduit is to be installed." *Balestrieri,* 800 F.3d at 1098 (firefighter's collection and loading gear into personal cars to report to voluntary overtime position "two steps removed" from principal activity of fighting fires and, therefore, not compensable).

14

Plaintiffs argue that Pacesetter required them to use Pacesetter-issued equipment and, therefore, they should be compensated for the time necessary to bring and return the equipment to and from the job sites. But this argument expands the principal activities test beyond what is required by the statute. "If the test could be satisfied merely by the fact that an employer required an activity, it would sweep into 'principal activities' the very activities that the Portal–to–Portal Act was designed to address." *Integrity Staffing,* 574 U.S. at 36. Plaintiffs have not established that the travel time to and from job sites is compensable under the FLSA.

Plaintiffs also argue that they should be compensated for all time after receiving their daily work ticket because they were required to wait for Pacesetter-assigned/coordinated transportation to take them to the job site and, therefore, could not use this time effectively for their own purposes. Both Plaintiffs and Defendants analyze the issue of pre-travel wait time with cases involving "on-call" assignments. *See Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 807 (11th Cir. 1992) (whether police officers' on-call duty is compensable depends on whether "the time is spent predominately for the employer's benefit or for the employee's").

"When employees are engaged to wait for the employer's call to duty, this time may be compensable under the FLSA." *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944)). "Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. His compensation may cover both waiting and task, or only performance of the task itself.... The law does not impose an arrangement upon the parties. It imposes upon the courts the task of finding what the arrangement was." *Skidmore,* 323 U.S. at 136–37.

"The difference between time 'engaged to wait' and 'waiting to be engaged' is highly fact-specific and is 'dependent upon all the circumstances of the case.'" *Ramos v. Fla. Drawbridges, Inc.,* 2021 WL 4290906, at *4 (S.D. Fla. Sept. 21, 2021) (quoting *Gregory v. Quality Removal, Inc.*, 2014 WL 5494448, at *9 (S.D. Fla. Oct. 30, 2014)). "When deciding whether on-call time is covered by the FLSA, the court should examine 'the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances.'" *Birdwell,* 970 F.2d at 808 (quoting *Skidmore*, 323 U.S. at 137).

The Court is not convinced that Plaintiffs present an "on-call" scenario such as that presented by the off-duty, on-call police officers in *Birdwell*. Pacesetter matches job seekers with employers. DTWs decide when, if, and for what days they wish to seek and accept assignments. They receive a daily work ticket that tells them the start time of the day's job. Regardless of how the waiting period between receiving the daily work ticket and traveling to the job site is spent, the arrangement between Pacesetter and Plaintiffs was for Pacesetter to supply a place to work for the day; to the extent time elapsed between the time Plaintiffs receive the daily work ticket and the time the work actually began, Plaintiffs were "waiting to be engaged" in the day's work. The Court, therefore, concludes that the time spent waiting at Pacesetter's offices after receiving the daily work tickets or at the end of the day is not compensable under the FLSA. *See Whitehead,* 605 S.E.2d at 242 (declining to extend "hours worked" to include temporary workers' waiting time prior to arrival at the job site and at the end of the day). And, as discussed above, even assuming use of Pacesetter's transportation was mandatory, the travel time and

time spent waiting to travel are preliminary and postliminary activities that are exempt from the FLSA. *See Bennett,* 855 Fed. Appx. at 936 (workers not entitled to compensation for time spent waiting for and traveling on employer mandated transportation when travel was not integral and indispensable to their principal job activities). Plaintiffs are, therefore, not entitled to summary judgment on their claim that travel time is statutorily compensable work.

### 3. *FLSA and FMWA liquidated damages*

Where an employer violates the minimum wage and overtime provisions of the FLSA and FMWA, the employee is entitled to liquidated damages equal to the amount of unpaid compensation, unless the employer establishes that it acted in good faith and had reasonable grounds to believe that its actions did not violate the FLSA. 29 U.S.C. § 216(b); 29 U.S.C. § 260. Plaintiffs argue that Pacesetter cannot show that it acted in good faith. But, as discussed above, Plaintiffs have not established that Pacesetter violated the FLSA or FMWA. Accordingly, Plaintiffs are not entitled to summary judgment on the issue of liquidated damages.

### 4. *Transportation charges in excess of $3.00 per day (FLPA)*

The FLPA prohibits labor pools from charging workers more than $3.00 per day for transportation. Fla. Stat. § 448.24(1)(b). The FLPA also requires that a labor pool employer shall "[a]t the time of each payment of wages, furnish each worker a written itemized statement showing in detail each deduction made from such wages. A labor pool may deliver this statement electronically upon written request of the day laborer." Fla. Stat. Ann. § 448.24(2)(g). Any worker aggrieved by a violation of the FLPA is entitled to

recover "actual and consequential damages, or $1,000, whichever is greater, for each violation of this part, and costs." Fla. Stat. § 448.25.

Pacesetter's written records show that on numerous instances DTWs were charged more than $3.00 per day for transportation. Pacesetter has explained that it sold reduced-price bus passes to DTWs for their personal use. (DE [521] Ex. 4, p. 30). The bus passes cost $5.00 each and Pacesetter sold them to workers for $3.00. (DE 536] Ex. 9, ¶ 6). Some of the entries contain a notation that the excess charges were for the purchase of bus passes, but the majority contain no explanation for the excess charges. Plaintiffs contend that every bus pass purchase was dutifully recorded and, therefore, if a notation was not made next to a transportation charge, it was an excess charge in violation of the FLPA. (DE [557] ¶¶ 54-55). Pacesetter's testimony is that due to the fast-paced nature of dispatching dozens of DTWs at the same time, the "comments" section is not always filled out. (DE [577] ¶¶ 54-55).

Pacesetter has raised enough evidence to establish a genuine dispute as to whether the charges were for bus passes. Construing the evidence in the light most favorable to Pacesetter as the non-moving party and drawing all reasonable inferences in that party's favor, the Court concludes that the jury must determine whether the transportation charges in excess of $3.00 per day were for the purchase of bus passes or were violations of the FLPA.

5. *Lack Drinking Water at Commercial Boulevard Location*

The FLPA requires that a labor pool that operates a labor hall must provide facilities for a worker waiting to a job assignment that include restroom facilities, drinking water, and sufficient seating. Fla. Stat. § 448.24(5). Plaintiffs seek summary judgment on

Pacesetter's failure to provide drinking water. Numerous Plaintiffs have testified that there was no water available at the Commercial Boulevard location. (DE [557] ¶ 85). Pacesetter's dispatcher Dominick Charles testified that there was no drinking fountain at the Commercial Boulevard site and that daily ticket workers were not given bottled water. (DE [577], Ex. 2, p. 9). Pacesetter has provided testimony from DTWs and Pacesetter staff that bottled water was provided to workers at the Commercial Boulevard location. (DE [556] ¶ 48). This presents a genuine dispute of fact and summary judgment on the issue is not appropriate.

IV. <u>CONCLUSION</u>

For the reasons discussed above, the Court concludes that Plaintiffs have failed to establish they are entitled to relief under the FLSA or FMWA. In addition, the Court finds there is a genuine dispute of material fact as to whether Pacesetter has violated the FLPA's requirements regarding transportation costs and drinking water. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Partial Summary Judgment (DE [558]) is **DENIED.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 1st day of December 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF